## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

MAHMOUD KHALIL, JANE JOE, SALLY ROE, NED NOE, LUCY LOE, SAM SOE, WILL MOE, and KAM KOE, students at Columbia University and Barnard College, suing under pseudonyms,

*Plaintiffs.*

v.

THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK;

COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK;

KATRINA ARMSTRONG, in her official capacity as President of Columbia University in the City of New York;

BARNARD COLLEGE, COLUMBIA UNIVERSITY;

LAURA ANN ROSENBURY, in her official capacity as President of Barnard College, Columbia University

COMMITTEE ON EDUCATION AND WORFORCE, U.S. HOUSE OF REPRESENTATIVES;

TIM WALBERG, in his official capacity as Chairman of the Committee on Education and Workforce,

*Defendants.*

Civil Case No. 1:25-cv-02079

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR
LEAVE TO PROCEED USING PSEUDONYMS AND TO FILE UNDER SEAL
CERTAIN EXHIBITS WITH PERSONALLY IDENTIFYING INFORMATION**

Plaintiffs respectfully move the Court for leave to proceed in their civil action: (1) using

pseudonyms, (2) to redact certain other identifying information—specifically, the first part of

their email addresses, the last 7 digits of their phone numbers, their social media handles, and

their photographs—from any supporting documents, and (3) prohibit Defendants from disclosing

to any third parties any personally-identifying information that could lead to identification of

Plaintiffs, pursuant to Federal Rules of Civil Procedure Rule 5.2.

Plaintiffs make this request because the harm of releasing the Plaintiffs' names and other

identifying information is at the very heart of this litigation, which argues that Defendants should

be enjoined from requesting and providing Plaintiffs' identities to Congress in response to its

February 13, 2025, demand letter (discussed in full in Plaintiffs' Complaint).  Additionally, this

litigation involves information of a private and sensitive nature, and which is protected by the

Family Educational Rights and Privacy Act, the disclosure of which would increase the risk of

harm to them.

Additionally, University Defendants[1] already have the identities of any and all of the

students whose records have been requested by Congress, and therefore not revealing the

Plaintiffs' names will not in any way prejudice them.  Moreover, Plaintiffs seek to prevent

Congressional Defendants from compelling Columbia to provide them with Plaintiffs'

disciplinary or student records, or any disciplinary records, because, as argued in Plaintiffs'

complaint, this is a violation of the Plaintiffs' First Amendment rights and an improper use of

governmental power.  Consequently, the specific identities of these Plaintiffs are irrelevant to the

---

[1] "University" is used to incorporate both Columbia University and Barnard College.

claims being brought against Congressional Defendants, and proceeding both pseudonymously and under seal will not prejudice any Defendants. Plaintiffs are amendable to disclosing their identities to the Court if it wishes.

Undersigned counsel provided notice of this request to Columbia University's private defense team at Hecker & Fink and requested their position on the motion but received no response.

## STATEMENT OF RELEVANT FACTS

For the second time in a year, the Education and Workforce Committee of the House of Representatives ("House Committee") sent a February 13, 2025, letter ("House Committee Letter") to Columbia University and the Trustees of Columbia University demanding *all* student disciplinary records for eleven different incidents and events, likely impacting over 100 students, including the four Plaintiffs. When Columbia previously complied with Congress's request, student, staff, and faculty names were put into the public record during testimony, and documents with personally identifying information were leaked to the press and public, causing serious harm to reputational, financial, and employment harm, as well as pervasive and severe doxing[2] and harassment.

Plaintiffs have commenced this civil proceeding in order to enjoin Congress from compelling the student records and to prevent the University's disclosure of their names and student disciplinary records to the House Committee. In their civil complaint, Plaintiffs allege that the University's imminent disclosure will directly lead to irreparable harm to the Plaintiffs,

---

[2] Doxing is defined as "to publicly identify or publish private information about (someone) especially as a form of punishment or revenge." *See Dox*, Mirriam Websters Dictionary (last accessed Mar. 2, 2025), https://www.merriam-webster.com/dictionary/dox.

including increased, pervasive retaliation, threats, and harassment, doxing, loss of job and scholarship opportunities, to name but a few, as well having their protected speech rights further chilled, as they are being directly targeted for their viewpoint and speech, in violation of Plaintiffs' First Amendment rights.

