**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MAHMOUD KHALIL, et al.,

                  *Plaintiffs,*

        v.

TRUSTEES OF COLUMBIA UNIVERSITY
IN THE CITY OF NEW YORK, et al.,

                  *Defendants.*

No. 1:25 Civ. 02079 (AS)

**DEFENDANTS TRUSTEES OF COLUMBIA UNIVERSITY IN THE**
**CITY OF NEW YORK AND KATRINA ARMSTRONG'S**
**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION**
**FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Marshall L. Miller (Lead Counsel)
Gabrielle E. Tenzer
Zachary Piaker
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
(212) 763-0883
mmiller@heckerfink.com
gtenzer@heckerfink.com
zpiaker@heckerfink.com

Trisha Anderson,
*pro hac vice forthcoming*
HECKER FINK LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
(212) 763-0883
tanderson@heckerfink.com

*Attorneys for Defendants Trustees*
*of Columbia University in the City*
*of New York and Katrina Armstrong*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ............................................................................................................... 1

LEGAL STANDARD ........................................................................................................ 5

ARGUMENT ..................................................................................................................... 6

    I.     Plaintiffs Are Not Likely to Succeed on the Claim That Columbia Has Violated
         Their First Amendment Rights ...................................................................... 6

         A.     The Committee's and Agency Defendants' Oversight and Regulatory
                Demands Do Not Transform Columbia into a State Actor ............................. 6

         B.     Columbia's Actions to Respond to the Committee's Oversight Requests
                and Demands Are Not State Action .................................................... 8

         C.     Columbia's Actions to Respond to the Agency Defendants' Regulatory
                Demands Also Are Not State Action ................................................... 10

    II.    The Remaining Factors Do Not Favor a TRO Against Columbia ........................... 13

CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*A.F. ex rel. Fenton v. Kings Park Cent. Sch. Dist.*,
   341 F. Supp. 3d 188 (E.D.N.Y. 2018) ................................................................ 12

*Amira v. Maimonides Hosp.*,
   No. 21 Civ. 3976, 2022 WL 18034533 (E.D.N.Y. Nov. 30, 2022) ................................ 7, 11

*Bailey v. N.Y. L. Sch.*,
   No. 19-3473, 2021 WL 5500078 (2d Cir. Nov. 24, 2021) .................................... 11

*Bragg v. Jordan*,
   669 F. Supp. 3d 257 (S.D.N.Y. 2023) .................................................... 8

*Budowich v. Pelosi*,
   610 F. Supp. 3d 1 (D.D.C. 2022) ...................................................... 8

*Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*,
   843 F.3d 48 (2d Cir. 2016) ............................................................ 14

*Ciambriello v. County of Nassau*,
   292 F.3d 307 (2d Cir. 2002) .......................................................... 6

*Cranley v. Nat'l Life Ins. Co. of Vt.*,
   318 F.3d 105 (2d Cir. 2003) .......................................................... 6

*Daniel v. Safir*,
   135 F. Supp. 2d 367 (E.D.N.Y. 2001) ............................................... 9

*Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*,
   526 U.S. 629 (1999) .................................................................. 14

*Elrod v. Burne*,
   427 U.S. 347 (1976) .................................................................. 13

*Fakhreddine v. Univ. of Pa.*,
   No. 24 Civ. 1034, 2025 WL 345089 (E.D. Pa. Jan. 30, 2025) ........................... 8

*Gartenberg v. Cooper Union for the Advancement of Sci. & Art*,
   No. 24 Civ. 2669, 2025 WL 401109 (S.D.N.Y. Feb. 5, 2025) ........................... 14

*Geller v. de Blasio*,
   613 F. Supp. 3d 742 (S.D.N.Y. 2020) ................................................ 5

*Gill v. Pidlypchak*,
　　389 F.3d 379 (2d Cir. 2004) ........................................................... 7

*Gilman v. Marsh & McLennan Cos.*,
　　826 F.3d 69 (2d Cir. 2016)............................................................... 8

*Ginsberg v. Healey Car & Truck Leasing, Inc.*,
　　189 F.3d 268 (2d Cir. 1999)............................................................. 8

*Grogan v. Blooming Grove Volunteer Ambulance Corps*,
　　768 F.3d 259 (2d Cir. 2014)........................................................... 11

*Hadges v. Yonkers Racing Corp.*,
　　918 F.2d 1079 (2d Cir. 1990)........................................................... 6

*Harrison v. New York*,
　　95 F. Supp. 3d 293 (E.D.N.Y. 2015) ............................................... 8

*Manhattan Cmty. Access Corp. v. Halleck*,
　　587 U.S. 802 (2019)............................................................... 6, 7, 10

*Mazurek v. Armstrong*,
　　520 U.S. 968 (1997) ......................................................................... 6

*N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*,
　　883 F.3d 32 (2d Cir. 2018)............................................................... 5

