**Hecker Fink LLP**

NEW YORK | WASHINGTON, DC | LOS ANGELES

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

TEL (212) 763-0883 | FAX (212) 564-0883
WWW.HECKERFINK.COM

DIRECT DIAL:   (212) 763-0883
DIRECT EMAIL:  mmiller@heckerfink.com

March 27, 2025

**BY ECF**

Hon. Arun Subramanian
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

        Re:    *Mahmoud Khalil et al. v. Columbia University et al.*, No. 1:25-cv-02079-AS (S.D.N.Y.)

Dear Judge Subramanian:

      Pursuant to the Court's directive at the March 25, 2025 hearing, and to further respond to the Court's questions during and in advance of the hearing, Defendants Trustees of Columbia University in the City of New York and Katrina Armstrong (together, "Columbia" or the "University") respectfully submit this letter in further support of their opposition to Plaintiffs' motion for a temporary restraining order and preliminary injunction.

**I.    Stating a properly pleaded claim under *Vullo* does not necessarily establish a claim against the coerced private entity.**

      We have identified no authority, in any Circuit, holding that "if you have a properly pleaded claim under *Vullo*, then you necessarily have a claim against both the coercing government entity and the coerced private entity." Mar. 25Tr. 32:5-7. The *Vullo* Court emphasized that it was only "reaffirm[ing] what it said" previously in *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963), namely, that "Government officials cannot attempt to coerce private parties in order to punish or suppress views that the government disfavors." *Nat'l Rifle Ass'n v. Vullo*, 602 U.S. 175, 180 (2024). Moreover, there were no private-entity defendants in the case before the Supreme Court, and its holding was limited to the governmental actors who engaged in the alleged coercion. *Vullo* therefore did not purport to address or apply, must less modify, any prior jurisprudence concerning the basic requirement that plaintiffs must demonstrate state action to bring a constitutional claim against a private party. And, as we explained in our papers and at the hearing, courts have repeatedly held that the conduct of a private party does not become that of the state where the private party merely responds to requests for information or high-level demands relating to areas over which the government has regulatory or oversight authority. *See* ECF 39 at 8-13.

Moreover, it does not follow from any similarity between the coercion analysis in *Vullo* on the one hand, and the coercion test for state action on the other, that a coerced private party is the proper defendant in a *Vullo*-type case. In *Children's Health Defense v. Meta Platforms, Inc.*, for example, a nonprofit advocacy organization brought claims under the First Amendment against Meta and other private actors. 112 F.4th 742, 750 (9th Cir. 2024). The plaintiff alleged that the defendants "were working in concert with or, alternatively, under compulsion from the federal government to censor [plaintiff's] speech, in violation of the First Amendment." *Id.* at 752. But, in its post-*Vullo* decision, the court observed, "there is reason to doubt that a purely private actor like Meta, which was the *victim* of the alleged coercion, would be the appropriate defendant, rather than the government officials responsible for the coercion." *Id.* at 759 (emphasis in original) (citing *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 838 (9th Cir. 1999)). Ultimately, the court declined to "resolve that question" because it concluded that the plaintiff had not "adequately pleaded facts supporting a coercion theory of state action." *Id.* at 759-61. The court explained that even "[i]f Meta implemented its policy at least in part to stave off lawmakers' efforts to regulate, it was allowed to do so without turning itself into an arm of the federal government." *Id.* at 760.

Principles governing the proper scope of injunctive relief also show why, even if a First Amendment claim under *Vullo* were properly pleaded, the conduct of the private party should not be enjoined. Where the government is allegedly coercing a private party to carry out a violation of the First Amendment, an injunction against the government redresses the First Amendment problem. The private party is no longer coerced, and in the absence of any arguable state action, the private party is not bound by the First Amendment. *See Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019). Injunctive relief—especially the extraordinary relief of a preliminary injunction—should be "no broader than necessary to cure the effects of the harm caused by the violation" and "should not impose unnecessary burdens on lawful activity." *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 72 (2d Cir. 2016). Here, the issuance of injunctive relief against Columbia would do just that. Preventing Columbia from responding to the February 13 and March 13 Letters, as Plaintiffs have requested, could bar it from engaging in lawful activities to respond to congressional oversight requests and to adopt institutional reforms to balance and integrate its fundamental interests in protecting free speech and academic freedom and safeguarding students and staff from discrimination and harassment.

## II. The Fifth Circuit's *Missouri v. Biden* decision and its "significant encouragement" analysis do not support finding state action here.

