

**CAIR Legal Defense Fund**
453 New Jersey Ave. S.E.
Washington, D.C. 20003
Tele 202-742-6420 Fax 202-379-3317
E-mail: ldf@cair.com URL www.cair.com

The Chambers of the Honorable Judge Submaranian *via ECF*
United States District Judge
Southern District of New York
500 Pearl Street, New York, NY 10007

Re: *Khalil, et. al. v. Trustees of Columbia University, et. al.,* 25-cv-02079.

Hon. Judge Subramanian:

Per the Court's instructions, Plaintiffs hereby submit the following supplemental letter brief.

**Standing**

To demonstrate standing, Plaintiffs[1] must prove an injury-in-fact, causation, and redressability.[2] *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992). When it comes to the First Amendment, however, "federal courts relax the prudential limitations and allow yet-unharmed litigants" to pursue their claims. *Fairchild v. Liberty Independent School Dist.*, 597 F.3d 747, 754 (5th Cir. 2010). The standard "sets a low threshold and is quite forgiving to plaintiffs seeking such preenforcement review," because courts have "presume[d] that the government will enforce the law" absent rare circumstances. *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016)

Plaintiffs, however, need not rely on the relaxed standing for First Amendment claims alone. Defendants have already inflicted the injuries, they persist, and without the Court's intervention, these injuries will certainly metastasize.

To begin with, the House Committee's records request and the Agency Defendants' March 13th demands identify Plaintiffs as "an object of the action…at issue," *Lujan*, 504 U.S. at 561–62, which is itself enough to establish injury-in-fact. Though Plaintiffs do not know what University Defendants produced, the Committee's requests identify records that either pertain to Plaintiffs by

---

[1] While all Plaintiffs have standing independently, "[t]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 52 n. 2, 126 S.Ct. 1297, 164 L.Ed.2d 156 (2006).

[2] Defendants do not dispute redressability and the government defendants' arguments about traceability (Dkt. 31 at 11, fn. 13 and Dkt. 38 at 21) boil down to a dispute about causation. But here, the causation facts are overwhelming. The House Committee, having demanded and received records, can return them and not seek them again—absent a valid legislative purpose. The Agency Defendants, having paused hundreds of millions of dollars of funding to Columbia, can unpause that funding and be enjoined from conditioning its resumption on campus officials meeting their March 13th demands. *See also Soto-Lopez v. N.Y.C. Civil Serv. Com.*, 840 F.2d 162, 168 (2d Cir. 1988) ("Although plaintiffs did not seek to have the case proceed as a class action, they requested relief of general application...The availability of such injunctive relief is not limited to class actions. When a state statute has been ruled unconstitutional, state actors have an obligation to desist from enforcing that statute");

**CAIR Legal Defense Fund**
453 New Jersey Ave. S.E.
Washington, D.C. 20003
Tele 202-742-6420 Fax 202-379-3317
E-mail: ldf@cair.com URL www.cair.com

name or to the people, groups, and causes Plaintiffs support and with which they associate. Plaintiffs have constitutional interests in such records, so a claim based on the dissemination of those records satisfies injury-in-fact. *Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex* rel. Patterson, 357 U.S. 449, 462 (1958) ("compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of association")

And with Columbia having redefined antisemitism in response to the Agency Defendants' March 13th demands, Plaintiffs' prior conduct and associations have been reconceptualized as antisemitic conduct violations subject to discipline. Having already done and said things that campus officials—at the behest of the federal defendants—now consider punishable, Plaintiffs have demonstrated an injury-in-fact. *New Hampshire Right to Life Pol. Action Comm. v. Gardner*, 99 F.3d 8, 15 (1st Cir. 1996) (presuming a "credible threat of prosecution" when government conduct "facially restrict[s] expressive activity by the class [here, pro-Palestine student speakers] to which the plaintiff belongs").

Because the demands of the House Committee and Agency Defendants target the speech and activities of the students suing, Plaintiffs are themselves "an object of the action…at issue." *Lujan*, 504 U.S. at 561–62. In such situations, "there is ordinarily little question that the action…caused [them] injury." *Id.*; see *Zukerman v. United States Postal Serv.*, 961 F.3d 431, 444–45 (D.C. Cir. 2020) ("where the Government gives authoritative permission to certain individuals to speak in a forum" but not others, "we have no difficulty in concluding that a challenge to the nature of the Government's ongoing authorization remains justiciable"); *Thornhill v. Alabama*, 310 U.S. 88, 97, 60 S.Ct. 736, 742, 84 L.Ed. 1093 (1940) ("It is not merely the sporadic abuse of power by the censor but the pervasive threat inherent in its very existence that constitutes the danger to freedom of discussion.")

