# Exhibit D

MAJORITY MEMBERS:

VIRGINIA FOXX, NORTH CAROLINA,
*Chairwoman*

JOE WILSON, SOUTH CAROLINA
GLENN THOMPSON, PENNSYLVANIA
TIM WALBERG, MICHIGAN
GLENN GROTHMAN, WISCONSIN
ELISE M. STEFANIK, NEW YORK
RICK W. ALLEN, GEORGIA
JIM BANKS, INDIANA
JAMES COMER, KENTUCKY
LLOYD SMUCKER, PENNSYLVANIA
BURGESS OWENS, UTAH
BOB GOOD, VIRGINIA
LISA C. MCCLAIN, MICHIGAN
MARY E. MILLER, ILLINOIS
MICHELLE STEEL, CALIFORNIA
RON ESTES, KANSAS
JULIA LETLOW, LOUISIANA
KEVIN KILEY, CALIFORNIA
AARON BEAN, FLORIDA
ERIC BURLISON, MISSOURI
NATHANIEL MORAN, TEXAS
LORI CHAVEZ-DEREMER, OREGON
BRANDON WILLIAMS, NEW YORK
ERIN HOUCHIN, INDIANA
MICHAEL RULLI, OHIO

MINORITY MEMBERS:

ROBERT C. "BOBBY" SCOTT, VIRGINIA,
*Ranking Member*

RAÚL M. GRIJALVA, ARIZONA
JOE COURTNEY, CONNECTICUT
GREGORIO KILILI CAMACHO SABLAN,
NORTHERN MARIANA ISLANDS
FREDERICA S. WILSON, FLORIDA
SUZANNE BONAMICI, OREGON
MARK TAKANO, CALIFORNIA
ALMA S. ADAMS, NORTH CAROLINA
MARK DESAULNIER, CALIFORNIA
DONALD NORCROSS, NEW JERSEY
PRAMILA JAYAPAL, WASHINGTON
SUSAN WILD, PENNSYLVANIA
LUCY MCBATH, GEORGIA
JAHANA HAYES, CONNECTICUT
ILHAN OMAR, MINNESOTA
HALEY M. STEVENS, MICHIGAN
TERESA LEGER FERNÁNDEZ,
NEW MEXICO
KATHY E. MANNING, NORTH CAROLINA
FRANK J. MRVAN, INDIANA
JAMAAL BOWMAN, NEW YORK



# COMMITTEE ON
# EDUCATION AND THE WORKFORCE
## U.S. HOUSE OF REPRESENTATIVES
2176 RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20515-6100

August 21, 2024

Dr. Katrina Armstrong, Interim President
Columbia University
C/O Covington & Burling LLP
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001-4956

Dear Interim President Armstrong:

The U.S. House Committee on Education and the Workforce (Committee) is conducting an ongoing investigation into antisemitism in postsecondary institutions, including Columbia University. The Committee today issues a subpoena due to Columbia's repeated failure to fulfill priority requests by deadlines that elapsed prior to your accession to the University's Presidency. While the Committee must move forward with compulsory process as previously indicated, we sincerely hope that Columbia's new leadership will result in increased cooperation.

On February 16, 2024, following months of deeply concerning evidence of pervasive and widespread antisemitism on Columbia's campus, the Committee formally launched an investigation into Columbia's response to antisemitism on its campus and sent the university a document request letter.[1] The requested documents are essential in aiding the Committee's consideration of potential legislation to combat antisemitism in postsecondary institutions and towards fulfilling the Committee's oversight responsibility.

Since the initial inquiry, however, Columbia has failed to produce numerous priority items requested by the Committee, despite having months to comply and receiving repeated follow-up

---

[1] Letter from Virginia Foxx, Chairwoman, H. Comm. On Educ. & the Workforce, to Minouche Shafik, President, Columbia Univ., et. al. (Feb. 12, 2024).

Dr. Katrina Armstrong
August 21, 2024
Page 2 of 4

requests by the Committee.[2] In an August 1, 2024, letter, which outlined the history of the Committee's priority requests and Columbia's failure to fulfill them in detail, the Committee warned that the University's "continued failure to produce these priority items is unacceptable, and if this is not promptly rectified, the Committee is prepared to compel their production."[3]

In response to Columbia's allegations in its August 9, 2024, letter that it has continued to produce items requested by the Committee, we note that the chronology of requests undermines Columbia. The Committee repeatedly requested specific priority items, including text and electronic messages from specified identified custodians; Board of Trustees meeting notes, summaries, and recordings; and information on disciplinary/conduct cases. These narrow priority identifications provided Columbia the opportunity to produce select items rather than the full scope of information sought by the Committee. Despite having months to comply, Columbia has not provided responsive materials that are satisfactory.

On April 26, following the establishment of the so-called Gaza Solidarity Encampment, which by Columbia's own admission created a hostile environment in violation of Title VI, the Committee sent Columbia an updated set of priority requests. The Committee identified three categories of materials as its top priorities: communications from specified custodians; Board of Trustees meeting minutes, notes, and summaries; and information on disciplinary cases relating to the encampment or from the period since the establishment of the encampment.[4]

On June 12, the Committee requested that Columbia produce a set of unfulfilled priority items by a June 26 deadline. These included text messages, electronic messages, and emails from non-Columbia University systems, including from eight administrators and an estimated ten members of Columbia's Board of Trustees; notes, summaries, and recordings of Board of Trustees meetings since April 17; and updated and more detailed information on disciplinary actions relating to the encampment.

The Committee renewed these priority requests for a third time on July 9, requesting "[a]ll notes, summaries, or recordings of meetings (whether formal or informal), of the Board of Trustees or any component thereof since 4/17/24," "all communications since 4/17/24 responsive to the Committee's 3/29 and 4/26 requests, including emails, text messages, or other electronic messages," and "an up-to-date list of all student disciplinary/conduct cases relating to alleged

---

[2] *See* E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Mar. 29, 2024) (on file with Committee); E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Apr. 26, 2024) (on file with Committee); E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Jun. 12, 2024) (on file with Committee); and E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Jul. 9, 2024) (on file with Committee).

[3] Letter from Virginia Foxx, Chairwoman, H. Comm. On Educ. & the Workforce, to Minouche Shafik, President, Columbia Univ., et. al. (Aug. 1, 2024).

[4] E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Apr. 26, 2024) (on file with Committee)

Dr. Katrina Armstrong
August 21, 2024
Page 3 of 4

antisemitic incidents since October 7, 2023, and/or related to the Gaza Solidarity Encampment."[5]
Columbia failed to satisfy these requests by the July 19 deadline.

Following Columbia's failure to satisfy the requests by that date, the Committee sent the August 1 letter referenced above, requesting priority items, including communications of identified custodians; records of Board of Trustees meetings, including informal notes and summaries; and disciplinary information. As this chronology details, these are longstanding requests that the University has had considerable time to fulfill. The August 1 letter signaled that the Committee was prepared to initiate compulsory process if its requests were not satisfied.[6] The Committee also provided an email detailing expectations, and explicitly noting that Columbia was expected to fully produce items one through five set forth in the letter by the deadline, including production of text messages and electronic messages from the custodians identified by the Committee nearly two months earlier, on June 12 and July 9.[7]

Despite the Committee's numerous efforts to identify its priorities, Columbia has failed to satisfy these requests. Specifically, Columbia has failed to produce a substantial number of text and electronic messages for a majority of the custodians identified by the Committee. Columbia has failed to provide notes, summaries, recordings or other materials providing detailed contemporaneous records of board meetings. While Columbia has now provided an initial list of student disciplinary cases, it only includes incidents since April 17, 2024.

Given Columbia's continued failure to satisfy the priority requests outlined in the August 1 letter, the Committee now compels production of all responsive documents. Rule X of the Rules of the House of Representatives authorizes the Committee to conduct oversight of all matters involving "education… generally" to inform potential legislation. The outbreak of pervasive antisemitism in postsecondary education since the October 7, 2023, terror attack is within the Committee's jurisdiction, is a "subject on which legislation 'could be had,'" and is one upon which the Committee is actively considering proposed and potential legislation.

Finally, this letter serves as a formal notice of the University's obligation to preserve all existing and future records and materials created by or in the possession of former President Shafik relating to the Committee's requests. This preservation notice should be construed as an instruction to take all reasonable steps to prevent the destruction or alteration, whether intentionally or negligently, of all documents, communications, and other information, including electronic information and metadata, that are or may be responsive to the Committee's oversight and/or investigation. This instruction includes all electronic messages sent using Dr. Shafik's

---

[5] E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Jul. 9, 2024) (on file with Committee).

[6] Letter from Virginia Foxx, Chairwoman, H. Comm. On Educ. & the Workforce, to Minouche Shafik, President, Columbia Univ., et. al. (Aug. 1, 2024).

[7] E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Aug. 1, 2024) (on file with Committee).

Dr. Katrina Armstrong
August 21, 2024
Page 4 of 4

official and personal accounts or devices, including records created using text messages, phone-based message applications, or encryption software.

Attached is a subpoena compelling production of the documents and communications delineated in the attached schedule by 12:00 p.m. on September 4, 2024.

Sincerely,

*Virginia Foxx*

Virginia Foxx
Chairwoman
Committee on Education and the Workforce

# SUBPOENA

## BY AUTHORITY OF THE HOUSE OF REPRESENTATIVES OF THE CONGRESS OF THE UNITED STATES OF AMERICA

*To* Dr. Katrina Armstrong, Interim President, Columbia University

You are hereby commanded to be and appear before the

Committee on Education and the Workforce

of the House of Representatives of the United States at the place, date, and time specified below.

☑ **to produce the things identified on the attached schedule** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

Place of production: 2176 Rayburn House Office Building, Washington, D.C. 20515

Date: September 4, 2024                    Time: 12:00 p.m. EST

☐ **to testify at a deposition** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

Place of testimony: _____

Date: _____                    Time:

☑ **to testify at a hearing** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

Place of testimony: _____

Date: _____                    Time: _____

*To* the U.S. Marshal Service, or any authorized Member or congressional staff

_____ to serve and make return.

Witness my hand and the seal of the House of Representatives of the United States, at

the city of Washington, D.C. this 20 day of August , 2024 .

*Virginia Foxx*
*Chairman or Authorized Member*

Attest: *Kevin F. McCumber*

*Clerk*

# PROOF OF SERVICE

Subpoena for

Dr. Katrina Armstrong, Interim President, Columbia University

Address Columbia University, Low Memorial Library, 116th St, New York, NY 10027

before the Committee on Education and the Workforce

*U.S. House of Representatives*
*118th Congress*

Served by (print name) Mindy Barry

Title General Counsel, U.S. House of Representatives Committee on Education and the Workforce

Manner of service email

Date

Signature of Server

Address 2176 Rayburn House Office Building, Washington D.C. 20515

In accordance with the attached Schedule instructions and definitions, you, Dr. Katrina Armstrong, Interim President, Columbia University, are required to produce all documents and communications, described below in your possession, custody, or control, in unredacted form:

1. All documents and communications, including but not limited to, text messages, emails, and electronic messages, from October 7, 2023 to present, referring or relating to: antisemitism; targeting of Jews, Israelis, Zionists, or Zionism; and/or the Gaza Solidarity encampment from the following custodians:

   a. Minouche Shafik,
   b. Claire Shipman,
   c. Angela Olinto,
   d. Cas Holloway,
   e. Susan Glancy,
   f. Dennis Mitchell,
   g. Josef Sorett,
   h. Jelani Cobb,
   i. David Greenberg,
   j. Gerald Lewis,
   k. Gerry Rosberg,
   l. Jeanine D'Armiento, and/or
   m. Claudia Marin Andrade.

2. All documents and communications related to meetings of the Board of Trustees from April 17, 2024-present, including any minutes, notes, summaries, and recordings;

3. All documents and communications related to meetings of the Board of Trustees since October 7, 2023, referring or relating to antisemitism; targeting of Jews, Israelis, Zionists, or Zionism; and/or Israel, including any minutes, notes, summaries, and recordings;

4. All documents and communications referring or related to student disciplinary/conduct cases from October 7, 2023-present, referring or relating to, alleged antisemitic incidents; targeting of Jews, Israelis, Zionists, or Zionism; the Gaza Solidarity Encampment; and/or the Israeli-Palestinian conflict;

5. All documents and communications between or among officials at the Center for Student Success and Intervention, Columbia College, and/or Columbia University Central Administration, referring or relating to conduct by a Columbia undergraduate who livestreamed a January 2024 virtual meeting with the Center for Student Success and Intervention in which he made comments threatening and disparaging "Zionists";

6. All documents and communications between or among officials at the Center for Student Success and Intervention, Columbia College, and/or Columbia University Central Administration, referring or relating to the January 19, 2024 incident involving the spraying of a foul-smelling substance at a campus protest;

7. All documents and communications referring or related to faculty and staff disciplinary/conduct cases from October 7, 2023-present, relating to alleged antisemitic incidents at Columbia; targeting of Jews, Israelis, Zionists, or Zionism; the Gaza Solidarity Encampment; and/or the Israeli-Palestinian conflict; and

8. All documents and communications referring or relating to personnel actions and/or University appointments involving Joseph Massad.

**Instructions for Responding to a Subpoena**

**U.S. House Committee on Education and the Workforce**

**118th Congress**

1.  In complying with the U.S. House Committee on Education and the Workforce's (Committee) subpoena, produce all responsive documents that are in your possession, custody, or control, whether held by you or your past or present agents, employees, and representatives acting on your behalf.  You also should produce documents that you have a legal right to obtain, that you have a right to copy, or to which you have access, as well as documents that you have placed in the temporary possession, custody, or control of any third party.  Subpoenaed records, documents, data, or information should not be destroyed, modified, removed, transferred, or otherwise made inaccessible to the Committee.

2.  In the event that any entity, organization, or person denoted in the subpoena has been or is also known by any other name or alias than herein denoted, the subpoena should be read also to include the alternative identification.

3.  The Committee's preference is to receive documents in electronic form (i.e., CD, memory stick, or thumb drive) in lieu of paper productions.

