**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MAHMOUD KHALIL, et al.,<br><br>     *Plaintiffs,*<br><br>  v.<br><br>TRUSTEES OF COLUMBIA UNIVERSITY<br>IN THE CITY OF NEW YORK, et al.,<br><br>     *Defendants.* | No. 1:25 Civ. 02079 (AS) |

**DEFENDANTS TRUSTEES OF COLUMBIA UNIVERSITY IN THE**
**CITY OF NEW YORK AND ACTING PRESIDENT CLAIRE SHIPMAN'S**
**MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION**
**TO DISMISS THE COMPLAINT**

Marshall L. Miller (Lead Counsel)
Gabrielle E. Tenzer
Zachary Piaker
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
(212) 763-0883
mmiller@heckerfink.com
gtenzer@heckerfink.com
zpiaker@heckerfink.com

Trisha Anderson,
HECKER FINK LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
(212) 763-0883
tanderson@heckerfink.com

*Attorneys for Defendants Trustees*
*of Columbia University in the City*
*of New York and Acting President*
*Claire Shipman*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND .................................................................................................................... 2

LEGAL STANDARD............................................................................................................. 6

ARGUMENT ....................................................................................................................... 7

I.      Plaintiffs' First Amendment claim against Columbia fails for multiple reasons................ 7

        A.      Plaintiffs do not plausibly allege that Columbia is a state actor subject to the First Amendment.................................................................................................. 7

        B.      Plaintiffs lack standing to assert their First Amendment claim against Columbia. . 15

        C.      Plaintiffs do not have a cause of action for damages.............................................. 23

II.     Plaintiffs do not plausibly allege a breach of contract claim. ........................................... 23

CONCLUSION.................................................................................................................... 27

## TABLE OF AUTHORITIES

**CASES**

*Abadi v. Am. Airlines, Inc.,*
No. 23 Civ. 4033, 2024 WL 1346437 (S.D.N.Y. Mar. 29, 2024) ........................................ 9

*Abordo v. Mobi PCS,*
684 F. App'x 631 (9th Cir. 2017) ................................................................................... 10

*Adam v. Barr,*
792 F. App'x 20 (2d Cir. 2019) ..................................................................................... 20

*Am. Mfrs. Mut. Ins. Co. v. Sullivan,*
526 U.S. 40 (1999) ........................................................................................................ 8

*Amable v. New Sch.,*
551 F. Supp. 3d 299 (S.D.N.Y. 2021) ............................................................................ 25

*Amidax Trading Grp. v. S.W.I.F.T. SRCL,*
671 F.3d 140 (2d Cir. 2011) ........................................................................................... 6

*Amira v. Maimonides Hosp.,*
No. 21 Civ. 3976, 2022 WL 18034533 (E.D.N.Y. Nov. 30, 2022) ..................................... 9

*Annabi v. N.Y. Univ.,*
No. 22 Civ. 3795, 2023 WL 6393422 (S.D.N.Y. Sept. 29, 2023) ..................................... 26

*Annabi v. N.Y. Univ.,*
No. 22 Civ. 3795, 2024 WL 4252062 (S.D.N.Y. Sept. 20, 2024) ............................... 25, 26

*Annabi v. N.Y. Univ.,*
No. 24-2601, 2025 WL 1066083 (2d Cir. Apr. 9, 2025) .................................................. 26

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ....................................................................................................... 6

*Aubrey v. New Sch.,*
624 F. Supp. 3d 403 (S.D.N.Y. 2022) ........................................................................ 25, 26

*Bailey v. N.Y.L. Sch.,*
No. 19 Civ. 3473, 2021 WL 5500078 (2d Cir. Nov. 24, 2021) ........................................ 11

*Baldridge v. State,*
740 N.Y.S.2d 723 (App. Div. 3d Dep't 2002) ................................................................. 24

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).............................................................................................. 6

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
   403 U.S. 388 (1971).............................................................................................. 23

*Bordell v. Gen. Elec. Co.*,
   922 F.2d 1057 (2d Cir. 1991)................................................................................ 18

*Broidy Cap. Mgmt. LLC v. Benomar*,
   944 F.3d 436 (2d Cir. 2019)................................................................................... 6

*Budowich v. Pelosi*,
   610 F. Supp. 3d 1 (D.D.C. 2022) ......................................................................... 11

*Cagle v. Weill Cornell Med.*,
   No. 22 Civ. 6951, 2024 WL 3520469 (S.D.N.Y. July 24, 2024) ......................... 13

*Calcano v. Swarovski N. Am. Ltd.*,
   36 F.4th 68 (2d Cir. 2022) ..................................................................................... 6

*Campbell v. City of Yonkers*,
   No. 19 Civ. 2117, 2020 WL 5548784 (S.D.N.Y. Sept. 16, 2020)........................ 23

*Children's Health Def. v. Meta Platforms, Inc.*,
   112 F.4th 742 (9th Cir. 2024) ......................................................................... 14, 15

*Church of Am. Knights of the Ku Klux Klan v. Kerik*,
   356 F.3d 197 (2d Cir. 2004).................................................................................. 21

*Ciambriello v. County of Nassau*,
   292 F.3d 307 (2d Cir. 2002)................................................................................... 8

*Ciraci v. J.M. Smucker Co.*,
   62 F.4th 278 (6th Cir. 2023) ................................................................................. 14

*Citibank N.A. v. Hello Flatbush LLC*,
   No. 23 Civ. 10920, 2024 WL 3362624 (S.D.N.Y. July 10, 2024) ......................... 2

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983)................................................................................................ 17

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013)................................................................................... 16, 21, 22

iii

*In re Columbia Tuition Refund Action*,
    523 F. Supp. 3d 414 (S.D.N.Y. 2021)............................................................. 24, 26

*Conn. Bar Ass'n v. United States*,
    620 F.3d 81 (2d Cir. 2010)................................................................................ 16

*Consortium for Indep. Journalism, Inc. v. United States*,
    No. 23 Civ. 7088, 2025 WL 919504 (S.D.N.Y. Mar. 26, 2025) .......................... 23

*Corley v. Vance*,
    No. 15 Civ. 1800, 2015 WL 4164377 (S.D.N.Y. June 22, 2015)......................... 10

*Corr. Servs. Corp. v. Malesko*,
    534 U.S. 61 (2001)............................................................................................ 23

*Cranley v. Nat'l Life Ins. Co. of Vt.*,
    318 F.3d 105 (2d Cir. 2003)................................................................................ 8

*Daniel v. Safir*,
    135 F. Supp. 2d 367 (E.D.N.Y. 2001) ................................................................ 10

*Davila v. Gutierrez*,
    330 F. Supp. 3d 925 (S.D.N.Y. 2018)................................................................. 23

*Davila v. Gutierrez*,
    791 F. App'x 211 (2d Cir. 2019) ........................................................................ 23

*Dorce v. City of New York*,
    2 F.4th 82 (2d Cir. 2021) .................................................................................. 17

*Duffield v. Robertson Stephens & Co.*,
    144 F.3d 1182 (9th Cir. 1998) ........................................................................... 13

*EEOC v. Luce, Forward, Hamilton & Scripps*,
    345 F.3d 742 (9th Cir. 2003) ............................................................................. 13

*Egbert v. Boule*,
    596 U.S. 482 (2022)........................................................................................... 23

*Fakhreddine v. Univ. of Pa.*,
    No. 24 Civ. 1034, 2025 WL 345089 (E.D. Pa. Jan. 30, 2025) ..................... 10, 17

*Food & Drug Admin. v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024)................................................................................. 15, 16, 17

*G.B. v. Nassau County*,
    751 F. Supp. 3d 56 (E.D.N.Y. 2024) ................................................................. 20

*Gally v. Columbia Univ.*,
    22 F. Supp. 2d 199 (S.D.N.Y. 1998) ................................................................. 26

*Gazzola v. Hochul*,
    88 F.4th 186 (2d Cir. 2023) .............................................................................. 19

*Gertler v. Goodgold*,
    487 N.Y.S.2d 565 (App. Div. 1st Dep't) .......................................................... 24

*Gertler v. Goodgold*,
    489 N.E.2d 748 (N.Y. 1985) ............................................................................. 24

*Gilman v. Marsh & McLennan Cos.*,
    826 F.3d 69 (2d Cir. 2016) ................................................................................. 9

*Ginsberg v. Healey Car & Truck Leasing, Inc.*,
    189 F.3d 268 (2d Cir. 1999) ............................................................................... 9

