# EXHIBIT C

P3PNKHAO

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

MAHMOUD KHALIL, *et al.*,

                  Plaintiffs,

         v.                               25 Civ. 2079 (AS)

THE TRUSTEES OF COLUMBIA
UNIVERSITY IN THE CITY OF NEW
YORK, *et al.*,

                  Defendants.             Oral Argument

------------------------------x
                                          New York, N.Y.
                                          March 25, 2025
                                          2:00 p.m.

Before:

                  HON. ARUN SUBRAMANIAN,

                                          District Judge


                        APPEARANCES

DRATEL & LEWIS
     Attorneys for Plaintiffs
BY:  AMY E. GREER
        and
CAIR LEGAL DEFENSE FUND
     Attorneys for Plaintiffs
BY:  GADEIR E. ABBAS

HECKER FINK LLP
     Attorneys for Columbia Defendants
BY:  GABRIELLE TENZER
     MARSHALL L. MILLER
     ZACHARY J. PIAKER
     TRISHA ANDERSON

OFFICE OF GENERAL COUNSEL, U.S. HOUSE OF REPRESENTATIVES
     Attorneys for House Defendants
BY:  MATTHEW B. BERRY
     ANDY WANG
     TODD B. TATELMAN

P3PNKHAO

suggestions that funding would be either withdrawn or paused if those measures were not taken by March 20?

MR. MILLER:  Your Honor, many of those measures were the product of months and months of work.  I think it is also important for the record that everyone understands that these things don't match up one to one.

THE COURT:  That's why I said it the way I did.

Is it the university's position that it would have taken the steps outlined in the March 21 announcement whether or not there had been any indication that federal funding would have been withdrawn?

Yes or no.

MR. MILLER:  Well, your Honor, I mean, it is a hypothetical that I think I would want to make sure --

THE COURT:  I don't think it is a hypothetical.  It's just asking what the university's position is on what actually happened.

There was the March 21 announcement of those steps.

Would that have been done whether or not there had been any indication from the Executive Branch defendants that funding would be withdrawn?

MR. MILLER:  May I have a moment, your Honor.

THE COURT:  You may.

(Pause)

MR. MILLER:  I think, your Honor, the best way to put

it was that all the 18 actions that were announced on March 21 were actions that were under review and work and development for many months.

I think the letter from the government essentially crystallized those lines of effort and affected timing.  But all of those lines of effort were in play and were ongoing for some significant periods of time before the March 13 letter and ultimate March 21 announcement.

THE COURT:  Right.

So it is at least Columbia's position here that the steps outlined in the March 21 announcement would have been taken regardless of any suggestion relating to funding?

MR. MILLER:  I think it's -- I think that -- I just want to be careful about the timing particularly, your Honor.

The university recognized that actions needed to be taken.  The university engaged in a significant amount of work. I would be happy to -- I think it would be useful to talk about the definition, for example --

THE COURT:  I don't want to get -- I will let you speak to that.  Let me just make sure I understand.

You are saying that we were talking about a lot of these things.  It may be that the timing and the precise substance of these things were related to the March 13 letter and the suggestion about funding.  That might have sped up how we were doing things.  It may have affected the particular

P3PNKHAO

inquiries that we had.  But, generally speaking, the university was looking into some of these issues.

Is that a fair characterization?

MR. MILLER:  Yes.  And looking into it with a degree of urgency as well.

I don't want to make it seem like the university was dithering.  It wasn't.  It was looking at them with diligence and with care.

But in terms of the precise timing of the announcement of them and the crystallization of them into these actions, I do want to be, you know, clear that the March 13 letter did have an impact.

THE COURT:  All right.  Okay.

So, Mr. Abbas, I will throw it back to you.  Then we will cycle around and give each -- let's try to do it five minutes or so.

And I'll let you cover anything you need to, just so we can try to wrap up by 4 p.m.

And I will have some next steps for everybody.

MR. ABBAS:  Yes, your Honor.

Ms. Greer is going take from it here.

MS. GREER:  I had prepared some remarks here, but I won't read all of it because I think it will take us a little too long.

But I would like to take a moment to think about the

P3PNKHAO

So his point was, even accepting everything that you are saying, there's that difference that they believe lends plausible support to their allegations of coercion and that the actions taken were the result of governmental coercion?

MR. MILLER:  Well, I think your Honor, that a task force that makes recommendations, I think some recommendations are employed, some recommendations are not, some are tweaked.

This one was employed in part in the sense that the definition was adopted.  And the administrators and leaders of the university determined that it would be more effective to be used more across the component or across agency, across university.

THE COURT:  To be clear, that definition that was adopted as part of the March 21 announcement, it is to be used in disciplinary procedures.

Is that fair?

MR. MILLER:  I think it is to be used across the university.

THE COURT:  Including in disciplinary procedures?

MR. MILLER:  I believe so, your Honor, but we will double check that.

You know, I think I do just want to make one other point, because I think it is an important factual point that is misunderstood or misstated, I think, in the papers that are before your Honor.

P3PNKHAO

With respect to the discipline which was alleged in the original papers as being the product of this March 13 letter, I think there I do think it's important to understand that that disciplinary process was a months-long process involving the university judicial board that culminated earlier in the day on March 13, before the university received that letter. So there's no way that the discipline that came before the letter could possibly have been the product of the letter.

So I do just want to make sure that is clarified for the record, I think as another example of how the context is important, of course, and as the case law requires, must be factored in. But also care needs to be taken as to the context, because that is a good example of those things happening close in time, but not in the sequence that I think folks jumped to the conclusion of because they felt that the context suggested that.

THE COURT: All right. Thank you very much.

Thank you, everyone, for your argument here today.

Here are the next steps.

Mr. Abbas, within the next 24 hours you should inform the parties and Court whether you intend to amend the complaint. You should speak with the defendants to see if there's any opposition to your amendment.

As Mr. Graver indicated, this may be independent of any of the proceedings on the pending motion, but given what