# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

MAHMOUD KHALIL, *et al.*,

                *Plaintiffs*,

   v.

THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, *et al.*,

                *Defendants*.

Case No. 1:25-cv-02079-AS

## CONGRESSIONAL DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

MATTHEW BERRY
   *General Counsel*
TODD B. TATELMAN
   *Deputy General Counsel*
ANDY T. WANG
   *Associate General Counsel*
KENNETH C. DAINES
   *Assistant General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700 (telephone)
matthew.berry@mail.house.gov

*Counsel for Congressional Defendants*

July 11, 2025

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION .......................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.    The Speech or Debate Clause Bars This Action .................................................. 2

    II.   Congressional Defendants Are Necessary Parties ............................................... 6

   III.  Sovereign Immunity Applies ............................................................................... 8

   IV.  Plaintiffs Lack Standing ....................................................................................... 8

    V.   Plaintiffs' First Amendment Claims Fail  ........................................................... 9

CONCLUSION ............................................................................................................................. 12

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Ass'n of Am. Physicians & Surgeons v. Schiff*,
    518 F. Supp. 3d 505 (D.D.C. 2021), *aff'd*,
    23 F.4th 1028 (D.C. Cir. 2022) .................................................................................................. 2

*Blum v. Yaretsky*,
    457 U.S. 991 (1982) ................................................................................................................. 12

*Bohnak v. Marsh & McLennan Cos., Inc.*,
    79 F.4th 276 (2d Cir. 2023) ........................................................................................................ 8

*Bragg v. Jordan*,
    669 F. Supp. 3d 257 (S.D.N.Y. 2023), *appeal dismissed sub nom.*
    *Bragg v. Pomerantz*, No. 23-615, 2023 WL 4612976 (2d Cir. Apr. 24, 2023) ..................... 3, 6

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*,
    531 U.S. 288 (2001) ................................................................................................................. 12

*Budowich v. Pelosi*,
    610 F. Supp. 3d 1 (D.D.C. 2022) ............................................................................................. 11

*Comm. on Ways & Means, U.S. House of Representatives v. U.S. Dep't of Treasury*,
    575 F. Supp. 3d 53 (D.D.C. 2021) ............................................................................................. 3

*Cornelio v. Connecticut*,
    32 F.4th 160 (2d Cir. 2022) ........................................................................................................ 2

*Eastland v. U.S. Servicemen's Fund*,
    421 U.S. 491 (1975) ....................................................................................................... 2, 3, 4, 5

*Eletson Holdings, Inc. v. Levona Holdings Ltd.*,
    731 F. Supp. 3d 531 (S.D.N.Y. 2024) ....................................................................................... 8

*Fakhreddine v. Univ. of Pennsylvania*,
    No. 24-cv-1034, 2025 WL 345089 (E.D. Pa. Jan. 30, 2025) ................................................... 11

*Fluent v. Salamanca Indian Lease Auth.*,
    928 F.2d 542 (2d Cir. 1991) ....................................................................................................... 7

*Gibson v. Fla. Legis. Investigation Comm.*,
    372 U.S. 539 (1963) ................................................................................................................... 4

*Gravel v. United States*,
    408 U.S. 606 (1972) ................................................................................................................... 4

*Kennedy v. Warren*,
　　66 F.4th 1199 (9th Cir. 2023) ..................................................................................10

*McGrain v. Daugherty*,
　　273 U.S. 135 (1927) ..................................................................................................5

*NRA v. Vullo*,
　　602 U.S. 175 (2024) ............................................................................................6, 11

*Ottworth v. PNC Bank*,
　　No. 18-cv-625, 2019 WL 13259389 (W.D. Mich. Sept. 26, 2019) ..........................7

*Powell v. McCormack*,
　　395 U.S. 486 (1969) ..................................................................................................4

*Rangel v. Boehner*,
　　785 F.3d 19 (D.C. Cir. 2015) ................................................................................2, 3

*Tenemille v. Town of Ramapo*,
　　No. 18-cv-724, 2022 WL 126003 (S.D.N.Y. Jan. 13, 2022) .....................................8

*N.Y. Times Co. v. Gonzales*,
　　459 F.3d 160 (2d Cir. 2006) ......................................................................................2

*Trump v. Mazars USA, LLP*,
　　591 U.S. 848 (2020) ..................................................................................................7

*United States v. AT&T*,
　　567 F.2d 121 (D.C. Cir. 1977) ..................................................................................7

