# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MAHMOUD KHALIL, *et al.*,<br><br>    *Plaintiffs*,<br><br> v.<br><br>THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, *et al.,*<br><br>    *Defendants.* | Case No. 1:25-cv-02079-AS |

## <u>CONGRESSIONAL DEFENDANTS' OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION</u>

MATTHEW BERRY
 *General Counsel*
TODD B. TATELMAN
 *Deputy General Counsel*
ANDY T. WANG
 *Associate General Counsel*
KENNETH C. DAINES
 *Assistant General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700 (telephone)
matthew.berry@mail.house.gov

*Counsel for Congressional Defendants*

July 11, 2025

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................... i

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ....................................................................................................................... 3

ARGUMENT ............................................................................................................................. 4

    I.    Plaintiffs Again Fail To Establish a Likelihood of Irreparable Harm ............................... 5

    II.   Plaintiffs Are Not Likely To Succeed on the Merits ............................................... 9

    III.  The Balance of Equities and Public Interest Favor Congressional Defendants................ 15

CONCLUSION ........................................................................................................................ 15

## TABLE OF AUTHORITIES

**Cases**                                                                                                                                    **Page(s)**

*Ass'n of Am. Physicians & Surgeons v. Schiff*,
    518 F. Supp. 3d 505 (D.D.C. 2021), *aff'd*,
    23 F.4th 1028 (D.C. Cir. 2022).................................................................................................10

*Brown & Williamson Tobacco Corp. v. Williams*,
    62 F.3d 408 (D.C. Cir. 1995)....................................................................................................12

*Citibank, N.A. v. Citytrust*,
    756 F.2d 273 (2d Cir. 1985).......................................................................................................6

*Comm. on Judiciary, U.S. House of Representatives v. Miers*,
    558 F. Supp. 2d 53 (D.D.C. 2008)...........................................................................................15

*Doe v. McMillan*,
    412 U.S. 306 (1973).................................................................................................................11

*Eastland v. U.S. Servicemen's Fund*,
    421 U.S. 491 (1975)............................................................................................................9, 15

*Exxon Corp. v. FTC*,
    589 F.2d 582 (D.C. Cir. 1978)................................................................................................15

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
    559 F.3d 110 (2d Cir. 2009)...............................................................................................5, 6, 9

*Howard v. Off. of Chief Admin. Officer of U.S. House of Representatives*,
    720 F.3d 939 (D.C. Cir. 2013).................................................................................................10

*JSG Trading Corp. v. Tray-Wrap, Inc.*,
    917 F.2d 75 (2d Cir. 1990).........................................................................................................6

*L.B. by & through S.B. v. N.Y.C. Dep't of Educ.*,
    No. 21-cv-9356, 2022 WL 220085 (S.D.N.Y. Jan. 25, 2022)...................................................6

*Mazurek v. Armstrong*,
    520 U.S. 968 (1997)...............................................................................................................2, 4

*Miller v. Transamerican Press, Inc.*,
    709 F.2d 524 (9th Cir. 1983)...................................................................................................11

*SEC v. Comm. on Ways & Means*,
    161 F. Supp. 3d 199 (S.D.N.Y. 2015)................................................................11

*State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*,
    120 F.4th 59 (2d Cir. 2024) ......................................................................5

*Trump v. CASA, Inc.*,
    No. 24A884, 2025 WL 1773631 (U.S. June 27, 2025) ............................................10

*USA Network v. Jones Intercable, Inc.*,
    704 F. Supp. 488 (S.D.N.Y. 1989) ...............................................................9

*Utica Mut. Ins. Co. v. INA Reinsurance Co.*,
    No. 12-cv-00194, 2012 WL 12874471 (N.D.N.Y. Nov. 6, 2012)............................................7

*Watkins v. United States*,
    354 U.S. 178 (1957)................................................................................10

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)................................................................................5

**Other Authorities**

Statement from Columbia University President Minouche Shafik (Apr. 29, 2024),
    https://perma.cc/Y32M-ZZXE............................................................................12, 13

