# EXHIBIT A

# University Policies

Home » Rules of University Conduct

# Rules of University Conduct

## Overview

### Who is Governed by This Policy

Columbia University faculty, students, and employees are governed by this policy.

⌄ Policy Text

## The Rules of University Conduct

[Download a printable PDF of the Rules of University Conduct ⬈](#)

### §440. Affirmative Statement

The Rules of University Conduct, found in Chapter XLIV of the Statutes of Columbia University, are intended to ensure that all members of our community may engage in our cherished traditions of free expression and open debate. The University, as a forum for the pursuit and attainment of knowledge in every field of human endeavor, has a special role in fostering free inquiry. A principal reason why universities have endured and flourished over centuries is that they provide a place for ideas to be tested, for values to be questioned, and for minds to be changed with as few constraints as possible. Like society at large, but even more so, the University has a vital interest in fostering a climate in which nothing is immune from scrutiny. And Columbia, in particular, has a long tradition of valuing dissent and controversy and in welcoming the clash of opinions onto the campus.

To be true to these principles, the University cannot and will not rule any subject or form of expression out of order on the ground that it is objectionable, offensive, immoral, or untrue. Viewpoints will inevitably conflict, and members of the University community will disagree with and may even take offense at both the opinions expressed by others and the manner in which they are expressed. But the role of the University is not to shield individuals from positions that they find unwelcome. Rather, the University is a place for received wisdom and firmly held views to be tested, and tested again, so that members of the University community can listen, challenge each other, and be challenged in return.

The University recognizes only two kinds of limitations on the right of freedom of expression, and both are to be narrowly construed. **First**, the University reasonably regulates the time, place, and manner of certain forms of public expression. In keeping with the University's dedication to the principle of uninhibited discourse, these regulations do not turn on the content of any message that might be expressed. Rather, they are necessary not because they would prevent any opinion from being stated or heard, but, to the contrary, because they protect the rights of free

speech, free press, and academic freedom. Just as all members of the University community have the right to speak, to study, research, to teach, and to express their own views, so must they allow others in the community to do the same. The right to demonstrate, for example, cannot come at the expense of the right of others to counter-demonstrate, to teach, or to engage in academic pursuits requiring uninterrupted attention. As is true of the larger community in which the University sits, the University must protect the rights of all to engage in their callings and express their own views.

**Second**, the University may restrict expression that constitutes a genuine threat of harassment, that unjustifiably invades an individual's privacy, or that falsely defames a specific individual. These forms of expression stand apart because they do little if anything to advance the University's truth-seeking function and they impair the ability of individuals at the University to participate in that function. The University has an obligation to assure members of its community that they can continue in their academic pursuits without fear for their personal security or other serious intrusions on their ability to teach and to study.

Because of the University's function as an incubator of ideas and viewpoints, the principle of free expression must be jealously guarded. As President Bollinger has noted, "Our great institutions of higher education bear a special social responsibility for educating people to possess a nimble cast of mind, able to grasp multiple perspectives and the full complexity of a subject. And for centuries, great societies of all types have understood that this kind of intellectual capacity is essential to progress. But never have critical thinking and tolerance been more important for individual well-being and for our collective prosperity." Every member of our community therefore retains the right to demonstrate, to rally, to picket, to circulate petitions and distribute ideas, to partake in debates, to invite outsiders to participate, and to retain the freedom to express opinions on any subject whatsoever, even when such expression invites controversy and sharp scrutiny. Although the University values the civil and courteous exchange of viewpoints, it does not limit discussion because the ideas expressed might be thought offensive, immoral, disrespectful, or even dangerous. We expect that members of our community will engage in public discussions that may confront convention, and free expression would mean little if it did not include the right to express what others may reject or loathe.

## §441. Definitions

Terms used in this Chapter  shall have the following meanings: (Comment: While gender-neutral language is employed in these Rules whenever possible, "he," "him," or "his" occasionally appear. They are used to avoid awkward locutions and are not intended to perpetuate gender stereotypes.)

a. *University* means Columbia University in the City of New York.

b. *University facility* means that place where a University function occurs.

c. *University function* means any charter or statutory operation or activity of the University, including instruction, research, study, administration, habitation, social life, space allocation and control, food supply, and other functions directly related thereto. Specifically included are both functions of fixed-time duration (e.g., classes, examinations, lectures, etc.) and functions of continuing duration (e.g., the operation of libraries, research laboratories, maintenance shops, computers, business offices, etc.). Also included are functions ancillary to directly educational purposes, such as meetings, disciplinary proceedings, and athletic and social events sponsored by any University-approved organization.