Plaintiffs' Verified Complaint and accompanying exhibits contain personally identifying information, such as their names, social media account handles, email addresses, home addresses, and similar types of information, as well as sensitive information, such as the death threats and graphic sexualized threats made against them on social media and their immigration status, that would subject them to great mental harm, and possibly even physical harm, if publicly attributed to them.

Moreover, some of these students have not yet had their disciplinary hearings and/or the investigative procedures have not yet been completed and there has been no finding of responsibility. Consequently, any release of their names, whether through this litigation or through the release of records to Congress, would cause irreparable reputational harm before there has been any finding of responsibility by the University.

To spare Plaintiffs from having their sensitive personal information publicly available, and to mitigate the risk that they will be retaliated against, receive further death threats and threats of sexualized violence, and/or be actually physically assaulted, and to mitigate the risks of irreparable harm prior to any finding of responsibility in the University's disciplinary proceedings, Plaintiffs respectfully request that the Court allow them to proceed in this action under pseudonyms.

<u>**ARGUMENT**</u>

## I.  THIS COURT SHOULD PERMIT PLAINTIFFS TO FILE UNDER PSEUDONYMS.

This Court can make an exception to F.R.C.P Rule 10(a)'s requirement that the title of a complaint name all parties. *See, e.g.*, *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008). "When determining whether a plaintiff may be allowed to maintain an action under a pseudonym, the plaintiff's interest in anonymity must be balanced against both the public interest in disclosure and any prejudice to the defendant." *Id*. In this case, an exception to the 10(a) requirement is particularly warranted given that disclosing Plaintiffs' names would undermine the purpose of this litigation: to enjoin Congress from compelling the University to provide private disciplinary records, and to prevent Columbia University from providing those documents and disclosing their names, along with other personally identifying information to the House Committee. *See Doe v. Colgate Univ.*, No. 515-CV-1069 (LEK) (DEP), 2016 WL 1448829, at *3 (N.D.N.Y. Apr. 12, 2016). Courts look to ten non-exhaustive factors to balance Plaintiffs' interest in anonymity against the public's interest in disclosure and any prejudice to the defendant:

    (1)    whether the litigation involves matters that are highly sensitive and of a personal nature;

    (2)    whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties;

    (3)    whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity;

    (4)    whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age;

(5)     whether the suit is challenging the actions of the government or that of private parties;

(6)     whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court;

(7)     whether the plaintiff's identity has thus far been kept confidential;

(8)     whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity;

(9)     whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and

(10)    whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id*. at 189–190 (internal citations, quotations, and alterations omitted).

The *Sealed Plaintiff* factors weigh in favor of protecting Plaintiffs' privacy through use of pseudonyms. First, this litigation "involves matters that are highly sensitive and of a personal nature." *Id* at 190. Plaintiffs are students, some of whom are below the age of 21 years old, and the records at issue contain personally identifying information, and the exhibits attached hereto contain examples of personalized threats of death, deportation, and other violence against them that will be amplified, and perhaps turned from threatened harm to actual harm with greater public exposure, particularly given the erroneous and incendiary ways in which Congress and Columbia have framed the speech. A court in this circuit has found the first fact to weigh in favor of sealing when university students faced disciplinary proceedings that, like here, involved politically charged allegations related to "'hot-button' issues that are frequently discussed and debated in many different settings across the country." *Doe #1 v. Syracuse Univ*., No. 518CV0496FJSDEP, 2018 WL 7079489, at *4 (N.D.N.Y. Sept. 10, 2018), report and

6

recommendation adopted, No. 518CV00496BKSML, 2020 WL 2028285 (N.D.N.Y. Apr. 28, 2020)[3]; *see also Doe No. 2 v. Kolko*, 242 F.R.D. 193, 197 (E.D.N.Y. 2006) (granting motion to proceed anonymously, noting "the ease with which the public could access court files in this case"); *Colgate Univ.*, 2016 WL 1448829, at *2 (granting motion and noting that the issues in the case had "garnered significant media attention"). As evidenced by the House Committee Letter, the disciplinary allegations against Plaintiffs have already garnered national attention. This weighs in favor of granting the motion, given that associating their names with this issue will put them at even greater risk of having their sensitive and personal matters disseminated nationwide.