*N.Y. Progress & Prot. PAC v. Walsh*,
　　733 F.3d 483 (2d Cir. 2013)............................................................. 5

*Nat'l Rifle Ass'n v. Vullo*,
　　602 U.S. 175 (2024) ......................................................................... 9

*N.Y. State Nat'l Org. for Women v. Terry*,
　　886 F.2d 1339 (2d Cir. 1989)........................................................... 9

*Original Great Am. Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd.*,
　　970 F.2d 273 (7th Cir. 1992) ......................................................... 14

*S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*,
　　483 U.S. 522 (1987)....................................................................... 10

*Schiller v. City of New York*,
　　No. 04 Civ. 7921, 2006 WL 3592547 (S.D.N.Y. Dec. 7, 2006)........................... 9

iii

*Schlein v. Milford Hosp., Inc.*,
    561 F.2d 427 (2d Cir. 1977).................................................................................... 7

*Serbalik v. Gray*,
    199 F.3d 1323, 1999 WL 1012446 (2d Cir. 1999) ................................................. 8

*Shaev v. NetScout Sys., Inc.*,
    No. 24 Civ. 5859, 2024 WL 4144031 (S.D.N.Y. Sept. 11, 2024)........................... 5

*Spear v. Town of West Hartford*,
    954 F.2d 63 (2d Cir. 1992)................................................................................. 8, 12

*Sussman v. Crawford*,
    488 F.3d 136 (2d Cir. 2007).................................................................................. 6

*Sybalski v. Indep. Group Home Living Program, Inc.*,
    546 F.3d 255 (2d Cir. 2008)............................................................................. 7, 11

*Trump v. Deutsche Bank AG*,
    943 F.3d 627 (2d Cir. 2019).................................................................................. 9

*United States v. Int'l Bhd. of Teamsters*,
    941 F.2d 1295 (2d Cir. 1991)............................................................................... 6

*United States v. Citizens State Bank*,
    612 F.2d 1091 (8th Cir. 1980) .............................................................................. 9

**STATUTES**

42 U.S.C. §§ 2000d *et seq*................................................................................................. 10

**OTHER AUTHORITIES**

Catherine E. Lhamon, Assistant Sec'y for C.R., U.S. Dep't of Educ., *Dear Colleague Letter:
    Title VI and Shared Ancestry or Ethnic Characteristics Discrimination* 3 (May 7,
    2024), https://www.ed.gov/sites/ed/files/about/offices/list/ocr/letters/colleague-202405-
    shared-ancestry.pdf ........................................................................................... 13

Columbia University, Charters and Statutes, Columbia University in the City of New York,
    Chapter XXIII: Barnard College (May 2024),
    https://secretary.columbia.edu/sites/default/files/content/University%20Charter_Statutes
    _May2024.pdf.................................................................................................... 2

Daniella Ospino Pallares, *Office of Institutional Equity Announces New Antidiscrimination and Harassment Policy*, Columbia Spectator (Sept. 25, 2024), https://www.columbiaspectator.com/news/2024/09/25/office-of-institutional-equity-announces-new-antidiscrimination-and-harassment-policy/ ................................................ 12

Douglas Belkin, *Columbia Looks to Give Campus Police Arresting Power After Protests*, Wall. St. J. (Aug. 5, 2024), https://www.wsj.com/us-news/education/columbia-looks-to-give-campus-police-arresting-power-after-protests-11d2b3bc ............................................ 12

Isabelle Taft, *How Colleges Are Changing Their Rules on Protesting*, N.Y. Times (Sept. 12, 2024), https://www.nytimes.com/2024/09/12/us/college-protest-rules.html ...................... 13

Katie DeBenedetti, *Stanford's New Protest Policies Ban Tents Overnight, Require Students to Remove Masks When Asked*, KQED (Sept. 18, 2024), https://www.kqed.org/news/12005195/stanfords-new-protest-policies-ban-tents-overnight-require-students-to-remove-masks-when-asked .................................................. 13

Off. for C.R., U.S. Dep't of Educ., *Resolution Agreement: The University of California,* (Dec. 18, 2024),  https://ocrcas.ed.gov/sites/default/files/ocr-letters-and-agreements/09222257-b.pdf ...................................................................................................... 13

Shiv Patel & Dylan Winward, *UCLA Announces New Time, Place and Manner Policies, Limits Public Expression Areas*, Daily Bruin (Sept. 4, 2024), https://dailybruin.com/2024/09/04/ucla-announces-new-time-place-and-manner-policies-limits-public-expression-areas ............................................................... 13

Task Force on Antisemitism, Columbia Univ., *Report #1: Columbia University's Rules on Demonstrations* 14 (Mar. 2024), https://www.columbia.edu/content/sites/default/files/content/about/Task%20Force%20on%20Antisemitism/Report_1_Columbia_University's_Rules_on_Demonstrations_March_04_2024.pdf .................................................................................. 12