The "significant encouragement" test for state action does not support a conclusion that Columbia's actions were fairly attributable to the government when it responded to the February 13 or March 13 Letters.

In *Missouri v. Biden*, 83 F.4th 350 (5th Cir. 2023), *rev'd sub nom. Murthy v. Missouri*, 603 U.S. 43 (2024), the Fifth Circuit analyzed the question of state action by certain social media platforms under a "significant encouragement" framework, separate and apart from the question of compulsion.[1] There, the plaintiffs alleged that their speech was directly censored by social

---

[1] The Second Circuit has recognized that a private entity can be deemed a state actor "when the state provides significant encouragement to the entity," but has emphasized that "it is not enough . . . for a plaintiff to plead state involvement in *some activity* of the institution alleged to have inflicted injury upon a plaintiff; rather, the plaintiff must allege that the state was involved with the *activity that caused the injury* giving rise to the action. *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257-58 (2d Cir. 2008) (emphases in original) (cleaned up).

media platforms, who "removed or downgraded" the plaintiffs' social media posts at the direction of, or as the result of significant encouragement by, government officials. *Id.* at 359. The Fifth Circuit described the significant encouragement test as requiring "something more than uninvolved oversight from the government":

> [T]here must be *some* exercise of *active* (not passive), *meaningful* (impactful enough to render them responsible) *control* on the part of the government over the private party's challenged decision. Whether that is (1) entanglement in a party's independent decision-making or (2) direct involvement in carrying out the decision itself, the government must encourage the decision to such a degree that we can fairly say it was the state's choice, not the private actor's.

*Id.* at 375 (emphases in original) (cleaned up).

The actions by the Committee and Agency Defendants at issue here—the issuance of the February 13 and March 13 Letters—differ significantly from the nature and degree of alleged involvement by the government with the social media platforms as described by the Fifth Circuit in *Missouri v. Biden*. Such conduct does not amount to "significant encouragement" under that decision. *Missouri v. Biden* involved allegations of "consistent and consequential interaction" between the federal officials and private social media platforms, and "constant[] monitor[ing]" of the platforms' "moderation activities" with a high degree of specificity, such that the officials were allegedly "entangled . . . in the platforms' decision-making processes" and the platforms were allegedly no longer exercising "independent judgment[] guided by independent standards" in administering their moderation policies. *Id.* at 387-88. Here, by contrast, the Committee and Agency Defendants did not "entangle" themselves with Columbia's actions but instead acted at arms-length by sending Columbia the February 13 and March 13 Letters. Moreover, while the actions Columbia announced on March 21 followed not long after the March 13 Letter and covered some of the same general topics, many of these actions were based on best practices at universities across the nation and were already underway or being actively discussed. Far from reflecting the "state's choice," *Missouri*, 83 F.4th at 375, the March 21 actions differed from the March 13 Letter in meaningful respects and reflected Columbia's independent decisions.

We also note that the social media platforms in *Missouri v. Biden* were not parties to the lawsuit; only government agencies and officials were named as defendants. Accordingly, although the Fifth Circuit affirmed a (narrowed) preliminary injunction, no injunctive relief was issued as to the social media platforms who were allegedly being significantly encouraged by the government to directly censor the plaintiffs' speech. An injunction against the government actors was determined to be sufficient to address the First Amendment harm.

Later, of course, the Supreme Court reversed the Fifth Circuit's decision based on plaintiffs' lack of standing while explicitly "express[ing] no view as to whether the Fifth Circuit correctly articulated the standard for when the Government transforms private conduct into state action." *Murthy*, 602 U.S. at 55 n.3. It is thus unclear whether the Court would have found state action on the record the Fifth Circuit reviewed. In any event, nothing in the Fifth Circuit's opinion can or should be understood to expand the "limited circumstances" in which the Supreme Court has held that a private party can be deemed a state actor. *Halleck*, 587 U.S. at 809.