Second, so long as one is threatened by government conduct, actual enforcement is "not a prerequisite to challenging" it. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158, 134 S. Ct. 2334, 2342, 189 L. Ed. 2d 246 (2014); see *Int'l Soc. for Krishna Consciousness of Atlanta v. Eaves*, 601 F.2d 809, 818 (5th Cir. 1979) (allowing a preenforcement challenge whenever a "plaintiff is seriously interested in disobeying, and the defendant seriously intent on enforcing, the challenged measure.") In this circuit, a pre-enforcement injury does not turn "on whether there is a real and imminent fear of chilling" but rather the outcome of the "three-pronged test…in *Susan B. Anthony List,"* which finds a cognizable injury whenever plaintiffs demonstrate an intention to engage in constitutionally protected conduct that is arguably proscribed by defendants that pose a credible threat of enforcement. *Cerame v. Slack, 123 F.4th 72, 81 (2d Cir. 2024)*. *See also Levin v. Harleston*, 966 F.2d 85, 89 (2d Cir. 1992) ("The district court did not err in finding that the threat of discipline implicit in [a party's] actions was sufficient to create a judicially cognizable chilling effect on Professor Levin's First Amendment rights")

Here, the facts overwhelm. Plaintiffs have all engaged in pro-Palestine speech and activity and they associate with people and groups who do as well. Noe Decl. at ¶¶ 4, 6; Roe Decl. at ¶¶ 5-6, 19; Moe Decl. at ¶¶ 6, 8; Soe Decl. at ¶¶ 8, 10; Loe Decl. at ¶ 16. This evidence of "past



**CAIR Legal Defense Fund**
453 New Jersey Ave. S.E.
Washington, D.C. 20003
Tele 202-742-6420 Fax 202-379-3317
E-mail: ldf@cair.com URL www.cair.com

enthusiastic participation" in free speech campus activities is the best evidence that Plaintiffs will act similarly in the future. *Justice v. Hosemann*, 771 F.3d 285, 291 (5th Cir. 2014). They intend to continue doing so. Khalil Decl. at ¶¶ 1, 4; Joe Decl. at ¶ 6, 12; Roe Decl. at ¶¶ 2-3, 6, 15; Soe Decl. at ¶ 7 Koe Decl. at ¶¶ 12-13, 16.

This conduct is "arguably proscribed" by campus officials. Indeed, the definition of anti-semitism adopted[3] by campus officials prohibits milquetoast critiques pro-Palestine students make of Israel—that it is a racist country, led by war criminals, and comparable to Nazi-era officials in some ways. Just as the Agency Defendants demanded in their March 13th letter.

And the threat of future enforcement is substantial. To begin with, Plaintiffs have already faced discipline and administrative attention. Khalil Decl. at ¶ 7, 13; Joe Decl. at ¶¶ 3-4; Roe Decl. at ¶¶ 4, 10, 14,15, 19-20.

**The Speech and Debate Clause**

With regards to Congressional requests for information, the Committee Defendants exaggerate the scope of the Speech and Debate Clause. For decades, federal courts have altered or quashed subpoenas when those requests for information have exceeded boundaries. And what Plaintiffs seek here is not different in kind from what many courts have previously done. *See United States v. American Tel. & Tel. Co.*, 419 F. Supp. 454, 461 (D.C.C. 1976) (enjoining AT&T from complying with a Congressional subpoena without the prior authorization of the Executive Branch), *aff'd in part*, *U.S. v. American Tel. & Tel. Co.*, 551 F.2d 384 (D.C. Cir. 1976); *Senate Select Comm. on Presidential Campaign Activities v. Nixon*, 498 F.2d 725, 733 (D.C. Cir. 1974) (finding the congressional subpoena by the House Judiciary Committee "too attenuated and too tangential to its functions" to require compliance); *United States Servicemen's Fund v. Eastland*, 488 F.2d 1252, 1270 (D.C. Cir. 1973) (staying the enforcement of a congressional subpoena because "forced surrender [] of the subpoenaed records . . . would invade the constitutional rights of the plaintiffs"), *rev'd on other grounds*, *United States Servicemen's Fund v. Eastland*, 421 U.S. 491 (1975). *See National Abortion Fed'n v. Center for Med. Progress*, 2015 WL 5818863, at *1 (N.D. Cal. Oct. 6, 2015) (recognizing that "case law allows courts to modify or quash Congressional subpoenas in order to protect constitutional rights from infringement by Congress") (citing *Exxon Corp. v. Fed. Trade Comm'n*, 589 F.2d, 589 (D.C. Cir. 1978)).