4.  Documents produced in electronic form should also be organized, identified, and indexed electronically.

5.  Electronic document productions should be prepared according to the following standards:

    a.  All documents derived from word processing programs, email applications, instant message logs, spreadsheets, and wherever else practicable should be produced in text searchable Portable Document Format (".pdf") format. Spreadsheets should also be provided in their native form.  Audio and video files should be produced in their native format, although picture files associated with email or word processing programs should be produced in .pdf format along with the document it is contained in or to which it is attached.

    b.  Document numbers in the load file should match document Bates numbers and file names.

    c.  If the production is completed through a series of multiple partial productions, field names and file order in all load files should match.

    d.  All electronic documents produced should include the following fields of metadata specific to each document:

BEGDOC, ENDDOC, TEXT, BEGATTACH, ENDATTACH, PAGECOUNT, CUSTODIAN, RECORDTYPE, DATE, TIME, SENTDATE, SENTTIME, BEGINDATE, BEGINTIME, ENDDATE, ENDTIME, AUTHOR, FROM, CC, TO, BCC, SUBJECT, TITLE, FILENAME, FILEEXT, FILESIZE, DATECREATED, TIMECREATED, DATELASTMOD, TIMELASTMOD, INTMSGID, INTMSGHEADER, NATIVELINK, INTFILPATH, EXCEPTION, BEGATTACH.

    e.  If any of the subpoenaed information is only reasonably available in machine-readable form (such as on a computer server, hard drive, or computer backup tape), consult with the Committee staff to determine the appropriate format in which to produce the information.

6.  Documents produced to the Committee should include an index describing the contents of the production. To the extent more than one CD, hard drive, memory stick, thumb drive, box or folder is produced, each CD, hard drive, memory stick, thumb drive, box or folder should contain an index describing its contents.

7.  Documents produced in response to the subpoena should be produced together with copies of file labels, dividers or identifying markers with which they were associated when the subpoena was served.

8.  When producing documents, identify the paragraph in the Committee's schedule to which the documents respond.

9.  Do not refuse to produce documents on the basis that any other person or entity also possesses non-identical or identical copies of the same documents.

10.  This subpoena is continuing in nature and applies to any newly discovered information. Any record, document, compilation of data or information not produced because it has not been located or discovered by the return date, should be produced immediately upon subsequent location or discovery.

11.  All documents should be Bates-stamped sequentially and produced sequentially. Each page should bear a unique Bates number.

12.  Two sets of documents should be delivered, one set to the Majority Staff and one set to the Minority Staff. When documents are produced to the Committee, production sets should be delivered to the Majority Staff in Room 2176 of the Rayburn House Office Building or provided electronically to Majority General Counsel at mindy.barry@mail.house.gov and the Minority Staff in Room 2101 of the Rayburn Office Building or provided electronically to Minority General Counsels at ilana.brunner@mail.house.gov and christian.haines@mail.house.gov.

13.  If compliance with the subpoena cannot be made in full by the date specified in the subpoena, compliance should be made to the extent possible by that date. Notify Committee staff as soon as possible if full compliance cannot be made by the date

specified in the subpoena and provide an explanation for why full compliance is not possible by that date.

14. In the event that a document is withheld on the basis of privilege, provide a privilege log containing the following information concerning any such document: (a) the privilege asserted; (b) the type of document; (c) the general subject matter; (d) the date, author and addressee; and (e) the relationship of the author and addressee to each other.

15. In the event that a portion of a document is redacted on the basis of alleged privilege, provide a privilege log containing the following information concerning any such redaction: (a) the privilege asserted; (b) the location of the redaction in the document; (c) the general subject matter of the redacted material; (d) the date, author, and addressee of the document, if not readily apparent; and (e) the relationship of the author and addressee to each other.

16. If any document responsive to this subpoena was, but no longer is, in your possession, custody, or control, identify the document (stating its date, author, subject and recipients) and explain the circumstances under which the document ceased to be in your possession, custody, or control.

17. If a date or other descriptive detail set forth in this subpoena referring to a document is inaccurate, but the actual date or other descriptive detail is known to you or is otherwise apparent from the context of the subpoena, produce all documents which would be responsive as if the date or other descriptive detail were correct.

18. In the event a complete response requires the production of classified information, provide as much information in unclassified form as possible in your response and send all classified information under separate cover via the Office of Senate Security.

19. Unless otherwise specified, the period covered by this subpoena is from October 7, 2023, to the present.

20. Upon completion of the document production, you should submit a written certification, signed by you or your counsel, stating that: (1) a diligent search has been completed of all documents in your possession, custody, or control which reasonably could contain responsive documents; and (2) all documents located during the search that are responsive have been produced to the Committee.

**Schedule Definitions**

21. The term "document" in the subpoena, the schedule, or the instructions means any written, recorded, or graphic matter of any nature whatsoever, regardless of how recorded, and whether original or copy, including, but not limited to, the following: memoranda, reports, expense reports, books, manuals, instructions, financial reports, working papers, records, notes, letters, notices, confirmations, telegrams, receipts, appraisals, pamphlets, magazines, newspapers, prospectuses, inter-office and intra-office communications, electronic mail (e-mail), contracts, cables, notations of any type of conversation, telephone calls, meetings or other communications, bulletins, printed matter, computer printouts, teletypes, invoices, transcripts, diaries, analyses, returns,

summaries, minutes, bills, accounts, estimates, projections, comparisons, messages, correspondence, press releases, circulars, financial statements, reviews, opinions, offers, studies and investigations, questionnaires and surveys, and work sheets (and all drafts, preliminary versions, alterations, modifications, revisions, changes, and amendments of any of the foregoing, as well as any attachments or appendices thereto), and graphic or oral records or representations of any kind (including without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, recordings, and motion pictures), and electronic, mechanical, and electric records or representations of any kind (including, without limitation, tapes, cassettes, disks, and recordings) and other written, printed, typed, or other graphic or recorded matter of any kind or nature, however produced or reproduced, and whether preserved in writing, film, tape, disk, videotape or otherwise. A document bearing any notation not a part of the original text is to be considered a separate document. A draft or non-identical copy is a separate document within the meaning of this term.

22. The term "communication" in the subpoena, the schedule, or the instructions means each manner or means of disclosure or exchange of information, regardless of means utilized, whether oral, electronic, by document or otherwise, and whether face to face, in meetings, by telephone, mail, telex, facsimile, email (desktop or mobile device), computer, text message, instant message, MMS or SMS message, regular mail, telexes, discussions, releases, delivery, or otherwise.

23. The terms "and" and "or" in the subpoena, the schedule, or the instructions should be construed broadly and either conjunctively or disjunctively to bring within the scope of this subpoena any information which might otherwise be construed to be outside its scope. The singular includes plural number, and vice versa. The masculine includes the feminine and neuter genders.

24. The terms "person" or "persons" in the subpoena, the schedule, or the instructions mean natural persons, firms, partnerships, associations, corporations, subsidiaries, divisions, departments, joint ventures, proprietorships, syndicates, or other legal, businesses or government entities, and all subsidiaries, affiliates, divisions, departments, branches, or other units thereof.

25. The term "identify" in the subpoena, the schedule, or the instructions, when used in a question about individuals, means to provide the following information: (a) the individual's complete name and title; and (b) the individual's business address and phone number.

26. The terms "referring" or "relating" in the subpoena, the schedule, or the instructions, when used separately or collectively, with respect to any given subject, mean anything that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is pertinent to that subject in any manner whatsoever.

27. The term "employee" in the subpoena, the schedule, or the instructions means agent, borrowed employee, casual employee, consultant, contractor, de facto employee, independent contractor, joint adventurer, loaned employee, part-time employee, permanent employee, provisional employee, or subcontractor.

28. The terms "you" and "your" in the subpoena, the schedule, or the instructions refer to yourself; your firm, corporation, partnership, association, department, or other legal or government entity, including all subsidiaries, divisions, branches, or other units thereof; and all members, officers, employees, agents, contractors, and all other individuals acting or purporting to act on your behalf, including all present and former members, officers, employees, agents, contractors, and all other individuals exercising or purporting to exercise discretion, make policy, and/or decisions.

# # #

MAJORITY MEMBERS:

VIRGINIA FOXX, NORTH CAROLINA,
*Chairwoman*

JOE WILSON, SOUTH CAROLINA
GLENN THOMPSON, PENNSYLVANIA
TIM WALBERG, MICHIGAN
GLENN GROTHMAN, WISCONSIN
ELISE M. STEFANIK, NEW YORK
RICK W. ALLEN, GEORGIA
JIM BANKS, INDIANA
JAMES COMER, KENTUCKY
LLOYD SMUCKER, PENNSYLVANIA
BURGESS OWENS, UTAH
BOB GOOD, VIRGINIA
LISA C. MCCLAIN, MICHIGAN
MARY E. MILLER, ILLINOIS
MICHELLE STEEL, CALIFORNIA
RON ESTES, KANSAS
JULIA LETLOW, LOUISIANA
KEVIN KILEY, CALIFORNIA
AARON BEAN, FLORIDA
ERIC BURLISON, MISSOURI
NATHANIEL MORAN, TEXAS
LORI CHAVEZ-DEREMER, OREGON
BRANDON WILLIAMS, NEW YORK
ERIN HOUCHIN, INDIANA
MICHAEL RULLI, OHIO



# COMMITTEE ON
# EDUCATION AND THE WORKFORCE
U.S. HOUSE OF REPRESENTATIVES
2176 RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20515-6100

MINORITY MEMBERS:

ROBERT C. "BOBBY" SCOTT, VIRGINIA,
*Ranking Member*

RAÚL M. GRIJALVA, ARIZONA
JOE COURTNEY, CONNECTICUT
GREGORIO KILILI CAMACHO SABLAN,
NORTHERN MARIANA ISLANDS
FREDERICA S. WILSON, FLORIDA
SUZANNE BONAMICI, OREGON
MARK TAKANO, CALIFORNIA
ALMA S. ADAMS, NORTH CAROLINA
MARK DESAULNIER, CALIFORNIA
DONALD NORCROSS, NEW JERSEY
PRAMILA JAYAPAL, WASHINGTON
SUSAN WILD, PENNSYLVANIA
LUCY MCBATH, GEORGIA
JAHANA HAYES, CONNECTICUT
ILHAN OMAR, MINNESOTA
HALEY M. STEVENS, MICHIGAN
TERESA LEGER FERNÁNDEZ,
NEW MEXICO
KATHY E. MANNING, NORTH CAROLINA
FRANK J. MRVAN, INDIANA
JAMAAL BOWMAN, NEW YORK

August 21, 2024

Ms. Abigail Black Elbaum, Vice Chair
The Trustees of Columbia University
211 Low Library
535 West 116th St, Mail Code 4324
New York, NY 10027

Dear Ms. Elbaum:

The U.S. House Committee on Education and the Workforce (Committee) is conducting an ongoing investigation into antisemitism in postsecondary institutions, including Columbia University.

On February 16, 2024, following months of deeply concerning evidence of pervasive and widespread antisemitism on Columbia's campus, the Committee formally launched an investigation into Columbia's response to antisemitism on its campus and sent the university a document request letter.[1] The requested documents are essential both in aiding the Committee's consideration of potential legislation to combat antisemitism in postsecondary institutions and towards fulfilling the Committee's oversight responsibility.

Since the initial inquiry, however, Columbia has failed to produce numerous priority items requested by the Committee, despite having months to comply and having received repeated follow-up requests.[2] In an August 1, 2024, letter, which outlined the history of the Committee's priority requests and Columbia's failure to fulfill them in detail, the Committee warned that the

---

[1] Letter from Virginia Foxx, Chairwoman, H. Comm. On Educ. & the Workforce, to Minouche Shafik, President, Columbia Univ., et. al. (Feb. 12, 2024).
[2] *See* E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Mar. 29, 2024) (on file with Committee); E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Apr. 26, 2024) (on file with Committee); E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Jun. 12, 2024) (on file with Committee); and E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Jul. 9, 2024) (on file with Committee).

Ms. Abigail Black Elbaum
August 21, 2024
Page 2 of 3

University's "continued failure to produce these priority items is unacceptable, and if this is not promptly rectified, the Committee is prepared to compel their production."[3]

Among the requests that the Committee identified as priorities are certain items related to the Columbia Board of Trustees. Specifically, the Committee repeatedly requested text messages and electronic messages from identified custodians, including specified members of the Board of Trustees, as well as Board of Trustees meeting notes, summaries, and recordings.[4]

On April 26, following the establishment of the so-called Gaza Solidarity Encampment, which by Columbia's own admission created a hostile environment in violation of Title VI of the Civil Rights Act, the Committee sent Columbia an updated set of priority requests. These included certain of your communications, including text and other electronic messages, as well as meeting minutes, notes, and summaries from certain Board of Trustees meetings.[5] These requests were again made in a June 12 letter, which established a June 26 deadline.

The Committee renewed these priority requests for a third time on July 9, requesting "[a]ll notes, summaries, or recordings of meetings (whether formal or informal), of the Board of Trustees or any component thereof since 4/17/24" and "all communications since 4/17/24 responsive to the Committee's 3/29 and 4/26 requests, including emails, text messages, or other electronic messages."[6] Columbia failed to satisfy these requests by the July 19 deadline.

Following Columbia's failure to satisfy the requests by that date, the Committee sent the August 1 letter referenced above, requesting priority items including your communications and records of Board of Trustees meetings, specifically informal notes and summaries. The letter warned that the Committee was prepared to initiate compulsory process if its requests were not satisfied.[7] Throughout this process, the Committee repeatedly emphasized the importance of timely production of communications, and in particular of text messages from trustee priority custodians, including you.

The Committee also detailed its expectations in an email to Columbia, specifically requesting that the August 1 letter be transmitted to the entire Board of Trustees and noted that the

---

[3] Letter from Virginia Foxx, Chairwoman, H. Comm. On Educ. & the Workforce, to Minouche Shafik, President, Columbia Univ., et. al. (Aug. 1, 2024).

[4] E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Mar. 29, 2024) (on file with Committee)

[5] E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Apr. 26, 2024) (on file with Committee)

[6] E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Jul. 9, 2024) (on file with Committee).

[7] Letter from Virginia Foxx, Chairwoman, H. Comm. On Educ. & the Workforce, to Minouche Shafik, President, Columbia Univ., et. al. (Aug. 1, 2024).

Ms. Abigail Black Elbaum
August 21, 2024
Page 3 of 3

Committee was prepared to subpoena Board of Trustees members beyond the co-chairs if the Committee's requests were not satisfied by the August 8 deadline.[8]

Despite the Committee's warnings, Columbia has failed to satisfy these requests. Columbia has failed to produce a substantial number of text and electronic messages from Trustees beyond the Co-Chairs, despite the Committee identifying Trustee priority custodians months ago. Further, Columbia failed to provide notes, summaries, recordings or other materials providing detailed contemporaneous records of Board meetings.

Given Columbia's continued failure to satisfy the priority requests outlined in the August 1 letter, the Committee now compels production of all responsive documents. Rule X of the Rules of the House of Representatives authorizes the Committee to conduct oversight of all matters involving "education… generally" to inform potential legislation. The outbreak of pervasive antisemitism in postsecondary education since the October 7, 2023, terror attack is within the Committee's jurisdiction and is a "subject on which legislation 'could be had'," and one upon which the Committee is actively considering proposed and potential legislation.