*Goldberg v. Pace Univ.*,
    88 F.4th 204 (2d Cir. 2023) .............................................................................. 24

*Graseck v. Mauceri*,
    582 F.2d 203 (2d Cir. 1978) ............................................................................. 13

*Griswold v. Driscoll*,
    616 F.3d 53 (1st Cir. 2010) .............................................................................. 22

*Guan N. v. NYC Dep't of Educ.*,
    No. 11 Civ. 4299, 2013 WL 3819609 (S.D.N.Y. July 23, 2013) ......................... 9

*Harrison v. New York*,
    95 F. Supp. 3d 293 (E.D.N.Y. 2015) ................................................................. 9

*Hulinsky v. County of Westchester*,
    670 F. Supp. 3d 100 (S.D.N.Y. 2023) .............................................................. 19

*Informed Consent Action Network v. YouTube LLC*,
    582 F. Supp. 3d 712 (N.D. Cal. 2022) ............................................................. 13

*Lugar v. Edmondson Oil Co.*,
    457 U.S. 922 (1982) ........................................................................................... 8

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)......................................................................................... 15, 21

*Maas v. Cornell Univ.*,
    721 N.E.2d 966 (N.Y. 1999)................................................................................. 24

*Manhattan Cmty. Access Corp. v. Halleck*,
    587 U.S. 802 (2019)........................................................................................... 7, 8

*Marbury v. Pace Univ.*,
    No. 20 Civ. 3210, 2021 WL 5521883 (S.D.N.Y. Nov. 24, 2021) ........................ 26

*Minneci v. Pollard*,
    565 U.S. 118 (2012)............................................................................................. 23

*Murthy v. Missouri*,
    603 U.S. 43 (2024).............................................................................................. 15

*NAACP v. Alabama ex rel. Patterson*,
    357 U.S. 449 (1958)............................................................................................. 21

*Nat'l Rifle Ass'n v. Vullo*,
    602 U.S. 175 (2024)............................................................................................. 14

*Nungesser v. Columbia Univ.*,
    169 F. Supp. 3d 353 (S.D.N.Y. 2016)................................................................... 25

*Picard v. Magliano*,
    42 F.4th 89 (2d Cir. 2022) ................................................................................... 19

*Port Wash. Tchrs.' Ass'n v. Bd. of Educ.*,
    478 F.3d 494 (2d Cir. 2007)................................................................................. 20

*Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ.*,
    No. 04 Civ. 704, 2005 WL 1214281 (S.D.N.Y. May 20, 2005)............................ 26

*Raines v. Byrd*,
    521 U.S. 811 (1997)............................................................................................. 21

*Roemer v. Williams*,
    828 F. App'x 70 (2d Cir. 2020) ........................................................................... 21

*Rosenberger v. Rector & Visitors of the Univ. of Va.*,
    515 U.S. 819 (1995)............................................................................................. 22

*S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*,
    483 U.S. 522 (1987)........................................................................................ 11

*Sadallah v. City of Utica*,
    383 F.3d 34 (2d Cir. 2004)............................................................................ 27

*Sanford v. Bruno*,
    No. 17 Civ. 5132, 2018 WL 2198759 (E.D.N.Y. May 14, 2018)........................................ 23

*Serbalik v. Gray*,
    199 F.3d 1323 (table), 1999 WL 1012446 (2d Cir. 1999)........................................ 9

*Shain v. Ellison*,
    356 F.3d 211 (2d Cir. 2004)........................................................................ 16

*Shipping Fin. Servs. Corp. v. Drakos*,
    140 F.3d 129 (2d Cir. 1998).......................................................................... 6

*Sirohi v. Lee*,
    634 N.Y.S.2d 119 (App. Div. 1st Dep't 1995) ....................................................... 24

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)................................................................................ 6, 15

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014)................................................................................... 19

*Sutton v. Providence St. Joseph Med. Ctr.*,
    192 F.3d 826 (9th Cir. 1999) ....................................................................... 14

*Sybalski v. Indep. Grp. Home Living Program*,
    546 F.3d 255 (2d Cir. 2008)........................................................................... 8

*Tapinekis v. Pace Univ.*,
    No. 22 Civ. 1058, 2024 WL 2764146 (2d Cir. May 30, 2024)................................... 24, 26

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021)................................................................................... 15

*United States v. Int'l Bhd. of Teamsters*,
    156 F.3d 354 (2d Cir. 1998).......................................................................... 11

*United States v. Int'l Bhd. of Teamsters*,
    941 F.2d 1292 (2d Cir. 1991)........................................................................ 14

*Ward v. N.Y. Univ.*,
    No. 99 Civ. 8733, 2000 WL 1448641 (S.D.N.Y. Sept. 28, 2000) ...................................... 25

*Watkins v. United States*,
    354 U.S. 178 (1957) ................................................................................................. 10

*Wetzel v. Town of Orangetown*,
    308 F. App'x 474 (2d Cir. 2009) ............................................................................. 18

*Yu v. Vassar Coll.*,
    97 F. Supp. 3d 448 (S.D.N.Y. 2015) ........................................................................ 24

**FEDERAL STATUTES**

28 U.S.C. § 1367 .............................................................................................................. 27

42 U.S.C. § 2000d ............................................................................................................ 11

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(1) ...................................................................................................... 6

Fed. R. Civ. P. 12(b)(6) ...................................................................................................... 6

**OTHER AUTHORITIES**

Barnard Coll., *Catalogue: The College*, https://catalog.barnard.edu/barnard-college/college/ ...... 3

Catherine E. Lhamon, Assistant Sec'y for C.R., U.S. Dep't of Educ., *Dear Colleague Letter: Title VI and Shared Ancestry or Ethnic Characteristics Discrimination* (May 7, 2024), https://www.ed.gov/media/document/colleague-202405-shared-ancestrypdf-35100.pdf ... 12

Columbia Univ., *Charters and Statutes, Columbia University in the City of New York* (May 2024), https://secretary.columbia.edu/sites/default/files/content/University%20Charter_Statutes_May2024.pdf ...................................................................................................... 3

Columbia Univ., *Rules of University Conduct*, https://universitypolicies.columbia.edu/content/rules-university-conduct ......................... 20

Isabelle Taft, *How Colleges Are Changing Their Rules on Protesting*, N.Y. Times (Sept. 12, 2024), https://www.nytimes.com/2024/09/12/us/college-protest-rules.html ....................... 12

Katie DeBenedetti, *Stanford's New Protest Policies Ban Tents Overnight, Require Students to Remove Masks When Asked*, KQED (Sept. 18, 2024), https://www.kqed.org/news/12005195/stanfords-new-protest-policies-bantents-overnight-require-students-to-remove-masks-when-asked ................................. 12

Off. for C.R., U.S. Dep't of Educ., *Resolution Agreement: The University of California*
  (2024), https://ocrcas.ed.gov/sites/default/files/ocr-letters-and-agreements/09222257-
  b.pdf ....................................................................................................................... 12

Off. of Institutional Equity, Columbia Univ. in the City of N.Y., *Anti-Discrimination &
  Discriminatory Harassment Policies & Procedures for Students* (2025),
  https://institutionalequity.columbia.edu/sites/institutionalequity.columbia.edu/files/conte
  nt/Documents/Policies/2025_Anti-
  D_&_DH_Policy_&_Procedures_for_Students_04.01.25.pdf........................................... 19

Shiv Patel & Dylan Winward, *UCLA Announces New Time, Place and Manner Policies,
  Limits Public Expression Areas*, Daily Bruin (Sept. 4, 2024),
  https://dailybruin.com/2024/09/04/ucla-announces-new-time-place-and-manner-
  policies-limits-public-expressionareas................................................................................ 12

Vimal Patel, *Harvard Adopts a Definition of Antisemitism for Discipline Cases*, N.Y. Times
  (Jan. 21, 2025), https://www.nytimes.com/2025/01/21/us/harvardantisemitism-
  definition-discipline.html................................................................................................... 12

Yash Roy, *NYU Clarifies Antisemitism Policies to Include Instances of Anti-Zionism*, Hill
  (Aug. 23, 2024), https://thehill.com/homenews/education/4845135-nyu-clarifies-
  antisemitism-policies-antizionism/ .................................................................................... 12

**PRELIMINARY STATEMENT**

In a rapidly changing world, and on a campus that welcomes rigorous debate and open inquiry, Columbia University is actively balancing its commitments to provide an environment that fosters the education of its students, safeguards its community from discrimination and harassment, and protects speech from a variety of viewpoints, including by supporting academic freedom. Plaintiffs fail to state any plausible legal claims against Columbia or to establish standing for their First Amendment claims against Columbia and—at best—have only demonstrated a disagreement with Columbia's policy decisions. For these reasons, the Court should dismiss Columbia from this action.