**Rules**

Fed. R. Civ. P. 19(a)(1)(B) ..................................................................................................6

**Other Authorities**

Ex. 1 to Decl. of David Gringer, *Fakhreddine v. Univ. of Pennsylvania*,
　　No. 24-cv-1034, 2025 WL 345089 (E.D. Pa. Jan. 30, 2025), ECF 47-2 .................11

**INTRODUCTION**

Plaintiffs' lawsuit against Congressional Defendants may not proceed due to the Speech or Debate Clause. As this Court stated three months ago, because "plaintiffs seek relief against the Congressional defendants themselves[,] … the Clause acts as a jurisdictional bar." ECF 54 at 2. Attempting to avoid this inescapable conclusion, Plaintiffs elide binding Speech or Debate Clause precedent, ignore this Court's prior decision, and build their arguments on cases having nothing to do with the Clause. But because Congressional Defendants' February 13 investigatory letter involves a subject on which the House may legislate—combatting antisemitism on our Nation's college campuses—the Speech or Debate Clause immunizes Congressional Defendants from this lawsuit, and this Court must dismiss Plaintiffs' claim against them (Claim I).

This Court must also dismiss Plaintiffs' claim that Columbia's compliance with Congressional Defendants' records request violates the First Amendment (Claim III) for a related reason: Congressional Defendants are necessary parties to Claim III under Federal Rule of Civil Procedure 19, but are immune from this suit. Plaintiffs neither address, much less effectively rebut, the Rule 19 cases cited by Congressional Defendants, including binding Second Circuit precedent. Instead, Plaintiffs primarily rely on inapposite non-Rule 19 decisions.

Even if this Court reaches the merits of Plaintiffs' claims, they must be dismissed. Congressional Defendants are not coercing Columbia to do anything, and Columbia is not a state actor. To the extent that Plaintiffs are upset with Congressional Defendants' observation that Columbia's receipt of federal funding makes its continued failure to address pervasive antisemitism on its campus untenable, their problem is with federal antidiscrimination law. For

these and the other reasons outlined below, the Court should grant Congressional Defendants' Motion to Dismiss.[1]

## ARGUMENT

I. **The Speech or Debate Clause Bars This Action**

Plaintiffs argue that the Speech or Debate Clause does not immunize Congressional Defendants' February 13 letter. In doing so, they reduce Speech or Debate Clause jurisprudence to mincemeat, ignoring relevant cases while relying on non-Speech or Debate Clause cases.

The Committee's February 13 letter is a legislative act, protected by the Speech or Debate Clause. *See Ass'n of Am. Physicians & Surgeons v. Schiff*, 518 F. Supp. 3d 505, 518 (D.D.C. 2021), *aff'd*, 23 F.4th 1028 (D.C. Cir. 2022). And like the subpoena in *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491 (1975), that conclusion does not change simply because Plaintiffs argue that that the Committee's investigation is improper or illegal. "Such is the nature of absolute immunity, which is—in a word—absolute." *Rangel v. Boehner*, 785 F.3d 19, 24 (D.C. Cir. 2015).

Plaintiffs distort this precedent, arguing that "it is the nature *and intention* of the act, not its mere form (letter requests or subpoena), that determine the Speech and Debate Clause's applicability." ECF 104 at 14 (emphasis altered). In support, Plaintiffs cite a case that has *nothing* to do with the Clause, *New York Times Co. v. Gonzales*, 459 F.3d 160 (2d Cir. 2006). While Plaintiffs' arguments are divorced from the governing caselaw, they are not new—many plaintiffs have tried to argue that "defendants' conduct cannot be 'legislative' because it [is], in

---

[1] Plaintiffs reliance on *Cornelio v. Connecticut*, 32 F.4th 160 (2d Cir. 2022) is misplaced. ECF 104 at 10. *Cornelio* did not concern state action or standing; it was about whether a state law that abridged speech survived heightened scrutiny.

2

[Plaintiffs'] view, illegal" or because of an improper "motive or intent." *Rangel*, 785 F.3d at 24 (emphasis and citation omitted). These "familiar" arguments "made in almost every Speech or Debate Clause case … [have] been rejected time and again," *id.* (citation omitted), and should be rejected here.

**A.** First, Plaintiffs' briefing leaves the impression that either they or the courts get to referee what constitutes a legitimate legislative investigation. But the caselaw is clear: The only permissible judicial inquiry is an exceedingly narrow and deferential determination of whether "the investigation upon which the [Committee] had embarked concerned a subject on which 'legislation could be had.'" *Eastland*, 421 U.S. at 506 (citation omitted). "[T]he legitimate legislative purpose bar is a low one, and the purpose need not be clearly articulated." *Comm. on Ways & Means, U.S. House of Representatives v. U.S. Dep't of Treasury*, 575 F. Supp. 3d 53, 64 (D.D.C. 2021).