**INTRODUCTION**

Nearly four months ago, Plaintiffs filed their initial Motion for a Temporary Restraining Order and Preliminary Injunction (TRO/PI).  The Court denied that motion with dispatch, explaining that both the law and the facts were against Plaintiffs.  The law was against Plaintiffs because they sought "relief against the Congressional defendants themselves" and the Speech or Debate Clause "acts as a jurisdictional bar against such requests."  ECF 54 at 2.  And "the facts before the Court counsel[ed] against interim relief [because] [a]s to any further production of records, Columbia says it doesn't intend to produce any at the present time.  And for their part, the Congressional [D]efendants aren't currently asking for any further records."  *Id.*

Now, eleven weeks after the Court denied Plaintiffs' initial Motion for a TRO/PI, Plaintiffs have filed a renewed Motion for PI, again seeking relief directly against Congressional Defendants.  However, the Constitution has not changed; therefore, the law still bars these requests.  The facts meanwhile have changed but are now even more favorable to Congressional Defendants.  Since the time of Plaintiffs' initial Motion for a TRO/PI, the Court has instituted a requirement whereby Columbia must give 30 days' advance notice before providing any student records to Congressional Defendants (or students' identities in records already produced).  The Court also set an expedited briefing schedule on motions to dismiss, which is now complete, rendering those motions ripe for resolution.  Further, since the Court's denial of Plaintiffs' initial motion, Columbia has not once given notice that it intends to produce any student records to Congressional Defendants, no student records have in fact been produced by Columbia to Congressional Defendants, and Congressional Defendants have not sought any additional student records.

1

The Court therefore should deny the renewed motion.  As an initial matter, the Court should decide the pending motions in logical and chronological order, adjudicating Congressional Defendants' Motion to Dismiss before turning to Plaintiffs' renewed Motion for PI.  The Motion to Dismiss has been fully briefed, and by granting it, as the Court should, the Court would moot the renewed Motion for PI, at least as it pertains to Congressional Defendants.

If, on the other hand, the Court rules first on the renewed Motion for PI, it should be denied because Plaintiffs have failed to carry their burden of satisfying the most important prerequisite for issuing a preliminary injunction: imminent irreparable harm.  Plaintiffs' decision to wait months before filing their renewed Motion for PI, together with the fact that there is no actual or imminent risk of additional student records being produced during this litigation without Plaintiffs having the opportunity to litigate the matter in front of this Court, counsels against the "extraordinary and drastic" remedy they seek.  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).  This is even more the case now than when the Court rejected Plaintiffs' initial Motion for a TRO/PI.

Neither can Plaintiffs demonstrate a likelihood of success on the merits.  As stated above, Plaintiffs' renewed motion still seeks the same injunctive relief against Congressional Defendants that the Court has already ruled is absolutely barred by the Speech or Debate Clause. Indeed, Plaintiffs fail to even mention the Speech or Debate Clause in their motion, much less grapple with why their desired relief is lawful considering what this Court said about the Clause in denying their initial Motion for a TRO/PI.  Plaintiffs' decision to spend less than two pages discussing why they are likely to succeed on the merits against Congressional Defendants may be a tacit recognition that—as explained in Congressional Defendants' Motion to Dismiss, ECF

2

80 & 81, and Reply in Support of Their Motion to Dismiss, ECF 114—Plaintiffs cannot succeed on the merits.

## BACKGROUND

Plaintiffs filed their initial complaint on March 13, ECF 1, but amended it on March 19, ECF 13, and on the same day filed their initial Motion for a TRO/PI and supporting memorandum of law, ECF 15 & 17.  Congressional Defendants filed their opposition on March 24, ECF 31 & 32, and the Court heard arguments the next day, March 25.[1]  On March 26, Plaintiffs sought leave to file a second amended complaint.  ECF 46.  On March 27, Congressional Defendants submitted a letter to the Court containing supplemental authorities and arguments in support of its Opposition to Plaintiffs' Motion for a TRO/PI.  ECF 47.