d. *Deans* are persons appointed by the President, and approved by the Trustees, either as dean, acting dean, or director of one of the divisions or schools of the Columbia Corporation, or such staff persons as they may assign to administer disciplinary affairs.

e. *Delegates*. Delegates are appointed by the President and/or the Rules Administrator. In addition, all Deans and Deans of Students are automatically considered Delegates under these rules. Delegates have authority for the enforcement of these Rules. They shall warn individuals and groups whose actions may violate these Rules and may declare their belief that the demonstration does not conform to the Rules of Conduct. They shall, when facts known to them or brought to their attention warrant, file a complaint with the Rules Administrator against alleged violators.

f. *Day* means a calendar day, regardless of whether the University is in academic session except for purposes of the procedures set forth in Section 448 and 450. Whenever any time limit expires on a nonworking day, it shall be extended to the next working day.

g. *Students* are any persons registered in any division of the University, whether for courses or research, and whether or not they are candidates for a degree or certificate. They also include persons who are on leave or suspended or continuing matriculants for any degree or certificate, as well as persons registered during any preceding terms and who have not since that time earned the degree or certificate or withdrawn from the University.

h. *Faculty* means officers of instruction appointed to any division, school, or other department of the University, including officers on leave

i. *Staff* means members of the administration, administrative staff, research staff, library staff, or supporting staff, and includes all non-instructional officers.

j. *Violation* means the commission of an act proscribed by these Rules. However, inadvertent or accidental behavior shall not be considered to be the substance of a violation.

k. *Respondent* means a person against whom a charge for violation of these Rules has been filed.

l. *Rules Administrator* means the Rules Administrator appointed under Section 445a.

## §442. Jurisdiction

The Rules of University Conduct shall apply to all members of the University community: administrators, administrative staff, research staff, library staff, supporting staff, faculty, and students. Also visitors, licensees, and invitees on a University facility shall be subject to the Rules of University Conduct. Violations by such persons may result in the revocation of their invitation or license to be on a University facility and their subsequent ejection.

The Rules of University Conduct apply to any demonstration, including a rally or picketing, that takes place on or at a University facility or at any University sponsored activity. Such facilities include, but are not limited to, all University campuses, research laboratories, maintenance shops, business offices, athletic fields, dormitories, classrooms, and meeting halls. The Rules of University Conduct do not apply to participation in a demonstration, including a rally or picketing, by full-time employees of the University represented by a collective bargaining agent, where the demonstration arises in the course of or is incident to a labor dispute involving the University.

## §443. Violations

a. A person is in violation of these Rules when such person individually or with a group, incident to a demonstration, including a rally or picketing:

(1) (simple violation) engages in conduct that places another in danger of bodily harm;

(2) (serious violation) causes or clearly attempts to cause physical injury to another person;

(3) (simple) uses words that threaten bodily harm in a situation where there is clear and present danger of such bodily harm;

(4) (serious) uses words in a situation of clear and present danger that actually incite others to behavior that would violate Sections 443a (2) or (6);

(5) (simple) causes minor property damage or loss, or endangers property on a University facility;

(6) (serious) misappropriates, damages, or destroys books or scholarly material or any other property belonging to the University, or to another party, when that property is in or on a University facility, and by such action causes or threatens substantial educational, administrative, or financial loss;

(7) (simple) interferes over a short period of time with entrance to, exit from, passage within, or use of, a University facility but does not substantially disrupt any University function;

(8) (serious) continues for more than a very short period of time to physically prevent, or clearly attempt to prevent, passage within, or unimpeded use of, a University facility, and thereby interferes with the normal conduct of a University function;

(9) (serious) enters or remains in a University facility without authorization at a time after the facility has been declared closed by the University; (Comment: The University shall make all reasonable attempts to publicize this declaration to the fullest extent possible.)

(10) (simple) enters a private office without authorization;

(11) (serious) holds or occupies a private office for his own purposes; (Comment: Persons may not enter a private office unless invited and then not substantially in excess of the number designated or invited by the occupant. Anyone so entering must leave on request of a recognized occupant of such office or on request of another authorized person. Passage through reception areas leading to private offices must not be obstructed for more than a short period of time. Clear and unimpeded passageway through lobbies, corridors, and stairways must be maintained at all times. For this purpose, the Delegate may advise demonstrators as to the permissible number of participants in such restricted areas and regulate the location of such participants. Persons may use rooms in which instruction, research, or study normally take place only when such rooms are assigned to them through established University procedures.)