Second, identifying Plaintiffs also "poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously." *Sealed Plaintiff*, 537 F.3d at 190. Plaintiffs' interest in keeping their identity private is particularly strong when "forcing [them[ to reveal [their] identity would not advance any aspect of the litigation but instead poses [] risk[s]." *Id.* Courts should consider whether a plaintiff's risks in proceeding under their full names would create a chilling effect for plaintiffs to vindicate their rights in federal court. *Colgate Univ.*, 2016 WL 1448829, at *3. Such is the case here.

Indeed, the Plaintiffs here would not just be at risk of "reputational harm and similar, negative economic and other tangible affects naturally flow as consequences from litigation," but

---

[3] It is critical to distinguish the *facts* of *Doe #1* from the reasoning applied by the court, which apply here. In *Doe #1*, the fraternity itself admitted their conduct was anti-Semitic, whereas here, Plaintiffs vehemently deny any allegations of anti-Semitism. Because the House Committee itself has erroneously branded all alleged student protesters at Columbia as "anti-Semitic," however, they have created the conditions to make the allegations against Plaintiffs as highly sensitive.

"plaintiffs could be permanently marked as possessing the character traits attributed to them by [both] the University" and Congress through this litigation," *id.*

As is highly likely in this case given the significant harassment and doxxing by third parties to other Columbia students that occurred the last time Congress demanded testimony and records from Columbia and Columbia complied, courts recognize the need for anonymity where there is "a risk of harm from third parties unaffiliated with the case." *Doe v. Smith*, 105 F. Supp. 2d 40, 45 (E.D.N.Y. 1999). Should Plaintiffs' name be publicly attached to their civil complaint, they will face an increased risk of retaliatory harm from numerous parties—Columbia University administrators and faculty members, members of Congress and their staffs, and unaffiliated individuals acting independently or as part of third-party organizations such as Canary Mission, Betar USA, and Documenting Jew Hatred on Campus that seek to dox students by releasing their personally identifying information, including addresses and photographs, and others who troll, threaten, and stalk university student protestors. For example, some of these organizations have listed the full names of students and tagged Immigration and Customs Enforcement to suggest they be deported. Another student received threats of rape with specific details about the threatened violation. Thus, based on the experience of other students in an almost identical posture, the severity of the harms that Plaintiffs will experience if their names are disclosed weighs in favor of allowing them to proceed pseudonymously. *See Syracuse Univ*., 2018 WL 7079489, at *5 ("Since forcing plaintiffs to divulge their identities would not advance any aspect of the litigation and would, on the other hand, pose a risk that they would be subject to unnecessary ridicule and attention, I find that this factor also weighs in plaintiffs' favor."). The third factor also weighs heavily in favor of Plaintiffs, given that "the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity." *Sealed Plaintiff*, 537

F.3d at 190 (2d Cir. 2008) (quoting *M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998). The very injury Plaintiffs are litigating against here—the disclosure of the Plaintiffs' personally identifying information and their student disciplinary records to Congress—would be incurred if the Court requires Plaintiffs to proceed under their full names

Fourth, the Plaintiffs here are particularly vulnerable to the possible harms of disclosure. While Courts often find that this factor generally does not weigh in favor of young adults who are not legally minors, in the context of this case where the power imbalances could not be more stark, the young age of the Plaintiffs weighs in favor of granting the motion. For the Plaintiffs here, the youngest of which is 19-years-old, they face not just the harm of their own University disclosing their information and exposing them to harassment and threats, but they also are vulnerable to the retribution of the federal government, which has explicitly stated that it aims to inflict maximum punishment against them once their names are disclosed, even though none of the allegations against them have been substantiated.[4] Therefore, the fourth factor weighs in favor of Plaintiffs.

Likewise, the sixth factor counsels granting this motion because Defendants are not "prejudiced" by allowing Plaintiffs to proceed using pseudonyms. *Sealed Plaintiff*, 537 F.3d at 190. In deciding whether defendants are prejudiced, courts "look at the damage to a defendant's