Vimal Patel, *Harvard Adopts a Definition of Antisemitism for Discipline Cases*, N.Y. Times (Jan. 21, 2025),  https://www.nytimes.com/2025/01/21/us/harvard-antisemitism-definition-discipline.html .................................................................................. 13

Yash Roy, *NYU clarifies antisemitism policies to include instances of anti-Zionism*, The Hill (Aug. 23, 2024),  https://thehill.com/homenews/education/4845135-nyu-clarifies-antisemitism-policies-antizionism/ .................................................................. 13

## PRELIMINARY STATEMENT

This case concerns Plaintiffs' allegations that a committee of Congress and various Executive Branch agencies have violated Plaintiffs' First Amendment rights by coercing Columbia University to disclose information about them in response to government inquiries and to take certain actions to combat antisemitism. As an independent, private university, Columbia is not a state actor as required by the First Amendment, and Plaintiffs have not met their burden to show otherwise. When faced with, and responding to, inquiries, requests, and demands of the federal government, Columbia is in no different position than any other private party subject to regulatory or other oversight authority. Courts have never found that the actions of private parties, in responding to purported exercises of such authority, transform those private parties into state actors. To hold otherwise would upend regular practices of responding to government subpoenas, regulatory inquiries, or other government requests, and put private parties to the choice of refusing to engage or risking claims of constitutional violations. Columbia needs the discretion that the law typically affords universities to effectively address instances of discrimination and harassment while protecting free expression, respond appropriately to inquiries by Congress and federal regulators, and update policies and procedures to accord with current best practices. Regardless of whether a temporary restraining order ("TRO") or preliminary injunction ("PI") may be appropriate against other Defendants, a TRO or PI against Columbia should not issue.

## BACKGROUND[1]

In the wake of Hamas's October 7, 2023 attacks on Israel, Columbia, like many universities across the country, saw an increase in on-campus demonstrations and related activity. Students

---

[1] Citations to "¶" refer to paragraphs of Plaintiffs' amended complaint, ECF 13, and citations to "Mem." refer to Plaintiffs' Memorandum of Law in Support of Motion for Temporary Restraining Order, ECF 15. Because Katrina Armstrong is sued solely in her official capacity as interim president of Columbia University, ¶ 30, this opposition

and student groups hosted vigils and protests for the victims of the Israel-Hamas war and organized walkouts, sit-ins, and other events calling for, among other things, divestment from Israel and an immediate ceasefire. Although much of the activity on campus has involved political debate over a longstanding, violent, and intractable conflict in the Middle East, these events have strained community bonds in extraordinary ways.

The U.S. House of Representatives Committee on Education and the Workforce (the "Committee") has responded to such events by launching investigations into antisemitism on college campuses. Over the last thirteen months, the Committee has sent various requests to Columbia seeking a wide range of documents and other information concerning antisemitism and the University's response to issues on campus. ¶¶ 72-77. Columbia has produced documents in response to these requests. *Id.* The Committee has also issued subpoenas to Columbia and Columbia board members, to which the University has also responded, including by producing certain disciplinary records. ¶ 78. Plaintiffs—seven Columbia students and one Barnard College student[2]—allege that after the Committee issued a report on its findings in October 2024, they experienced increased harassment and online targeting "correlated" with the public release of the Committee's report and associated records. ¶¶ 20-27, 76, 78-83.

On February 13, 2025, the Committee sent another letter to the University (the "February 13 Letter") that sought, among other items, disciplinary case files relating to eleven incidents that took place on Columbia's campus. ¶¶ 1 & n.2, 11. Columbia made a production of documents in

refers to the Trustees of Columbia University in the City of New York and Interim President Armstrong collectively as "Columbia" or "the University."

[2] While Barnard College is affiliated with Columbia University, Barnard and Columbia are separate legal entities with different boards, presidents, administrators, and policies. *See* Columbia Univ., *Charters and Statutes, Columbia University in the City of New York*, ch. XXIII (May 2024), https://secretary.columbia.edu/sites/default/files/content/University%20Charter_Statutes_May2024.pdf; Barnard Coll., *Catalogue: The College*, https://catalog.barnard.edu/barnard-college/college/ (last visited Mar. 23, 2025).

response to this request on February 27 and made modest supplemental response on March 7 and on March 19 before Plaintiffs filed their TRO/PI application. Declaration of Felice Rosan in Support of Defendants Trustees of Columbia University in the City of New York and Katrina Armstrong's Memorandum of Law in Opposition to Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction ("Rosan Decl.") ¶ 4.