### III. Responding to the February 13 Letter does not make Columbia a state actor subject to First Amendment claims.

For the reasons stated in our papers and at the hearing, Columbia's conduct was not "fairly attributable" to the state when it responded to the Committee's request for documents and information in the February 13 Letter. We note in particular that in *Fakhreddine v. University of Pennsylvania*, the district court rejected similar claims brought by similarly situated plaintiffs seeking to enjoin a private university's compliance with similar requests from the same Committee. It concluded, correctly, that the plaintiffs failed to show state action under a "close nexus" test that considered whether the government had "exercised coercive power or has provided such significant encouragement, that the choice must in law be deemed that of the state." No. 24 Civ. 1034, 2025 WL 345089, at *5 (E.D. Pa. Jan. 30, 2025) (cleaned up). *Compare id.* ("To assist the Committee in understanding the antisemitism crisis at Penn and the university's response, *please produce* the following items no later than February 7, 2024." (emphasis in original)), *with* ECF 15-1 at 5 ("Please produce the following items . . . ."). The court also concluded that the plaintiffs lacked standing on a similar theory of harm as the one Plaintiffs advance here. The court explained that "Plaintiffs' claims rely on the following chain of possibilities: (1) *if* Penn sends unredacted documents containing personal identifiable information to the Committee;[2] (2) *if* the Committee publishes that unredacted information to the public; (3) *if* unknown and unnamed third parties obtain that information; then (4) those third parties *may* use the information to harass Plaintiffs. This is not enough to make out standing." *Id.* at *4 (emphases in original).[3]

Even if Columbia were facing a congressional subpoena, which it is not, compliance with such a subpoena would not be sufficient to transform Columbia into a state actor, as we have previously explained. *See* ECF 39 at 8-9. Contrary to an argument raised at the hearing, *Republican National Committee v. Pelosi*, 602 F. Supp. 3d 1 (D.D.C. 2022), *vacated*, No. 22-5123, 2022 WL 4349778 (D.C. Cir. Sept. 16, 2022), did not hold otherwise. *See* Mar. 25 Tr. 32:15-18 (Plaintiffs' counsel: "I would point again to the *RNC* case, because in that case the Court did find Salesforce, the third party in that case, to be a state actor because they were compelled under a subpoena."). Rather, the court there expressly declined to determine whether the state action requirement had been satisfied after concluding that it was not a jurisdictional question and that the plaintiff's claims challenging the congressional subpoena failed on the merits for other reasons. *See Pelosi*, 602 F. Supp. 3d at 24.

### IV. There is no basis for an injunction against Columbia, but if the Court were to conclude otherwise, it should not place Columbia at risk of non-compliance with government demands.

For the reasons explained above, even if the Court were to conclude that Plaintiffs are likely to succeed on the merits of their First Amendment claim against the government Defendants, that conclusion should not extend to Columbia. Given the requirements of state action, and the principle that injunctions should be no broader than needed to remedy the violation, *Church & Dwight Co.*, 843 F.3d at 72, Columbia should not be the subject of any preliminary injunction.

---

[2] To be clear, as discussed at the hearing, Columbia's productions to the Committee in response to its requests contain de-identifying redactions. *See* Mar. 25 Tr. 52:4-53:8, 62:1-3.

[3] The *Fakhreddine* plaintiffs have appealed the district court's decision to the Third Circuit, which appeal remains pending. *See Fakhreddine v. Univ. of Pa.*, No. 25-1290 (3d Cir.).

Hecker Fink LLP

5

      Nonetheless, if the Court is inclined to issue a preliminary injunction against the Committee Defendants for their conduct relating to the February 13 Letter and believes it necessary to include Columbia in that relief, Columbia respectfully submits that the Court fashion an order that: (i) clearly predicates any preliminary injunctive relief on First Amendment violations caused by the Committee Defendants, not Columbia; and (ii) does not place Columbia in a position where it is forced to choose between risking contempt of this Court or non-compliance with the Committee's requests or any future subpoenas, which could place Columbia at risk of being in contempt of Congress.

      To the extent there is a question about whether any potential First Amendment harm can be remedied through an injunction against the Committee Defendants, we believe this concern may be addressed by the Supreme Court's recognition that while Speech or Debate Clause immunity is broad, it does not extend to circumstances where Congress is acting outside the "sphere of legitimate legislative activity." *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 501 (1975) (quotation marks omitted). Although we take no position on the application of Speech or Debate Clause immunity to the present facts, it may well be the case that Congress would not be acting within that sphere where a party brings a valid First Amendment claim against Congress. *See Watkins v. United States*, 354 U.S. 178, 198-200 (1957). At any rate, we do not believe the Court faces that situation here given that, as we explained during the hearing, *see* Mar. 25 Tr. 52-66, Plaintiffs have not alleged injuries that give rise to standing and have not made out a proper claim under *Vullo*.

                                \*      \*      \*

      For the foregoing reasons, and those previously stated in Columbia's opposition and at the hearing, this Court should deny Plaintiff's request for preliminary injunctive relief against Columbia.

                                                  Respectfully submitted,

                                                  Marshall L. Miller