The Committee Defendants do not dispute that, in order to invoke the speech and debate clause's immunity, they must identify a valid legislative purpose. This, they cannot do. The Committee Defendants assert that its investigative efforts were aimed at addressing a "wave of anti-semitism [that has swept] over our nation's college campuses, leading to discrimination against

[3] Task Force on Antisemitism, *Report #2, Columbia University Student Experiences of Antisemitism and Recommendations for Promoting Shared Values and Inclusion* (August 2024), at 6, *available at* https://president.columbia.edu/sites/default/files/content/Announcements/Report-2-Task-Force-on-Antisemitism.pdf.



**CAIR Legal Defense Fund**
453 New Jersey Ave. S.E.
Washington, D.C. 20003
Tele 202-742-6420 Fax 202-379-3317
E-mail: ldf@cair.com URL www.cair.com

Jewish students," Dkt. 31 at 8, and that the "totality of circumstances on these campuses demonstrate an environment hostile to Jewish students likely in violation of Title VI."[4]

But Title VI does not include religion as a protected class, making it an unhelpful law upon which to base a Congressional antisemitism investigation on. *Lubavitch-Chabad of Illinois*, Inc. v. Nw. Univ., 6 F. Supp. 3d 806, 816 (N.D. Ill. 2013), aff'd, 772 F.3d 443 (7th Cir. 2014) ("Title VI does not provide for protection against discrimination on the basis of religion—only race, color, or national origin."). *See also Bowens v. Russell*, No. 21-CV-8136 (LTS), 2021 WL 4951632, at *4 (S.D.N.Y. Oct. 25, 2021) (internal citations omitted) ("Religious beliefs, however, are not a protected category under Title VI.")

Additionally, "antisemitism" is being used here by the Committee Defendants as a euphemism to label and punish the political views—held by people of all races, ethnicities, and national origins, including Jews and Israelis—that Defendants do not like. This is not permissible, because even antidiscrimination statutes "must comport with the First Amendment, regardless of whether [such laws burden speech] directly, such as by prohibiting certain speech outright, or indirectly." *Gartenberg v. Cooper Union for the Advancement of Sci. & Art,* No. 24 CIV. 2669 (JPC), 2025 WL 401109, at *7 (S.D.N.Y. Feb. 5, 2025). In short, once this Court unpacks the meaning of antisemitism affixed to the term by Defendants, the House Committee's purpose is viewpoint discrimination. *See Hentoff v. Ichord,* 318 F. Supp. 1175, 1182 (D.D.C 1970) ("The conclusion is inescapable that the Report neither serves nor was intended to serve any purpose but the one explicitly indicated in the Report: to inhibit further speech on college campuses by those listed individuals and others whose political persuasion is not in accord with that of members of the Committee"

Furthermore, in *Watkins* and *Barenblatt*, the U.S. Supreme Court determined "[w]here First Amendment rights are asserted to bar governmental interrogation resolution of the issue always involves a balancing by the courts of the competing private and public interests at stake in the particular circumstances shown." *Barenblatt,* 360 U.S. at 126–27. See also *Watkins*, 354 at 198. Therefore, even if Congress can justify its investigation with a legitimate legislative purpose, which Plaintiffs' do not concede, this Court is obligated to undertake such a balancing test as there are protected speech rights at issue in this case. The breadth of the Committee's request and the fact that it is focused on a single viewpoint make the balancing test come out in Plaintiffs' favor.