Attached is a subpoena compelling production of the documents and communications delineated in the attached schedule by 12:00 p.m. on September 4, 2024.

Sincerely,

Virginia Foxx
Chairwoman
U.S. House Committee on Education
and the Workforce

---

[8] E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Aug. 1, 2024) (on file with Committee).

# SUBPOENA

## BY AUTHORITY OF THE HOUSE OF REPRESENTATIVES OF THE CONGRESS OF THE UNITED STATES OF AMERICA

*To* Ms. Abigail Black Elbaum, Vice Chair, The Trustees of Columbia University

You are hereby commanded to be and appear before the
Committee on Education and the Workforce

of the House of Representatives of the United States at the place, date, and time specified below.

☑ **to produce the things identified on the attached schedule** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

Place of production: 2176 Rayburn House Office Building, Washington, D.C. 20515

Date: September 4, 2024                    Time: 12:00 p.m. EDT

☐ **to testify at a deposition** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

Place of testimony: _____

Date: _____                    Time: _____

☐ **to testify at a hearing** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

Place of testimony: _____

Date: _____                    Time: _____

*To* the U.S. Marshal Service, or any authorized Member or congressional staff _____
_____ to serve and make return.

Witness my hand and the seal of the House of Representatives of the United States, at the city of Washington, D.C. this 20 day of August , 2024 .

*Virginia Foxx*
*Chairman or Authorized Member*

Attest: *Kevin F. McCumber*
*Clerk*

# PROOF OF SERVICE

Subpoena for

Ms. Abigail Black Elbaum, Vice Chair, The Trustees of Columbia University

Address  Columbia University, Low Memorial Library, 116th St, New York, NY 10027

before the  Committee on Education and the Workforce

*U.S. House of Representatives*
*118th Congress*

---

Served by (print name)  Mindy Barry

Title  General Counsel, U.S. House of Representatives Committee on Education and the Workforce

Manner of service  email

Date

Signature of Server

Address  2176 Rayburn House Office Building, Washington D.C. 20515

In accordance with the attached Schedule instructions and definitions, you, Abigail Black Elbaum, Vice Chair, Board of Trustees, Columbia University, are required to produce all documents and communications, described below in your possession, custody, or control, in unredacted form:

1.  All documents and communications, including but not limited to, text messages, emails, and electronic messages, from October 7, 2023 to present, referring or relating to antisemitism; targeting of Jews, Israelis, Zionists, or Zionism; and/or the Gaza Solidarity encampment;

2.  All documents and communications related to meetings of the Board of Trustees from April 17, 2024-present, including any minutes, notes, summaries, and recordings;

3.  All documents and communications related to meetings of the Board of Trustees since October 7, 2023, referring or relating to antisemitism; targeting of Jews, Israelis, Zionists, or Zionism; and/or Israel, including any minutes, notes, summaries, and recordings.

**Instructions for Responding to a Subpoena**

## U.S. House Committee on Education and the Workforce

### 118th Congress

1. In complying with the U.S. House Committee on Education and the Workforce's (Committee) subpoena, produce all responsive documents that are in your possession, custody, or control, whether held by you or your past or present agents, employees, and representatives acting on your behalf. You also should produce documents that you have a legal right to obtain, that you have a right to copy, or to which you have access, as well as documents that you have placed in the temporary possession, custody, or control of any third party. Subpoenaed records, documents, data, or information should not be destroyed, modified, removed, transferred, or otherwise made inaccessible to the Committee.

2. In the event that any entity, organization, or person denoted in the subpoena has been or is also known by any other name or alias than herein denoted, the subpoena should be read also to include the alternative identification.

3. The Committee's preference is to receive documents in electronic form (i.e., CD, memory stick, or thumb drive) in lieu of paper productions.

4. Documents produced in electronic form should also be organized, identified, and indexed electronically.

5. Electronic document productions should be prepared according to the following standards:

   a. All documents derived from word processing programs, email applications, instant message logs, spreadsheets, and wherever else practicable should be produced in text searchable Portable Document Format (".pdf") format. Spreadsheets should also be provided in their native form. Audio and video files should be produced in their native format, although picture files associated with email or word processing programs should be produced in .pdf format along with the document it is contained in or to which it is attached.

   b. Document numbers in the load file should match document Bates numbers and file names.

   c. If the production is completed through a series of multiple partial productions, field names and file order in all load files should match.

   d. All electronic documents produced should include the following fields of metadata specific to each document:

BEGDOC, ENDDOC, TEXT, BEGATTACH, ENDATTACH, PAGECOUNT, CUSTODIAN, RECORDTYPE, DATE, TIME, SENTDATE, SENTTIME, BEGINDATE, BEGINTIME, ENDDATE, ENDTIME, AUTHOR, FROM, CC, TO, BCC, SUBJECT, TITLE, FILENAME, FILEEXT, FILESIZE, DATECREATED, TIMECREATED, DATELASTMOD, TIMELASTMOD, INTMSGID, INTMSGHEADER, NATIVELINK, INTFILPATH, EXCEPTION, BEGATTACH.

    e.  If any of the subpoenaed information is only reasonably available in machine-readable form (such as on a computer server, hard drive, or computer backup tape), consult with the Committee staff to determine the appropriate format in which to produce the information.

6. Documents produced to the Committee should include an index describing the contents of the production.  To the extent more than one CD, hard drive, memory stick, thumb drive, box or folder is produced, each CD, hard drive, memory stick, thumb drive, box or folder should contain an index describing its contents.

7. Documents produced in response to the subpoena should be produced together with copies of file labels, dividers or identifying markers with which they were associated when the subpoena was served.

8. When producing documents, identify the paragraph in the Committee's schedule to which the documents respond.

9. Do not refuse to produce documents on the basis that any other person or entity also possesses non-identical or identical copies of the same documents.

10. This subpoena is continuing in nature and applies to any newly discovered information. Any record, document, compilation of data or information not produced because it has not been located or discovered by the return date, should be produced immediately upon subsequent location or discovery.

11. All documents should be Bates-stamped sequentially and produced sequentially.  Each page should bear a unique Bates number.

12. Two sets of documents should be delivered, one set to the Majority Staff and one set to the Minority Staff. When documents are produced to the Committee, production sets should be delivered to the Majority Staff in Room 2176 of the Rayburn House Office Building or provided electronically to Majority General Counsel at mindy.barry@mail.house.gov and the Minority Staff in Room 2101 of the Rayburn Office Building or provided electronically to Minority General Counsels at ilana.brunner@mail.house.gov and christian.haines@mail.house.gov.

13. If compliance with the subpoena cannot be made in full by the date specified in the subpoena, compliance should be made to the extent possible by that date.  Notify Committee staff as soon as possible if full compliance cannot be made by the date

specified in the subpoena and provide an explanation for why full compliance is not possible by that date.

14. In the event that a document is withheld on the basis of privilege, provide a privilege log containing the following information concerning any such document: (a) the privilege asserted; (b) the type of document; (c) the general subject matter; (d) the date, author and addressee; and (e) the relationship of the author and addressee to each other.

15. In the event that a portion of a document is redacted on the basis of alleged privilege, provide a privilege log containing the following information concerning any such redaction: (a) the privilege asserted; (b) the location of the redaction in the document; (c) the general subject matter of the redacted material; (d) the date, author, and addressee of the document, if not readily apparent; and (e) the relationship of the author and addressee to each other.

16. If any document responsive to this subpoena was, but no longer is, in your possession, custody, or control, identify the document (stating its date, author, subject and recipients) and explain the circumstances under which the document ceased to be in your possession, custody, or control.

17. If a date or other descriptive detail set forth in this subpoena referring to a document is inaccurate, but the actual date or other descriptive detail is known to you or is otherwise apparent from the context of the subpoena, produce all documents which would be responsive as if the date or other descriptive detail were correct.

18. In the event a complete response requires the production of classified information, provide as much information in unclassified form as possible in your response and send all classified information under separate cover via the Office of Senate Security.

19. Unless otherwise specified, the period covered by this subpoena is from October 7, 2023, to the present.

20. Upon completion of the document production, you should submit a written certification, signed by you or your counsel, stating that: (1) a diligent search has been completed of all documents in your possession, custody, or control which reasonably could contain responsive documents; and (2) all documents located during the search that are responsive have been produced to the Committee.

**Schedule Definitions**

21. The term "document" in the subpoena, the schedule, or the instructions means any written, recorded, or graphic matter of any nature whatsoever, regardless of how recorded, and whether original or copy, including, but not limited to, the following: memoranda, reports, expense reports, books, manuals, instructions, financial reports, working papers, records, notes, letters, notices, confirmations, telegrams, receipts, appraisals, pamphlets, magazines, newspapers, prospectuses, inter-office and intra-office communications, electronic mail (e-mail), contracts, cables, notations of any type of conversation, telephone calls, meetings or other communications, bulletins, printed matter, computer printouts, teletypes, invoices, transcripts, diaries, analyses, returns,

summaries, minutes, bills, accounts, estimates, projections, comparisons, messages, correspondence, press releases, circulars, financial statements, reviews, opinions, offers, studies and investigations, questionnaires and surveys, and work sheets (and all drafts, preliminary versions, alterations, modifications, revisions, changes, and amendments of any of the foregoing, as well as any attachments or appendices thereto), and graphic or oral records or representations of any kind (including without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, recordings, and motion pictures), and electronic, mechanical, and electric records or representations of any kind (including, without limitation, tapes, cassettes, disks, and recordings) and other written, printed, typed, or other graphic or recorded matter of any kind or nature, however produced or reproduced, and whether preserved in writing, film, tape, disk, videotape or otherwise. A document bearing any notation not a part of the original text is to be considered a separate document. A draft or non-identical copy is a separate document within the meaning of this term.

22. The term "communication" in the subpoena, the schedule, or the instructions means each manner or means of disclosure or exchange of information, regardless of means utilized, whether oral, electronic, by document or otherwise, and whether face to face, in meetings, by telephone, mail, telex, facsimile, email (desktop or mobile device), computer, text message, instant message, MMS or SMS message, regular mail, telexes, discussions, releases, delivery, or otherwise.

23. The terms "and" and "or" in the subpoena, the schedule, or the instructions should be construed broadly and either conjunctively or disjunctively to bring within the scope of this subpoena any information which might otherwise be construed to be outside its scope. The singular includes plural number, and vice versa. The masculine includes the feminine and neuter genders.

24. The terms "person" or "persons" in the subpoena, the schedule, or the instructions mean natural persons, firms, partnerships, associations, corporations, subsidiaries, divisions, departments, joint ventures, proprietorships, syndicates, or other legal, businesses or government entities, and all subsidiaries, affiliates, divisions, departments, branches, or other units thereof.

25. The term "identify" in the subpoena, the schedule, or the instructions, when used in a question about individuals, means to provide the following information: (a) the individual's complete name and title; and (b) the individual's business address and phone number.

26. The terms "referring" or "relating" in the subpoena, the schedule, or the instructions, when used separately or collectively, with respect to any given subject, mean anything that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is pertinent to that subject in any manner whatsoever.

27. The term "employee" in the subpoena, the schedule, or the instructions means agent, borrowed employee, casual employee, consultant, contractor, de facto employee, independent contractor, joint adventurer, loaned employee, part-time employee, permanent employee, provisional employee, or subcontractor.

28. The terms "you" and "your" in the subpoena, the schedule, or the instructions refer to yourself; your firm, corporation, partnership, association, department, or other legal or government entity, including all subsidiaries, divisions, branches, or other units thereof; and all members, officers, employees, agents, contractors, and all other individuals acting or purporting to act on your behalf, including all present and former members, officers, employees, agents, contractors, and all other individuals exercising or purporting to exercise discretion, make policy, and/or decisions.

# # #

MAJORITY MEMBERS:

VIRGINIA FOXX, NORTH CAROLINA,
*Chairwoman*

JOE WILSON, SOUTH CAROLINA
GLENN THOMPSON, PENNSYLVANIA
TIM WALBERG, MICHIGAN
GLENN GROTHMAN, WISCONSIN
ELISE M. STEFANIK, NEW YORK
RICK W. ALLEN, GEORGIA
JIM BANKS, INDIANA
JAMES COMER, KENTUCKY
LLOYD SMUCKER, PENNSYLVANIA
BURGESS OWENS, UTAH
BOB GOOD, VIRGINIA
LISA C. MCCLAIN, MICHIGAN
MARY E. MILLER, ILLINOIS
MICHELLE STEEL, CALIFORNIA
RON ESTES, KANSAS
JULIA LETLOW, LOUISIANA
KEVIN KILEY, CALIFORNIA
AARON BEAN, FLORIDA
ERIC BURLISON, MISSOURI
NATHANIEL MORAN, TEXAS
LORI CHAVEZ-DEREMER, OREGON
BRANDON WILLIAMS, NEW YORK
ERIN HOUCHIN, INDIANA
MICHAEL RULLI, OHIO

MINORITY MEMBERS:

ROBERT C. "BOBBY" SCOTT, VIRGINIA,
*Ranking Member*

RAÚL M. GRIJALVA, ARIZONA
JOE COURTNEY, CONNECTICUT
GREGORIO KILILI CAMACHO SABLAN,
NORTHERN MARIANA ISLANDS
FREDERICA S. WILSON, FLORIDA
SUZANNE BONAMICI, OREGON
MARK TAKANO, CALIFORNIA
ALMA S. ADAMS, NORTH CAROLINA
MARK DESAULNIER, CALIFORNIA
DONALD NORCROSS, NEW JERSEY
PRAMILA JAYAPAL, WASHINGTON
SUSAN WILD, PENNSYLVANIA
LUCY MCBATH, GEORGIA
JAHANA HAYES, CONNECTICUT
ILHAN OMAR, MINNESOTA
HALEY M. STEVENS, MICHIGAN
TERESA LEGER FERNÁNDEZ,
NEW MEXICO
KATHY E. MANNING, NORTH CAROLINA
FRANK J. MRVAN, INDIANA
JAMAAL BOWMAN, NEW YORK



# COMMITTEE ON
# EDUCATION AND THE WORKFORCE
U.S. HOUSE OF REPRESENTATIVES
2176 RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20515-6100

August 21, 2024

Mr. Mark Gallogly, Vice Chair
The Trustees of Columbia University
211 Low Library
535 West 116th St, Mail Code 4324
New York, NY 10027

Dear Mr. Gallogly:

The U.S. House Committee on Education and the Workforce (Committee) is conducting an ongoing investigation into antisemitism in postsecondary institutions, including Columbia University.