Plaintiffs allege that Congress and Executive Branch agencies have violated Plaintiffs' First Amendment rights by coercing Columbia to disclose information about the Plaintiffs in response to government inquiries and to take certain actions to combat antisemitism, respectively. Columbia is a private university, not a state actor as required for a First Amendment claim, and Plaintiffs have not met their burden to show otherwise. In responding to inquiries, requests, and demands of the federal government, Columbia is no different than other private parties subject to regulatory or oversight authority. Indeed, courts have never held that private parties become state actors simply because they respond to such exercises of governmental authority. To conclude otherwise would upend routine private-party practices of responding to subpoenas, regulatory inquiries, or other government requests, and put private parties to the choice of spurning government oversight or risking constitutional claims. Additionally, Plaintiffs' vague and unclear claims of First Amendment harm against Columbia fail to satisfy their burden to establish standing.

Plaintiffs also seek to characterize their disagreements with Columbia as a breach of contract. But they fail to plead any enforceable promises or breaches of such promises with the

specificity required by New York law. Student disagreements with university decisions or policies do not amount to a breach of contract. Instead, New York courts give significant deference to universities to manage their affairs and narrowly construe the terms of any implied contract with their students. Universities like Columbia depend on this discretion as they navigate complex crosscurrents on campus and an evolving regulatory environment while striving to address student needs and concerns.

## BACKGROUND

In the wake of Hamas's October 7, 2023 attacks on Israel, Columbia, like many universities across the country, saw an increase in on-campus demonstrations and related activity.[1] Students and student groups hosted vigils and protests for victims of the Israel-Hamas war and organized walkouts, sit-ins, and other events calling for, among other things, divestment from Israel and an immediate ceasefire. Although much of the activity on campus has involved political debate over a longstanding, violent, and intractable conflict halfway across the globe, these events have strained community bonds at Columbia in extraordinary ways.

The U.S. House of Representatives Committee on Education and Workforce (the "Committee") has responded to these events by pursuing investigations into antisemitism on college campuses. Over more than a year, the Committee has sent requests to Columbia seeking a wide range of documents and information concerning antisemitism and the University's response to issues on campus. ¶¶ 49-54.[2] Columbia has produced documents in response to these requests.

---

[1] The factual allegations in the Second Amended Complaint ("SAC") are accepted as true only for purposes of this motion to dismiss, but not to the extent that they are contradicted by documents integral to the pleading or incorporated by reference, or by documents of which this Court can take judicial notice. *See, e.g.*, *Citibank N.A. v. Hello Flatbush LLC*, No. 23 Civ. 10920, 2024 WL 3362624, at *1 (S.D.N.Y. July 10, 2024) (Subramanian, J.).

[2] Citations to "¶ _" refer to paragraphs of Plaintiffs' SAC, ECF 62. Because Acting President Claire Shipman is sued solely in her official capacity, ¶ 23, this memorandum refers to the Trustees of Columbia University in the City of New York and Acting President Shipman collectively as "Columbia" or "the University." Having assumed her new role, Acting President Shipman no longer serves as Co-Chair of the Board of Trustees of Columbia University.

¶¶ 51, 54-55, 81. The Committee has also issued subpoenas to Columbia and Columbia board of trustees members, to which the University and trustees have also responded, including by producing certain disciplinary records. ¶ 95. Columbia produced these documents after applying de-identifying redactions and requesting confidential treatment of the information contained therein. ¶¶ 54, 58 n.43. Plaintiffs—seven Columbia students and one Barnard College student who "have spoken out in support of Palestinian human rights," ¶ 34[3]—allege that after the Committee issued a report on its findings in October 2024, they experienced increased harassment and online targeting by third-party actors as a result of information released by the Committee. ¶¶ 53-54, 61, 94, 97.

On February 13, 2025, the Committee sent another letter to the University (the "February 13 Letter") that sought, among other items, disciplinary case files relating to eleven incidents that took place on Columbia's campus. ¶¶ 2 & n.2, 49, 56-57; ECF 15-1. Columbia made a production of documents in response to this request on February 27 and made supplemental responses on March 7 and 19 before Plaintiffs filed their application for a temporary restraining order ("TRO"). ¶ 63; ECF 40 ("Rosan Decl.") ¶ 4.

Meanwhile, in January 2025, President Trump issued an executive order titled "Additional Measures to Combat Anti-Semitism." ¶ 102. Shortly thereafter, the administration announced the formation of a multi-agency Task Force to Combat Antisemitism ("Task Force"). *Id.* On March 7, the Task Force announced that it had cancelled or paused approximately $400 million in federal grants to Columbia, purportedly due to the University's alleged "failure to protect Jewish students

---

[3] Barnard College and Columbia are separate legal entities with different boards, presidents, administrators, and policies. *See* Columbia Univ., *Charters and Statutes, Columbia University in the City of New York* ch. XXIII (May 2024), https://secretary.columbia.edu/sites/default/files/content/University%20Charter_Statutes_May2024.pdf; Barnard Coll., *Catalogue: The College*, https://catalog.barnard.edu/barnard-college/college/ (last visited May 22, 2025).

from antisemitic harassment." ¶ 103. On March 13, senior officials from the U.S. Department of Education, U.S. Department of Health and Human Services, and General Services Administration sent Columbia a "follow up" letter (the "March 13 Letter"). ¶ 106 & n.91; ECF 15-2. The March 13 Letter invoked the federal government's responsibility to "ensure that all recipients are responsible stewards of federal funds" and alleged potential violations of Titles VI and VII of the Civil Rights Act of 1964. ECF 15-2 at 1. The letter further identified several "next steps" as a "precondition for formal negotiations regarding Columbia University's continued financial relationship with the United States government," which included high-level reforms relating to disciplinary processes and campus law enforcement, among other things. *Id.* at 1-3; ¶¶ 108-13.

On March 21, 2025, building on work to address "concerns raised both from within and without [the] Columbia community," the University announced a series of policy changes and clarifications that had "been underway" in a statement titled "Advancing Our Work to Combat Discrimination, Harassment, and Antisemitism at Columbia" (the "March 21 Letter"). ECF 40-1; ¶ 123. Among other things, the March 21 Letter announced that going forward:

- the University Judicial Board ("UJB"), a body which oversees disciplinary proceedings under certain University policies, would be "situated within and overseen by the Office of the Provost";

- "protest activities that occur inside academic buildings and places where academic activities take place" are generally not acceptable under the University's time, place, and manner rules;

- while face masks or coverings are permitted for religious or medical reasons, they are not permitted "for the purpose of concealing one's identity in the commission of violations of University policies or state, municipal, or federal law," and accordingly, individuals engaged in demonstrations must present University identification when asked to do so by a University Delegate or public safety officer;

- the University had hired public safety personnel who were undergoing specialized training and credentialing that would permit them to remove individuals from campus and/or conduct arrests when appropriate;

- the University would incorporate "the definition of antisemitism recommended by Columbia's Antisemitism Taskforce" (the "University Task Force") in August 2024 (not

the International Holocaust Remembrance Alliance ("IHRA") definition referenced in the March 13 Letter) into its antidiscrimination and discriminatory harassment policies; and

- the University would appoint a new Senior Vice Provost focused on regional studies to "conduct a thorough review of the portfolio of programs in regional areas across the University, starting immediately with the Middle East"—which encompasses multiple institutes, centers, and programs, including the Middle Eastern, South Asian, and African Studies ("MESAAS") department—to make recommendations about "any necessary changes, academic restructuring, or investments that will ensure academic excellence and complementarity across all programs."

ECF 40-1 at 1-3.