Here, the Committee has articulated a valid legislative purpose: conducting oversight of Columbia's application of Title VI and determining if further legislation is needed to stem the tide of antisemitism on college campuses. "Congress may conduct inquiries into the administration of existing laws, studies of proposed laws, and [particularly relevant here,] surveys of defects in our social, economic or political system for the purpose of enabling the Congress to remedy them." *Bragg v. Jordan*, 669 F. Supp. 3d 257, 267 (S.D.N.Y. 2023) (alteration in original) (cleaned up), *appeal dismissed sub nom. Bragg v. Pomerantz*, No. 23-615, 2023 WL 4612976 (2d Cir. Apr. 24, 2023).

Plaintiffs themselves admit that the "Committee … does have the ability to investigate issues relating to Title VI, including antisemitism which clearly falls under its purview." ECF 62 ¶ 172. Further, as this Court previously explained, "Congressional defendants … have pointed to

a valid legislative purpose … which is … the targeting, harassment, and other illegal activit[ies] directed towards Jewish students. … [T]he federal government is funding these institutions, so they have a legislative issue, which is whether there is anything to be done about the situation." Hr'g Tr. at 24.  Beyond this, Congressional Defendants have also "pointed to legislation that has been introduced that is along these lines," *id.*, demonstrating that it is a subject for lawmaking.

While Plaintiffs argue that the Committee's "proclaimed legitimate legislative purpose" is a "Trojan horse" for hiding their actual purpose of "blatant viewpoint discrimination and suppression of protected political speech," ECF 104 at 2, their view is irrelevant.  The Supreme Court has made clear that the "mere allegation that [the Committee's] valid legislative act was undertaken for an unworthy purpose [cannot] lift the protection of the Clause."  *Eastland*, 421 U.S. at 508-09.  And while "dishonest or vindictive motives are readily attributed to legislative conduct," "[t]he wisdom of congressional approach or methodology is not open to judicial veto." *Id*. at 509.

Plaintiffs also argue that the Speech or Debate Clause does not protect investigations "impinging on individual rights," ECF 104 at 2 (quoting *Gravel v. United States*, 408 U.S. 606, 620 (1972)), or intrusions "into the area of constitutionally protected rights of speech … [and] association," *id.* at 18 (alteration in original) (quoting *Gibson v. Fla. Legis. Investigation Comm.*, 372 U.S. 539, 546 (1963)).  Plaintiffs mischaracterize *Gravel*; that language was describing *Powell v. McCormack*, 395 U.S. 486 (1969), and how in that case the court could adjudicate non-Speech or Debate Clause protected actions.  Notably, Plaintiffs omit *the next sentence* in *Gravel*: "The Members themselves were dismissed from the case because [they were] shielded by the Speech or Debate Clause both from liability for their illegal legislative act and from having to defend themselves with respect to it."  408 U.S. at 620.  *Gibson*, on the other hand*,* is not even a

Speech or Debate Clause case and creates no exception or modification of the Clause's "absolute" protection of legislative acts, which even extends to acts that are "unconstitutional or … contrary to criminal or civil statutes." *Eastland*, 421 U.S. at 501, 510 (citation omitted).

**B.**  Plaintiffs then argue that the February 13 request for student records is not related to any valid legislative purpose.  Plaintiffs reason that because the Committee has already obtained numerous records from Columbia, this request must be for some other purpose besides investigating.  ECF 104 at 14-15; *see also id.* at 21.  But they simply ignore the explanation that the Committee has already provided:

> [B]ecause a Title VI violation requires antisemitic incidents taking place at Columbia *and* Columbia's deliberate indifference to those incidents, for the Committee to "inquir[e] into the administration [of Title VI]," as well as "survey" Columbia's handling of antisemitism on its campus, the Committee needs information both on antisemitic incidents and how Columbia has responded to such incidents.

ECF 81 at 14.  For example, if the same students are repeatedly engaging in antisemitic acts and not being disciplined, that is relevant to whether Columbia is taking its legal obligation seriously and legislative reforms are warranted.  The Committee is not obligated to limit its investigatory requests to "high level outcomes of disciplinary proceedings" as Plaintiffs would prefer.  ECF 104 at 14.