On April 4, the Court denied Plaintiffs' initial motion for a TRO/PI, granted Plaintiffs leave to file a second amended complaint by April 18, and ordered all Defendants to move to dismiss within "fourteen days after service of the amended complaint."  ECF 54 at 2.  The Court also ordered that "[a]t least thirty days before furnishing to Congress any student records, or students' identities in records already produced, the Columbia Defendants must advise the plaintiffs and Court of their intended production."  *Id*.  At no point since the entry of the Court's April 4 Order has Columbia given notice that it intends to produce any student records or reveal any student identities to Congressional Defendants.[2]

---

[1] *See* Hr'g Tr., Mar. 25, 2025.

[2] On April 8, Columbia noticed a letter indicating that it would be producing information to the U.S. Senate Committee on Health, Education, Labor, and Pensions, but that the information would not include any student records or identities, and that it was providing notice only "out of an abundance of caution."  ECF 56.

Plaintiffs filed their Second Amended Complaint on April 18. ECF 62. Congressional Defendants, with Plaintiffs' consent, moved for a three-week extension of time to respond, until May 23, ECF 67, which the Court granted, ECF 69. As a result, Congressional Defendants filed their Motion to Dismiss Plaintiffs' Second Amended Complaint on May 23. ECF 80 & 81. Plaintiffs' opposition to Congressional Defendants' (and the other Defendants') Motion to Dismiss was originally due on June 6, but on June 3, Plaintiffs requested additional time. ECF 93. In turn, Defendants also requested additional time to file their replies to Plaintiffs' oppositions. *Id.* As a result, Plaintiffs' oppositions were due on June 20, and all Defendants' replies were due on July 8. ECF 94. On June 20, Plaintiffs filed their oppositions to Defendants' motions to dismiss, ECF 102 (Agency Defendants), 103 (Columbia Defendants), & 104 (Congressional Defendants), but also filed a renewed Motion for PI, ECF 99, 100, & 101. On June 25, Congressional Defendants and Agency Defendants, with Plaintiffs' consent, moved for a brief extension to file their respective Reply in Support of Their Motion to Dismiss and their Opposition to Plaintiffs' renewed Motion for PI on July 11, ECF 107, which the Court granted, ECF 108. Congressional Defendants now timely file the instant Opposition to Plaintiffs' renewed Motion for PI.

## ARGUMENT

Plaintiffs' renewed Motion for PI should be denied. A preliminary injunction is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek*, 520 U.S. at 972 (emphasis and quotation marks and citation omitted). To meet that burden, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public

4

interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Plaintiffs once again satisfy none of these factors.

**I.      Plaintiffs Again Fail To Establish a Likelihood of Irreparable Harm**

A plaintiff must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis added).  "This requirement must therefore be satisfied before the other requirements for an injunction can be considered." *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 80 (2d Cir. 2024).  The injury cannot be "remote nor speculative," but rather must be "actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009).  Here, Plaintiffs' irreparable harm claims fail because any harm is "remote and speculative," not "actual and imminent." *Id.*

Since the Court's April 4 Order requiring Columbia to give at least 30 days' notice before providing any additional student records or identities to Congressional Defendants, ECF 54, Columbia has not once given such notice with respect to Congressional Defendants, no such records have been produced by Columbia to Congressional Defendants, and Congressional Defendants have not sought any such records.  The passage of time over the last eleven weeks has substantially weakened Plaintiffs' irreparable harm argument, not strengthened it.  Further, as mentioned above, after Plaintiffs' initial Motion for a TRO/PI was filed, Columbia stated that it had "no intent" to provide any student identities and Congressional Defendants stated that it had "no intention to seek additional information beyond what" it had.  Hr'g Tr. at 34, 52.  The Court relied on these representations in denying Plaintiffs' initial motion.  ECF 54.  Plaintiffs fail to point to any evidence of changed circumstances, either that Columbia is now intending to produce additional records, or that Congressional Defendants are now seeking additional records.