(12) (simple) causes a noise that substantially hinders others in their normal academic activities;

(13) (simple) briefly interrupts a University function;

(14) (serious) disrupts a University function or renders its continuation impossible;

(15) (serious) illicitly uses, or attempts to use, or makes threats with a firearm, explosive, dangerous or noxious chemical, or other dangerous instrument or weapon;

(16) (simple) fails to self-identify when requested to do so by a properly identified Delegate;

(17) (serious) prevents a properly identified Delegate from the discharge of his official responsibilities under these Rules, except through a mere refusal to self-identify;

(18) (simple) fails to obey the reasonable orders of a properly identified Delegate regulating the location of demonstrators or others within the vicinity of a demonstration to assure unimpeded access to or use of a facility or to avoid physical conflict between demonstrators and others; (Comment: This regulation gives the Delegate authority to regulate assemblies. The check against abuse of such authority is provided by the test of reasonableness imposed by the University Judicial Board in such disciplinary proceedings as may result from noncompliance. Should a Delegate in the exercise of discretion fail to disperse an assembly in which some or all of the participants are violating or have violated the Rules, this should in no way be construed as excusing the violators, who remain liable for their acts under these Rules.)

(19) (simple) fails to disperse from an assembly upon order of a properly identified Delegate when such order results from repeated or continuing violations of these Rules by members of the assembly and the Delegate has by verbal

directions made reasonable effort to secure compliance before ordering dispersal;

(20) (serious) fails to disperse from an assembly upon order of a properly identified Delegate when such order results from serious violations of these Rules by members of the assembly and the Delegate so states in his order to disperse.

## §444.Enforcement

a. *Summoning a Delegate.* Should any member of the University community believe that participants in an assembly or other demonstration are violating the Rules of University Conduct, he or she should notify the appropriate Delegate(s) by contacting the Rules Administrators and/or The Office of Public Safety. The Delegate(s) shall proceed to the site of the demonstration and gather information for possible transmission to the Rules Administrator. This includes the identities of any participants who the Delegate feels are violating the Rules and the facts surrounding the demonstration.

b. *Warning and Advice.* Properly identified Delegates shall warn those parties whose actions they consider to be in violation of these Rules. However, a member of the University community may be charged with a violation of these Rules even if no prior warning has been given or perceived. Only the University Judicial Board shall, in either case, be empowered to determine whether the actions of the accused were in violation of these Rules.

c. *Creating Separate Areas for Demonstrations Believed to Be in Violation of These Rules and for Permissible Demonstrations/Observation.* Delegates believing that an assembly or other demonstration is violating these Rules should, to the extent practicable in their sole judgment, immediately make all reasonable efforts to create separate areas for demonstrators whose actions are believed to violate the Rules and for those wishing to demonstrate permissibly, or to observe, or to report on, cover, photograph, or document the demonstration. There should be a reasonable distance between these areas, with a presumption in favor of allowing unobstructed view and observation, and they should be graphically delineated without creating barriers, to the extent feasible. Failure by a Delegate to create these areas shall not excuse a violation of these Rules.

d. *Distribution of a Flier Conveying Pertinent Information to Demonstrators and Observers.* Whenever an assembly or other demonstration believed to be in violation of these Rules continues for more than a short period of time, the Delegate shall consider preparing a flier for distribution to persons in the area of demonstration. The flier should repeat any previous warning by a Delegate concerning the violation of these Rules that are believed to be taking place, describe the locations of any areas cordoned off under Section 444c, and identify the locations where full copies of these Rules are available. Failure by the Delegate to prepare and distribute such a flier shall not excuse a violation of these Rules.

e. *Self-identifying.* A properly identified Delegate may request individuals believed to be violating these Rules to identify themselves. Members of the University community who do not self-identify may be charged with a violation of these Rules.

f. *Treatment of outsiders.* In accordance with the jurisdiction of these Rules, any visitor, licensee, or invitee who the Delegate determines is violating these Rules, and who does not comply with the Delegate's warning and advice, may be ejected from a University facility without regard to the procedures set forth herein. Delegates also have a responsibility to protect the rights of lawful demonstrators. Delegates may warn counterdemonstrators or vigilantes whose actions the Delegate may consider to be in violation of these Rules. Members of the University community should not take enforcement of these Rules into their own hands, since such action may result in violations of these Rules.