---

[4] *See, e.g.*, Alex Morey, "Statement on President Trump's Truth Social post threatening funding cuts for 'illegal protests'," FIRE (Mar. 4, 2025), available at https://www.thefire.org/news/statement-president-trumps-truth-social-post-threatening-funding-cuts-illegal-protests. *See also*, Letter from U.S. H.R. Rep. Comm. Educ. & Workforce to Dr. Katrina Armstrong, Interim President of Columbia Univ., Mr. David Greenwald & Ms. Claire Shipman, Co-Chairs of the Trs. Columbia Univ. (Feb. 13, 2025), https://edworkforce.house.gov/uploadedfiles/2.13.25_columbia_letter.pdf [hereinafter the "Feb. 13 Letter"]. *See also* H. Comm. on Educ. & Workforce, Republican Staff Report, *Antisemitism on College Campuses Exposed* (Oct. 31, 2024), https://edworkforce.house.gov/uploadedfiles/10.30.24_committee_on_education_and_the_workforce_republican_staff_report_-_antisemitism_on_college_campuses_exposed.pdf. *See also*

reputation caused by the anonymous proceeding, the difficulties in discovery, as well as at the fundamental fairness of proceeding in this manner." *EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003). This factor weighs in favor of Plaintiffs, as "Defendants are aware of Plaintiff[s'] true identity and will have an uninhibited opportunity to litigate this matter regardless of whether Plaintiff's identity is disclosed publicly." *Colgate Univ.*, 2016 WL 1448829, at *3.

The seventh factor, "whether the plaintiff's identity has thus far been kept confidential," *Sealed Plaintiff*, 537 F.3d at 190, also weighs in favor of granting this motion because counsel has sought to keep Plaintiffs' personally identifiable information and legal claims confidential consistent with federal regulations and agency practice. Notwithstanding, at least one Plaintiff is aware that their student records were leaked when Columbia last complied with the House Committee's request—without Plaintiffs consent—because a reporter from a major media outlet called Plaintiff stating that they were in possession of their disciplinary records and wanted Plaintiff to comment. Plaintiffs are not aware of how and by whom such a leak occurred, but they are clear that they did not consent nor did they voluntarily offer their records to the public sphere.

Factors eight and nine weigh in favor of granting this motion because the public's interest in the litigation is not "furthered by requiring Plaintiff to disclose his identity," and "the purely legal nature of the issues presented" – whether Congress is improperly chilling speech based on viewpoint discrimination through the coercion of a third party, and in turn, Columbia acting as a state actor to chill speech – results in an "atypically weak public interest in knowing the litigants' identities." *Sealed Plaintiff*, 537 F.3d at 190.

Finally, there are no alternative mechanisms for protecting the confidentiality of the Plaintiffs. While the University has an obligation not to turn over records under FERPA, "the confidentiality of records and documents is a separate issue from whether they should be required to reveal their identities to proceed with this litigation. There are no other mechanisms currently in place to protect plaintiffs' identities if they cannot proceed with this litigation anonymously." *Syracuse Univ.*, 2018 WL 7079489, at *9. Unlike cases where sensitive information can be protected through the sealing of certain documents, like medical records, here, the very purpose of this litigation is to enjoin the University from turning over the names of the Plaintiffs to the House Committee. Therefore, the litigation will be undermined if Plaintiffs are compelled to proceed under their full names, and there is no alternative mechanism that will adequately protect the confidentiality of the Plaintiffs, short of proceeding under pseudonyms.

Accordingly, all applicable factors favor allowing Plaintiffs to proceed using pseudonyms.

## II. THIS COURT SHOULD PERMIT PLAINTIFFS TO FILE UNDER SEAL EXHIBITS INCLUDING THEIR PERSONALLY IDENTIFYING INFORMATION.

Incorporating the arguments and reasoning discussed **ante**, and in light of the very real physical, mental health, reputational, and financial harms that would follow the release of Plaintiffs' names and identifying information, Plaintiffs seek to file under seal exhibits that contain sensitive or personally-identifying information about them, including their affidavits describing their recent experiences with harassment, doxing, and threats of harm and deportation.[5] Additionally, Plaintiffs request a protective order specified as "for attorneys eyes

---

[5] The petition and exhibits were also redacted in accordance with F.R.C.P. 5.2 and this Court's Notice Regarding Privacy and Public Access to Electronic Civil and Criminal Case Files,

only" regarding their affidavits given that the Defendants are the ones Plaintiffs wish to prevent having access to their personally identifying information.

To determine whether to seal documents in a civil case, this Court applies a three-part inquiry: (1) whether a document is a "judicial document," to which the public has a presumptive public right of access, *see Lugosch v. Pyramid Co. of Onondaga,* 435 F.3d 110, 119 (2d Cir. 2006), (2) the weight of the presumption that attaches to the document, *id.*, and (3) "balance competing considerations against it," *id.*, at 120.