Meanwhile, in January 2025, President Trump issued an executive order titled "Additional Measures to Combat Anti-Semitism." ¶ 58. Shortly thereafter, the administration announced the formation of a multi-agency Task Force to Combat Antisemitism ("Task Force"). ¶¶ 58-60. On March 7, 2025, the Task Force announced that it had cancelled or paused approximately $400 million in federal grants to Columbia, purportedly due to the University's alleged "failure to protect Jewish students from antisemitic harassment." ¶ 59. On March 13, 2025, senior officials from the U.S. Department of Education, U.S. Department of Health and Human Services, and General Services Administration sent Columbia a "follow up" letter (the "March 13 Letter"). ¶ 62 & n.39; ECF 15-2. The March 13 Letter invoked the federal government's responsibility to "ensure that all recipients are responsible stewards of federal funds" and alleged potential violations of Titles VI and VII of the Civil Rights Act of 1964. ECF 15-2 at 1. The letter further identified several "next steps" as a "precondition for formal negotiations regarding Columbia University's continued financial relationship with the United States government," which included high-level reforms relating to disciplinary processes and campus law enforcement, among other things. *Id.* at 1-3; ¶¶ 63-68.

Plaintiffs commenced this lawsuit on March 13, 2025, asserting claims relating only to the Committee's February 13 Letter. ECF 1. On March 19, 2025, Plaintiffs filed an amended complaint. ECF 13. The complaint names three sets of defendants: (1) the Committee and its

chairman; (2) five officials of the U.S. Department of Justice, U.S. Department of Education, U.S. Department of Health and Human Services, and General Services Administration (the "Agency Defendants"); and (3) Columbia. The Complaint asserts three causes of action. Count I alleges violations of the First Amendment by the federal government Defendants. ¶¶ 92-114. Count II alleges violations of the First Amendment by Columbia. ¶¶ 115-24. Count III asserts a breach of contract claim. ¶¶ 125-35.

Later that same evening, Plaintiffs filed a motion for a TRO and PI on Counts I and II. ECF 17.[3] With respect to Columbia, Plaintiffs seek an order enjoining the University from (i) "providing any student records, and any records demanded in the February 13 Letter to Congress or any federal agency for the pendency of this litigation" and (ii) "complying with any and all demands made in Taskforce Defendants March 13, 2025, Letter for the pendency of this litigation." ECF 18 at 1. The next day, the Court set a briefing schedule; temporarily ordered Columbia not to provide certain records to the federal government or release the names or other identifying information included in those records; and directed the parties to meet and confer. ECF 20.

Throughout this period, Columbia continued to take steps to respond to issues faced by students and staff on campus. On March 13, 2025, prior to receiving the government's March 13 Letter, Columbia issued disciplinary decisions for certain students who had violated University rules when they occupied and damaged a University building, and participated in an unauthorized encampment. Rosan Decl. ¶ 5. And on March 21, 2025, Columbia announced a series of steps that the University intended to take "with respect to the discrimination, harassment, and antisemitic acts our Jewish community has faced in the wake of October 7, 2023." Rosan Decl., Ex. A at 1. It

---

[3] Plaintiffs do not seek a TRO or PI in connection with their breach of contract claim. Mem. 15 n.8.

explained that it was doing so in response to "legitimate concerns raised both from within and without [the] Columbia community, including by [the University's] regulators." *Id.*

On March 23, 2025, in accordance with the Court's order, the parties met and conferred, but were unable to reach agreement on narrowing the issues in dispute. As of the time of filing this opposition, Columbia has not received an unredacted version of the Plaintiffs' memorandum of law in support of their motion for a TRO and PI or any of the eight *ex parte* declarations that Plaintiffs filed in support of that motion, despite the Court's order that Plaintiffs serve "a copy of plaintiffs' motion for a temporary restraining order and all supporting papers on all defendants, by March 20, 2025 at 5:00 PM." ECF 20. Nor has Columbia's counsel received any of the exhibits in support of Plaintiffs' motion to proceed under pseudonym that the Court ordered to be filed under seal and "provisionally designated attorneys' eyes only." ECF 12. As a result, Columbia has not had the opportunity to consider or respond to those portions of Plaintiffs' papers that were redacted or filed *ex parte*, and Columbia has not been able to investigate any underlying facts with respect to the seven Plaintiffs whose identities remain unknown in this litigation.

## LEGAL STANDARD

To obtain either a TRO or PI, Plaintiffs "must demonstrate: '(1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that [injunctive relief] is in the public interest.'" *Shaev v. NetScout Sys., Inc.*, No. 24 Civ. 5859, 2024 WL 4144031, at *1 (S.D.N.Y. Sept. 11, 2024) (Subramanian, J.) (quoting *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018)). For claims alleging violations of the First Amendment, the predominant consideration is the likelihood of success on the merits. *Geller v. de Blasio*, 613 F. Supp. 3d 742, 747 (S.D.N.Y. 2020) (citing *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013)). A TRO or PI, including in the First Amendment context, is an extraordinary

remedy, not to be granted unless Plaintiffs "by a clear showing" have carried the burden of persuasion. *Sussman v. Crawford*, 488 F.3d 136, 139-40 (2d Cir. 2007) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

## ARGUMENT

## I. PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THE CLAIM THAT COLUMBIA HAS VIOLATED THEIR FIRST AMENDMENT RIGHTS

Plaintiffs' only claim against Columbia relevant to this motion is Count II—that "[t]he University Defendants' compliance with the Committee's record request and the federal government's demands violate the First Amendment." ECF 13 at 36; *see* Mem. 15 n.8. This claim faces a fundamental threshold problem: Columbia is unquestionably a private party, not a state actor. *See Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 808-09 (2019). To the extent Plaintiffs contend that either the Committee or the Agency Defendants have coerced Columbia into taking action that allegedly violates their First Amendment rights by issuing requests or demands to Columbia under asserted oversight and regulatory authorities, that is not enough to transform Columbia into a state actor. For this reason, Plaintiffs have not met their burden to demonstrate a likelihood of success on their claim against Columbia.