However, while the balancing test used in *Barenblatt* and *Watkins* remain the correct test, the balancing of the factors, which in the 1950s often weighed in favor of Congress's investigatory powers, needs to be re-examined now because Congress is reanimating HUAC-like powers in a changed era. Technology and social media mean that a statement, name, press release, or report can go viral and get one million views in a matter of minutes. Those factors, in combination with erroneous and frankly defamatory narrative Congress is using to describe Plaintiffs and students

[4] Staff of H. Comm. on Education and the Workforce, 118th Cong., Rep. on Antisemitism on College Campuses Exposed (Comm. Print. 2024) (Committee Report), https://perma.cc/268S-8FPZ.



**CAIR Legal Defense Fund**
453 New Jersey Ave. S.E.
Washington, D.C. 20003
Tele 202-742-6420 Fax 202-379-3317
E-mail: ldf@cair.com URL www.cair.com

at Columbia, create a tinderbox that could light these students futures afire without an opportunity to answer those claims. Therefore, we ask this Court to work in line with the precedential balancing test, and for the reasons discussed below, and in Justice Black's blistering dissent in *Barenblatt*, to weight the factors differently here and in Plaintiffs favor.

The Committee Defendants' arguments about prior restraints are equally unavailing. Simply put, if the Speech and Debate Clause does not apply, then the Court may issue an appropriate injunction against them, even for actions taken inside Congress. *See Doe v. McMillan*, 412 U.S. 306, 314-15 (1973) ("A Member of Congress may not with impunity publish a libel from the speaker's stand in his home district, and clearly the Speech or Debate Clause would not protect such an act even though the libel was read from an official committee report. [R]epublishing a libel under such circumstance is not an essential part of the legislative process"); *Hutchinson v. Proxmire*, 443 U.S. 111, 130 (1979) ("[N]either the newsletters nor the press release was essential to the deliberations of the Senate and neither was part of the deliberative process"). Unprotected by the speech and debate clause's immunity, this Court can order the Committee Defendants to return records, not make use of those records, and not seek additional records, among other things.

**<u>Columbia can be sued because its been compelled</u>**

The Columbia Defendants[5] can be sued like the government defendants, because they have acted against Plaintiffs at the behest of the government defendants. Whatever version of the various tests this Court uses, "only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance. *Burton v. Wilmington Parking Auth*., 365 U.S. 715, 722, (1961). Here, the Agency Defendants' abandonment of Title VI's plain requirements and their own Title VI implementing regulations reveal an institution fully captured by the Government.

Section 602 of Title VI creates an intricate statutory scheme whereby federal agencies can tend to their oversight responsibilities via exclusive means—"by issuing rules, regulations, or orders of general applicability." It does not authorize Agency Defendants to wholesale terminate all funding to an entity; rather, any "termination or refusal [to continue Title VI financial support] shall be limited to…in its effect to the particular program, or part thereof, in which such noncompliance has been so found." *Id.* Prior to such an action, though, the Agency Defendants were required by Title VI to make "an express finding on the record after opportunity for hearing" about the basis for the suspension or termination of funds. *Id.* The Agency Defendants did not do these things. And they ignored all of the agency regulations issued that require notice, hearings, a record, and establish a timeline for doing what Agency Defendants did via press release.

---

[5] Additionally, Columbia is a necessary party, pursuant to Fed. R. Civ. P. Rule 19(a)(1)(A), because the Court cannot accord "complete relief among existing parties" without the University Defendants, which are the sole entity that is being coerced by the federal government and a custodian of records at issue here.



**CAIR Legal Defense Fund**
453 New Jersey Ave. S.E.
Washington, D.C. 20003
Tele 202-742-6420 Fax 202-379-3317
E-mail: ldf@cair.com URL www.cair.com

Here, Agency and Congressional defendants have inserted themselves—with the acquiescence of campus officials—into the minutiae of Columbia's operation, including by dictating how its disciplinary proceedings should be run, what definitions should be used, which programs it wants put under academic receivership, that it must enforce a mask ban, among other things. *See* March 13th and March 21st Letters. This kind of micromanagement is not permissible under Title VI. Under "the compulsion test," a private entity's actions "are attributable to the state when ... the entity acts pursuant to the 'coercive power' of the State or is 'controlled' by the state." *Sybalski*, 546 F.3d at 257

Respectfully submitted,

___/s/_____________
Gadeir Abbas
CAIR Legal Defense Fund