On February 16, 2024, following months of deeply concerning evidence of pervasive and widespread antisemitism on Columbia's campus, the Committee formally launched an investigation into Columbia's response to antisemitism on its campus and sent the university a document request letter.[1] The requested documents are essential both in aiding the Committee's consideration of potential legislation to combat antisemitism in postsecondary institutions and towards fulfilling the Committee's oversight responsibility.

Since the initial inquiry, however, Columbia has failed to produce numerous priority items requested by the Committee, despite having months to comply and having received repeated follow-up requests.[2] In an August 1, 2024, letter, which outlined the history of the Committee's priority requests and Columbia's failure to fulfill them in detail, the Committee warned that the

---

[1] Letter from Virginia Foxx, Chairwoman, H. Comm. On Educ. & the Workforce, to Minouche Shafik, President, Columbia Univ., et. al. (Feb. 12, 2024).
[2] *See* E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Mar. 29, 2024) (on file with Committee); E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Apr. 26, 2024) (on file with Committee); E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Jun. 12, 2024) (on file with Committee); and E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Jul. 9, 2024) (on file with Committee).

Mr. Mark Gallogly
August 21, 2024
Page 2 of 3

University's "continued failure to produce these priority items is unacceptable, and if this is not promptly rectified, the Committee is prepared to compel their production."[3]

Among the requests that the Committee identified as priorities are certain items related to the Columbia Board of Trustees. Specifically, the Committee repeatedly requested text messages and electronic messages from identified custodians, including specified members of the Board of Trustees, as well as Board of Trustees meeting notes, summaries, and recordings.[4]

On April 26, following the establishment of the so-called Gaza Solidarity Encampment, which by Columbia's own admission created a hostile environment in violation of Title VI of the Civil Rights Act, the Committee sent Columbia an updated set of priority requests. These included certain of your communications, including text and other electronic messages, as well as meeting minutes, notes, and summaries from certain Board of Trustees meetings.[5] These requests were again made in a June 12 letter, which established a June 26 deadline.

The Committee renewed these priority requests for a third time on July 9, requesting "[a]ll notes, summaries, or recordings of meetings (whether formal or informal), of the Board of Trustees or any component thereof since 4/17/24" and "all communications since 4/17/24 responsive to the Committee's 3/29 and 4/26 requests, including emails, text messages, or other electronic messages."[6] Columbia failed to satisfy these requests by the July 19 deadline.

Following Columbia's failure to satisfy the requests by that date, the Committee sent the August 1 letter referenced above, requesting priority items including your communications and records of Board of Trustees meetings, specifically informal notes and summaries. The letter warned that the Committee was prepared to initiate compulsory process if its requests were not satisfied.[7] Throughout this process, the Committee repeatedly emphasized the importance of timely production of communications, and in particular of text messages from trustee priority custodians, including you.

The Committee also detailed its expectations in an email to Columbia, specifically requesting that the August 1 letter be transmitted to the entire Board of Trustees and noted that the

---

[3] Letter from Virginia Foxx, Chairwoman, H. Comm. On Educ. & the Workforce, to Minouche Shafik, President, Columbia Univ., et. al. (Aug. 1, 2024).

[4] E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Mar. 29, 2024) (on file with Committee)

[5] E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Apr. 26, 2024) (on file with Committee)

[6] E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Jul. 9, 2024) (on file with Committee).

[7] Letter from Virginia Foxx, Chairwoman, H. Comm. On Educ. & the Workforce, to Minouche Shafik, President, Columbia Univ., et. al. (Aug. 1, 2024).

Mr. Mark Gallogly
August 21, 2024
Page 3 of 3

Committee was prepared to subpoena Board of Trustees members beyond the co-chairs if the Committee's requests were not satisfied by the August 8 deadline.[8]

Despite the Committee's warnings, Columbia has failed to satisfy these requests. Columbia has failed to produce a substantial number of text and electronic messages from Trustees beyond the Co-Chairs, despite the Committee identifying Trustee priority custodians months ago. Further, Columbia failed to provide notes, summaries, recordings or other materials providing detailed contemporaneous records of Board meetings.

Given Columbia's continued failure to satisfy the priority requests outlined in the August 1 letter, the Committee now compels production of all responsive documents. Rule X of the Rules of the House of Representatives authorizes the Committee to conduct oversight of all matters involving "education… generally" to inform potential legislation. The outbreak of pervasive antisemitism in postsecondary education since the October 7, 2023, terror attack is within the Committee's jurisdiction and is a "subject on which legislation 'could be had'," and one upon which the Committee is actively considering proposed and potential legislation.

Attached is a subpoena compelling production of the documents and communications delineated in the attached schedule by 12:00 p.m. on September 4, 2024.

Sincerely,

Virginia Foxx
Virginia Foxx
Chairwoman
U.S. House Committee on Education
and the Workforce

---

[8]  E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Aug. 1, 2024) (on file with Committee).

# SUBPOENA

## BY AUTHORITY OF THE HOUSE OF REPRESENTATIVES OF THE CONGRESS OF THE UNITED STATES OF AMERICA

*To* Mr. Mark Gallogly, Vice Chair, The Trustees of Columbia University

You are hereby commanded to be and appear before the
Committee on Education and the Workforce

of the House of Representatives of the United States at the place, date, and time specified below.

☑ **to produce the things identified on the attached schedule** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

> Place of production: 2176 Rayburn House Office Building, Washington, D.C. 20515
>
> Date: September 4, 2024                    Time: 12:00 p.m. EDT

☐ **to testify at a deposition** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

> Place of testimony: _____
>
> Date: _____    Time: _____

☐ **to testify at a hearing** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

> Place of testimony: _____
>
> Date: _____    Time: _____

*To* the U.S. Marshal Service, or any authorized Member or congressional staff

_____ to serve and make return.

Witness my hand and the seal of the House of Representatives of the United States, at

the city of Washington, D.C. this 20 day of August , 20 24 .

*Virginia Foxx*
*Chairman or Authorized Member*

Attest: *Kevin F. McCumber*

*Clerk*

# PROOF OF SERVICE

Subpoena for

    Mr. Mark Gallogly, Vice Chair, The Trustees of Columbia University

Address  Columbia University, Low Memorial Library, 116th St, New York, NY 10027

before the  Committee on Education and the Workforce

*U.S. House of Representatives*
*118th Congress*

---

Served by (print name) Mindy Barry

Title  General Counsel, U.S. House of Representatives Committee on Education and the Workforce

Manner of service  email

Date

Signature of Server

Address  2176 Rayburn House Office Building, Washington D.C. 20515

In accordance with the attached Schedule instructions and definitions, you, Mark Gallogly, Vice Chair, Board of Trustees, Columbia University, are required to produce all documents and communications, described below in your possession, custody, or control, in unredacted form:

1. All documents and communications, including but not limited to, text messages, emails, and electronic messages, from October 7, 2023 to present, referring or relating to antisemitism; targeting of Jews, Israelis, Zionists, or Zionism; and/or the Gaza Solidarity encampment;

2. All documents and communications related to meetings of the Board of Trustees from April 17, 2024-present, including any minutes, notes, summaries, and recordings;

3. All documents and communications related to meetings of the Board of Trustees since October 7, 2023, referring or relating to antisemitism; targeting of Jews, Israelis, Zionists, or Zionism; and/or Israel, including any minutes, notes, summaries, and recordings.

**Instructions for Responding to a Subpoena**

**U.S. House Committee on Education and the Workforce**

**118th Congress**

1. In complying with the U.S. House Committee on Education and the Workforce's (Committee) subpoena, produce all responsive documents that are in your possession, custody, or control, whether held by you or your past or present agents, employees, and representatives acting on your behalf. You also should produce documents that you have a legal right to obtain, that you have a right to copy, or to which you have access, as well as documents that you have placed in the temporary possession, custody, or control of any third party. Subpoenaed records, documents, data, or information should not be destroyed, modified, removed, transferred, or otherwise made inaccessible to the Committee.

2. In the event that any entity, organization, or person denoted in the subpoena has been or is also known by any other name or alias than herein denoted, the subpoena should be read also to include the alternative identification.

3. The Committee's preference is to receive documents in electronic form (i.e., CD, memory stick, or thumb drive) in lieu of paper productions.

4. Documents produced in electronic form should also be organized, identified, and indexed electronically.

5. Electronic document productions should be prepared according to the following standards:

   a. All documents derived from word processing programs, email applications, instant message logs, spreadsheets, and wherever else practicable should be produced in text searchable Portable Document Format (".pdf") format. Spreadsheets should also be provided in their native form. Audio and video files should be produced in their native format, although picture files associated with email or word processing programs should be produced in .pdf format along with the document it is contained in or to which it is attached.

   b. Document numbers in the load file should match document Bates numbers and file names.

   c. If the production is completed through a series of multiple partial productions, field names and file order in all load files should match.

   d. All electronic documents produced should include the following fields of metadata specific to each document:

BEGDOC, ENDDOC, TEXT, BEGATTACH, ENDATTACH, PAGECOUNT, CUSTODIAN, RECORDTYPE, DATE, TIME, SENTDATE, SENTTIME, BEGINDATE, BEGINTIME, ENDDATE, ENDTIME, AUTHOR, FROM, CC, TO, BCC, SUBJECT, TITLE, FILENAME, FILEEXT, FILESIZE, DATECREATED, TIMECREATED, DATELASTMOD, TIMELASTMOD, INTMSGID, INTMSGHEADER, NATIVELINK, INTFILPATH, EXCEPTION, BEGATTACH.

    e.  If any of the subpoenaed information is only reasonably available in machine-readable form (such as on a computer server, hard drive, or computer backup tape), consult with the Committee staff to determine the appropriate format in which to produce the information.

6.  Documents produced to the Committee should include an index describing the contents of the production.  To the extent more than one CD, hard drive, memory stick, thumb drive, box or folder is produced, each CD, hard drive, memory stick, thumb drive, box or folder should contain an index describing its contents.

7.  Documents produced in response to the subpoena should be produced together with copies of file labels, dividers or identifying markers with which they were associated when the subpoena was served.

8.  When producing documents, identify the paragraph in the Committee's schedule to which the documents respond.

9.  Do not refuse to produce documents on the basis that any other person or entity also possesses non-identical or identical copies of the same documents.

10.  This subpoena is continuing in nature and applies to any newly discovered information. Any record, document, compilation of data or information not produced because it has not been located or discovered by the return date, should be produced immediately upon subsequent location or discovery.

11.  All documents should be Bates-stamped sequentially and produced sequentially.  Each page should bear a unique Bates number.

12.  Two sets of documents should be delivered, one set to the Majority Staff and one set to the Minority Staff. When documents are produced to the Committee, production sets should be delivered to the Majority Staff in Room 2176 of the Rayburn House Office Building or provided electronically to Majority General Counsel at mindy.barry@mail.house.gov and the Minority Staff in Room 2101 of the Rayburn Office Building or provided electronically to Minority General Counsels at ilana.brunner@mail.house.gov and christian.haines@mail.house.gov.

13.  If compliance with the subpoena cannot be made in full by the date specified in the subpoena, compliance should be made to the extent possible by that date.  Notify Committee staff as soon as possible if full compliance cannot be made by the date

specified in the subpoena and provide an explanation for why full compliance is not possible by that date.

14. In the event that a document is withheld on the basis of privilege, provide a privilege log containing the following information concerning any such document: (a) the privilege asserted; (b) the type of document; (c) the general subject matter; (d) the date, author and addressee; and (e) the relationship of the author and addressee to each other.

15. In the event that a portion of a document is redacted on the basis of alleged privilege, provide a privilege log containing the following information concerning any such redaction: (a) the privilege asserted; (b) the location of the redaction in the document; (c) the general subject matter of the redacted material; (d) the date, author, and addressee of the document, if not readily apparent; and (e) the relationship of the author and addressee to each other.

16. If any document responsive to this subpoena was, but no longer is, in your possession, custody, or control, identify the document (stating its date, author, subject and recipients) and explain the circumstances under which the document ceased to be in your possession, custody, or control.

17. If a date or other descriptive detail set forth in this subpoena referring to a document is inaccurate, but the actual date or other descriptive detail is known to you or is otherwise apparent from the context of the subpoena, produce all documents which would be responsive as if the date or other descriptive detail were correct.

18. In the event a complete response requires the production of classified information, provide as much information in unclassified form as possible in your response and send all classified information under separate cover via the Office of Senate Security.

19. Unless otherwise specified, the period covered by this subpoena is from October 7, 2023, to the present.

20. Upon completion of the document production, you should submit a written certification, signed by you or your counsel, stating that:  (1) a diligent search has been completed of all documents in your possession, custody, or control which reasonably could contain responsive documents; and (2) all documents located during the search that are responsive have been produced to the Committee.

**Schedule Definitions**

21. The term "document" in the subpoena, the schedule, or the instructions means any written, recorded, or graphic matter of any nature whatsoever, regardless of how recorded, and whether original or copy, including, but not limited to, the following: memoranda, reports, expense reports, books, manuals, instructions, financial reports, working papers, records, notes, letters, notices, confirmations, telegrams, receipts, appraisals, pamphlets, magazines, newspapers, prospectuses, inter-office and intra-office communications, electronic mail (e-mail), contracts, cables, notations of any type of conversation, telephone calls, meetings or other communications, bulletins, printed matter, computer printouts, teletypes, invoices, transcripts, diaries, analyses, returns,

summaries, minutes, bills, accounts, estimates, projections, comparisons, messages, correspondence, press releases, circulars, financial statements, reviews, opinions, offers, studies and investigations, questionnaires and surveys, and work sheets (and all drafts, preliminary versions, alterations, modifications, revisions, changes, and amendments of any of the foregoing, as well as any attachments or appendices thereto), and graphic or oral records or representations of any kind (including without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, recordings, and motion pictures), and electronic, mechanical, and electric records or representations of any kind (including, without limitation, tapes, cassettes, disks, and recordings) and other written, printed, typed, or other graphic or recorded matter of any kind or nature, however produced or reproduced, and whether preserved in writing, film, tape, disk, videotape or otherwise. A document bearing any notation not a part of the original text is to be considered a separate document. A draft or non-identical copy is a separate document within the meaning of this term.

22. The term "communication" in the subpoena, the schedule, or the instructions means each manner or means of disclosure or exchange of information, regardless of means utilized, whether oral, electronic, by document or otherwise, and whether face to face, in meetings, by telephone, mail, telex, facsimile, email (desktop or mobile device), computer, text message, instant message, MMS or SMS message, regular mail, telexes, discussions, releases, delivery, or otherwise.

23. The terms "and" and "or" in the subpoena, the schedule, or the instructions should be construed broadly and either conjunctively or disjunctively to bring within the scope of this subpoena any information which might otherwise be construed to be outside its scope. The singular includes plural number, and vice versa. The masculine includes the feminine and neuter genders.