Plaintiffs commenced this lawsuit on March 13, 2025, asserting claims relating only to the Committee's February 13 Letter. ECF 1. On March 19, Plaintiffs filed a First Amended Complaint, adding claims related to the Agency Defendants' March 13 Letter, and moved for a TRO and preliminary injunction. ECF 13; ECF 17. On April 4, the Court denied Plaintiffs' TRO motion, holding that "plaintiffs' submissions don't address their standing to challenge the government's March 13, 2025 letter threatening funding cuts or Columbia's response announcing measures to curb antisemitism," that "plaintiffs can't enjoin what's already done" as to records already produced in response to congressional requests, and that the record did not reflect that additional document productions to the Committee were imminent. ECF 54 at 1-2. The Court also granted Plaintiffs leave to file the SAC and ordered Columbia to "advise the plaintiffs and Court of their intended production" at "least thirty days before furnishing to Congress any student records, or students' identities in records already produced." *Id.* at 2. Plaintiffs filed the SAC on April 18. ECF 62.

The SAC names three sets of defendants: (1) the Committee and its chairman; (2) five officials of the U.S. Department of Justice, U.S. Department of Education, U.S. Department of Health and Human Services, and General Services Administration (the "Agency Defendants"); and (3) Columbia. The SAC asserts five causes of action. Counts I and II allege violations of the

First Amendment by the federal government Defendants. ¶¶ 157-81. Count III alleges violations of the First Amendment by Columbia. ¶¶ 182-97. Count IV asserts an Administrative Procedure Act claim against the Agency Defendants. ¶¶ 198-207. Count V asserts a breach of contract claim against Columbia. ¶¶ 208-19.

## LEGAL STANDARD

Under Rule 12(b)(6), a complaint must be dismissed if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555. If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

To survive a Rule 12(b)(1) motion to dismiss for lack of standing, a plaintiff "must allege facts that affirmatively and plausibly suggest that [he] has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SRCL*, 671 F.3d 140, 145 (2d Cir. 2011); *accord, e.g.*, *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "[J]urisdiction must be shown affirmatively," not "by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998); *accord, e.g.*, *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 75-76 (2d Cir. 2022). The Court may also rely on evidence outside the pleadings in deciding a motion to dismiss under Rule 12(b)(1). *See Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 441 (2d Cir. 2019).

**ARGUMENT**

Plaintiffs bring two claims against Columbia, alleging that it violated the First Amendment and breached its contract with Plaintiffs. Plaintiffs fail to state a claim under either theory and fail to plausibly allege standing to bring the former. The Court should therefore dismiss all claims against Columbia.

**I.       Plaintiffs' First Amendment claim against Columbia fails for multiple reasons.**

In Count III, Plaintiffs allege that Columbia's "compliance with the Committee Defendant's record request and the Agency Defendant's demands violate the First Amendment." SAC at 62. This claim cannot overcome multiple threshold problems. *First*, Columbia is a private university and not a state actor bound by the First Amendment. *Second*, even if Columbia were a state actor, Plaintiffs fail to plausibly allege that they have standing to bring their First Amendment claims against Columbia. For these reasons, the Court should dismiss Plaintiffs' First Amendment claim against Columbia. Insofar as Plaintiffs seek damages against Columbia on their First Amendment claim, they have not pleaded a cause of action on which such relief can be granted, and the motion should be granted for that additional reason.

**A.       Plaintiffs do not plausibly allege that Columbia is a state actor subject to the First Amendment.**

Plaintiffs' allegations of First Amendment violations by Columbia fail because the Free Speech Clause "prohibits only *governmental* abridgment of speech." *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 808 (2019) (emphasis in original). Plaintiffs' First Amendment claim against Columbia therefore runs into a "fundamental" threshold problem: Columbia "is a private entity." *Id.* at 809. To the extent Plaintiffs contend that either the Committee or the Agency Defendants have induced Columbia into taking action that allegedly violates their First

Amendment rights by issuing requests or demands to Columbia under asserted oversight and regulatory authorities, that is not enough to transform Columbia into a state actor.

The Supreme Court's state-action doctrine distinguishes the government from private entities when violations of the Constitution are alleged. *See id.* at 808. "Careful adherence" to this requirement "preserves an area of individual freedom by limiting the reach of federal law and federal judicial power." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982). Accordingly, Plaintiffs bear the burden of showing "that the challenged conduct constitutes state action." *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) (cleaned up). Specifically, Plaintiffs must show that the actions by Columbia that they seek to enjoin are "'fairly attributable' to the state." *Cranley v. Nat'l Life Ins. Co. of Vt.*, 318 F.3d 105, 111 (2d Cir. 2003) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)). The Supreme Court has recognized only "a few limited circumstances" when that will be the case, including (1) "when the government compels the private entity to take a particular action"; (2) "when the government acts jointly with the private entity"; or (3) "when the private entity performs a traditional, exclusive public function." *Halleck*, 587 U.S. at 809.

Plaintiffs appear to invoke the first of these tests, alleging that Columbia should be treated as a state actor for actions taken in response to the Committee's February 13 Letter and the Agency Defendants' March 13 Letter because Columbia's actions were coerced or compelled by the government. To justify treatment of Columbia as a state actor, the plaintiff must show that "the state was involved with the *activity that caused the injury* giving rise to the action." *Sybalski v. Indep. Grp. Home Living Program*, 546 F.3d 255, 257-58 (2d Cir. 2008) (emphasis in original) (citation omitted). Showing "state involvement in *some activity* of the institution alleged to have inflicted injury upon a plaintiff" will not suffice. *Id.* at 257 (emphasis in original) (citation

omitted); *accord Amira v. Maimonides Hosp.*, No. 21 Civ. 3976, 2022 WL 18034533, at \*8 (E.D.N.Y. Nov. 30, 2022) (plaintiff must show "that the government compelled the *particular* activity that caused the constitutional injury" (emphasis in original) (cleaned up)). But in relation to both the February 13 and March 13 Letters, Columbia is an independent private institution that is merely responding to government bodies seeking to exercise regulatory and other oversight authority. Responding at arms-length to government inquiries, requests, or demands has never been sufficient to transform a private party into a state actor, and the Committee and Agency Defendants' actions should not be determined to have that effect on Columbia.

1. **Columbia's actions responding to the Committee's oversight requests are not state action.**

As noted above, *supra* at 2-3, Columbia has produced information to the Committee in response to the requests in the February 13 Letter. But courts in this Circuit have consistently recognized that a private party's "mere furnishing of information to government officials is insufficient" to establish state action. *Guan N. v. NYC Dep't of Educ.*, No. 11 Civ. 4299, 2013 WL 3819609, at \*4 n.8 (S.D.N.Y. July 23, 2013); *see, e.g.*, *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999); *Serbalik v. Gray*, 199 F.3d 1323 (table), 1999 WL 1012446, at \*2 (2d Cir. 1999); *Abadi v. Am. Airlines, Inc.*, No. 23 Civ. 4033, 2024 WL 1346437, at \*21 (S.D.N.Y. Mar. 29, 2024); *see also Harrison v. New York*, 95 F. Supp. 3d 293, 323 (E.D.N.Y. 2015) (collecting cases). Instead, an independent private entity like Columbia may "cooperat[e], and typically has supremely reasonable, independent interests for . . . cooperating with a governmental investigation." *Gilman v. Marsh & McLennan Cos.*, 826 F.3d 69, 77 (2d Cir. 2016) (rejecting argument that "acts that are taken by a private company in response to government action, and that have as one goal obtaining better treatment from the government, amount to state action"). Indeed, in the particular context of congressional investigations, the Supreme Court has

9

explained that "[i]t is unquestionably the duty of all citizens to cooperate with the Congress in its efforts to obtain the facts needed for intelligent legislative action." *Watkins v. United States*, 354 U.S. 178, 187 (1957).

Accordingly, a district court recently dismissed with prejudice distinctly similar constitutional claims brought against another private university on the ground that the plaintiffs there failed to establish state action. *See Fakhreddine v. Univ. of Pa.*, No. 24 Civ. 1034, 2025 WL 345089, at *5-6 (E.D. Pa. Jan. 30, 2025). The court concluded, correctly, that the plaintiffs failed to show state action under a "close nexus" test that considered whether the government had "exercised coercive power" or "provided such significant encouragement, that the choice must in law be deemed that of the state." *Id.* at *5 (cleaned up).[4]

Even if the Committee's requests in the February 13 Letter were compulsory—which, at present, they are not—Columbia's response would not constitute state action for purposes of Plaintiffs' constitutional claims. *See, e.g.*, *Abordo v. Mobi PCS*, 684 F. App'x 631, 632 (9th Cir. 2017) (rejecting argument that private-entity defendants "act[ed] under the color of state law in responding to subpoenas" issued by the state); *Corley v. Vance*, No. 15 Civ. 1800, 2015 WL 4164377, at *6 (S.D.N.Y. June 22, 2015) (rejecting argument that "[m]ere compliance with court orders" and subpoenas issued by law enforcement "constitute[s] action under color of state law"); *Daniel v. Safir*, 135 F. Supp. 2d 367, 375 (E.D.N.Y. 2001) (holding that "[m]ere compliance with a subpoena" from the fire department did not make private company a state actor). If private parties were to become state actors simply by complying with arms-length government demands for information—an everyday occurrence—subpoena recipients could be forced by third parties

---

[4] The Committee requests at issue in *Fakhreddine* strongly resemble the February 13 Letter here. *Compare id.* ("To assist the Committee in understanding the antisemitism crisis at Penn and the university's response, *please produce* the following items no later than February 7, 2024." (emphasis in original)), *with* ECF 15-1 at 5 ("Please produce the following items . . . .").