The fact that Plaintiffs, or even the Court, might disagree with the Committee's investigative approach is of no moment.  After all, "[t]he very nature of the investigative function—like any research—is that it takes the searchers up some 'blind alleys' and into nonproductive enterprises.  To be a valid legislative inquiry there need be no predictable end result." *Eastland*, 421 U.S. at 509.  Instead, because the records request is in aid of legislating, and it is at a minimum "capable of being so construed," *McGrain v. Daugherty*, 273 U.S. 135,

178 (1927) (citation omitted), "[t]he Court is *required* to presume that [the] congressional committee's stated legislative object is 'the real object.'" *Bragg*, 669 F. Supp. 3d at 269 (emphasis added) (citation omitted).

## II.    Congressional Defendants Are Necessary Parties

Instead of grappling with Rule 19's test for joinder, Plaintiffs ignore it entirely and rely on inapposite law. ECF 104 at 26-28.

First, while Plaintiffs argue that "[t]he Committee is not a necessary party," *id*. at 26, they do not address the text of Rule 19(a), let alone explain how the Committee does not satisfy that provision's test. Because Plaintiffs are seeking an injunction preventing Columbia from producing records that the Committee has requested, the Committee plainly has "an interest relating to the subject of the action," and excluding the Committee would "impair or impede [its] ability to protect the interest." Fed. R. Civ. P. 19(a)(1)(B).

Second, it is inconsistent for Plaintiffs to argue that the Committee is not a necessary party while simultaneously claiming that it is controlling Columbia's actions. Plaintiffs' First Amendment claim against Columbia depends entirely upon its allegations against the Committee. That is why Plaintiffs sued the Committee in the first place, an implicit admission that it is a necessary party. Indeed, Plaintiffs' jawboning argument fails without a government actor. After all, *NRA v. Vullo*, 602 U.S. 175 (2024) was itself a lawsuit against a state actor and, as Plaintiffs allege, "legal precedent requires [state actors] not 'use the power of the State to punish or suppress disfavored expression.' This is the line that has been crossed." ECF 104 at 4 (quoting *Vullo*, 602 U.S. at 188).

Third, turning from Rule 19(a) to Rule 19(b), Plaintiffs do not address Second Circuit precedent holding that in cases where "an indispensable party is immune from suit, there is very

6

little room for balancing of other factors set out in [r]ule 19(b), because immunity may be viewed as one of those interests compelling by themselves." *Fluent v. Salamanca Indian Lease Auth.*, 928 F.2d 542, 548 (2d Cir. 1991) (quotation marks omitted). Nor do they mention the Rule 19(b) factors. Consistent with *Fluent*, because Congressional Defendants are necessary parties under Rule 19 and immune from this suit, this Court must dismiss Plaintiffs' First Amendment claim against Columbia.

Rather than address relevant Rule 19 caselaw or the provision's language, Plaintiffs focus on two inapposite cases: *United States v. AT&T*, 567 F.2d 121 (D.C. Cir. 1977); and *Trump v. Mazars USA, LLP*, 591 U.S. 848 (2020). Neither decision discussed Rule 19 nor engaged in a necessary-party analysis because a congressional actor voluntarily intervened and did not raise a Rule 19 argument. Those cases therefore do not speak to the Rule 19 argument presented here, much less decide it. Moreover, both cases involved subpoenas. So even if those cases imply that there should be an exception to the normal Rule 19 test in congressional subpoena cases, an argument with which Congressional Defendants disagree, that does Plaintiffs no good. They cite no precedent for departing from the standard Rule 19 analysis for a *Vullo* claim, and the judiciary's default position when addressing a Rule 19 argument should be to apply the language of Rule 19 and binding Rule 19 precedent.

Notably, the other cases Plaintiffs cite for their proposition that "Courts have denied motions to dismiss on the grounds that Congress … was a necessary party," ECF 104 at 27, are patently off base and do not depart from standard Rule 19 jurisprudence. *See*, *e.g.*, *Ottworth v. PNC Bank*, No. 18-cv-625, 2019 WL 13259389, at *1 (W.D. Mich. Sept. 26, 2019) (disabled bank patron sued the bank and sought to include Congress simply because "Congress enacted the ADA").

7

### III. Sovereign Immunity Applies

Plaintiffs do not respond to Congressional Defendants' argument that their request for damages is barred by sovereign immunity. *See* ECF 81 at 21-22. Thus, they have "effectively concede[d]" that point. *See Tenemille v. Town of Ramapo*, No. 18-cv-724, 2022 WL 126003, at *10 (S.D.N.Y. Jan. 13, 2022).