Plaintiffs therefore fail to meet their burden as any additional production of student records is at best remote and speculative. *See JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990) (the "possibility" of harm is insufficient).

Even if Columbia intended to produce additional student records to Congressional Defendants, which it has shown no signs of doing, the 30-day notice requirement on its own makes any future productions not "actual or imminent." *Faiveley,* 559 F.3d at 118.   In *L.B. by & through S.B. v. New York City Department of Education*, a court in this district held that the plaintiffs, parents of a special needs child who sued to keep their child enrolled in his current school, failed to show irreparable harm because "[t]here is no suggestion that [the] Cooke [School] will deprive L.B. … the education it promised. … [E]ven if Cooke intended to do so, Cooke has agreed to provide thirty days' notice before any such action was final." No. 21-cv-9356, 2022 WL 220085, at *5 (S.D.N.Y. Jan. 25, 2022).  Plaintiffs fail to even mention, much less grapple with, the 30-day notice requirement.  To the extent that Plaintiffs wish to challenge any future production of student records to Congressional Defendants while this litigation is ongoing, they will have the opportunity to do so without the PI they seek.

Further, "[a]ny imminency in this case is [also] undercut by Plaintiffs' own actions." *Id*. Plaintiffs waited over two-and-a-half months from the Court's denial of their initial Motion for a TRO/PI to file their renewed Motion for PI.  "This delay undercuts any argument that Plaintiffs face irreparable harm that is imminent and irreparable." *Id*.; *see also Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) ("Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights.  Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action.").

Plaintiffs not only entirely ignore all these developments, but they fail to point to *any* information in the record to suggest that another production of student records is likely or imminent. Instead, Plaintiffs rely on *ipse dixit* assertions that are irrelevant, circular, and defy reality.

First, Plaintiffs argue that harm is imminent because "Columbia is creating new records responsive to the February 13 letter" due to ongoing "disciplinary proceedings." ECF 99 at 11. But this is irrelevant; the creation and possession of new records does not mean that they will be produced. *See Utica Mut. Ins. Co. v. INA Reinsurance Co.,* No. 12-cv-00194, 2012 WL 12874471, at *5 (N.D.N.Y. Nov. 6, 2012) (no irreparable harm because plaintiff presented "nothing more than conclusory statements that … it has privileged information"). Furthermore, Plaintiffs are seeking to enjoin the production of records, not their creation or possession by Columbia.

Second, Plaintiffs argue that "[t]he threat of future punishment and additional disclosures makes the injury imminent." ECF 99 at 11. But this is circular and conclusory.

Third, Plaintiffs argue that "Columbia's track record of prior disclosures" means that "[w]ithout the Court's intervention, Columbia will turn over additional records." ECF 99 at 11–12. This too is unsupported and belied by what has happened; the Court rejected Plaintiffs' initial Motion for a TRO/PI months ago, and despite nothing restraining Congressional Defendants from demanding or Columbia from attempting to produce student records, neither has done so. Moreover, as reviewed above, the 30-day notice requirement means that Plaintiffs would have the opportunity to seek this Court's intervention if Columbia wanted to produce student records to Congressional Defendants during this litigation.

Lastly, Plaintiffs throw a Hail Mary and claim that their injury is "ongoing." *Id*. at 10-12.

But since there is no ongoing production of student records, Plaintiffs brazenly shift their asserted injury from the production of student records to Congressional Defendants' alleged demands that Columbia punish "pro-Palestine" students.[3]  Under this new theory, Plaintiffs claim that Congressional Defendants are continuing to pressure Columbia to punish "pro-Palestine" students, and are requesting student records merely to "confirm[] that campus officials have" done so.  ECF 99 at 23.  But by divorcing the injury from the production of student records, Plaintiffs render their entire request for an injunction pointless.  As explained *infra*, enjoining the production of student records would not remedy Plaintiffs' concern that Congressional Defendants are allegedly seeking to use Columbia to punish "pro-Palestine" students.  Plaintiffs have no First Amendment injury, much less an ongoing one that can be remedied by the preliminary injunction they seek.