If the President, upon consultation with a majority of a panel established by the University Senate's Executive Committee, decides that a demonstration poses a clear and present danger to persons, property, or the substantial functioning of any division of the University, he or she shall take all necessary steps to secure the cooperation of external authorities to bring about the end of the disruption. The President shall make public his or her decision to the fullest extent possible as soon as it is feasible. Nothing in the above shall be construed to limit the President's emergency authority to protect persons or property.

## §445. Administrative and Judicial Personnel

a. *Rules Administrator.* The Rules Administrator (or his/her designated Assistant Administrator) shall have primary responsibility for the administration of these Rules. He/She shall maintain and have custody of the records of proceedings under these Rules; shall prepare and serve notices and other documents required under these Rules; shall accept and investigate complaints, file charges, organize informal settlements, and present evidence in support of charges to the hearing panels. The Rules Administrator shall be appointed by the President after consultation with the Executive Committee of the University Senate, and shall serve at the pleasure of the President. The Rules Administrator shall be an individual appointed from the Office of the Executive Vice President for University Life. The Rules Administrator may appoint one or more Assistant Administrators, who may act in his or her stead. Persons otherwise concerned with the disciplinary procedures of a particular school or division may not be appointed as the Rules Administrator or an Assistant Administrator.

b. *Delegate*. Delegates may be called upon to enforce these Rules by anyone subject to them, including faculty, students, and staff, or they may proceed to enforce them on their own initiative. A Delegate is obliged, upon the request of another Delegate, to assist that Delegate. The Rules Administrator shall be kept informed of all actions and charges undertaken by a Delegate.

c. *University Judicial Board*. The University Judicial Board shall hear all charges of violations of these Rules. The Executive Committee of the University Senate shall at its first meeting each year appoint or fill vacancies in a University Judicial Board consisting of five members, one of whom shall be a student, one of whom shall be a faculty member, and one of whom shall be a staff member, as defined in Section 441i. Each of these three groups—students, faculty, and staff—is eligible for the two remaining seats, but none of the groups may occupy both of those seats, and thereby form a majority of the Board. The members shall be chosen after consultation with the three groups. The Executive Committee shall designate the chair of the Board, as well as an alternate chair, and shall also appoint a pool of alternate board members. Appointments to the board shall be for a term of three years, and shall be staggered to ensure continuity. The members of the University Judicial Board shall be persons from within the University, and no person otherwise concerned with disciplinary procedures may be appointed to the Board.  Once confirmed by the Executive Committee, members of the University Judicial Board pool will be trained in the Rules of University Conduct and the precedents for adjudications and sanctions.

d. *Appeals Board.* The Appeals Board shall hear all appeals from decisions or sanctions imposed by the University Judicial Board or, in cases of informal resolution, decisions or sanctions imposed by the Chair of the UJB, or by the Chair's designee. The Appeals Board may overturn, affirm, or revise the decision, and it may overturn, affirm, or lessen the sanction. The Executive Committee of the University Senate shall at its first meeting each year appoint or fill vacancies in an Appeals Board consisting of three members, each of whom is a Dean of School or Division. The Executive Committee shall designate the chair of the board and shall make appointments to the board, which shall ordinarily be for a term of three years, so as to provide for staggered terms to ensure continuity in the board. The members of the Appeals Board shall be persons from within the University. Members of the Board will not be from the school of the respondent.

e. *Additional judiciary boards or members.* The Executive Committee of the University Senate may appoint additional boards, or persons to a board, should the need arise. The Executive Committee may divide the original University Judicial Board, or the original Appeals Board, as equitably as possible to ensure maximum continuity of experience.

## §446. Rights of the Respondent

In order to provide accessible, prompt, and fair methods of investigation and resolution of incidents of misconduct, the University has developed a process for investigation and adjudication of allegations of misconduct. Throughout this process, the respondent has the following rights:

- To respect, dignity, and sensitivity.

- To appropriate support from the University.

- To privacy to the extent possible consistent with applicable law, University policy, and the respondent's wishes.

- To information about the University's Rules of University Conduct.

- To the presence of an advisor throughout the process.

- To participate or to decline to participate in the investigation or hearing process. However, a decision to refrain from participating in the process either wholly or in part will not prevent the process from proceeding with the information available.

- To a prompt and thorough investigation of the allegations.

- To adequate time to review documents during and following the investigation.

- To adequate time to prepare for a hearing.

- To introduce evidence into the record and call witnesses on one's own behalf.

- To request access to University documents or camera footage that can be used in one's defense.

- To an opportunity to challenge the Rules Administrator, members of the University Judicial Board, or members of the Appeals Board for a possible conflict of interest.