First, when assessing "whether a document is a judicial record, [a court] evaluate[s] the 'relevance of the document's specific contents to the nature of the proceeding" and the degree to which 'access to the [document] would materially assist the public in understanding the issues before the ... court, and in evaluating the fairness and integrity of the court's proceedings.'" *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016).

Here, the affidavits of the four Plaintiffs are not "judicial records" because they will not aid this Court in evaluating the central First Amendment claims, nor will they "materially assist the public in understanding the issues before the court." *Id.* Instead, the affidavits provide this Court with context as to Plaintiffs' requests to proceed pseudonymously and under seal.

Alternatively, should this Court determine that the affidavits are "judicial records," "presumption of public access exists along a continuum." *Olson v. Major League Baseball*, 29 F.4th 59, 89 (2d Cir. 2022). Here, the "weight of the presumption that attaches" is low because these affidavits are not submitted in support of dispositive motions, *id.* at 87-88, and thus, the

---

available at https://www.nysd.uscourts.gov/sites/default/files/pdf/egovtact042005.pdf. (Last visited February 13, 2025).

"documents play only a negligible role in the performance of Article III duties." *Id.* at 87-89

(*quoting United States v. Amodeo,* 71 F.3d 1044, 1050 (2d Cir. 1995)).

Finally, the Court balances "the privacy interests of the [Plaintiffs] supporting the non-disclosure of the document with the presumption of public access." *Olson*, 29 F.4th at 91. As detailed in full in Section I, the stakes for these Plaintiffs coming forward to defend their own First Amendment rights and those of hundreds of students against this large institution and Congress in this particular political climate are incredibly high. The balance of power is asymmetrical, to say the least. Indeed, a central component of this litigation is predicated on the fact that Congress and Columbia have not protected student, faculty, or staff privacy, and in fact, have actively exposed their identities to public ridicule and harassment based on their viewpoints.[6] Protecting Plaintiffs' privacy by sealing their affidavits and making them available to attorneys' eyes only in no impedes "judicial efficiency," and instead provides the only protection of the "privacy interests of those resisting disclosure." *See Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 143 (2d Cir. 2016) (cleaned up).

Because there are no sufficiently countervailing interests against sealing the accompanying exhibits to this motion and making them available for attorneys' eyes only, this Court should do so.

---

[6] *See* Letter from U.S. H.R. Rep. Comm. Educ. & Workforce to Dr. Katrina Armstrong, Interim President of Columbia Univ., Mr. David Greenwald & Ms. Claire Shipman, Co-Chairs of the Trs. Columbia Univ. (Feb. 13, 2025), https://edworkforce.house.gov/uploadedfiles/2.13.25_columbia_letter.pdf [hereinafter the "Feb. 13 Letter"]. *See also* H. Comm. on Educ. & Workforce, Republican Staff Report, *Antisemitism on College Campuses Exposed* (Oct. 31, 2024), https://edworkforce.house.gov/uploadedfiles/10.30.24_committee_on_education_and_the_workforce_republican_staff_report_-_antisemitism_on_college_campuses_exposed.pdf.

## CONCLUSION

For the reasons set forth above, this Court should grant Plaintiffs' application and permit them to proceed pseudonymously, redact certain other identifying information, subject to such future review as may be appropriate, and seal the accompanying exhibits to this motion and making them available for attorneys' eyes only.

Dated: March 13, 2025                        Respectfully submitted,
      New York, NY

/s/ Amy E. Greer

Amy E. Greer (NY 5910179)
**Dratel & Lewis**
29 Broadway, Suite 1412
New York, NY 10006
(212) 732-8805
agreer@dratellewis.com

**CAIR NATIONAL**
**LEGAL DEFENSE FUND**
/s/Lena Masri
Lena Masri
Gadeir Abbas (VA 81161)*
453 New Jersey Ave SE
Washington, DC 20003
(202) 742-6420

*pro hac vice forthcoming*

**COUNCIL ON AMERICAN ISLAMIC**
**RELATIONS – NEW YORK**
/s/Lamya Agarwala
Lamya Agarwala (NY 5736061)
80 Broad Street, 5th Floor
New York, NY 10009
(646) 665-7599
lagarwala@cair.com

**Jonathan Wallace**
/s/ Jonathan Wallace
Jonathan Wallace (NY 1733757)
PO #728
Amagansett NY 11930
(917) 359-6234
jonathan.wallace80@gmail.com


*Attorneys for Plaintiffs*