### A. The Committee's and Agency Defendants' Oversight and Regulatory Demands Do Not Transform Columbia into a State Actor

To succeed on the merits of their First Amendment claim against Columbia, Plaintiffs bear the burden of showing "that the challenged conduct constitutes 'state action.'" *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) (quoting *United States v. Int'l Bhd. of Teamsters*, 941 F.2d 1292, 1295 (2d Cir. 1991)); *Hadges v. Yonkers Racing Corp.*, 918 F.2d 1079, 1083 n.3 (2d Cir. 1990). Specifically, Plaintiffs must show that the actions by Columbia that they seek to enjoin are "'fairly attributable' to the state." *Cranley v. Nat'l Life Ins. Co. of Vt.*, 318 F.3d 105, 111 (2d Cir. 2003) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)). The

Supreme Court has recognized only "a few limited circumstances" when that will be the case: (1) "when the government compels the private entity to take a particular action"; (2) "when the government acts jointly with the private entity"; or (3) "when the private entity performs a traditional, exclusive public function." *Halleck*, 587 U.S. at 809. Where government compulsion is at issue under the first test, the plaintiff must show that "the state was involved with the *activity that caused the injury* giving rise to the action." *Sybalski v. Indep. Grp. Home Living Program*, 546 F.3d 255, 257-58 (2d Cir. 2008) (emphasis in original) (quoting *Schlein v. Milford Hosp., Inc.*, 561 F.2d 427, 428 (2d Cir. 1977)). Showing "state involvement in '*some activity* of the institution alleged to have inflicted injury upon a plaintiff'" will not suffice. *Id.* (emphasis in original) (quoting *Schlein*, 561 F.2d at 428); *accord Amira v. Maimonides Hosp.*, No. 21 Civ. 3976, 2022 WL 18034533, at *8 (E.D.N.Y. Nov. 30, 2022) (plaintiff must show "that the government compelled the *particular* activity that caused the constitutional injury" (cleaned up)).

Plaintiffs do not explain precisely how any of Columbia's actions that they seek to enjoin—responses to the Committee's February 13 Letter and to the March 13 Letter, ECF 18 at 1—are "fairly attributable" to the government. The suggestion appears to be that the Committee and Agency Defendants are coercing Columbia to comply with their requests and demands, and that by responding, Columbia becomes a state actor. But in relation to both, Columbia is an independent private institution that is merely responding to government bodies seeking to exercise regulatory and other oversight authority. Responding at arms-length to government inquiries, requests, or demands has never been sufficient to transform a private party into a state actor, and the Committee and Agency Defendants' actions should not be determined to have that effect on Columbia when it comes to the First Amendment violations that Plaintiffs have alleged.

### B.    Columbia's Actions to Respond to the Committee's Oversight Requests and Demands Are Not State Action

As noted above, *supra* at 2-3, Columbia has produced and may continue producing information to the Committee in response to the requests in its February 13 Letter.[4] Courts have consistently recognized that a private party's production of information to a government body does not constitute state action. *See, e.g.*, *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999); *Serbalik v. Gray*, 199 F.3d 1323 (table), 1999 WL 1012446, at *2 (2d Cir. 1999); *Harrison v. New York*, 95 F. Supp. 3d 293, 323 (E.D.N.Y. 2015) (collecting cases). Instead, an independent private entity like Columbia may "cooperat[e], and typically has supremely reasonable, independent interests for . . . cooperating with a governmental investigation." *Gilman v. Marsh & McLennan Cos.*, 826 F.3d 69, 77 (2d Cir. 2016) (rejecting argument that "acts that are taken by a private company in response to government action, and that have as one goal obtaining better treatment from the government, amount to state action"). Faced with a distinctly similar claim to that presented here, a district court recently dismissed with prejudice constitutional claims against another private university on the ground that the plaintiffs there failed to establish state action. *See Fakhreddine v. Univ. of Pa.*, No. 24 Civ. 1034, 2025 WL 345089, at *5-6 (E.D. Pa. Jan. 30, 2025); *see also Bragg v. Jordan*, 669 F. Supp. 3d 257, 261 (S.D.N.Y. 2023) (denying TRO seeking to enjoin third party from complying with congressional subpoena).