24. The terms "person" or "persons" in the subpoena, the schedule, or the instructions mean natural persons, firms, partnerships, associations, corporations, subsidiaries, divisions, departments, joint ventures, proprietorships, syndicates, or other legal, businesses or government entities, and all subsidiaries, affiliates, divisions, departments, branches, or other units thereof.

25. The term "identify" in the subpoena, the schedule, or the instructions, when used in a question about individuals, means to provide the following information: (a) the individual's complete name and title; and (b) the individual's business address and phone number.

26. The terms "referring" or "relating" in the subpoena, the schedule, or the instructions, when used separately or collectively, with respect to any given subject, mean anything that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is pertinent to that subject in any manner whatsoever.

27. The term "employee" in the subpoena, the schedule, or the instructions means agent, borrowed employee, casual employee, consultant, contractor, de facto employee, independent contractor, joint adventurer, loaned employee, part-time employee, permanent employee, provisional employee, or subcontractor.

28. The terms "you" and "your" in the subpoena, the schedule, or the instructions refer to yourself; your firm, corporation, partnership, association, department, or other legal or government entity, including all subsidiaries, divisions, branches, or other units thereof; and all members, officers, employees, agents, contractors, and all other individuals acting or purporting to act on your behalf, including all present and former members, officers, employees, agents, contractors, and all other individuals exercising or purporting to exercise discretion, make policy, and/or decisions.

#  #  #

MAJORITY MEMBERS:

VIRGINIA FOXX, NORTH CAROLINA,
*Chairwoman*

JOE WILSON, SOUTH CAROLINA
GLENN THOMPSON, PENNSYLVANIA
TIM WALBERG, MICHIGAN
GLENN GROTHMAN, WISCONSIN
ELISE M. STEFANIK, NEW YORK
RICK W. ALLEN, GEORGIA
JIM BANKS, INDIANA
JAMES COMER, KENTUCKY
LLOYD SMUCKER, PENNSYLVANIA
BURGESS OWENS, UTAH
BOB GOOD, VIRGINIA
LISA C. MCCLAIN, MICHIGAN
MARY E. MILLER, ILLINOIS
MICHELLE STEEL, CALIFORNIA
RON ESTES, KANSAS
JULIA LETLOW, LOUISIANA
KEVIN KILEY, CALIFORNIA
AARON BEAN, FLORIDA
ERIC BURLISON, MISSOURI
NATHANIEL MORAN, TEXAS
LORI CHAVEZ-DEREMER, OREGON
BRANDON WILLIAMS, NEW YORK
ERIN HOUCHIN, INDIANA
MICHAEL RULLI, OHIO



MINORITY MEMBERS:

ROBERT C. "BOBBY" SCOTT, VIRGINIA,
*Ranking Member*

RAÚL M. GRIJALVA, ARIZONA
JOE COURTNEY, CONNECTICUT
GREGORIO KILILI CAMACHO SABLAN,
NORTHERN MARIANA ISLANDS
FREDERICA S. WILSON, FLORIDA
SUZANNE BONAMICI, OREGON
MARK TAKANO, CALIFORNIA
ALMA S. ADAMS, NORTH CAROLINA
MARK DESAULNIER, CALIFORNIA
DONALD NORCROSS, NEW JERSEY
PRAMILA JAYAPAL, WASHINGTON
SUSAN WILD, PENNSYLVANIA
LUCY MCBATH, GEORGIA
JAHANA HAYES, CONNECTICUT
ILHAN OMAR, MINNESOTA
HALEY M. STEVENS, MICHIGAN
TERESA LEGER FERNÁNDEZ,
NEW MEXICO
KATHY E. MANNING, NORTH CAROLINA
FRANK J. MRVAN, INDIANA
JAMAAL BOWMAN, NEW YORK

# COMMITTEE ON
# EDUCATION AND THE WORKFORCE
## U.S. HOUSE OF REPRESENTATIVES
### 2176 RAYBURN HOUSE OFFICE BUILDING
### WASHINGTON, DC 20515-6100

August 21, 2024

Mr. David Greenwald, Co-Chair
The Trustees of Columbia University
211 Low Library
535 West 116th St, Mail Code 4324
New York, NY 10027

Dear Mr. Greenwald:

The U.S. House Committee on Education and the Workforce (Committee) is conducting an ongoing investigation into antisemitism in postsecondary institutions, including Columbia University.

On February 16, 2024, following months of deeply concerning evidence of pervasive and widespread antisemitism on Columbia's campus, the Committee formally launched an investigation into Columbia's response to antisemitism on its campus and sent the university a document request letter.[1] The requested documents are essential both in aiding the Committee's consideration of potential legislation to combat antisemitism in postsecondary institutions and towards fulfilling the Committee's oversight responsibility.

Since the initial inquiry, however, Columbia has failed to produce numerous priority items requested by the Committee, despite having months to comply and having received repeated follow-up requests.[2] In an August 1, 2024, letter, which outlined the history of the Committee's priority requests and Columbia's failure to fulfill them in detail, the Committee warned that the

---

[1] Letter from Virginia Foxx, Chairwoman, H. Comm. On Educ. & the Workforce, to Minouche Shafik, President, Columbia Univ., et. al. (Feb. 12, 2024).

[2] *See* E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Mar. 29, 2024) (on file with Committee); E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Apr. 26, 2024) (on file with Committee); E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Jun. 12, 2024) (on file with Committee); and E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Jul. 9, 2024) (on file with Committee).

Mr. David Greenwald
August 21, 2024
Page 2 of 3

University's "continued failure to produce these priority items is unacceptable, and if this is not promptly rectified, the Committee is prepared to compel their production."[3]

Among the requests that the Committee identified as priorities are certain items related to the Columbia Board of Trustees. Specifically, the Committee repeatedly requested text messages and electronic messages from identified custodians, including specified members of the Board of Trustees, as well as Board of Trustees meeting notes, summaries, and recordings.[4]

On April 26, following the establishment of the so-called Gaza Solidarity Encampment, which by Columbia's own admission created a hostile environment in violation of Title VI of the Civil Rights Act, the Committee sent Columbia an updated set of priority requests. These included certain of your communications, including text and other electronic messages, as well as meeting minutes, notes, and summaries from certain Board of Trustees meetings.[5] These requests were again made in a June 12 letter, which established a June 26 deadline.

The Committee renewed these priority requests for a third time on July 9, requesting "[a]ll notes, summaries, or recordings of meetings (whether formal or informal), of the Board of Trustees or any component thereof since 4/17/24" and "all communications since 4/17/24 responsive to the Committee's 3/29 and 4/26 requests, including emails, text messages, or other electronic messages."[6] Columbia failed to satisfy these requests by the July 19 deadline.

Following Columbia's failure to satisfy the requests by that date, the Committee sent the August 1 letter referenced above, requesting priority items including your communications and records of Board of Trustees meetings, specifically informal notes and summaries. The letter warned that the Committee was prepared to initiate compulsory process if its requests were not satisfied.[7] Throughout this process, the Committee repeatedly emphasized the importance of timely production of communications, and in particular of text messages from trustee priority custodians, including you.

The Committee also detailed its expectations in an email to Columbia, specifically requesting that the August 1 letter be transmitted to the entire Board of Trustees and noted that the

---

[3] Letter from Virginia Foxx, Chairwoman, H. Comm. On Educ. & the Workforce, to Minouche Shafik, President, Columbia Univ., et. al. (Aug. 1, 2024).
[4] E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Mar. 29, 2024) (on file with Committee)
[5] E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Apr. 26, 2024) (on file with Committee)
[6] E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Jul. 9, 2024) (on file with Committee).
[7] Letter from Virginia Foxx, Chairwoman, H. Comm. On Educ. & the Workforce, to Minouche Shafik, President, Columbia Univ., et. al. (Aug. 1, 2024).

Mr. David Greenwald
August 21, 2024
Page 3 of 3

Committee was prepared to subpoena Board of Trustees members beyond the co-chairs if the Committee's requests were not satisfied by the August 8 deadline.[8]

Despite the Committee's warnings, Columbia has failed to satisfy these requests. Columbia has failed to produce a substantial number of text and electronic messages from Trustees beyond the Co-Chairs, despite the Committee identifying Trustee priority custodians months ago. Further, Columbia failed to provide notes, summaries, recordings or other materials providing detailed contemporaneous records of Board meetings.

Given Columbia's continued failure to satisfy the priority requests outlined in the August 1 letter, the Committee now compels production of all responsive documents. Rule X of the Rules of the House of Representatives authorizes the Committee to conduct oversight of all matters involving "education… generally" to inform potential legislation. The outbreak of pervasive antisemitism in postsecondary education since the October 7, 2023, terror attack is within the Committee's jurisdiction and is a "subject on which legislation 'could be had'," and one upon which the Committee is actively considering proposed and potential legislation.

Attached is a subpoena compelling production of the documents and communications delineated in the attached schedule by 12:00 p.m. on September 4, 2024.

Sincerely,

*Virginia Foxx*

Virginia Foxx
Chairwoman
U.S. House Committee on Education
and the Workforce

---

[8] E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Aug. 1, 2024) (on file with Committee).

# SUBPOENA

## BY AUTHORITY OF THE HOUSE OF REPRESENTATIVES OF THE CONGRESS OF THE UNITED STATES OF AMERICA

*To*  Mr. David Greenwald, Chairman, Columbia University
_____

You are hereby commanded to be and appear before the

Committee on Education and the Workforce                                    ▾
_____

of the House of Representatives of the United States at the place, date, and time specified below.

☑ **to produce the things identified on the attached schedule** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

> Place of production: 2176 Rayburn House Office Building, Washington, D.C. 20515
>
> Date: September 4, 2024                              Time: 12:00 p.m. EDT

☐ **to testify at a deposition** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

> Place of testimony: _____
>
> Date: _____                              Time: _____

☐ **to testify at a hearing** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

> Place of testimony: _____
>
> Date: _____                              Time: _____

*To* the U.S. Marshal Service, or any authorized Member or congressional staff
_____
_____ to serve and make return.

Witness my hand and the seal of the House of Representatives of the United States, at

the city of Washington, D.C. this  20  day of  August  , 20 24.

*Virginia Foxx*
*Chairman or Authorized Member*

Attest: *Kevin F. McCumber*

*Clerk*

# PROOF OF SERVICE

Subpoena for
     Mr. David Greenwald, Chairman, Columbia University

Address  Columbia University, Low Memorial Library, 116th St, New York, NY 10027

before the  Committee on Education and the Workforce

*U.S. House of Representatives*
*118th Congress*

---

Served by (print name) Mindy Barry

Title  General Counsel, U.S. House of Representatives Committee on Education and the Workforce

Manner of service  email

Date

Signature of Server

Address  2176 Rayburn House Office Building, Washington D.C. 20515

In accordance with the attached Schedule instructions and definitions, you, David Greenwald, Co-Chair, Board of Trustees, Columbia University, are required to produce all documents and communications, described below in your possession, custody, or control, in unredacted form:

1.  All documents and communications, including but not limited to, text messages, emails, and electronic messages, from October 7, 2023 to present, referring or relating to antisemitism; targeting of Jews, Israelis, Zionists, or Zionism; and/or the Gaza Solidarity encampment;

2.  All documents and communications related to meetings of the Board of Trustees from April 17, 2024-present, including any minutes, notes, summaries, and recordings;

3.  All documents and communications related to meetings of the Board of Trustees since October 7, 2023, referring or relating to antisemitism; targeting of Jews, Israelis, Zionists, or Zionism; and/or Israel, including any minutes, notes, summaries, and recordings.

**Instructions for Responding to a Subpoena**

**U.S. House Committee on Education and the Workforce**

**118th Congress**

1.  In complying with the U.S. House Committee on Education and the Workforce's (Committee) subpoena, produce all responsive documents that are in your possession, custody, or control, whether held by you or your past or present agents, employees, and representatives acting on your behalf.  You also should produce documents that you have a legal right to obtain, that you have a right to copy, or to which you have access, as well as documents that you have placed in the temporary possession, custody, or control of any third party.  Subpoenaed records, documents, data, or information should not be destroyed, modified, removed, transferred, or otherwise made inaccessible to the Committee.

2.  In the event that any entity, organization, or person denoted in the subpoena has been or is also known by any other name or alias than herein denoted, the subpoena should be read also to include the alternative identification.

3.  The Committee's preference is to receive documents in electronic form (i.e., CD, memory stick, or thumb drive) in lieu of paper productions.

4.  Documents produced in electronic form should also be organized, identified, and indexed electronically.

5.  Electronic document productions should be prepared according to the following standards:

    a.  All documents derived from word processing programs, email applications, instant message logs, spreadsheets, and wherever else practicable should be produced in text searchable Portable Document Format (".pdf") format. Spreadsheets should also be provided in their native form.  Audio and video files should be produced in their native format, although picture files associated with email or word processing programs should be produced in .pdf format along with the document it is contained in or to which it is attached.

    b.  Document numbers in the load file should match document Bates numbers and file names.

    c.  If the production is completed through a series of multiple partial productions, field names and file order in all load files should match.

    d.  All electronic documents produced should include the following fields of metadata specific to each document:

BEGDOC, ENDDOC, TEXT, BEGATTACH, ENDATTACH, PAGECOUNT, CUSTODIAN, RECORDTYPE, DATE, TIME, SENTDATE, SENTTIME, BEGINDATE, BEGINTIME, ENDDATE, ENDTIME, AUTHOR, FROM, CC, TO, BCC, SUBJECT, TITLE, FILENAME, FILEEXT, FILESIZE, DATECREATED, TIMECREATED, DATELASTMOD, TIMELASTMOD, INTMSGID, INTMSGHEADER, NATIVELINK, INTFILPATH, EXCEPTION, BEGATTACH.

    e. If any of the subpoenaed information is only reasonably available in machine-readable form (such as on a computer server, hard drive, or computer backup tape), consult with the Committee staff to determine the appropriate format in which to produce the information.

6. Documents produced to the Committee should include an index describing the contents of the production.  To the extent more than one CD, hard drive, memory stick, thumb drive, box or folder is produced, each CD, hard drive, memory stick, thumb drive, box or folder should contain an index describing its contents.

7. Documents produced in response to the subpoena should be produced together with copies of file labels, dividers or identifying markers with which they were associated when the subpoena was served.

8. When producing documents, identify the paragraph in the Committee's schedule to which the documents respond.

9. Do not refuse to produce documents on the basis that any other person or entity also possesses non-identical or identical copies of the same documents.

10. This subpoena is continuing in nature and applies to any newly discovered information. Any record, document, compilation of data or information not produced because it has not been located or discovered by the return date, should be produced immediately upon subsequent location or discovery.