10

unhappy with the disclosures "to choose between facing penalties (perhaps including contempt and criminal prosecution) for non-compliance or being sued for constitutional violations." *Budowich v. Pelosi*, 610 F. Supp. 3d 1, 20 (D.D.C. 2022). The Constitution does not put private parties facing government demands to that choice.

### 2. Columbia's actions to respond to the Agency Defendants' regulatory demands also are not state action.

Nor does Columbia's response to the March 13 Letter render it a state actor. As a recipient of federal funds, Columbia is subject to regulatory oversight under Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d *et seq.* In their March 13 Letter, the Agency Defendants stated that they were acting pursuant to that regulatory power over Columbia. ECF 15-2 at 1 (invoking the federal government's responsibility "to ensure that all recipients are responsible stewards of federal funds" and alleging potential violations of Title VI and Title VII). But "[e]ven extensive regulation by the government does not transform the actions of the regulated entity into those of the government." *S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 544 (1987). And it is likewise "well-established that the mere receipt of public funds will not transform a private actor into a state actor." *United States v. Int'l Bhd. of Teamsters*, 156 F.3d 354, 360 (2d Cir. 1998); *see Bailey v. N.Y.L. Sch.*, No. 19 Civ. 3473, 2021 WL 5500078, at *5 (2d Cir. Nov. 24, 2021) (rejecting argument that law school "acted under the color of state law because it was 'compelled' to comply with Title IX to receive federal funding").

Plaintiffs' theory is that the institutional actions announced by Columbia on March 21 were compelled by the Agency Defendants' March 13 Letter. ¶¶ 123-27. But Columbia's actions announced on March 21—which are in line with recent actions implemented by numerous peer

universities[5] and consistent with regulatory guidance regarding Title VI[6]—in fact differed from those sought in the March 13 Letter in important respects and reflected work that had been underway long before the March 13 Letter. For example, while the March 21 Letter refers to disciplinary sanctions that had been announced by the UJB on March 13, ECF 40-1 at 1; *see* ¶ 125, those determinations (which reflected the culmination of a thorough, months-long disciplinary process) were announced prior to the University's receipt of the March 13 Letter, Rosan Decl. ¶ 5. The March 21 Letter likewise announced that thirty-six special officers had been hired who were "near completion of their training and credentialing under New York law" to be empowered to "remove individuals from campus and/or arrest them when appropriate." ECF 40-1 at 2; *see* ¶ 132. It is implausible for this hiring and training to have occurred in the interval between March 13 and March 21. And whereas the March 13 Letter sought to have Columbia adopt the IHRA definition of antisemitism, ECF 15-2 at 2, the University instead adopted a definition of antisemitism developed by its own internal University Task Force led by Columbia faculty, ECF 40-1 at 2; *see* ¶ 89 n.76. In short, "it would be more accurate to describe" the policy initiatives Columbia

---

[5] *E.g.*, Vimal Patel, *Harvard Adopts a Definition of Antisemitism for Discipline Cases*, N.Y. Times (Jan. 21, 2025), https://www.nytimes.com/2025/01/21/us/harvardantisemitism-definition-discipline.html; Katie DeBenedetti, *Stanford's New Protest Policies Ban Tents Overnight, Require Students to Remove Masks When Asked*, KQED (Sept. 18, 2024), https://www.kqed.org/news/12005195/stanfords-new-protest-policies-bantents-overnight-require-students-to-remove-masks-when-asked; Isabelle Taft, *How Colleges Are Changing Their Rules on Protesting*, N.Y. Times (Sept. 12, 2024), https://www.nytimes.com/2024/09/12/us/college-protest-rules.html (reviewing policy changes relating to protests at several universities, including Case Western Reserve, Rutgers, and Indiana University); Shiv Patel & Dylan Winward, *UCLA Announces New Time, Place and Manner Policies, Limits Public Expression Areas*, Daily Bruin (Sept. 4, 2024), https://dailybruin.com/2024/09/04/ucla-announces-new-time-place-and-manner-policies-limits-public-expressionareas; Yash Roy, *NYU Clarifies Antisemitism Policies to Include Instances of Anti-Zionism*, Hill (Aug. 23, 2024), https://thehill.com/homenews/education/4845135-nyu-clarifies-antisemitism-policies-antizionism/.

[6] *E.g.*, Catherine E. Lhamon, Assistant Sec'y for C.R., U.S. Dep't of Educ., *Dear Colleague Letter: Title VI and Shared Ancestry or Ethnic Characteristics Discrimination* 3 (May 7, 2024), https://www.ed.gov/media/document/colleague-202405-shared-ancestrypdf-35100.pdf; *see also, e.g.*, Off. for C.R., U.S. Dep't of Educ., *Resolution Agreement: The University of California* 2-5 (2024), https://ocrcas.ed.gov/sites/default/files/ocr-letters-and-agreements/09222257-b.pdf (requiring increased training for campus public safety officers and increased Title VI training for other staff as part of resolution agreement concluding Title VI investigation).

announced on March 21 "as composites assembled by . . . [it]sel[f] rather than imposed by or imported intact from the Government." *Informed Consent Action Network v. YouTube LLC*, 582 F. Supp. 3d 712, 721 (N.D. Cal. 2022) (rejecting state action argument where the claims "fail[ed] to allege that governmental direction dictates *the* standard for decision" (emphasis in original) (cleaned up)).

To be sure, Columbia does not contend that the March 13 Letter had no impact on the announcements it made on March 21. As explained by counsel for Columbia at the March 25 hearing, the March 13 Letter crystalized efforts that were already underway and impacted their timing. ECF 52 at 65-66. But as the March 21 Letter states—and as the divergence between the actions announced in that letter and the March 13 Letter's requests makes clear—the initiatives described in the March 21 Letter were fundamentally the product of considered decisionmaking by University leadership based on its own assessment of Columbia's needs. That the March 13 Letter and its assertion of regulatory power could have influenced some aspects of the March 21 announcement does not transform Columbia's actions into state action. *See, e.g.*, *Duffield v. Robertson Stephens & Co.*, 144 F.3d 1182, 1201-02 (9th Cir. 1998) (finding no coercion in the New York Stock Exchange's decision to require mandatory arbitration of employment-related disputes even though the SEC "ha[d] exercised influence over" the Exchange's rules), *overruled on other grounds*, *EEOC v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742 (9th Cir. 2003); *Graseck v. Mauceri*, 582 F.2d 203, 210 (2d Cir. 1978) (finding no state action in Legal Aid Society's termination of employee even though "the conflicts between [the employee] and the judges undisputedly were among the factors which prompted the Society's decision to discharge appellant"); *Cagle v. Weill Cornell Med.*, No. 22 Civ. 6951, 2024 WL 3520469, at *6 (S.D.N.Y. July 24, 2024) (finding no state action based on private entity's acts even though "motivated by

the laws and regulations of the state to which it was subject"). Rather, "governmental oversight of a private institution does not convert the institution's decisions into those of the State." *United States v. Int'l Bhd. of Teamsters*, 941 F.2d 1292, 1297 (2d Cir. 1991). Columbia, like other private actors, must have latitude to respond to regulator concerns without its actions constituting state action. *See Children's Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742, 760-61 (9th Cir. 2024) ("If Meta implemented its policy at least in part to stave off lawmakers' efforts to regulate, it was allowed to do so without turning itself into an arm of the federal government."). "So long as a private [entity's] actions turn on compliance with a state or federal law, that does not by itself make the [entity] a state actor." *Ciraci v. J.M. Smucker Co.*, 62 F.4th 278, 281 (6th Cir. 2023).