### IV. Plaintiffs Lack Standing

Plaintiffs' ever-shifting standing arguments are meritless. To escape the third-party traceability problem identified by Congressional Defendants, ECF 81 at 22-23, which Plaintiffs make no effort to rebut, they attempt to redefine their injury in two other ways.

First, they now claim that "the Committee's satisfied demands for student records is the injury itself," ECF 104 at 25, and cite *Eletson Holdings, Inc. v. Levona Holdings Ltd.*, 731 F. Supp. 3d 531 (S.D.N.Y. 2024) for the proposition that the mere disclosure of private information to a third party is an Article III injury, ECF 104 at 23-24. But *Eletson Holdings* cites *Bohnak v. Marsh & McLennan Cos., Inc.*, 79 F.4th 276, 285-86 (2d Cir. 2023) for this proposition, 731 F. Supp. 3d at 574, and the disclosure at issue in *Bohnak* was "SSN and other PII" as part of a data breach. But here, as the Court recognized, all records produced by Columbia were "scrubbed [of] all personally identifying information." ECF 54 at 2. Further, there needs to be a link between the asserted injury and the claim raised. Here, Plaintiffs do not show how the production of records to the Committee, without more, inflicts any cognizable First Amendment-related injury upon them. Moreover, if the mere disclosure of student records to the Committee,

without more, is the relevant injury, Plaintiffs at most have standing to block the production of only their own records.

**Second**, in the very next paragraph, Plaintiffs *again* shift their alleged injury to "[t]he Committee's efforts to force Columbia to more harshly discipline students." ECF 104 at 24. But by doing so, Plaintiffs cannot show redressability. Plaintiffs argue that "redressability exists and can be done [by] narrow[ing] or quash[ing] the Committee Defendant's February 13 Letter," ECF 104 at 25; but enjoining the February 13 letter would only affect the Committee's ability to obtain student records, which would not be adequate to remedy Plaintiffs' injury under this theory of harm. The Committee would still be able to urge Columbia to discipline students (and, in any event, any attempt to enjoin congressional speech would be plainly unlawful).

## V.     Plaintiffs' First Amendment Claims Fail

Plaintiffs argue that based on the "broader context," the Committee has exerted "extensive pressure" on Columbia to "harass" and punish its students for their protected speech. *See* ECF 104 at 2-3, 9, 11, 12, 15. Plaintiffs rely on portions of the February 13 letter stating that "the disciplinary process [at Columbia] has failed," and observing that Columbia has not met their previous commitments to "end or curb antisemitism" or "administer discipline" for past student involvement in antisemitic incidents on campus. *Id.* at 13, 15-16.

**A.** As a fundamental matter, Plaintiffs ignore Congressional Defendants' prior argument as to how Plaintiffs have shifted their First Amendment theory. *See* ECF 81 at 27-28. Plaintiffs seek to stop the production of student records; that is the point of their lawsuit. *See* ECF 62 at 72 (Prayer for Relief). But nowhere do Plaintiffs plausibly allege that Congressional Defendants have coerced their production. They do not cite a single instance where the Committee has threatened to cut Columbia's funding if they do not turn over records. And they do not identify

9

any other means by which the Committee is coercing Columbia to provide the records. Plaintiffs' repeated arguments about how Congressional Defendants are allegedly compelling Columbia to punish them is a separate issue and one that, as explained *supra* pp. 8-9, is unrelated to student records and the relief they are seeking. Thus, given that Plaintiffs (still) fail to identify a single allegation in their Second Amended Complaint that can be plausibly viewed as Congressional Defendants coercing Columbia to produce student records, Plaintiffs' claim fails as a matter of law.

In any event, Plaintiffs do not even plausibly allege that the Committee is coercing Columbia into punishing them for protected speech. The only mention of funding in the February 13 letter states that "Columbia's continued failure to address the pervasive antisemitism that persists on campus is untenable, particularly given that the university receives billions in federal funding." ECF 82-5 at 1. That statement was not a "veiled threat[] of funding cuts or stoppages," ECF 62 ¶ 165; it was a factual statement of federal civil rights law. Plaintiffs point to no instance where the Committee threatened to cut funding if Columbia did not suppress their protected speech. And even if the Committee had requested that Columbia impose harsher discipline, asking is not coercing. *See Kennedy v. Warren*, 66 F.4th 1199, 1208-10 (9th Cir. 2023) (Senator Warren did not coerce Amazon by asking it to "be more proactive in suppressing misinformation" while warning it was "potentially unlawful" to publish a particular book). Indeed, Plaintiffs have not pled *a single instance* of Columbia disciplining them for their protected expression in response to any of the Committee's letters. *See* ECF 62 ¶¶ 152-53 (alleging Columbia subjected four Plaintiffs to "disciplinary processes" but failing to allege that this was due to Plaintiffs' protected speech or pressure from the Committee). For all these reasons, Plaintiffs fail to "allege conduct that, viewed in context, [can] be reasonably understood