In essence, Plaintiffs have contrived an alternate reality where they claim that the "problem … has only gotten worse since this case was filed," ECF 99 at 1, when, in fact, the opposite is true.  A preliminary injunction "should issue not upon a plaintiff's imaginative, worst case scenario of the consequences flowing from the defendants' alleged wrong but upon a

---

[3] Indeed, Plaintiffs' renewed PI motion frequently shifts the "injury" they allege to suit the immediate needs in their brief.  At points, they define the injury to be the disclosure of private information in their student records.  *See* ECF 99 at 8-9 (explaining that "the disclosure of private information" "is exactly the[] kinds of harms Plaintiffs seek to remedy").  At other points, the injury is the effects they feel or actions they decide not to take due to the alleged stifling or chilling of their speech.  *Id*. at 10-12.  At yet other points, they explain the PI is meant to "stop a problem that has only gotten worse since this case was filed. Columbia is not an independent actor." *Id*. at 1.  Responding to these varying theories of injury is akin to trying to nail Jell-O to a wall. In this instance, to make the claim that their injury is "ongoing," Plaintiffs apparently define the injury to be the purported effects they feel and their self-censorship in response to Congressional Defendants' alleged attempts to get Columbia to impose discipline on "pro-Palestine" students.  *Id*. at 10 ("The injuries are ongoing, because the February 13 and March 13 letters demanding that Columbia punish its pro-Palestine Students have already altered what Plaintiffs do and say.").

*concrete* showing of imminent irreparable harm." *USA Network v. Jones Intercable, Inc.*, 704 F.

Supp. 488, 491 (S.D.N.Y. 1989) (emphasis added). Plaintiffs have fallen far short of meeting

that standard.

Finally, it must be noted that the purpose of a preliminary injunction is to pause potential

harms that "cannot be remedied if a court waits until the end of trial." *Faiveley*, 559 F.3d at 118.

Here, however, motions to dismiss are fully briefed and ready for the Court's adjudication,

whereas the briefing for Plaintiffs' renewed Motion for PI remains open. The Court should thus

speedily adjudicate Congressional Defendants' Motion to Dismiss since, by granting it, the Court

would moot Plaintiffs' renewed Motion for PI, at least as it pertains to Congressional

Defendants. Deciding the pending motions in that order would be consistent with both judicial

efficiency and principles of interbranch comity. *See Eastland v. U.S. Servicemen's Fund*, 421

U.S. 491, 511 n.17 (1975) (holding that motions to dismiss raising the Speech or Debate Clause

"be given the most expeditious treatment by district courts because one branch of Government is

being asked to halt the functions of a coordinate branch"). If, however, the Court rules on the

renewed Motion for PI before the Motion to Dismiss, no preliminary relief should be granted,

first and foremost, because Plaintiffs fail to establish imminent irreparable harm

## II.      Plaintiffs Are Not Likely To Succeed on the Merits

Plaintiffs devote fewer than two pages to why they are likely to succeed on the merits

against Congressional Defendants. *See* ECF 99 at 22-24. Those two pages (and in fact

Plaintiffs' entire memorandum) never mention, much less discuss, the Speech or Debate Clause

and why the relief they seek is legally permissible. After all, Plaintiffs' renewed PI motion, like

their initial Motion for a TRO/PI, requests relief directly against Congressional Defendants,

*compare* ECF 100-1 at 3, *with* ECF 18 at 2, and the Court has already found that relief to be

unconstitutional because Congressional Defendants are absolutely immune under the Speech or Debate Clause, ECF 54 at 2 (*citing Howard v. Off. of Chief Admin. Officer of U.S. House of Representatives*, 720 F.3d 939, 941 (D.C. Cir. 2013)).