- To refrain from making self-incriminating statements.

- To appeal the decision made by a hearing panel and any sanctions.

- To notification, in writing, of a report of misconduct, any charge filed, any resolution of the case, any factual findings of the investigation, any explanation of findings of responsibility, and any imposed sanctions, including the outcome of any appeal.

- To understand that information collected in the process may be subpoenaed in criminal or civil proceedings.

Privacy

The University will reveal information about its investigations and adjudication of misconduct only to those who need to know the information in order to carry out their duties and responsibilities. It will inform all University personnel participating in an investigation, proceeding, or hearing that they are expected to maintain the privacy of the process and of the respondent.

## Advisor(s)

The respondent may be accompanied to any meeting or hearing related to an incident of misconduct by the advisor(s) of his/her choice. Advisor(s) may support the respondent and provide advice about the investigation and disciplinary process. During meetings and hearings, the advisor(s) may talk quietly with the respondent or pass notes in a non-disruptive manner. The advisor may not intervene in a meeting or hearing or address the Rules Administrator or hearing panel, including by questioning witnesses or making objections. If a respondent desires to have an attorney serve as his or her advisor, the University will arrange for a volunteer attorney-advisor if the respondent so requests. Advisors may include but are not limited to family members, friends, counselors, therapists, clergy, attorneys, academic advisors, professors, and administrators.

## Declining to Participate

A respondent may decline to participate in the investigative or adjudicative process. The University may continue the process without the respondent's participation. In most cases, a refusal to participate in the investigative process will preclude a respondent from participating before the hearing panel.

## Time Frame

The University will seek to resolve every report of misconduct within approximately two (2) months of an incident, not counting any appeal. Generally, the time line will be as follows:

- Investigation begins within five (5) business days after an incident.

- Investigation completed within fifteen (15) business days after the investigation begins.

- Hearing (if any) held within fifteen (15) business days after the conclusion of the investigation.

- Notice of a decision for cause to reject a request from the respondent for an open hearing.

- Decision of the hearing panel issued within five (5) business days after the hearing.

- Notice of sanctions issued within five (5) business days after the decision of the hearing panel (or after the respondent accepts responsibility).

- Notice of appeal to the Appeals Board filed by the Rules Administrator and/or respondent within five (5) business days after the notice of decision or sanctions.

- Decision of the Appeals Board within ten (10) business days after notice of appeal received.

- Notice of appeal to the President filed by the Rules Administrator and/or respondent within five (5) business days after the decision of the appeal.

- Decision of the President within ten (10) business days after notice of appeal.

Each of these stages is explained in greater detail below. The hearing panel may extend any time frame for good cause, with a written explanation to the Rules Administrator and respondent.

## Notice

The Rules Administrator will give the respondent a written explanation of his/her rights and options as soon as possible after an incident is reported. The University will also ensure that the respondent is updated throughout the investigative process, including with timely notice of meetings where the respondent may be present. More specifically, the respondent will be given the following written notices:

- Notice that a complaint was dismissed or that an investigation will proceed.

- Notice of a charge filed and any information that will be used in the hearing process.

- Notice of the date and time of any hearing and a list of hearing panel members.

- Notice of the hearing panel's decision of "responsible" or "not responsible." This notice will include an explanation of the University's appeals process.

- Notice of the sanctions imposed. This notice will include an explanation of the University's appeals process.

- Notice of whether an appeal has been filed.

- Notice of whether the decision, or sanctions, have been modified.

- Notice when the decision and sanctions become final.

## Conflicts of Interest

The University requires any individual participating in the investigation, hearing process, sanctioning or appeal process to disclose to the University any potential or actual conflict of interest. If a respondent believes that any individual involved in the process has a conflict of interest, within three (3) business days of receiving notice of his/her participation the respondent may make a written request to the Rules Administrator that the individual not participate. Any request should include a description of the conflict. If the Rules Administrator determines that a conflict of interest exists, he/she will take steps to address the conflict in order to ensure an impartial process. A respondent who believes that the Rules Administrator has a conflict of interest must submit the written request to the Office of the Executive Vice President for University Life.

## §447. Prehearing Procedures/Investigation

### Filing Complaint(s)

Any member of the University who believes a violation of the Rules has been committed may file a written complaint, either on paper or electronically via U.S. mail, email, or online portal, with the Rules Administrator. The complaint shall state with particularity the person(s) involved, the nature of the offense, and the circumstances under which the offense may have been committed.

### Complaint(s) Dismissed

If the Rules Administrator dismisses a complaint, he/she will notify the complainant and respondent in writing.