Even if the Committee's requests in the February 13 Letter were compulsory—which, at present, they are not—Columbia's response to any such compulsory demands would not make it a state actor for purposes of Plaintiffs' constitutional claims. *See Budowich v. Pelosi*, 610 F. Supp. 3d 1, 19-20 (D.D.C. 2022). If private parties were to become state actors simply by complying

---

[4] Any potential injury relating to possible future productions is too remote and speculative to give Plaintiffs Article III standing. *See Spear v. Town of West Hartford*, 954 F.2d 63, 67 (2d Cir. 1992); *see also Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004).

with arms-length government demands—an everyday occurrence—subpoena recipients could be forced by third parties unhappy with the disclosures "to choose between facing penalties (perhaps including contempt and criminal prosecution) for non-compliance or being sued for constitutional violations." *Id.* at 20; *see also, e.g.*, *Daniel v. Safir*, 135 F. Supp. 2d 367, 375 (E.D.N.Y. 2001) (holding that "[m]ere compliance with a subpoena" from the fire department did not make private company a state actor). The First Amendment does not put private parties facing government demands to that choice.

Caselaw cited by Plaintiffs is not to the contrary. *See* Mem. 19. Plaintiffs rely on caselaw involving efforts to quash or modify subpoenas or resist party discovery, not freestanding First Amendment claims. These cases support neither a constitutional claim directly against a private party on First Amendment grounds nor the kind of injunctive relief that Plaintiffs seek against Columbia. For example, *New York State National Organization for Women v. Terry*, 886 F.2d 1339, 1354 (2d Cir. 1989), and *Schiller v. City of New York*, No. 04 Civ. 7921, 2006 WL 3592547, at *6 (S.D.N.Y. Dec. 7, 2006), concerned efforts by parties to litigation to resist court-ordered discovery. *United States v. Citizens State Bank* similarly did not involve First Amendment claims brought against private parties; instead, intervenors sought to raise First Amendment objections to the enforcement of a government subpoena. 612 F.2d 1091, 1093 (8th Cir. 1980). Likewise, *Trump v. Deutsche Bank AG*, 943 F.3d 627, 635 (2d Cir. 2019), involved a motion to quash congressional subpoenas served on a bank for the plaintiff's financial records and a request for a preliminary injunction that was not based on First Amendment or other constitutional claims that require a threshold showing of state action.

Plaintiffs' extended discussion of the Supreme Court's recent decision in *National Rifle Association v. Vullo*, 602 U.S. 175 (2024), does not bear on their claim against Columbia. *Vullo*

involved claims against the Superintendent of the Department of Financial Services (as well as other government actors) that the Superintendent violated the NRA's First Amendment rights by threatening enforcement actions against regulated third parties in order to punish the NRA for its gun advocacy. The NRA did not include constitutional claims against the regulated third parties that were allegedly coerced;[5] had it done so, such claims would have failed unless the NRA met its burden of demonstrating state action. The *Vullo* Court therefore did not face any separate question about whether the third parties' actions could be considered those of the state and did nothing to disturb the basic requirement of state action or Supreme Court precedent recognizing only "a few limited circumstances" in which a private party may be a state actor. *Halleck*, 587 U.S. at 809. Here, as in *Vullo*, to the extent any unconstitutional action exists, the remedy would be an injunction against the government parties, not Columbia.

## C. Columbia's Actions to Respond to the Agency Defendants' Regulatory Demands Also Are Not State Action

The kind of coercion that Plaintiffs allege with respect to the March 13 Letter, *see* Mem. 18-19, presents an even weaker case for state action. As a recipient of federal funds, Columbia is subject to government regulatory oversight under Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d *et seq.* In their March 13 Letter, the Agency Defendants stated that they were acting pursuant to that regulatory power over Columbia. ECF 15-2 at 1 (invoking the federal government's responsibility "to ensure that all recipients are responsible stewards of federal funds" and alleging potential violations of Title VI and Title VII of the Civil Rights Act of 1964). But "[e]ven extensive regulation by the government does not transform the actions of the regulated entity into those of the government." *S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S.

---

[5] In fact, when the NRA separately sued a private insurer, it brought only breach of contract claims and did not assert any claim that the insurer violated its constitutional rights. *See* Compl., *Nat'l Rifle Ass'n of Am. v. Lockton Affinity Series of Lockton Affinity, LLC*, No. 18 Civ. 639 (E.D. Va. May 29, 2018), ECF 1.

522, 544 (1987). Nor is the "fact that an entity receives public funding" sufficient "to attribute its actions to the state." *Bailey v. N.Y. L. Sch.*, No. 19 Civ. 3473, 2021 WL 5500078, at *5 (2d Cir. Nov. 24, 2021) (citing *Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 268 (2d Cir. 2014)) (rejecting argument that law school "acted under the color of state law because it was 'compelled' to comply with Title IX to receive federal funding").