11. All documents should be Bates-stamped sequentially and produced sequentially.  Each page should bear a unique Bates number.

12. Two sets of documents should be delivered, one set to the Majority Staff and one set to the Minority Staff. When documents are produced to the Committee, production sets should be delivered to the Majority Staff in Room 2176 of the Rayburn House Office Building or provided electronically to Majority General Counsel at mindy.barry@mail.house.gov and the Minority Staff in Room 2101 of the Rayburn Office Building or provided electronically to Minority General Counsels at ilana.brunner@mail.house.gov and christian.haines@mail.house.gov.

13. If compliance with the subpoena cannot be made in full by the date specified in the subpoena, compliance should be made to the extent possible by that date.  Notify Committee staff as soon as possible if full compliance cannot be made by the date

specified in the subpoena and provide an explanation for why full compliance is not possible by that date.

14. In the event that a document is withheld on the basis of privilege, provide a privilege log containing the following information concerning any such document: (a) the privilege asserted; (b) the type of document; (c) the general subject matter; (d) the date, author and addressee; and (e) the relationship of the author and addressee to each other.

15. In the event that a portion of a document is redacted on the basis of alleged privilege, provide a privilege log containing the following information concerning any such redaction: (a) the privilege asserted; (b) the location of the redaction in the document; (c) the general subject matter of the redacted material; (d) the date, author, and addressee of the document, if not readily apparent; and (e) the relationship of the author and addressee to each other.

16. If any document responsive to this subpoena was, but no longer is, in your possession, custody, or control, identify the document (stating its date, author, subject and recipients) and explain the circumstances under which the document ceased to be in your possession, custody, or control.

17. If a date or other descriptive detail set forth in this subpoena referring to a document is inaccurate, but the actual date or other descriptive detail is known to you or is otherwise apparent from the context of the subpoena, produce all documents which would be responsive as if the date or other descriptive detail were correct.

18. In the event a complete response requires the production of classified information, provide as much information in unclassified form as possible in your response and send all classified information under separate cover via the Office of Senate Security.

19. Unless otherwise specified, the period covered by this subpoena is from October 7, 2023, to the present.

20. Upon completion of the document production, you should submit a written certification, signed by you or your counsel, stating that: (1) a diligent search has been completed of all documents in your possession, custody, or control which reasonably could contain responsive documents; and (2) all documents located during the search that are responsive have been produced to the Committee.

**Schedule Definitions**

21. The term "document" in the subpoena, the schedule, or the instructions means any written, recorded, or graphic matter of any nature whatsoever, regardless of how recorded, and whether original or copy, including, but not limited to, the following: memoranda, reports, expense reports, books, manuals, instructions, financial reports, working papers, records, notes, letters, notices, confirmations, telegrams, receipts, appraisals, pamphlets, magazines, newspapers, prospectuses, inter-office and intra-office communications, electronic mail (e-mail), contracts, cables, notations of any type of conversation, telephone calls, meetings or other communications, bulletins, printed matter, computer printouts, teletypes, invoices, transcripts, diaries, analyses, returns,

summaries, minutes, bills, accounts, estimates, projections, comparisons, messages, correspondence, press releases, circulars, financial statements, reviews, opinions, offers, studies and investigations, questionnaires and surveys, and work sheets (and all drafts, preliminary versions, alterations, modifications, revisions, changes, and amendments of any of the foregoing, as well as any attachments or appendices thereto), and graphic or oral records or representations of any kind (including without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, recordings, and motion pictures), and electronic, mechanical, and electric records or representations of any kind (including, without limitation, tapes, cassettes, disks, and recordings) and other written, printed, typed, or other graphic or recorded matter of any kind or nature, however produced or reproduced, and whether preserved in writing, film, tape, disk, videotape or otherwise.  A document bearing any notation not a part of the original text is to be considered a separate document.  A draft or non-identical copy is a separate document within the meaning of this term.

22. The term "communication" in the subpoena, the schedule, or the instructions means each manner or means of disclosure or exchange of information, regardless of means utilized, whether oral, electronic, by document or otherwise, and whether face to face, in meetings, by telephone, mail, telex, facsimile, email (desktop or mobile device), computer, text message, instant message, MMS or SMS message, regular mail, telexes, discussions, releases, delivery, or otherwise.

23. The terms "and" and "or" in the subpoena, the schedule, or the instructions should be construed broadly and either conjunctively or disjunctively to bring within the scope of this subpoena any information which might otherwise be construed to be outside its scope.  The singular includes plural number, and vice versa.  The masculine includes the feminine and neuter genders.

24. The terms "person" or "persons" in the subpoena, the schedule, or the instructions mean natural persons, firms, partnerships, associations, corporations, subsidiaries, divisions, departments, joint ventures, proprietorships, syndicates, or other legal, businesses or government entities, and all subsidiaries, affiliates, divisions, departments, branches, or other units thereof.

25. The term "identify" in the subpoena, the schedule, or the instructions, when used in a question about individuals, means to provide the following information: (a) the individual's complete name and title; and (b) the individual's business address and phone number.

26. The terms "referring" or "relating" in the subpoena, the schedule, or the instructions, when used separately or collectively, with respect to any given subject, mean anything that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is pertinent to that subject in any manner whatsoever.

27. The term "employee" in the subpoena, the schedule, or the instructions means agent, borrowed employee, casual employee, consultant, contractor, de facto employee, independent contractor, joint adventurer, loaned employee, part-time employee, permanent employee, provisional employee, or subcontractor.

28. The terms "you" and "your" in the subpoena, the schedule, or the instructions refer to yourself; your firm, corporation, partnership, association, department, or other legal or government entity, including all subsidiaries, divisions, branches, or other units thereof; and all members, officers, employees, agents, contractors, and all other individuals acting or purporting to act on your behalf, including all present and former members, officers, employees, agents, contractors, and all other individuals exercising or purporting to exercise discretion, make policy, and/or decisions.

# # #

MAJORITY MEMBERS:

VIRGINIA FOXX, NORTH CAROLINA,
*Chairwoman*

JOE WILSON, SOUTH CAROLINA
GLENN THOMPSON, PENNSYLVANIA
TIM WALBERG, MICHIGAN
GLENN GROTHMAN, WISCONSIN
ELISE M. STEFANIK, NEW YORK
RICK W. ALLEN, GEORGIA
JIM BANKS, INDIANA
JAMES COMER, KENTUCKY
LLOYD SMUCKER, PENNSYLVANIA
BURGESS OWENS, UTAH
BOB GOOD, VIRGINIA
LISA C. MCCLAIN, MICHIGAN
MARY E. MILLER, ILLINOIS
MICHELLE STEEL, CALIFORNIA
RON ESTES, KANSAS
JULIA LETLOW, LOUISIANA
KEVIN KILEY, CALIFORNIA
AARON BEAN, FLORIDA
ERIC BURLISON, MISSOURI
NATHANIEL MORAN, TEXAS
LORI CHAVEZ-DEREMER, OREGON
BRANDON WILLIAMS, NEW YORK
ERIN HOUCHIN, INDIANA
MICHAEL RULLI, OHIO



MINORITY MEMBERS:

ROBERT C. "BOBBY" SCOTT, VIRGINIA,
*Ranking Member*

RAÚL M. GRIJALVA, ARIZONA
JOE COURTNEY, CONNECTICUT
GREGORIO KILILI CAMACHO SABLAN,
NORTHERN MARIANA ISLANDS
FREDERICA S. WILSON, FLORIDA
SUZANNE BONAMICI, OREGON
MARK TAKANO, CALIFORNIA
ALMA S. ADAMS, NORTH CAROLINA
MARK DESAULNIER, CALIFORNIA
DONALD NORCROSS, NEW JERSEY
PRAMILA JAYAPAL, WASHINGTON
SUSAN WILD, PENNSYLVANIA
LUCY MCBATH, GEORGIA
JAHANA HAYES, CONNECTICUT
ILHAN OMAR, MINNESOTA
HALEY M. STEVENS, MICHIGAN
TERESA LEGER FERNÁNDEZ,
NEW MEXICO
KATHY E. MANNING, NORTH CAROLINA
FRANK J. MRVAN, INDIANA
JAMAAL BOWMAN, NEW YORK

## COMMITTEE ON
## EDUCATION AND THE WORKFORCE
### U.S. HOUSE OF REPRESENTATIVES
### 2176 RAYBURN HOUSE OFFICE BUILDING
### WASHINGTON, DC 20515-6100

August 21, 2024

Ms. Wanda M. Holland Greene, Vice Chair
The Trustees of Columbia University
211 Low Library
535 West 116th St, Mail Code 4324
New York, NY 10027

Dear Ms. Holland Greene:

The U.S. House Committee on Education and the Workforce (Committee) is conducting an
ongoing investigation into antisemitism in postsecondary institutions, including Columbia
University.

On February 16, 2024, following months of deeply concerning evidence of pervasive and
widespread antisemitism on Columbia's campus, the Committee formally launched an
investigation into Columbia's response to antisemitism on its campus and sent the university a
document request letter.[1] The requested documents are essential both in aiding the Committee's
consideration of potential legislation to combat antisemitism in postsecondary institutions and
towards fulfilling the Committee's oversight responsibility.

Since the initial inquiry, however, Columbia has failed to produce numerous priority items
requested by the Committee, despite having months to comply and having received repeated
follow-up requests.[2] In an August 1, 2024, letter, which outlined the history of the Committee's
priority requests and Columbia's failure to fulfill them in detail, the Committee warned that the

---

[1] Letter from Virginia Foxx, Chairwoman, H. Comm. On Educ. & the Workforce, to Minouche Shafik, President,
Columbia Univ., et. al. (Feb. 12, 2024).
[2] *See* E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Mar. 29, 2024) (on file with
Committee); E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Apr. 26, 2024) (on
file with Committee); E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Jun. 12,
2024) (on file with Committee); and E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia
Univ. (Jul. 9, 2024) (on file with Committee).

Ms. Wanda M. Holland Greene
August 21, 2024
Page 2 of 3

University's "continued failure to produce these priority items is unacceptable, and if this is not promptly rectified, the Committee is prepared to compel their production."[3]

Among the requests that the Committee identified as priorities are certain items related to the Columbia Board of Trustees. Specifically, the Committee repeatedly requested text messages and electronic messages from identified custodians, including specified members of the Board of Trustees, as well as Board of Trustees meeting notes, summaries, and recordings.[4]

On April 26, following the establishment of the so-called Gaza Solidarity Encampment, which by Columbia's own admission created a hostile environment in violation of Title VI of the Civil Rights Act, the Committee sent Columbia an updated set of priority requests. These included certain of your communications, including text and other electronic messages, as well as meeting minutes, notes, and summaries from certain Board of Trustees meetings.[5] These requests were again made in a June 12 letter, which established a June 26 deadline.

The Committee renewed these priority requests for a third time on July 9, requesting "[a]ll notes, summaries, or recordings of meetings (whether formal or informal), of the Board of Trustees or any component thereof since 4/17/24" and "all communications since 4/17/24 responsive to the Committee's 3/29 and 4/26 requests, including emails, text messages, or other electronic messages."[6] Columbia failed to satisfy these requests by the July 19 deadline.

Following Columbia's failure to satisfy the requests by that date, the Committee sent the August 1 letter referenced above, requesting priority items including your communications and records of Board of Trustees meetings, specifically informal notes and summaries. The letter warned that the Committee was prepared to initiate compulsory process if its requests were not satisfied.[7] Throughout this process, the Committee repeatedly emphasized the importance of timely production of communications, and in particular of text messages from trustee priority custodians, including you.

The Committee also detailed its expectations in an email to Columbia, specifically requesting that the August 1 letter be transmitted to the entire Board of Trustees and noted that the

---

[3] Letter from Virginia Foxx, Chairwoman, H. Comm. On Educ. & the Workforce, to Minouche Shafik, President, Columbia Univ., et. al. (Aug. 1, 2024).
[4] E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Mar. 29, 2024) (on file with Committee)
[5] E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Apr. 26, 2024) (on file with Committee)
[6] E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Jul. 9, 2024) (on file with Committee).
[7] Letter from Virginia Foxx, Chairwoman, H. Comm. On Educ. & the Workforce, to Minouche Shafik, President, Columbia Univ., et. al. (Aug. 1, 2024).

Ms. Wanda M. Holland Greene
August 21, 2024
Page 3 of 3

Committee was prepared to subpoena Board of Trustees members beyond the co-chairs if the Committee's requests were not satisfied by the August 8 deadline.[8]

Despite the Committee's warnings, Columbia has failed to satisfy these requests. Columbia has failed to produce a substantial number of text and electronic messages from Trustees beyond the Co-Chairs, despite the Committee identifying Trustee priority custodians months ago. Further, Columbia failed to provide notes, summaries, recordings or other materials providing detailed contemporaneous records of Board meetings.

Given Columbia's continued failure to satisfy the priority requests outlined in the August 1 letter, the Committee now compels production of all responsive documents. Rule X of the Rules of the House of Representatives authorizes the Committee to conduct oversight of all matters involving "education… generally" to inform potential legislation. The outbreak of pervasive antisemitism in postsecondary education since the October 7, 2023, terror attack is within the Committee's jurisdiction and is a "subject on which legislation 'could be had'," and one upon which the Committee is actively considering proposed and potential legislation.

Attached is a subpoena compelling production of the documents and communications delineated in the attached schedule by 12:00 p.m. on September 4, 2024.

Sincerely,

*Virginia Foxx*

Virginia Foxx
Chairwoman
U.S. House Committee on Education
and the Workforce

---

[8]  E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Aug. 1, 2024) (on file with Committee).

# SUBPOENA

## BY AUTHORITY OF THE HOUSE OF REPRESENTATIVES OF THE CONGRESS OF THE UNITED STATES OF AMERICA

*To* Ms. Wanda M. Holland Greene, Vice Chair, The Trustees of Columbia University

You are hereby commanded to be and appear before the

Committee on Education and the Workforce

of the House of Representatives of the United States at the place, date, and time specified below.

☑ **to produce the things identified on the attached schedule** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

Place of production: 2176 Rayburn House Office Building, Washington, D.C. 20515

Date: September 4, 2024                           Time: 12:00 p.m. EDT

☐ **to testify at a deposition** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

Place of testimony: _____

Date: _____           Time: _____

☐ **to testify at a hearing** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

Place of testimony: _____

Date: _____           Time: _____

*To* the U.S. Marshal Service, or any authorized Member or congressional staff _____

_____ to serve and make return.

Witness my hand and the seal of the House of Representatives of the United States, at

the city of Washington, D.C. this ___20___ day of ___August___, 20_24_.