Fundamentally, Plaintiffs' First Amendment claims, if any, properly lie against the federal government defendants, not Columbia. While the compulsion test has been articulated as a potential basis for concluding that a private entity has engaged in state action, cases typically analyze claims of government coercion "in a distinct setting, one in which the claimant seeks to sue the state or federal government and uses the actions of a private entity to connect the lawsuit to the government." *Id.* at 283. "The idea," in other words, "is that the government cannot escape responsibility for *its own* actions by farming out tasks to private entities." *Id.* (emphasis in original). That "distinct setting" was the scenario presented in *National Rifle Ass'n v. Vullo*, 602 U.S. 175 (2024). The NRA there brought First Amendment claims against the state officials who were allegedly coercing insurance companies into dropping business ties with the NRA, not the insurance companies who were allegedly being coerced. Here, Count III—a constitutional claim brought against a private entity—raises a different question: "whether" Columbia "itself counts as the government." *Ciraci*, 62 F.4th at 283. "A private party in [a case involving government coercion] is left with no choice of his own and consequently should not be deemed liable." *Sutton*

14

*v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 838 (9th Cir. 1999) (cleaned up); *see Children's Health Def.*, 112 F.4th at 759 (expressing "reason to doubt that a purely private actor" that was allegedly coerced, like Columbia, "would be the appropriate defendant, rather than the government officials responsible for the coercion").

For these reasons, Plaintiffs cannot plausibly state a First Amendment claim against Columbia.

**B.      Plaintiffs lack standing to assert their First Amendment claim against Columbia.**

Plaintiffs' First Amendment claim against Columbia also fails because they have not pleaded facts sufficient to support standing for this claim. As the Supreme Court recently noted, "standing is not dispensed in gross." *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)). Rather, "plaintiffs must demonstrate standing for each claim that they press against each defendant, and for each form of relief that they seek." *Id.* (internal quotations omitted).

To maintain their First Amendment claim against Columbia, Plaintiffs must therefore demonstrate: (1) a concrete, particularized injury in fact that is actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of such that the injury is fairly traceable to the challenged action by Columbia; and (3) that it is likely, rather than speculative, that the injury traceable to Columbia will be redressed by a favorable decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). As the parties invoking federal jurisdiction, Plaintiffs "bear[] the burden of establishing these elements" with respect to this claim. *Spokeo*, 578 U.S. at 338.

In addition, where Plaintiffs seek prospective relief, as they do here, they must demonstrate "a sufficient likelihood of future injury." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602

15

U.S. 367, 381 (2024). "[A]llegations of *possible* future injury are not sufficient"; rather, the "threatened injury must be *certainly impending* to constitute injury in fact." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphases in original) (cleaned up). This requirement applies even to the extent Plaintiffs claim as their injury a chilling effect on First Amendment rights. ¶ 150. "[A]llegations of a subjective chill" do not suffice absent "a threat of specific future harm." *Clapper*, 568 U.S. at 418 (cleaned up); *see Conn. Bar Ass'n v. United States*, 620 F.3d 81, 90 n.12 (2d Cir. 2010). Moreover, Plaintiffs must allege that their claimed injury will be traceable to—*i.e.*, "likely will be caused by"—Columbia specifically. *All. for Hippocratic Med.*, 602 U.S. at 382. The "links in the chain" of traceability to Columbia "must not be too speculative or too attenuated." *Id.* at 383 (citation omitted). Plaintiffs cannot establish standing where the defendant's conduct is "far removed from its distant (even if predictable) ripple effects." *Id.*

> **1. Plaintiffs do not plausibly plead certainly impending injury traceable to Columbia in connection with the February 13 Letter.**

Plaintiffs have failed to meet this burden to plausibly plead (i) certainly impending future injury that is (ii) traceable to Columbia in connection with the February 13 Letter. In attempting to demonstrate standing, Plaintiffs claim that the following actions will occur: Columbia will produce de-identified records to the Committee in response to its requests; these de-identified records may include information concerning Plaintiffs; the Committee will publicize these records; unspecified third parties may somehow ascertain Plaintiffs' identities from these de-identified records; and these third parties will then dox and harass Plaintiffs. ¶¶ 7, 10, 58 & n.43, 93-97, 149, 172. This five-step chain of hypothetical future events is precisely the sort of "accumulation of inferences" that is "simply too speculative and conjectural" to establish the certainly impending injury necessary for prospective relief. *Shain v. Ellison*, 356 F.3d 211, 216 (2d Cir. 2004).

16

To support their claims of injury, Plaintiffs point to harassment that they claim followed the Committee's publication of a report based on records produced to it last year. ¶¶ 94-97. Past injury, however, cannot establish standing for prospective relief, *see City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983), even when a "past harm was severe or inflicts continuing damage," *Dorce v. City of New York*, 2 F.4th 82, 96 (2d Cir. 2021). Even if it could, that injury would not be traceable to Columbia. Plaintiffs describe the past harm they suffered as stemming from the conduct of the Committee Defendants, not Columbia. Plaintiffs do not claim that Columbia has publicized or will publicize its responses to the Committee or that Columbia played any role in the Committee's decision to publish its report. To the contrary, as Plaintiffs acknowledge, Columbia has "requested confidential treatment of the information [it] provided" to the Committee. ¶ 54. There are simply too many "speculative links" in this chain to attribute these harms to Columbia based on "distant (even if predictable) ripple effects." *All. for Hippocratic Med.*, 602 U.S. at 383 (cleaned up).

Another district court recently dismissed analogous First Amendment claims brought in the litigation against a private university as described above, *supra* at 10, seeking to enjoin its response to the same Committee, because the plaintiffs' claims were similarly too speculative to establish standing. *See Fakhreddine*, 2025 WL 345089, at *3-4. The allegations in that case tracked Plaintiffs' claims here closely: specifically, that the university would produce documents concerning them to the Committee, the Committee would publicize these documents, and third parties would obtain this information and use it to identify and harass the plaintiffs. *Id.* at *4. The court correctly held that this "chain of possibilities" was too speculative to establish standing. *Id.*

Plaintiffs' First Amendment claim against Columbia suffers from the same standing defect: it too is premised on a chain of possibilities that is both too speculative and attenuated to support

17

standing against Columbia. Like the district court in *Fakhreddine*, this Court should dismiss for lack of standing Plaintiffs' First Amendment claim related to Columbia's production of information to the Committee.

### 2. Plaintiffs lack standing to challenge Columbia's actions in connection with the March 13 Letter.

Plaintiffs likewise do not plausibly allege standing to bring a First Amendment claim challenging Columbia's actions following the March 13 Letter. Construing their complaint generously, Plaintiffs appear to claim that they were harmed by three of Columbia's actions: (1) revisions to disciplinary policies, particularly in relation to the adoption of the University Task Force's definition of antisemitism; (2) the adoption of a policy on masking during protest activity; and (3) the purported receivership of the MESAAS department. *See, e.g.*, ¶ 134. They do not explain how any of these actions give rise to a non-speculative, legally cognizable injury.

*Revisions to Antidiscrimination Policy*. Plaintiffs fail to plausibly claim injury in fact resulting from Columbia's revisions to its disciplinary policies and procedures, including the adoption of the University Task Force's definition of antisemitism. Plaintiffs suggest that the threat of future discipline has chilled certain forms of constitutionally protected speech and expression, such as wearing keffiyehs on campus, engaging in pro-Palestine speech, attending pro-Palestine rallies, and engaging in discussions related to or mentioning Israel, Palestine, and Gaza. ¶¶ 150-51, 156. However, Columbia's disciplinary policies and procedures, even as revised, do not proscribe this speech or expressive conduct and cannot be reasonably interpreted as doing so.