10

to convey a threat of adverse government action … to punish or suppress the [Plaintiffs'] speech." *Vullo*, 602 U.S. at 177, 191.

**B.** Finally, Plaintiffs' Opposition ignores Congressional Defendants' state actor arguments. While in response to Columbia's Motion to Dismiss, Plaintiffs argue that Columbia is a state actor under the coercion and "close nexus" theories, *see* ECF 103 at 10, their arguments fail.[2]

For the reasons explained above, there is no coercion of any sort. Moreover, Plaintiffs ignore *Budowich v. Pelosi*, 610 F. Supp. 3d 1 (D.D.C. 2022), and fail to square how their coercion theory comports with the overwhelming caselaw holding that even compulsory legal process does not convert private actors into state actors. Further, Plaintiffs' attempt to distinguish *Fakhreddine v. Univ. of Pennsylvania*, No. 24-cv-1034, 2025 WL 345089 (E.D. Pa. Jan. 30, 2025) is unpersuasive. They argue that the Committee's letter in that case had "no demands for the university to punish anyone." ECF 103 at 10-11. But the Committee's letter in *Fakhreddine* was like the letter here, expressing "grave concerns regarding the inadequacy of Penn's response to antisemitism on its campus." Ex. 1 to Decl. of David Gringer, No. 24-cv-1034, 2025 WL 345089 (E.D. Pa. Jan. 30, 2025), ECF 47-2 at 1. Moreover, the Committee's letter there was not an isolated request, but followed a Committee hearing where the University's President testified. *Id*.

---

[2] Plaintiffs alternatively argue that even if the Committee is not a state actor, Columbia's records production can still be challenged as violating the First Amendment. ECF 103 at 15. But the caselaw they cite only shows that plaintiffs can have standing to challenge subpoenas' lawfulness generally; they say nothing about non-state actors being held liable under the First Amendment.

Turning to the close nexus test, it requires "such significant encouragement … that the *choice must* in law be deemed to be that of *the State*." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (emphasis added) (cleaned up); *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001) (same when private entity is a "willful participant in joint activity with the state," or the entity's functions are "entwined" with state policies) (cleaned up).  Plaintiffs argue that by merely seeking records for "ongoing disciplinary proceedings," the Committee has become "enmeshed in Columbia's campus affairs."  ECF 103 at 10.  But this falls far short of the required showing.  Under this logic, any government request for information about a private party's ongoing activities would turn those activities into state action.  More fundamentally, Plaintiffs have not plausibly pled that the Committee's alleged encouragement to "censor" them was so significant that any subsequent disciplinary action could only be viewed to be the Committee's choice rather than Columbia's.  Among other things, there is no allegation that Columbia instituted any disciplinary proceeding against them in response to any of the Committee's letters, *see supra* p. 10.

## CONCLUSION

Claims I and III of Plaintiffs' Second Amended Complaint should be dismissed.

                Respectfully submitted,

                */s/ Matthew Berry*
                MATTHEW BERRY
                  *General Counsel*
                TODD B. TATELMAN
                  *Deputy General Counsel*
                ANDY T. WANG
                  *Associate General Counsel*
                KENNETH C. DAINES
                  *Assistant General Counsel*

                OFFICE OF GENERAL COUNSEL
                U.S. HOUSE OF REPRESENTATIVES
                5140 O'Neill House Office Building
                Washington, D.C. 20515
                (202) 225-9700 (telephone)
                matthew.berry@mail.house.gov

                *Counsel for Congressional Defendants*

July 11, 2025

**CERTIFICATE OF SERVICE**

      I certify that on July 11, 2025, I caused the foregoing document to be filed via this Court's CM/ECF system, which I understand caused service on all registered parties. I further certify that the foregoing document contains 3,498 words, which is compliant with Local Civil Rule 7.1(c).

                                                  /s/ *Matthew Berry*
                                                  Matthew Berry