But Plaintiffs also fail on the merits because their requested relief, if granted, would infringe on the Committee's ability to engage in constitutionally protected legislative acts. Plaintiffs first request that the Committee's February 13 letter be enjoined and the Court declare that Congressional Defendants do not have the right to seek student disciplinary records from Columbia. *See* ECF 100-1 at 3. But, as explained in Congressional Defendants' Opposition to Plaintiffs' initial Motion for a TRO/PI, ECF 31 at 13-18, because the "power of the Congress to conduct investigations is inherent in the legislative process," *Watkins v. United States*, 354 U.S. 178, 187 (1957), all modes of congressional information-gathering, including letters seeking information, are legislative acts absolutely protected by the Speech or Debate Clause. *See Ass'n of Am. Physicians & Surgeons v. Schiff*, 518 F. Supp. 3d 505, 518 (D.D.C. 2021) ("[I]nformation gathering letters constitute protected legislative acts."), *aff'd*, 23 F.4th 1028 (D.C. Cir. 2022). None of Plaintiffs' pleadings make any attempt to address or distinguish *Association of American Physicians & Surgeons*.

Plaintiffs then seek even broader relief: they request that the Court enjoin the Committee from seeking *any* student disciplinary records from Columbia that contain *any* students' names. *See* ECF 100-1 at 3. Not only does this request likely exceed the Court's equitable powers, *see Trump v. CASA, Inc.*, No. 24A884, 2025 WL 1773631, at *7 (U.S. June 27, 2025) ("[W]e consistently rebuffed requests for relief that extended beyond the parties."), but it also infringes on Congress's Article I investigatory powers. Future efforts by the Committee to obtain such records would constitute "[c]ongressional information gathering activities," which are absolutely

protected by the Speech or Debate Clause. *SEC v. Comm. on Ways & Means*, 161 F. Supp. 3d 199, 236 (S.D.N.Y. 2015); *see also Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 530 (9th Cir. 1983) ("Obtaining information pertinent to potential legislation or investigation is one of the things generally done in a session of the House." (quotation marks and citation omitted)).

Finally, Plaintiffs request that the Committee be enjoined from "publishing,[] releasing, or otherwise disclosing to the public or any third party … all personally identifiable information, including names, membership rolls, addresses, or otherwise easily identifiable information contained in any of the individual or organizational student disciplinary records it has received or will receive in response to the February 13 letter."[4]  ECF 100-1 at 3.  This request flies in the face of directly-on-point Supreme Court precedent, specifically, *Doe v. McMillan*, 412 U.S. 306, 307-13 (1973).  In *Doe*, plaintiffs sought to enjoin the further release of a House committee report on the underperforming Washington, D.C. public school system that specifically named students (and their disciplinary problems).  *See id.* at 307-10.  The Court held that the lawsuit was plainly "barred by the Speech or Debate Clause" and that even if the Court "disagree[s] with the Committee as to whether it was necessary, or even remotely useful, to include the names of individual children in the ... Committee Report, we have no authority to oversee the judgment of the Committee in this respect."  *Id.* at 312-13.  Plaintiffs also ignore the Court's April 4 Order denying Plaintiffs' initial Motion for a TRO/PI and citing *Doe* for this proposition.  ECF 54 at 2.

---

[4] To be clear, nowhere in their Second Amended Complaint do Plaintiffs allege that Congressional Defendants have released any names or addresses, and Congressional Defendants have previously stated that even if it has student names, there's "no intent to publicize student names for the sake of publication."  Hr'g Tr. at 36 (counsel for Congressional Defendants agreeing with the Court's statement).  Plaintiffs' theory, as best as it can be interpreted, is that the information Congressional Defendants have released permitted third parties to decipher some students' identities.  *See* ECF 62 ¶ 58 n.43.

Neither Plaintiffs nor the Court can dictate how Congress uses the information it acquires. *See* ECF 31 at 17 (explaining "Congress'[s] privilege to use materials in its possession without judicial interference" (quoting *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 416 (D.C. Cir. 1995))).