## Investigation of Complaints

If an investigation proceeds, the Rules Administrator will notify the respondent in writing of the allegation(s). The Rules Administrator will conduct interviews and will gather pertinent information and documentation. The Rules Administrator will inform the Dean of the relevant school(s) that an investigation is commencing and will seek to coordinate any disciplinary proceedings.  The University's process for responding to, investigating, and adjudicating allegations of misconduct will continue during any law enforcement proceeding. The University may need to temporarily delay an investigation while law enforcement is gathering evidence, but it will resume the investigation after it learns that law enforcement has completed its evidence-gathering and will generally not wait for the conclusion of any related civil or criminal proceeding.

The Rules Administrator will follow the protocols set forth below:

- Preserving Evidence. The Rules Administrator will direct the respondent, witnesses, and other interested individuals to preserve any relevant evidence.

- Character Witnesses. The Rules Administrator will not interview witnesses whose sole purpose is to provide character information.

- Prior Conduct Violations. The Rules Administrator will not consider the respondent's prior conduct violations, unless the respondent was previously found to be responsible, or the previous incident was substantially similar to the present allegation(s) and/or the information indicates a pattern of behavior by the respondent.

## Informal Resolution

The Rules Administrator may seek to resolve certain cases through an informal process with the respondent. This type of informal resolution can take place during the investigation or after its conclusion. If these efforts are unsuccessful, the disciplinary process will continue.

## Charge(s) Filed

If a charge is filed, the Rules Administrator will prepare a report detailing the relevant content from the interviews and the documentation gathered. The report will include the Rules Administrator's assessment and recommended findings of responsibility.

The respondent will have the opportunity to review a copy of the investigative report and any other information that will be used during the hearing process. The names and other identifying information of other individuals may be redacted from such materials.

## Administrative Resolution

After the respondent has had an opportunity to review the investigative report and related material, the Rules Administrator will ask the respondent to respond to the alleged violation in one of the following ways: 1) Responsible; 2) Not Responsible; or 3) No Response. If the respondent accepts responsibility, the matter will proceed to the sanctioning stage, followed by any appeals. If the respondent declines responsibility, or chooses not to respond, the matter will proceed to the hearing stage.  If the respondent selects not to respond, this shall not be considered to be an admission of responsibility.

## §448. Hearing Process

### Hearing Panel

If administrative resolution is not available, the Rules Administrator will submit the charge(s) to the University Judicial Board, which will determine whether the respondent is responsible or not responsible for a violation of the Rules. If the respondent is determined to be responsible, the University Judicial Board will provide the sanction based on their determination.

### Written Submissions

Both the Rules Administrator and the respondent will have the opportunity to submit to the hearing panel written responses to the investigation report and other relevant information. The Rules Administrator and the respondent will have the opportunity to review any written, recorded, photographic, or digital submissions by the other. The hearing panel may set reasonable parameters for these written submissions. The hearing panel will review the investigation report and written submissions. The panel may determine that a hearing is not necessary when all panel members agree that the information in the investigation report and the written submissions (if any) is sufficient to make a determination (for example, where the respondent does not dispute relevant facts). If the panel decides that a hearing is not necessary, the panel will proceed directly to make a determination, including an explanation of why a hearing is not necessary.

Either the Rules Administrator or the respondent may submit to the hearing panel a request to consolidate, or sever, the hearings of this and other respondents.

### Hearing Procedures

The University will, whenever possible, give the respondent at least five (5) business days' advance notice of the hearing. The hearing is a closed proceeding, meaning that the only individuals who may be present in the hearing room(s) during the proceeding are: the panel members, the Rules Administrator, the respondent, their respective advisors, witnesses (when called), and necessary University personnel. The Office of the Executive Vice President for University Life will work with other University personnel so that any individual whose presence is required may participate in the hearing.

A respondent may request in writing that a hearing be open to the public, and the request shall be granted unless the University Judicial Board decides to keep the hearing closed for cause. If the Board decides to keep the hearing closed, it must provide written notice to the respondent. In determining whether a hearing may be open to the public, they may consider: (1) the risk to public safety, including to witnesses who may be called, and (2) the deterrent or permissive effect on the campus community, including on particular individuals and organizations.

If a hearing is declared open, a dissenting member of the hearing panel can declare a conflict of interest and withdraw from consideration of the case.