Plaintiffs' First Amendment claim against Columbia as it relates to the March 13 Letter also fails for numerous other reasons. Plaintiffs seek to enjoin Columbia from complying with "any and all demands" in the Agency Defendants' March 13 Letter. ECF 18 at 1. But the Agency Defendant's March 13 Letter seeks high-level actions from Columbia, none of which are specific to Plaintiffs. *See* ECF 15-2. Plaintiffs have not made any allegation linking the Agency Defendants' demands in the March 13 Letter to the constitutional harms Plaintiffs allege to have suffered, leaving the parties and the Court to guess at any connection. *See Sybalski*, 546 F.3d at 257-58; *Amira*, 2022 WL 18034533, at *8.

To the extent Plaintiffs rely on certain disciplinary actions to address violations of Columbia's rules in connection with the occupation of a University building and an encampment established on University grounds in April 2024, Mem. 1-2, 18-19, any such contention is undercut by the relevant facts and the operative timeline. Not one Plaintiff (at least in the unredacted portions of their papers) alleges that they were subjected to discipline on or after March 13, meaning they have suffered no injury in connection with Columbia's response to the March 13 Letter, let alone a violation of their First Amendment rights. And, in any event, the student disciplinary decisions referenced by Plaintiffs are not, and could not be, attributable to the March 13 Letter. As Plaintiffs themselves acknowledge, the disciplinary decisions were the culmination of a months-long investigatory and disciplinary process conducted by the University Judicial

Board ("UJB"), a body consisting of faculty, staff, and students, ¶ 65 n.40. Indeed, the UJB arrived

at and announced these decisions *before* the government sent its March 13 Letter. Rosan Decl. ¶ 5.

Even if there were any linkage between such discipline and the March 13 Letter, Plaintiffs

have not explained how such discipline violated the First Amendment. The disciplinary measures

that the UJB imposed were wholly unrelated to speech: students were punished not for expression

but for remaining in an unauthorized encampment on the Columbia campus and engaging in an

unauthorized occupation and vandalism of a University building. *Id.*

Finally, any future disciplinary measures against Plaintiffs that might somehow flow from

Columbia's response to the March 13 Letter are far too speculative and remote to give rise to any

possible Article III injury to Plaintiffs. *See Spear*, 954 F.2d at 67 (holding that "conclusory and

speculative" allegation of chilling effect on speech was insufficient to make out First Amendment

claim); *A.F. ex rel. Fenton v. Kings Park Cent. Sch. Dist.*, 341 F. Supp. 3d 188, 201 (E.D.N.Y.

2018) (holding plaintiffs failed to allege plausible First Amendment claim where "threat of future

harm from the Defendants is entirely speculative").

Since Plaintiffs filed their motion for a TRO and PI, Columbia has announced important

institutional actions that it has already begun to implement or that it plans to implement in the

future. *See* Rosan Decl., Ex. A. Many of these actions build on work that Columbia had already

begun in the wake of October 7, 2023;[6] are in line with actions that many other universities have

---

[6] *E.g.*, Douglas Belkin, *Columbia Looks to Give Campus Police Arresting Power After Protests*, Wall. St. J. (Aug. 5, 2024), https://www.wsj.com/us-news/education/columbia-looks-to-give-campus-police-arresting-power-after-protests-11d2b3bc (describing consideration of proposal to add campus peace officers); Daniella Ospino Pallares, *Office of Institutional Equity Announces New Antidiscrimination and Harassment Policy*, Colum. Spectator (Sept. 25, 2024), https://www.columbiaspectator.com/news/2024/09/25/office-of-institutional-equity-announces-new-antidiscrimination-and-harassment-policy/ (describing new antidiscrimination policies governing students and student groups rolled out in September 2024); Task Force on Antisemitism, Columbia Univ., *Report #1: Columbia University's Rules on Demonstrations* 14 (Mar. 2024), https://www.columbia.edu/content/sites/default/files/content/about/Task%20Force%20on%20Antisemitism/Report_1_Columbia_University's_Rules_on_Demonstrations_March_04_2024.pdf (recommending adopting more proactive efforts to identify masked individuals during demonstrations).

chosen to implement in the same period;[7] and are consistent with established regulatory guidance regarding Title VI.[8] The fact that Columbia, as an independent private institution, adopted these reforms while also facing significant regulatory scrutiny does not transform Columbia into a state actor in connection with any action that allegedly injured these Plaintiffs.

## II.    THE REMAINING FACTORS DO NOT FAVOR A TRO OR PI AGAINST COLUMBIA

Plaintiffs do not argue that any factors beyond likelihood of success favor entry of a TRO or PI against Columbia. To the extent they address the other factors, Plaintiffs' argument exclusively addresses the Committee and Agency Defendants. *See* Mem. 16 ("[A]djudication of the first factor subsumes the next three because . . . irreparable harm is presumed if the constitutional injury is proven . . . [and] the fact that Plaintiff's free speech claim is *against the government* means that the third and fourth factors, harm to the opposing party and the public interest, merge." (emphasis added) (citation omitted)).