*Virginia Foxx*
*Chairman or Authorized Member*

Attest: *Kevin F. McCumber*

*Clerk*

## PROOF OF SERVICE

Subpoena for

Ms. Wanda M. Holland Greene, Vice Chair, The Trustees of Columbia University

Address  Columbia University, Low Memorial Library, 116th St, New York, NY 10027

before the  Committee on Education and the Workforce

*U.S. House of Representatives*
*118th Congress*

---

Served by (print name)  Mindy Barry

Title  General Counsel, U.S. House of Representatives Committee on Education and the Workforce

Manner of service  email

Date

Signature of Server

Address  2176 Rayburn House Office Building, Washington D.C. 20515

In accordance with the attached Schedule instructions and definitions, you, Wanda Holland Greene, Vice Chair, Board of Trustees, Columbia University, are required to produce all documents and communications, described below in your possession, custody, or control, in unredacted form:

1. All documents and communications, including but not limited to, text messages, emails, and electronic messages, from October 7, 2023 to present, referring or relating to antisemitism; targeting of Jews, Israelis, Zionists, or Zionism; and/or the Gaza Solidarity encampment;

2. All documents and communications related to meetings of the Board of Trustees from April 17, 2024-present, including any minutes, notes, summaries, and recordings;

3. All documents and communications related to meetings of the Board of Trustees since October 7, 2023, referring or relating to antisemitism; targeting of Jews, Israelis, Zionists, or Zionism; and/or Israel, including any minutes, notes, summaries, and recordings.

**Instructions for Responding to a Subpoena**

**U.S. House Committee on Education and the Workforce**

**118th Congress**

1. In complying with the U.S. House Committee on Education and the Workforce's (Committee) subpoena, produce all responsive documents that are in your possession, custody, or control, whether held by you or your past or present agents, employees, and representatives acting on your behalf. You also should produce documents that you have a legal right to obtain, that you have a right to copy, or to which you have access, as well as documents that you have placed in the temporary possession, custody, or control of any third party. Subpoenaed records, documents, data, or information should not be destroyed, modified, removed, transferred, or otherwise made inaccessible to the Committee.

2. In the event that any entity, organization, or person denoted in the subpoena has been or is also known by any other name or alias than herein denoted, the subpoena should be read also to include the alternative identification.

3. The Committee's preference is to receive documents in electronic form (i.e., CD, memory stick, or thumb drive) in lieu of paper productions.

4. Documents produced in electronic form should also be organized, identified, and indexed electronically.

5. Electronic document productions should be prepared according to the following standards:

   a. All documents derived from word processing programs, email applications, instant message logs, spreadsheets, and wherever else practicable should be produced in text searchable Portable Document Format (".pdf") format. Spreadsheets should also be provided in their native form. Audio and video files should be produced in their native format, although picture files associated with email or word processing programs should be produced in .pdf format along with the document it is contained in or to which it is attached.

   b. Document numbers in the load file should match document Bates numbers and file names.

   c. If the production is completed through a series of multiple partial productions, field names and file order in all load files should match.

   d. All electronic documents produced should include the following fields of metadata specific to each document:

BEGDOC, ENDDOC, TEXT, BEGATTACH, ENDATTACH, PAGECOUNT, CUSTODIAN, RECORDTYPE, DATE, TIME, SENTDATE, SENTTIME, BEGINDATE, BEGINTIME, ENDDATE, ENDTIME, AUTHOR, FROM, CC, TO, BCC, SUBJECT, TITLE, FILENAME, FILEEXT, FILESIZE, DATECREATED, TIMECREATED, DATELASTMOD, TIMELASTMOD, INTMSGID, INTMSGHEADER, NATIVELINK, INTFILPATH, EXCEPTION, BEGATTACH.

    e.  If any of the subpoenaed information is only reasonably available in machine-readable form (such as on a computer server, hard drive, or computer backup tape), consult with the Committee staff to determine the appropriate format in which to produce the information.

6.  Documents produced to the Committee should include an index describing the contents of the production.  To the extent more than one CD, hard drive, memory stick, thumb drive, box or folder is produced, each CD, hard drive, memory stick, thumb drive, box or folder should contain an index describing its contents.

7.  Documents produced in response to the subpoena should be produced together with copies of file labels, dividers or identifying markers with which they were associated when the subpoena was served.

8.  When producing documents, identify the paragraph in the Committee's schedule to which the documents respond.

9.  Do not refuse to produce documents on the basis that any other person or entity also possesses non-identical or identical copies of the same documents.

10.  This subpoena is continuing in nature and applies to any newly discovered information. Any record, document, compilation of data or information not produced because it has not been located or discovered by the return date, should be produced immediately upon subsequent location or discovery.

11.  All documents should be Bates-stamped sequentially and produced sequentially.  Each page should bear a unique Bates number.

12.  Two sets of documents should be delivered, one set to the Majority Staff and one set to the Minority Staff. When documents are produced to the Committee, production sets should be delivered to the Majority Staff in Room 2176 of the Rayburn House Office Building or provided electronically to Majority General Counsel at mindy.barry@mail.house.gov and the Minority Staff in Room 2101 of the Rayburn Office Building or provided electronically to Minority General Counsels at ilana.brunner@mail.house.gov and christian.haines@mail.house.gov.

13.  If compliance with the subpoena cannot be made in full by the date specified in the subpoena, compliance should be made to the extent possible by that date.  Notify Committee staff as soon as possible if full compliance cannot be made by the date

specified in the subpoena and provide an explanation for why full compliance is not possible by that date.

14. In the event that a document is withheld on the basis of privilege, provide a privilege log containing the following information concerning any such document: (a) the privilege asserted; (b) the type of document; (c) the general subject matter; (d) the date, author and addressee; and (e) the relationship of the author and addressee to each other.

15. In the event that a portion of a document is redacted on the basis of alleged privilege, provide a privilege log containing the following information concerning any such redaction: (a) the privilege asserted; (b) the location of the redaction in the document; (c) the general subject matter of the redacted material; (d) the date, author, and addressee of the document, if not readily apparent; and (e) the relationship of the author and addressee to each other.

16. If any document responsive to this subpoena was, but no longer is, in your possession, custody, or control, identify the document (stating its date, author, subject and recipients) and explain the circumstances under which the document ceased to be in your possession, custody, or control.

17. If a date or other descriptive detail set forth in this subpoena referring to a document is inaccurate, but the actual date or other descriptive detail is known to you or is otherwise apparent from the context of the subpoena, produce all documents which would be responsive as if the date or other descriptive detail were correct.

18. In the event a complete response requires the production of classified information, provide as much information in unclassified form as possible in your response and send all classified information under separate cover via the Office of Senate Security.

19. Unless otherwise specified, the period covered by this subpoena is from October 7, 2023, to the present.

20. Upon completion of the document production, you should submit a written certification, signed by you or your counsel, stating that:  (1) a diligent search has been completed of all documents in your possession, custody, or control which reasonably could contain responsive documents; and (2) all documents located during the search that are responsive have been produced to the Committee.

**Schedule Definitions**

21. The term "document" in the subpoena, the schedule, or the instructions means any written, recorded, or graphic matter of any nature whatsoever, regardless of how recorded, and whether original or copy, including, but not limited to, the following: memoranda, reports, expense reports, books, manuals, instructions, financial reports, working papers, records, notes, letters, notices, confirmations, telegrams, receipts, appraisals, pamphlets, magazines, newspapers, prospectuses, inter-office and intra-office communications, electronic mail (e-mail), contracts, cables, notations of any type of conversation, telephone calls, meetings or other communications, bulletins, printed matter, computer printouts, teletypes, invoices, transcripts, diaries, analyses, returns,

summaries, minutes, bills, accounts, estimates, projections, comparisons, messages, correspondence, press releases, circulars, financial statements, reviews, opinions, offers, studies and investigations, questionnaires and surveys, and work sheets (and all drafts, preliminary versions, alterations, modifications, revisions, changes, and amendments of any of the foregoing, as well as any attachments or appendices thereto), and graphic or oral records or representations of any kind (including without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, recordings, and motion pictures), and electronic, mechanical, and electric records or representations of any kind (including, without limitation, tapes, cassettes, disks, and recordings) and other written, printed, typed, or other graphic or recorded matter of any kind or nature, however produced or reproduced, and whether preserved in writing, film, tape, disk, videotape or otherwise.  A document bearing any notation not a part of the original text is to be considered a separate document.  A draft or non-identical copy is a separate document within the meaning of this term.

22. The term "communication" in the subpoena, the schedule, or the instructions means each manner or means of disclosure or exchange of information, regardless of means utilized, whether oral, electronic, by document or otherwise, and whether face to face, in meetings, by telephone, mail, telex, facsimile, email (desktop or mobile device), computer, text message, instant message, MMS or SMS message, regular mail, telexes, discussions, releases, delivery, or otherwise.

23. The terms "and" and "or" in the subpoena, the schedule, or the instructions should be construed broadly and either conjunctively or disjunctively to bring within the scope of this subpoena any information which might otherwise be construed to be outside its scope.  The singular includes plural number, and vice versa.  The masculine includes the feminine and neuter genders.

24. The terms "person" or "persons" in the subpoena, the schedule, or the instructions mean natural persons, firms, partnerships, associations, corporations, subsidiaries, divisions, departments, joint ventures, proprietorships, syndicates, or other legal, businesses or government entities, and all subsidiaries, affiliates, divisions, departments, branches, or other units thereof.

25. The term "identify" in the subpoena, the schedule, or the instructions, when used in a question about individuals, means to provide the following information: (a) the individual's complete name and title; and (b) the individual's business address and phone number.

26. The terms "referring" or "relating" in the subpoena, the schedule, or the instructions, when used separately or collectively, with respect to any given subject, mean anything that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is pertinent to that subject in any manner whatsoever.

27. The term "employee" in the subpoena, the schedule, or the instructions means agent, borrowed employee, casual employee, consultant, contractor, de facto employee, independent contractor, joint adventurer, loaned employee, part-time employee, permanent employee, provisional employee, or subcontractor.

28. The terms "you" and "your" in the subpoena, the schedule, or the instructions refer to yourself; your firm, corporation, partnership, association, department, or other legal or government entity, including all subsidiaries, divisions, branches, or other units thereof; and all members, officers, employees, agents, contractors, and all other individuals acting or purporting to act on your behalf, including all present and former members, officers, employees, agents, contractors, and all other individuals exercising or purporting to exercise discretion, make policy, and/or decisions.

# # #



MAJORITY MEMBERS:

VIRGINIA FOXX, NORTH CAROLINA,
*Chairwoman*

JOE WILSON, SOUTH CAROLINA
GLENN THOMPSON, PENNSYLVANIA
TIM WALBERG, MICHIGAN
GLENN GROTHMAN, WISCONSIN
ELISE M. STEFANIK, NEW YORK
RICK W. ALLEN, GEORGIA
JIM BANKS, INDIANA
JAMES COMER, KENTUCKY
LLOYD SMUCKER, PENNSYLVANIA
BURGESS OWENS, UTAH
BOB GOOD, VIRGINIA
LISA C. MCCLAIN, MICHIGAN
MARY E. MILLER, ILLINOIS
MICHELLE STEEL, CALIFORNIA
RON ESTES, KANSAS
JULIA LETLOW, LOUISIANA
KEVIN KILEY, CALIFORNIA
AARON BEAN, FLORIDA
ERIC BURLISON, MISSOURI
NATHANIEL MORAN, TEXAS
LORI CHAVEZ-DEREMER, OREGON
BRANDON WILLIAMS, NEW YORK
ERIN HOUCHIN, INDIANA
MICHAEL RULLI, OHIO

MINORITY MEMBERS:

ROBERT C. "BOBBY" SCOTT, VIRGINIA,
*Ranking Member*

RAÚL M. GRIJALVA, ARIZONA
JOE COURTNEY, CONNECTICUT
GREGORIO KILILI CAMACHO SABLAN,
NORTHERN MARIANA ISLANDS
FREDERICA S. WILSON, FLORIDA
SUZANNE BONAMICI, OREGON
MARK TAKANO, CALIFORNIA
ALMA S. ADAMS, NORTH CAROLINA
MARK DESAULNIER, CALIFORNIA
DONALD NORCROSS, NEW JERSEY
PRAMILA JAYAPAL, WASHINGTON
SUSAN WILD, PENNSYLVANIA
LUCY MCBATH, GEORGIA
JAHANA HAYES, CONNECTICUT
ILHAN OMAR, MINNESOTA
HALEY M. STEVENS, MICHIGAN
TERESA LEGER FERNÁNDEZ,
NEW MEXICO
KATHY E. MANNING, NORTH CAROLINA
FRANK J. MRVAN, INDIANA
JAMAAL BOWMAN, NEW YORK

## COMMITTEE ON
## EDUCATION AND THE WORKFORCE
U.S. HOUSE OF REPRESENTATIVES
2176 RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20515-6100

August 21, 2024

Ms. Claire Shipman, Vice Chair
The Trustees of Columbia University
211 Low Library
535 West 116th St, Mail Code 4324
New York, NY 10027

Dear Ms. Shipman:

The U.S. House Committee on Education and the Workforce (Committee) is conducting an ongoing investigation into antisemitism in postsecondary institutions, including Columbia University.

On February 16, 2024, following months of deeply concerning evidence of pervasive and widespread antisemitism on Columbia's campus, the Committee formally launched an investigation into Columbia's response to antisemitism on its campus and sent the university a document request letter.[1] The requested documents are essential both in aiding the Committee's consideration of potential legislation to combat antisemitism in postsecondary institutions and towards fulfilling the Committee's oversight responsibility.

Since the initial inquiry, however, Columbia has failed to produce numerous priority items requested by the Committee, despite having months to comply and having received repeated follow-up requests.[2] In an August 1, 2024, letter, which outlined the history of the Committee's priority requests and Columbia's failure to fulfill them in detail, the Committee warned that the

---

[1] Letter from Virginia Foxx, Chairwoman, H. Comm. On Educ. & the Workforce, to Minouche Shafik, President, Columbia Univ., et. al. (Feb. 12, 2024).

[2] *See* E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Mar. 29, 2024) (on file with Committee); E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Apr. 26, 2024) (on file with Committee); E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Jun. 12, 2024) (on file with Committee); and E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Jul. 9, 2024) (on file with Committee).

Ms. Claire Shipman
August 21, 2024
Page 2 of 3

University's "continued failure to produce these priority items is unacceptable, and if this is not promptly rectified, the Committee is prepared to compel their production."[3]

Among the requests that the Committee identified as priorities are certain items related to the Columbia Board of Trustees. Specifically, the Committee repeatedly requested text messages and electronic messages from identified custodians, including specified members of the Board of Trustees, as well as Board of Trustees meeting notes, summaries, and recordings.[4]

On April 26, following the establishment of the so-called Gaza Solidarity Encampment, which by Columbia's own admission created a hostile environment in violation of Title VI of the Civil Rights Act, the Committee sent Columbia an updated set of priority requests. These included certain of your communications, including text and other electronic messages, as well as meeting minutes, notes, and summaries from certain Board of Trustees meetings.[5] These requests were again made in a June 12 letter, which established a June 26 deadline.