As noted above, "allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Wetzel v. Town of Orangetown*, 308 F. App'x 474, 476 (2d Cir. 2009) (quoting *Bordell v. Gen. Elec. Co.*, 922 F.2d 1057, 1060-61 (2d Cir. 1991)). Where a plaintiff challenges a policy or procedure in a pre-

enforcement posture, as Plaintiffs do here, injury in fact requires a showing that (1) the plaintiff has an intention to engage in a course of conduct that arguably affects a constitutional interest proscribed by the challenged regulation, and (2) there exists a credible threat of prosecution under that regulation. *See Gazzola v. Hochul*, 88 F.4th 186, 202 (2d Cir. 2023) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-59 (2014)). Plaintiffs' allegations fail at both steps: they neither claim that they have engaged, or will engage, in speech or conduct that is even "arguably proscribed by the challenged" policy, nor assert that, as a result of such speech or conduct, "they have ever been threatened with" discipline under the policy, that discipline "is likely," or even that discipline is "remotely possible." *Hulinsky v. County of Westchester*, 670 F. Supp. 3d 100, 111 (S.D.N.Y. 2023) (quoting *Picard v. Magliano*, 42 F.4th 89, 98 (2d Cir. 2022)). They cannot plausibly make such allegations because Columbia's policies, including its antidiscrimination policies, do not prohibit any members of the University community, including Plaintiffs, from exercising their rights to freedom of speech or expression, including acts like wearing expressive clothing, engaging in peaceful protest (subject to applicable time, place, and manner guidelines), or expressing deeply held views on one side of a contentious political divide.[7]

Plaintiffs Roe, Loe, Noe, and Joe say they no longer wear keffiyehs on campus, ¶ 150, but nowhere identify any University policy (including any policy changes announced in the March 21 Letter) that would prevent them from doing so. Plaintiffs Noe, Roe, Joe, and Khalil claim that they were "subject to Columbia University disciplinary processes based on allegations of direct and/or indirect involvement in at least one of" the events specified in the February 13 Letter. ¶ 152. But

---

[7] *See* Off. of Institutional Equity, Columbia Univ. in the City of N.Y., *Anti-Discrimination & Discriminatory Harassment Policies & Procedures for Students* 4 (2025), https://institutionalequity.columbia.edu/sites/institutionalequity.columbia.edu/files/content/Documents/Policies/2025 _Anti-D_&_DH_Policy_&_Procedures_for_Students_04.01.25.pdf ("Nothing in this Policy may be construed to abridge academic freedom, principles of free speech, or the University's educational mission.").

nowhere do they identify the University policies underlying these "disciplinary processes," any constitutionally protected conduct at issue in these processes, or any findings of a policy violation or disciplinary consequences for them. The University enforces multiple policies that govern student conduct—the Rules of University Conduct, for example, impose time, place, and manner restrictions on demonstrations that take place at University facilities or at University-sponsored activities that do not turn in any way on the content of the speech occurring at such demonstrations. *See* ¶ 210 & n.123.[8] And a "disciplinary process[]" that is initiated may well conclude with a determination that there was no policy violation. Absent more, these allegations do not provide any basis for inferring that Plaintiffs are likely to be disciplined for constitutionally protected conduct as a result of the incorporation of a definition of antisemitism into the University's antidiscrimination policies.

Plaintiffs also claim that they have attended pro-Palestine events where students expressed the view that Israel is a racist state and is led by war criminals, and that because these expressions purportedly violate Columbia's new definition of antisemitism, Plaintiffs fear that they "may be subject to investigation." ¶ 148. This allegation is the kind of conjectural and speculative "chain of contingencies," *Clapper*, 568 U.S. at 410, that courts have held to be insufficient to establish standing, including in the pre-enforcement context, *see, e.g.*, *Adam v. Barr*, 792 F. App'x 20, 23 (2d Cir. 2019); *Port Wash. Tchrs.' Ass'n v. Bd. of Educ.*, 478 F.3d 494, 501-02 (2d Cir. 2007); *G.B. v. Nassau County*, 751 F. Supp. 3d 56, 63-64 (E.D.N.Y. 2024). That Plaintiffs believe they might be subject to investigation because they attended events where unnamed students expressed views that may have violated Columbia's disciplinary policies does not establish any "*certainly*

---

[8] *See also* Columbia Univ., *Rules of University Conduct* § 440, https://universitypolicies.columbia.edu/content/rules-university-conduct (last visited May 22, 2025) (cited at ¶ 210 & n.123).

impending" injury needed for standing. *Clapper*, 568 U.S. at 409 (emphasis in original) (citation omitted).

*Adoption of Masking Policy.* With respect to Columbia's masking policy, Plaintiffs have not demonstrated and cannot demonstrate any injury in fact. Plaintiffs claim that the masking policy will prevent them from obscuring their identities during protests, thereby exposing them to a risk of harassment. ¶ 151. But the inability to obscure their identities does not amount to "an invasion of a legally protected interest." *Lujan*, 504 U.S. at 560; *see also, e.g.*, *Raines v. Byrd*, 521 U.S. 811, 819 (1997) (explaining to establish standing the alleged injury must be "legally and judicially cognizable"); *Roemer v. Williams*, 828 F. App'x 70, 71 (2d Cir. 2020) (affirming dismissal on standing grounds where plaintiff failed to explain "why he had any legal right" under First Amendment). As the Second Circuit has held, individuals do not possess a constitutional right to "conceal one's appearance in a public demonstration." *Church of Am. Knights of the Ku Klux Klan v. Kerik*, 356 F.3d 197, 209 (2d Cir. 2004). Although the Constitution imposes some limits on government efforts to compel disclosure of identities in certain contexts, *see, e.g.*, *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 463-66 (1958) (holding NAACP had First Amendment right to refuse disclosure of membership lists), the Second Circuit has declined to extend those limits to masking at public demonstrations, *see Church of Am. Knights*, 356 F.3d at 209. In fact, no circuit has recognized a constitutional right to engage in masked protest at public demonstrations. Thus, Plaintiffs have failed to plead a legally cognizable injury to support their First Amendment claim as it relates to Columbia's masking policy.

*Review of MESAAS Department*. Plaintiffs also fail to demonstrate injury in fact resulting from Columbia's actions pertaining to the MESAAS department. Plaintiffs claim that they "fear" that they will no longer be able to enroll in MESAAS classes because Columbia has purportedly

21

placed the department under "academic receivership." ¶¶ 131, 134, 154. Plaintiffs have not explained how this gives rise to a cognizable First Amendment injury. Even if Columbia were a public university, which it is not, it would have broad discretion under the First Amendment to choose the curriculum that it provides to students. *See Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 833 (1995) ("When the [public] University determines the content of the education it provides, it is the University speaking, and we have permitted the government to regulate the content of what is or is not expressed when it is the speaker . . . ."); *Griswold v. Driscoll*, 616 F.3d 53, 59-60 (1st Cir. 2010) (Souter, J.) (disposing of standing and merits together and holding that revisions to school curriculum "did not implicate the First Amendment").

Even if this aspect of Plaintiffs' claim were legally cognizable, their allegations are speculative, contingent on "a highly attenuated chain of possibilities" that cannot establish standing. *Clapper*, 568 U.S. at 410. Columbia's March 21 Letter announced the appointment of a Senior Vice Provost to "conduct a thorough review of the portfolio of programs in regional areas across the University," including MESAAS. ECF 40-1 at 3. By its very nature, the outcome of this review, which will culminate in recommendations offered by the Senior Vice Provost, *id.*, remains highly variable. Any impact on Plaintiffs' future ability to enroll in MESAAS classes is too conjectural and remote to establish standing.

Plaintiffs Loe and Joe claim that they withdrew or declined to engage with MESAAS for fear of being "target[ed]" and subjected to "scrutiny." ¶¶ 154-55. Even assuming such fears constitute cognizable injuries, Plaintiffs make no attempt to connect them with allegations of past or impending future action by Columbia. Because Plaintiffs fail to allege these injuries are traceable to Columbia's actions, they similarly fail to establish standing.

22

C.      **Plaintiffs do not have a cause of action for damages.**

Plaintiffs' complaint demands damages on "all Causes of Action," apparently including Plaintiffs' First Amendment claims in Counts I-III. SAC, Prayer for Relief. Plaintiffs do not identify any cause of action for these claims, and the only one theoretically available for alleged constitutional violations would be an implied cause of action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). A *Bivens* cause of action against Columbia is unavailable for two reasons. *First*, the Supreme Court consistently has rejected efforts to extend *Bivens* to claims against private actors, even when they act under color of federal law. *See Minneci v. Pollard*, 565 U.S. 118, 120, 126-27 (2012); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001); *see also Sanford v. Bruno*, No. 17 Civ. 5132, 2018 WL 2198759, at *7 (E.D.N.Y. May 14, 2018) (rejecting *Bivens* claim for private actors and collecting cases). *Second*, even for claims against government actors, the Supreme Court has never recognized a First Amendment *Bivens* claim. Instead, recent decisions have rejected efforts to extend *Bivens* to the First Amendment context, noting that "recognizing a cause of action under *Bivens* is a disfavored judicial activity." *Egbert v. Boule*, 596 U.S. 482, 491 (2022) (rejecting effort to extend *Bivens* to First Amendment retaliation claim). Courts in this District have ruled similarly. *See, e.g.*, *Consortium for Indep. Journalism, Inc. v. United States*, No. 23 Civ. 7088, 2025 WL 919504, at *8 (S.D.N.Y. Mar. 26, 2025); *Campbell v. City of Yonkers*, No. 19 Civ. 2117, 2020 WL 5548784, at *5 (S.D.N.Y. Sept. 16, 2020); *Davila v. Gutierrez*, 330 F. Supp. 3d 925, 939 (S.D.N.Y. 2018), *aff'd*, 791 F. App'x 211 (2d Cir. 2019). There is thus no basis for any First Amendment claim for damages against Columbia.