With respect to standing, Plaintiffs' rehashed arguments also fail for the reasons explained in Congressional Defendants' other pleadings and the Court's April 4 Order. Importantly, Plaintiffs' standing arguments fail because of a complete lack of traceability and redressability. Plaintiffs' theory of harm in their renewed Motion for PI is that Congressional Defendants are forcing Columbia to punish them, thereby causing a First Amendment injury. *See, e.g.*, ECF 99 at 3 ("The February 13 Letter thus pressures Columbia 'to administer discipline' against the students and student groups involved in the eleven events the Committee lists."). But even if this were true (which it is not[5]), Plaintiffs' proposed remedy fails to mitigate

---

[5] Neither the February 13 letter at issue here—nor any letter sent by Congressional Defendants to Columbia—focuses on Plaintiffs' views on the Middle East. *See* Letter from Rep. Virginia Foxx, Chairwoman, H. Comm. on Educ. and the Workforce, to Dr. Minouche Shafik, President, Colum. Univ., et al. (Feb. 12, 2024), ECF 82-1 at 1 (focusing on "Columbia University's response to antisemitism and its failure to protect Jewish students"); Letter from Rep. Virginia Foxx, Chairwoman, H. Comm. on Educ. and the Workforce, to Dr. Minouche Shafik, President, Colum. Univ., et al. (Apr. 21, 2024), ECF 82-2 at 1 (focusing on "the ongoing chaos at Columbia University [which has] … created a severe and pervasive hostile environment for Jewish students at Columbia"); Letter from Rep. Virginia Foxx, Chairwoman, H. Comm. on Educ. and the Workforce, to Dr. Minouche Shafik, President, Colum. Univ., et al. (Aug. 1, 2024), ECF 82-3 at 1 (focusing on "Columbia University's response to the severe and pervasive antisemitism on its campus"); Letter from Rep. Virginia Foxx, Chairwoman, H. Comm. on Educ. and the Workforce, to Dr. Minouche Shafik, President, Colum. Univ., et al. (Aug.21, 2024), ECF 82-4 at 1 (focusing on "antisemitism in postsecondary institutions, including Columbia University"); Letter from Rep. Tim Walberg, Chairman, H. Comm. on Educ. & Workforce, to Dr. Katrina Armstrong, Interim President, Colum. Univ., et al. (Feb. 13, 2025), ECF 82-5 at 1 (focusing on "Columbia's continued failure to address the pervasive antisemitism that persists on campus"). Instead, Congressional Defendants are concerned about Columbia's admitted antisemitism problem and its resulting violation of federal antidiscrimination law. *See* Statement

12

the harm, as enjoining the requests for student disciplinary records does nothing to prevent the injuries that Plaintiffs believe Congressional Defendants are causing and will (allegedly) continue to inflict. *See id.* at 23 (explaining that student records merely serve to "confirm[] that campus officials have … punish[ed] Plaintiffs and other pro-Palestine students."). For example, even if this Court were to give Plaintiffs exactly what they want, an injunction against Congressional Defendants from requesting or disseminating student records, *see* ECF 100-1 at 3, Congressional Defendants could still directly ask Columbia to "punish" or discipline Plaintiffs for their actions. Thus, contrary to Plaintiffs' claim that "[a] narrow injunction against the Committee's February 13 letter" will be "easy and effective," such an injunction would be both illegal and ineffective. ECF 99 at 27.

Finally, Plaintiff's attempt to throw a variety of First Amendment arguments against the wall and see what sticks is unsuccessful. One argument Plaintiffs advanced in their Second Amended Complaint is that "Congress's release of information … made it easy for *third parties* to identify individual students and then target those students in large scale harassment campaigns." ECF 62 ¶ 58 n.43 (emphasis added). Under this theory, the Committee wants student records so that it can disseminate them to third parties, who will then target and harass Plaintiffs. Another argument Plaintiffs advance is that the disclosure of the student records to Congressional Defendants would itself cause First Amendment injury. ECF 99 at 27 (The "records Columbia holds about Plaintiffs … are protected by the First Amendment."). Yet another argument (discussed above) is that the February 13 letter is a demand by Congress to

from Columbia University President Minouche Shafik (Apr. 29, 2024) (President Shafik Statement), https://perma.cc/Y32M-ZZXE.