In general, hearings will proceed as follows:

- Rules Administrator statement

- Respondent statement

- Questions to the Rules Administrator by the hearing panel

- Questions to the respondent by the hearing panel

- Witness testimony and questioning by the hearing panel

- Closing statement by Rules Administrator

- Closing statement by respondent

The panel may set reasonable time limits for any part of the hearing. The Rules Administrator and the respondent will have the opportunity to present witnesses and other information consistent with the Rules. The panel may determine the relevance of, place restrictions on, or exclude any witnesses or information. When the respondent is not able to be present for the hearing panel, arrangements will be made for participation via alternate means.

In cases where the respondent opts not to participate in the hearing, the panel may still hear from the Rules Administrator, but it may not draw an adverse inference from a respondent's refusal to participate.

Additional hearing rules include:

- Questioning. Only the panel may ask questions of the Rules Administrator, the respondent, and any witnesses. Both the Rules Administrator and the respondent will have the opportunity to suggest questions of the other and of witnesses by submitting suggested questions to the panel in writing. The panel may revise or not ask any or all submitted questions.

- Prior Conduct Violations. The hearing panel will not consider the respondent's prior conduct violations, unless the information is provided because: the respondent was previously found to be responsible, or the previous incident was substantially similar to the present allegation(s) and/or the information indicates a pattern of behavior by the respondent.

- Hearing Recording. If the hearing is closed, the University will keep an audio recording of the hearing for the use of the panel, for sanctioning, and for purposes of appeal. The Office of the President, the panelists, the University Judicial Board, the Rules Administrator, and the respondent may request a transcript of the recording. If the hearing is open, the verbatim record of the hearing must be a public record.

- Cell Phones and Recording Devices. Cell phones and recording devices may not be used in the hearing room(s) unless approved by the panel in writing in advance.

## Panel Determinations/Standard of Proof

The panel will use "preponderance of the evidence" as the standard of proof to determine whether a violation of the Rules occurred. Preponderance of the evidence means that a panel must be convinced based on the information it considers that the respondent was more likely than not to have engaged in the conduct at issue in order to find the respondent responsible for violating the Rules.

The panel will find a respondent responsible, or not responsible, based on a majority vote. The panel will generally render a decision within five (5) business days after the conclusion of a hearing. The panel's decision will include an explanation of the basis for the decision.

If the panel finds the respondent responsible, the matter will proceed to the sanctioning stage. The panel will transmit its determination to the Rules Administrator and the respondent. The transmission must include (1) the finding of the respondent as responsible or not responsible; and (2) the reasoning behind the finding.

## §449. Sanctions and Other Remedies

### How Sanctions Are Determined

Available sanctions will be consistent across all University departments and schools. Similar offenses may result in different sanctions where there are distinguishing facts and circumstances in the opinion of the University Judicial Board.

The University Judicial Board will impose sanctions that are:

- Fair and appropriate given the facts of the particular case.

- Consistent with the University's handling of similar cases.

- Adequate to protect the safety of the campus community.

In cases where the respondent accepts responsibility through an informal resolution, the sanctioning will be designated to the chair of the University Judicial Board (or his/her designee).

In determining what sanctions will protect the safety of the University community, the University Judicial Board will be advised by University Public Safety or other experts and will consider: (1) the nature of the violation (simple or serious); (2) the risk that the respondent may engage in additional substantially similar misconduct; (3) the deterrent or permissive effect of a particular sanction on the campus community, including on particular individuals and organizations aware of the offense (keeping in mind that a sanction must always be fair and appropriate for the particular case); and (4) the precedent established by the University Judicial Board in previous cases.

To ensure that sanctions imposed by the University Judicial Board are consistent with the University's handling of similar cases, the Rules Administrator will be responsible for providing members of the University Judicial Board with records of any similar past cases, with the names and any other identifying information of past respondents removed.

A respondent who is found responsible for a simple violation of these Rules is subject to the full range of sanctions with the exception of: Dismissal or restriction from University employment; Suspension; Expulsion; and Revocation of degree. For repeated simple violations of these Rules, the respondent is subject to the full range of sanctions with the exception of: Expulsion, and Revocation of degree. A respondent who is found responsible for a serious violation of these Rules is subject to the full range of sanctions.

No notation, letter, or other record may be placed into the file of any community member in connection with activities covered by these Rules, either temporarily or permanently, unless the respondent has been found responsible for a Rules of University Conduct violation and has been sanctioned under these Rules.

The University Judicial Board will render a sanctioning decision within five (5) business days following the receipt of the panel's determination (or notification of a case where the respondent accepts responsibility).  The sanctioning decision will be communicated in writing to the Rules Administrator and the respondent.  The transmission must include (1) the finding of sanctions; and (2) the reasoning behind the imposition of sanctions.