Columbia stands in a different position than the government. The presumption of irreparable harm that applies upon the showing of a constitutional violation, *e.g.*, *Elrod v. Burne*,

---

[7] *E.g.*, Katie DeBenedetti, *Stanford's New Protest Policies Ban Tents Overnight, Require Students to Remove Masks When Asked*, KQED (Sept. 18, 2024), https://www.kqed.org/news/12005195/stanfords-new-protest-policies-ban-tents-overnight-require-students-to-remove-masks-when-asked; Vimal Patel, *Harvard Adopts a Definition of Antisemitism for Discipline Cases*, N.Y. Times (Jan. 21, 2025), https://www.nytimes.com/2025/01/21/us/harvard-antisemitism-definition-discipline.html; Shiv Patel & Dylan Winward, *UCLA Announces New Time, Place and Manner Policies, Limits Public Expression Areas*, Daily Bruin (Sept. 4, 2024), https://dailybruin.com/2024/09/04/ucla-announces-new-time-place-and-manner-policies-limits-public-expression-areas; Yash Roy, *NYU Clarifies Antisemitism Policies to Include Instances of Anti-Zionism*, Hill (Aug. 23, 2024), https://thehill.com/homenews/education/4845135-nyu-clarifies-antisemitism-policies-antizionism/; Isabelle Taft, *How Colleges Are Changing Their Rules on Protesting*, N.Y. Times (Sept. 12, 2024), https://www.nytimes.com/2024/09/12/us/college-protest-rules.html (reviewing policy changes relating to protests at several universities, including Case Western Reserve, Rutgers, and Indiana University).

[8] *E.g.*, Catherine E. Lhamon, Assistant Sec'y for C.R., U.S. Dep't of Educ., *Dear Colleague Letter: Title VI and Shared Ancestry or Ethnic Characteristics Discrimination* 3 (May 7, 2024), https://www.ed.gov/sites/ed/files/about/offices/list/ocr/letters/colleague-202405-shared-ancestry.pdf; *see also, e.g.*, Off. for C.R., U.S. Dep't of Educ., *Resolution Agreement: The University of California 2-5*, https://ocrcas.ed.gov/sites/default/files/ocr-letters-and-agreements/09222257-b.pdf (requiring increased training for campus public safety officers and increased Title VI training for other staff as part of resolution agreement concluding Title VI investigation).

427 U.S. 347, 373 (1976), provides no support for a TRO or PI against Columbia. As an independent private entity as to which Plaintiffs have not demonstrated state action, Columbia has not and cannot have violated Plaintiffs' First Amendment rights for all the reasons discussed above. And harm to Columbia and the public interest likewise do not favor a TRO or PI. Instead of being hamstrung by an injunction, Columbia needs the discretion that the law affords to universities to address concerns of discrimination and harassment on campus. *See Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 653 (1999) (balancing Title IX's requirements with "the practical realities of responding to student behavior"). Indeed, the public interest favors Columbia having the necessary discretion and authority to respond appropriately to rapidly changing events on campus and to comply with its obligations under Title VI and other laws. *See, e.g.*, *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 72 (2d Cir. 2016) (injunctive relief should "not impose unnecessary burdens on lawful activity").

To grant Plaintiffs the extraordinary relief they are seeking would inject the judiciary into the management of higher education institutions, and "freedom of academic inquiry and expression on American college campuses could not survive in such an environment of judicial superintendence." *Gartenberg v. Cooper Union for the Advancement of Sci. & Art*, No. 24 Civ. 2669, 2025 WL 401109, at *18 (S.D.N.Y. Feb. 5, 2025). Columbia is committed to safeguarding these freedoms while ensuring security from harassment and discrimination. It is continually updating and calibrating that balance, including through its recently announced actions that have long been in development. A TRO or PI would stymie such efforts and deprive the University of its ability to protect the freedom and the security of its entire community.[9]

---

[9] Plaintiffs also request a declaratory judgment as part of their motion for a TRO and PI, but do not explain why such relief would be necessary or proper at this stage given the deficiencies of their claims—much less address whether there even is "such a creature" as preliminary declaratory judgment. *Original Great Am. Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 276 (7th Cir. 1992).

## CONCLUSION

For the reasons above, the Court should deny Plaintiffs' request for a TRO and PI against

Columbia.

Dated:  New York, New York
        March 24, 2025

Respectfully submitted,

_____

Marshall L. Miller (Lead Counsel)
Gabrielle E. Tenzer
Zachary Piaker
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
(212) 763-0883
mmiller@heckerfink.com
gtenzer@heckerfink.com
zpiaker@heckerfink.com

Trisha Anderson,
*pro hac vice forthcoming*
HECKER FINK LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
(212) 763-0883
tanderson@heckerfink.com

*Attorneys for Defendants Trustees
of Columbia University in the City
of New York and Katrina Armstrong*

15