The Committee renewed these priority requests for a third time on July 9, requesting "[a]ll notes, summaries, or recordings of meetings (whether formal or informal), of the Board of Trustees or any component thereof since 4/17/24" and "all communications since 4/17/24 responsive to the Committee's 3/29 and 4/26 requests, including emails, text messages, or other electronic messages."[6] Columbia failed to satisfy these requests by the July 19 deadline.

Following Columbia's failure to satisfy the requests by that date, the Committee sent the August 1 letter referenced above, requesting priority items including your communications and records of Board of Trustees meetings, specifically informal notes and summaries. The letter warned that the Committee was prepared to initiate compulsory process if its requests were not satisfied.[7] Throughout this process, the Committee repeatedly emphasized the importance of timely production of communications, and in particular of text messages from trustee priority custodians, including you.

The Committee also detailed its expectations in an email to Columbia, specifically requesting that the August 1 letter be transmitted to the entire Board of Trustees and noted that the

---

[3] Letter from Virginia Foxx, Chairwoman, H. Comm. On Educ. & the Workforce, to Minouche Shafik, President, Columbia Univ., et. al. (Aug. 1, 2024).

[4] E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Mar. 29, 2024) (on file with Committee)

[5] E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Apr. 26, 2024) (on file with Committee)

[6] E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Jul. 9, 2024) (on file with Committee).

[7] Letter from Virginia Foxx, Chairwoman, H. Comm. On Educ. & the Workforce, to Minouche Shafik, President, Columbia Univ., et. al. (Aug. 1, 2024).

Ms. Claire Shipman
August 21, 2024
Page 3 of 3

Committee was prepared to subpoena Board of Trustees members beyond the co-chairs if the Committee's requests were not satisfied by the August 8 deadline.[8]

Despite the Committee's warnings, Columbia has failed to satisfy these requests. Columbia has failed to produce a substantial number of text and electronic messages from Trustees beyond the Co-Chairs, despite the Committee identifying Trustee priority custodians months ago. Further, Columbia failed to provide notes, summaries, recordings or other materials providing detailed contemporaneous records of Board meetings.

Given Columbia's continued failure to satisfy the priority requests outlined in the August 1 letter, the Committee now compels production of all responsive documents. Rule X of the Rules of the House of Representatives authorizes the Committee to conduct oversight of all matters involving "education… generally" to inform potential legislation. The outbreak of pervasive antisemitism in postsecondary education since the October 7, 2023, terror attack is within the Committee's jurisdiction and is a "subject on which legislation 'could be had'," and one upon which the Committee is actively considering proposed and potential legislation.

Attached is a subpoena compelling production of the documents and communications delineated in the attached schedule by 12:00 p.m. on September 4, 2024.

Sincerely,

Virginia Foxx
Virginia Foxx
Chairwoman
U.S. House Committee on Education
and the Workforce

---

[8]  E-mail from H. Comm. On Educ. & the Workforce to counsel for Columbia Univ. (Aug. 1, 2024) (on file with Committee).

# SUBPOENA

## BY AUTHORITY OF THE HOUSE OF REPRESENTATIVES OF THE CONGRESS OF THE UNITED STATES OF AMERICA

*To* Ms. Claire Shipman, Chairwoman, Columbia University

You are hereby commanded to be and appear before the

Committee on Education and the Workforce

of the House of Representatives of the United States at the place, date, and time specified below.

☑ **to produce the things identified on the attached schedule** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

> Place of production: 2176 Rayburn House Office Building, Washington, D.C. 20515
>
> Date: September 4, 2024                    Time: 12:00 p.m. EST

☐ **to testify at a deposition** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

> Place of testimony: _____
>
> Date: _____    Time: _____

☐ **to testify at a hearing** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

> Place of testimony: _____
>
> Date: _____    Time: _____

*To* the U.S. Marshal Service, or any authorized Member or congressional staff _____

_____ to serve and make return.

Witness my hand and the seal of the House of Representatives of the United States, at

the city of Washington, D.C. this 20 day of August , 2024.

*Virginia Foxx*

*Chairman or Authorized Member*

Attest: *Kevin F. McCumber*

*Clerk*

# PROOF OF SERVICE

Subpoena for

Ms. Claire Shipman, Chairwoman, Columbia University

Address  Columbia University, Low Memorial Library, 116th St, New York, NY 10027

before the  Committee on Education and the Workforce

*U.S. House of Representatives*
*118th Congress*

---

Served by (print name)  Mindy Barry

Title  General Counsel, U.S. House of Representatives Committee on Education and the Workforce

Manner of service  email

Date

Signature of Server

Address  2176 Rayburn House Office Building, Washington D.C. 20515

In accordance with the attached Schedule instructions and definitions, you, Claire Shipman, Vice Chair, Board of Trustees, Columbia University, are required to produce all documents and communications, described below in your possession, custody, or control, in unredacted form:

1. All documents and communications, including but not limited to, text messages, emails, and electronic messages, from October 7, 2023 to present, referring or relating to antisemitism; targeting of Jews, Israelis, Zionists, or Zionism; and/or the Gaza Solidarity encampment;

2. All documents and communications related to meetings of the Board of Trustees from April 17, 2024-present, including any minutes, notes, summaries, and recordings;

3. All documents and communications related to meetings of the Board of Trustees since October 7, 2023, referring or relating to antisemitism; targeting of Jews, Israelis, Zionists, or Zionism; and/or Israel, including any minutes, notes, summaries, and recordings.

**Instructions for Responding to a Subpoena**

**U.S. House Committee on Education and the Workforce**

**118th Congress**

1.  In complying with the U.S. House Committee on Education and the Workforce's (Committee) subpoena, produce all responsive documents that are in your possession, custody, or control, whether held by you or your past or present agents, employees, and representatives acting on your behalf. You also should produce documents that you have a legal right to obtain, that you have a right to copy, or to which you have access, as well as documents that you have placed in the temporary possession, custody, or control of any third party. Subpoenaed records, documents, data, or information should not be destroyed, modified, removed, transferred, or otherwise made inaccessible to the Committee.

2.  In the event that any entity, organization, or person denoted in the subpoena has been or is also known by any other name or alias than herein denoted, the subpoena should be read also to include the alternative identification.

3.  The Committee's preference is to receive documents in electronic form (i.e., CD, memory stick, or thumb drive) in lieu of paper productions.

4.  Documents produced in electronic form should also be organized, identified, and indexed electronically.

5.  Electronic document productions should be prepared according to the following standards:

    a.  All documents derived from word processing programs, email applications, instant message logs, spreadsheets, and wherever else practicable should be produced in text searchable Portable Document Format (".pdf") format. Spreadsheets should also be provided in their native form. Audio and video files should be produced in their native format, although picture files associated with email or word processing programs should be produced in .pdf format along with the document it is contained in or to which it is attached.

    b.  Document numbers in the load file should match document Bates numbers and file names.

    c.  If the production is completed through a series of multiple partial productions, field names and file order in all load files should match.

    d.  All electronic documents produced should include the following fields of metadata specific to each document:

BEGDOC, ENDDOC, TEXT, BEGATTACH, ENDATTACH, PAGECOUNT, CUSTODIAN, RECORDTYPE, DATE, TIME, SENTDATE, SENTTIME, BEGINDATE, BEGINTIME, ENDDATE, ENDTIME, AUTHOR, FROM, CC, TO, BCC, SUBJECT, TITLE, FILENAME, FILEEXT, FILESIZE, DATECREATED, TIMECREATED, DATELASTMOD, TIMELASTMOD, INTMSGID, INTMSGHEADER, NATIVELINK, INTFILPATH, EXCEPTION, BEGATTACH.

    e.  If any of the subpoenaed information is only reasonably available in machine-readable form (such as on a computer server, hard drive, or computer backup tape), consult with the Committee staff to determine the appropriate format in which to produce the information.

6. Documents produced to the Committee should include an index describing the contents of the production. To the extent more than one CD, hard drive, memory stick, thumb drive, box or folder is produced, each CD, hard drive, memory stick, thumb drive, box or folder should contain an index describing its contents.

7. Documents produced in response to the subpoena should be produced together with copies of file labels, dividers or identifying markers with which they were associated when the subpoena was served.

8. When producing documents, identify the paragraph in the Committee's schedule to which the documents respond.

9. Do not refuse to produce documents on the basis that any other person or entity also possesses non-identical or identical copies of the same documents.

10. This subpoena is continuing in nature and applies to any newly discovered information. Any record, document, compilation of data or information not produced because it has not been located or discovered by the return date, should be produced immediately upon subsequent location or discovery.

11. All documents should be Bates-stamped sequentially and produced sequentially. Each page should bear a unique Bates number.

12. Two sets of documents should be delivered, one set to the Majority Staff and one set to the Minority Staff. When documents are produced to the Committee, production sets should be delivered to the Majority Staff in Room 2176 of the Rayburn House Office Building or provided electronically to Majority General Counsel at mindy.barry@mail.house.gov and the Minority Staff in Room 2101 of the Rayburn Office Building or provided electronically to Minority General Counsels at ilana.brunner@mail.house.gov and christian.haines@mail.house.gov.

13. If compliance with the subpoena cannot be made in full by the date specified in the subpoena, compliance should be made to the extent possible by that date. Notify Committee staff as soon as possible if full compliance cannot be made by the date

specified in the subpoena and provide an explanation for why full compliance is not possible by that date.

14. In the event that a document is withheld on the basis of privilege, provide a privilege log containing the following information concerning any such document: (a) the privilege asserted; (b) the type of document; (c) the general subject matter; (d) the date, author and addressee; and (e) the relationship of the author and addressee to each other.

15. In the event that a portion of a document is redacted on the basis of alleged privilege, provide a privilege log containing the following information concerning any such redaction: (a) the privilege asserted; (b) the location of the redaction in the document; (c) the general subject matter of the redacted material; (d) the date, author, and addressee of the document, if not readily apparent; and (e) the relationship of the author and addressee to each other.

16. If any document responsive to this subpoena was, but no longer is, in your possession, custody, or control, identify the document (stating its date, author, subject and recipients) and explain the circumstances under which the document ceased to be in your possession, custody, or control.

17. If a date or other descriptive detail set forth in this subpoena referring to a document is inaccurate, but the actual date or other descriptive detail is known to you or is otherwise apparent from the context of the subpoena, produce all documents which would be responsive as if the date or other descriptive detail were correct.

18. In the event a complete response requires the production of classified information, provide as much information in unclassified form as possible in your response and send all classified information under separate cover via the Office of Senate Security.

19. Unless otherwise specified, the period covered by this subpoena is from October 7, 2023, to the present.

20. Upon completion of the document production, you should submit a written certification, signed by you or your counsel, stating that: (1) a diligent search has been completed of all documents in your possession, custody, or control which reasonably could contain responsive documents; and (2) all documents located during the search that are responsive have been produced to the Committee.

**Schedule Definitions**

21. The term "document" in the subpoena, the schedule, or the instructions means any written, recorded, or graphic matter of any nature whatsoever, regardless of how recorded, and whether original or copy, including, but not limited to, the following: memoranda, reports, expense reports, books, manuals, instructions, financial reports, working papers, records, notes, letters, notices, confirmations, telegrams, receipts, appraisals, pamphlets, magazines, newspapers, prospectuses, inter-office and intra-office communications, electronic mail (e-mail), contracts, cables, notations of any type of conversation, telephone calls, meetings or other communications, bulletins, printed matter, computer printouts, teletypes, invoices, transcripts, diaries, analyses, returns,

summaries, minutes, bills, accounts, estimates, projections, comparisons, messages, correspondence, press releases, circulars, financial statements, reviews, opinions, offers, studies and investigations, questionnaires and surveys, and work sheets (and all drafts, preliminary versions, alterations, modifications, revisions, changes, and amendments of any of the foregoing, as well as any attachments or appendices thereto), and graphic or oral records or representations of any kind (including without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, recordings, and motion pictures), and electronic, mechanical, and electric records or representations of any kind (including, without limitation, tapes, cassettes, disks, and recordings) and other written, printed, typed, or other graphic or recorded matter of any kind or nature, however produced or reproduced, and whether preserved in writing, film, tape, disk, videotape or otherwise. A document bearing any notation not a part of the original text is to be considered a separate document. A draft or non-identical copy is a separate document within the meaning of this term.

22. The term "communication" in the subpoena, the schedule, or the instructions means each manner or means of disclosure or exchange of information, regardless of means utilized, whether oral, electronic, by document or otherwise, and whether face to face, in meetings, by telephone, mail, telex, facsimile, email (desktop or mobile device), computer, text message, instant message, MMS or SMS message, regular mail, telexes, discussions, releases, delivery, or otherwise.

23. The terms "and" and "or" in the subpoena, the schedule, or the instructions should be construed broadly and either conjunctively or disjunctively to bring within the scope of this subpoena any information which might otherwise be construed to be outside its scope. The singular includes plural number, and vice versa. The masculine includes the feminine and neuter genders.

24. The terms "person" or "persons" in the subpoena, the schedule, or the instructions mean natural persons, firms, partnerships, associations, corporations, subsidiaries, divisions, departments, joint ventures, proprietorships, syndicates, or other legal, businesses or government entities, and all subsidiaries, affiliates, divisions, departments, branches, or other units thereof.

25. The term "identify" in the subpoena, the schedule, or the instructions, when used in a question about individuals, means to provide the following information: (a) the individual's complete name and title; and (b) the individual's business address and phone number.

26. The terms "referring" or "relating" in the subpoena, the schedule, or the instructions, when used separately or collectively, with respect to any given subject, mean anything that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is pertinent to that subject in any manner whatsoever.

27. The term "employee" in the subpoena, the schedule, or the instructions means agent, borrowed employee, casual employee, consultant, contractor, de facto employee, independent contractor, joint adventurer, loaned employee, part-time employee, permanent employee, provisional employee, or subcontractor.

28. The terms "you" and "your" in the subpoena, the schedule, or the instructions refer to yourself; your firm, corporation, partnership, association, department, or other legal or government entity, including all subsidiaries, divisions, branches, or other units thereof; and all members, officers, employees, agents, contractors, and all other individuals acting or purporting to act on your behalf, including all present and former members, officers, employees, agents, contractors, and all other individuals exercising or purporting to exercise discretion, make policy, and/or decisions.

# # #