II.      **Plaintiffs do not plausibly allege a breach of contract claim.**

Plaintiffs allege that their disagreements with Columbia's decisions over the past nineteen months constitute a breach of an implied contract. State law, however, affords universities and

23

their leaders wide latitude to carry out their educational missions in accordance with their professional judgment, such that student disagreements with the exercise of that judgment are not actionable breaches of contract. Plaintiffs' claim fails because Columbia's actions fall within that ordinary latitude recognized by state law for universities to carry out their missions.

Although the "relationship between a university and its students is contractual in nature," *Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 481 (S.D.N.Y. 2015) (citation omitted), New York law has long respected the "restricted role" that courts play "in dealing with and reviewing controversies involving colleges and universities," *Maas v. Cornell Univ.*, 721 N.E.2d 966, 969 (N.Y. 1999) (quoting *Gertler v. Goodgold*, 487 N.Y.S.2d 565, 570 (App. Div. 1st Dep't), *aff'd*, 489 N.E.2d 748 (N.Y. 1985)). New York courts have "refused to substitute their judgment for that of university officials or to review the day-to-day administration of academic policies." *Sirohi v. Lee*, 634 N.Y.S.2d 119, 120 (App. Div. 1st Dep't 1995).

In the "unique" context of higher education, a student claiming breach of contract must "identify an express promise for 'certain specified services' in the university's relevant materials." *Goldberg v. Pace Univ.*, 88 F.4th 204, 210 (2d Cir. 2023) (quoting *Baldridge v. State*, 740 N.Y.S.2d 723, 725 (App. Div. 3d Dep't 2002)). The terms of the implicit contract between student and university "are established by the university's bulletins, circulars and regulations made available to the student." *Id.* (citation omitted). A "general statement of policy" or "statements of opinion or puffery" are not actionable. *In re Columbia Tuition Refund Action*, 523 F. Supp. 3d 414, 421 (S.D.N.Y. 2021) (cleaned up), *aff'd sub nom. Tapinekis v. Pace Univ.*, No. 22 Civ. 1058, 2024 WL 2764146 (2d Cir. May 30, 2024). "Without the identification of a specific breached promise or obligation, the claims of a disgruntled student do not suffice to state a claim on which relief can be granted." *Goldberg*, 88 F.4th at 210 (cleaned up)

24

Plaintiffs have not met these requirements. Plaintiffs' allegations that Columbia has violated its own policies largely cite no Columbia policy at all, written or otherwise. *See, e.g.*, ¶¶ 35-36, 62, 218. Where Plaintiffs do identify specific policy language, they focus primarily on § 440 of the Rules of University Conduct, which imposes time, place, and manner restrictions on campus demonstrations described above, *supra* at 20. Specifically, Plaintiffs quote language stating that "the University cannot and will not rule any subject or form of expression out of order on the ground that it is objectionable, offensive, immoral, or untrue," that "the role of the University is not to shield individuals from positions that they find unwelcome," and that "the University is a place for received wisdom and firmly held views to be tested, and tested again, so that members of the University community can listen, challenge each other, and be challenged in return." ¶ 210; *see* ¶¶ 8, 219 n.128. Plaintiffs also cite similar language in other University guidance documents, ¶ 209 n.122, and an October 2023 statement by a University administrator that "freedom of expression is a core University value and it is our collective responsibility to uphold the principles of civic debate and discourse," ¶ 211. Such language is precisely the kind of "general policy statement that" courts routinely hold cannot form the basis for a breach of contract action against a university under New York law. *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 370 (S.D.N.Y. 2016) (discussing statement in gender-based misconduct policy that university is "committed to providing an environment free from gender-based discrimination and harassment"); *see, e.g.*, *Aubrey v. New Sch.*, 624 F. Supp. 3d 403, 417 (S.D.N.Y. 2022); *Amable v. New Sch.*, 551 F. Supp. 3d 299, 313 (S.D.N.Y. 2021); *Ward v. N.Y. Univ.*, No. 99 Civ. 8733, 2000 WL 1448641, at *4 (S.D.N.Y. Sept. 28, 2000). Such "'[g]eneral promises . . .' that 'are subject to neither quantification nor objective evaluation' are 'far different from the types of specific promises which have led to valid breach of contract claims against universities.'" *Annabi*

*v. N.Y. Univ.*, No. 22 Civ. 3795, 2024 WL 4252062, at *14 (S.D.N.Y. Sept. 20, 2024) (quoting *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 207 (S.D.N.Y. 1998)), *aff'd*, No. 24-2601, 2025 WL 1066083 (2d Cir. Apr. 9, 2025).

Plaintiffs have also failed to allege "when and how . . . specific contractual promise[s]" were breached. *Columbia Tuition Refund*, 523 F. Supp. 3d at 421 (quoting *Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ.*, No. 04 Civ. 704, 2005 WL 1214281, at *10 (S.D.N.Y. May 20, 2005)); *see Annabi*, 2024 WL 4252062, at *15 (collecting cases). For example, although Plaintiffs allege in conclusory fashion that Columbia "failed to fulfill its obligations of maintaining and enforcing its doxing policies," ¶ 98, they nowhere identify how Columbia failed to do so. Plaintiffs quote statements that "Columbia 'ha[d] retained experts in the field of digital threat investigation and privacy scrubbing to support our impacted community members'" and that "[incidents of doxing] [we]re being investigated." ¶ 217 & n.127. But this fails to plead breach—even assuming these statements constitute specific, enforceable promises—because Plaintiffs nowhere allege that Columbia failed to retain such experts or investigate reports of doxing incidents. *See, e.g.*, *Annabi v. N.Y. Univ.*, No. 22 Civ. 3795, 2023 WL 6393422, at *9 (S.D.N.Y. Sept. 29, 2023) (dismissing breach of contract claim where "Plaintiff does not allege a violation of the promise by Defendant" university); *Aubrey*, 624 F. Supp. 3d at 418 n.6 (similar); *Marbury v. Pace Univ.*, No. 20 Civ. 3210, 2021 WL 5521883, at *3 (S.D.N.Y. Nov. 24, 2021) (similar), *aff'd sub nom. Tapinekis*, 2024 WL 2764146.

In sum, Plaintiffs fail to identify any specific agreement Columbia violated, fail to identify specific, enforceable promises within the documents they cite, and fail to explain how Columbia's alleged actions breached any promises those documents may have contained. The Court should dismiss their breach of contract claim for these reasons. Further, to the extent the Court dismisses

26

all federal law claims in this action, it should also decline to exercise supplemental jurisdiction over Plaintiffs' state law breach of contract claim against Columbia. *See Sadallah v. City of Utica*, 383 F.3d 34, 40 (2d Cir. 2004); 28 U.S.C. § 1367(c)(3).

## CONCLUSION

For the foregoing reasons, the Court should grant Columbia's motion and dismiss the SAC with prejudice as against Columbia.

Dated: New York, New York
        May 23, 2025

Respectfully submitted,

Marshall L. Miller (Lead Counsel)
Gabrielle E. Tenzer
Zachary Piaker
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
(212) 763-0883
mmiller@heckerfink.com
gtenzer@heckerfink.com
zpiaker@heckerfink.com

Trisha Anderson,
HECKER FINK LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
(212) 763-0883
tanderson@heckerfink.com

*Attorneys for Defendants Trustees
of Columbia University in the City
of New York and Acting President
Claire Shipman*

27

**CERTIFICATE OF COMPLIANCE**

I, Marshall L. Miller, hereby certify that this memorandum of law complies with the word-count limitations set forth in Local Civil Rule 7.1(c) and contains 8,653 words, exclusive of the caption, the table of contents, the table of authorities, the signature blocks, and this certificate.

Dated: May 23, 2025
New York, New York

Marshall L. Miller

28