13

Columbia to punish Plaintiffs, and the student records serve no purpose other than to "confirm[]" that Columbia has done so.  *See* ECF 99 at 23.

None of these shifting, unsupported, speculative, and thinly-pleaded arguments have merit.  For the reasons explained in Congressional Defendants' Motion to Dismiss, ECF 81 at 24-26, and their Reply in Support of Their Motion to Dismiss, ECF 114 at 11-12, Columbia is not a state actor so the First Amendment does not apply to it.  Congressional Defendants are also not compelling Columbia to suppress speech or produce student records.  *See* ECF 81 at 27-28; ECF 114 at 9-11.   Plaintiffs continue to misleadingly claim that Congressional Defendants have "threaten[ed] Columbia's 'billions in federal funding' if campus officials do not 'take the steps necessary' to suppress political expressions the Committee disfavors."  ECF 99 at 3 (quoting from ECF 101-1 at 1).  Plaintiffs ignore Congressional Defendants' prior responses to this misquotation, *see* ECF 31 at 22 ("Read without Plaintiffs' misleading context, the reference to funding simply means it is untenable that Columbia receives federal funding while maintaining a pervasively hostile environment for Jewish students, which is a statement of federal antidiscrimination law"); ECF 81 at 27-28 (the "statement is not coercive because, as explained above, it is purely a statement of federal antidiscrimination law").  Simply put, Congressional Defendants are not asking Columbia to violate the First Amendment; Congressional Defendants are pointing out that since Columbia receives federal funding, it must comply with federal civil rights law, especially because Columbia itself has admitted being out of compliance with Title VI due to rampant antisemitism on campus.[6]

---

[6] *See supra* note 5.

### III.    The Balance of Equities and Public Interest Favor Congressional Defendants

For the reasons explained by Congressional Defendants' Opposition to Plaintiffs' initial Motion for a TRO/PI, ECF 31 at 27-28, the balance of equities and public interest favor Congressional Defendants.  Specifically, while Plaintiffs have not shown any irreparable or imminent harm, constraining Congress would hamper the Committee's ongoing investigation, *see Exxon Corp. v. FTC*, 589 F.2d 582, 594 (D.C. Cir. 1978) (noting that there is a "clear public interest in maximizing the effectiveness of the investigatory powers of Congress"); inflict the harm of loss of information, *see Comm. on Judiciary, U.S. House of Representatives v. Miers*, 558 F. Supp. 2d 53, 71 (D.D.C. 2008); delay any potential legislative remedies, leading to additional injury and discrimination against Jewish students; and improperly usurp the Committee's constitutional power to investigate and conduct oversight, *see Eastland*, 421 U.S. at 509 ("The wisdom of congressional approach or methodology is not open to judicial veto.").

### CONCLUSION

For the reasons set forth above, the Court should first address (and grant) Congressional Defendants' Motion to Dismiss and then deny Plaintiffs' renewed Motion for PI as moot. Alternatively, if the Court rules first on the renewed Motion for PI, it should be denied primarily because Plaintiffs have failed to carry their burden of establishing imminent irreparable harm.

Respectfully submitted,


*/s/ Matthew Berry*
MATTHEW BERRY
   *General Counsel*
TODD B. TATELMAN
   *Deputy General Counsel*
ANDY T. WANG
   *Associate General Counsel*
KENNETH C. DAINES
   *Assistant General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700 (telephone)
matthew.berry@mail.house.gov

*Counsel for Congressional Defendants*

July 11, 2025

16

**CERTIFICATE OF SERVICE**

I certify that on July 11, 2025, I caused the foregoing document to be filed via this Court's CM/ECF system, which I understand caused service on all registered parties.  I further certify that the foregoing document contains 4,733 words, which is compliant with Local Civil Rule 7.1(c).


/s/ *Matthew Berry*
Matthew Berry