## List of Sanctions

The University may impose any one or more of the following sanctions on a respondent determined to have violated the Rules:

- Private reprimand/warning.

- Public reprimand/warning.

- Disciplinary probation.

- Restricting access to University facilities.

- Community service.

- Issuing a "no contact" order to the respondent or requiring that such an order remain in place (restricted to cases of bodily harm and threats of bodily harm).

- Dismissal or restriction from University employment.

- Removal from University housing.

- Suspension (limited time or indefinite).

- Expulsion.

- Revocation of degree.

In addition to any other sanction (except where the sanction is expulsion or revocation of a degree), the University may require any respondent determined to be responsible for a violation of the Rules to receive appropriate education and/or training related to the violation at issue. The University may also recommend counseling or other support services for the respondent.

## Additional Responses

The University may also determine that additional measures are appropriate to respond to the effects of the incident on the University community. Additional responses for the benefit of the University community may include:

- Increased monitoring, supervision, or security at locations or activities where the misconduct occurred.

- Additional training and educational materials for faculty, students, and staff.

- Revision of these Rules.

# §450. Appeals

## Appeals Board

Either the Rules Administrator or the respondent may appeal the decision of the University Judicial Board by submitting an appeal, in writing either by Registered U.S. mail or personal delivery, within five (5) business days after receiving the sanctioning notice. Appeals are decided by the Appeals Board. The three grounds for appeal are:

1. A procedural error affecting the determination or sanction;

2. New information that was not available at the time of the investigation or hearing and that may change the determination or sanction; and

3. Excessiveness of the sanction.

Disagreement with the finding or sanctions is not, by itself, grounds for appeals.

If either the Rules Administrator or the respondent submits an appeal, the non-appealing party will be notified of the appeal and the grounds of the appeal. The non-appealing party may submit a written response within five (5) business days after notice of an appeal.

If the Appeals Board concludes that a change is warranted, based on a majority vote, the Board may revise the determination, reconvene the panel for it to reconsider the determination, or return the matter for additional investigation. If both the Rules Administrator and the respondent appeal, the appeals will be considered together.

The Rules Administrator and the respondent will be notified in writing of the final decision, which will be rendered within ten (10) business days of the receipt of the written appeal.

The respondent, but not the Rules Administrator, may also appeal the sanction set by the University Judicial Board. The Appeals Board may affirm or reduce the sanction, but may not increase it.

## Presidential Action

A final appeal may be made to the President for clemency or review, which the President may hear in his/her discretion.

# §451. Records Disclosure

Disciplinary proceedings conducted by the University are subject to the Family Educational Records and Privacy Act (FERPA), a federal law governing the privacy of student information. FERPA generally limits disclosure of student information outside the University without the student's consent, but it does provide for release of student disciplinary information without a student's consent in certain circumstances.

A respondent who successfully requests an open hearing waives his or her rights under FERPA.

Any information gathered in the course of an investigation may be subpoenaed by law enforcement authorities as part of a parallel investigation into the same conduct, or required to be produced through other compulsory legal process.

# §452. Committee on Rules of University Conduct

a. The University Senate Committee on Rules of University Conduct shall prepare any material that will facilitate the functioning of the procedures.

b. Persons otherwise connected with the disciplinary procedures shall be excluded from the University Senate Committee on Rules of University Conduct.

c. All changes in these Rules shall be passed by the University Senate for approval and acceptance by the Trustees in accordance with the Statutes of the University.

d. The University Senate Committee on Rules of University Conduct shall, at least every four years, facilitate a public discussion, engaging faculty, students, and staff, about whether revision of the Rules is merited.

**Latest Policy Revision:** September 29, 2019

[**Guidelines to the Rules of University Conduct**](#) ☐  endorsed by the University Senate: August 23, 2024

**Office of Institutional Equity**

(212)-854-5511

[institutionalequity@columbia.edu](mailto:institutionalequity@columbia.edu)

**University Life**

(212) 853-1628

[universitylife@columbia.edu](mailto:universitylife@columbia.edu)

## Responsible University Office

[University Life](#)

## Audience

[Students](#)
[Officers of Instruction and Research](#)
[Officers of Administration](#)
[Visitors and Consultants](#)
[Faculty](#)
[Librarians](#)
[Researchers](#)
[Support Staff (Non-Union)](#)
[Support Staff (Union)](#)

## Category

University Compliance

Annual Notice