# EXHIBIT E



25-1290

**In the United States Court of Appeals for the Third Circuit**

-------------------------------------------------------------------------x

**Huda Fakhreddine and Faculty for Justice in Palestine,**

**Plaintiffs-Appellants,**

**v.**

**University of Pennsylvania,**

**Defendant-Appellee.**

-------------------------------------------------------------------------x

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**BRIEF OF PLAINTIFFS-APPELLANTS**

Jonathan Wallace
PO #728
Amagansett NY 11930
917-359-6234
jonathan.wallace80@gmail.com

# TABLE OF CONTENTS

**JURISDICTIONAL STATEMENT**   **1**

**ISSUES**   **1**

**RELATED CASES AND PROCEEDINGS**   **1**

**STATEMENT OF THE CASE**   **2**

**SUMMARY OF ARGUMENT**   **7**

**STANDARD**   **8**

**ARGUMENT**   **9**

   I.   **THE DISTRICT COURT ERRED IN HOLDING THAT DR. FAKHREDDINE LACKED ARTICLE III STANDING**   **9**

   1.   **The District Court Failed to Take the Social Context Into Account**   **9**

   2.   **The District Court Erred in Failing to Take the *AT&T* Line of Cases Into Account**   **13**

   3.   **The District Court Erred In Finding That Dr. Fakhreddine Had Not Alleged Harm**   **17**

   II.   **THE DISTRICT COURT ERRED IN DISMISSING THE BREACH OF CONTRACT CLAIM WITH PREJUDICE**   **19**

**CONCLUSION**   **21**

**CERTIFICATE OF COUNSEL, SERVICE, AND COMPLIANCE**   **22**

# TABLE OF CASES

*Bedi v. The United States House of Representatives*
*Committee on Education and Workforce*
 (Northern District of Illinois 1:25-cv-03837).............................................................2,16

*Buckley v. Valeo,* 424 U.S. 1 (1976)...................................................................................18

*Charlton-Perkins v Univ. of Cincinnati,*
35 F.4th 1053 (6th Cir 2022).........................................................................................18,19

*Cole v. Trustees of Columbia University,*
300 F. Supp. 1026 (SDNY 1969)........................................................................................13

*Defense for Children Intl.-Palestine v Biden,*
714 F Supp 3d 1160 (ND Cal 2024),
affirmed 107 F.4th 926 (9th Cir. 2024)..........................................................................10, 11

*Doe v Univ. of the Sciences,* 961 F3d 203 (3d Cir 2020).......................................13, 15, 20

*Elrod v Burns*, 427 US 347 (1976)......................................................................................18

*Emergency Coalition to Defend Educ. Travel v*
*United States Dept. of the Treasury* 545 F3d 4 (DC Cir. 2008).........................................18

*Exxon Corp. v. Federal Trade Com.,*
589 F.2d 582  (DC Cir. 1978) cert.den. 41 U.S. 943 (1979)..............................................15

*Greene County Planning Bd. v Fed. Power Com.,*
 528 F2d 38 (2d Cir 1975)............................................................................................... 15

*Hedges v Musco*, 204 F3d 109 (3d  Cir 2000)....................................................................20

*Hickey v Univ. of Pittsburgh,* 77 F.4th 184 (3d Cir 2023)............................................... 20

*Hill v Borough of Kutztown,* 455 F3d 225 (3d Cir 2006)...................................................13

*Huertas v Bayer US LLC,* 120 F.4th 1169 (3d Cir 2024).....................................................8

*In re Kaiser Aluminum Corp*., 456 F3d 328(3d Cir 2006)..................................................15

*Khalil v Trustees of Columbia Univ. in the City of NY*

(Southern District of New York, 2025 No. 25-cv-2079 (AS))....................................1, 16

*Landau v Corp. of Haverford Coll.,*
2025 US Dist LEXIS 1402 (ED Pa Jan. 6, 2025, No. 24-2044)................................10, 12

*Maliandi v Montclair State Univ.,* 845 F3d 77 (3d Cir 2016) …....................................... 10

*Monell v. Dep't of Soc. Servs.,* 436 U.S. 658  (1978) …........................................14

*Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902 (3d Cir. 1997)......................................8

*Nat'l Abortion Fed'n v. Ctr. for Med. Progress,*
 2015 U.S. Dist. LEXIS 136599  (N.D. Cal. 2015)...........................................16

*Pepper v AG Pennsylvania,* 2024 U.S. App. LEXIS 31675
(3d Cir Dec. 13, 2024, No. 24-1261) …..........................................................10

*Rumsfeld v Forum for Academic & Inst. Rights, Inc.,*
 547 US 47 (2006)...................................................................................9,18

*Speech First, Inc. v. Fenves,* 979 F.3d 319 (5th Cir. 2020)..............................................19

*Students for Just. in Palestine v Abbott,*
756 F Supp 3d 410 (WD Tex 2024).........................................................10, 19

*Trump v. Mazars USA, LLP,* 140 S. Ct. 2019 (2020)..................................................14

*Tully v. Mott Supermarkets, Inc.,* 540 F.2d 187 (3d Cir. 1976)......................................20

*United States v AT&T* 567 F.2d 121 (D.C. Cir. 1977)....................................8, 13, 14, 17

*United States v Mosley,* 454 F3d 249 (3d Cir 2006)..........................................................9

*United States Servicemen's Fund v. Eastland,*
 488 F.2d 1252 (D.C. Cir. 1973)
 *rev'd on other grounds*  421 U.S. 491 (1975)...............................................14

*Univ. of Maryland Students for Just. in Palestine*
 *v Bd. of Regents of the Univ. Sys. of Maryland,*
 2024 US Dist LEXIS 178359 (D Md Oct. 1, 2024, No. 24-2683 PJM).........................9

*Univ. of Maryland v Peat, Marwick, Main & Co.,*

996 F2d 1534 (3d Cir 1993)............................................................20

*Whitney v. California,* 274 U.S. 357 (1927) …..................................................11

*Wildearth Guardians v Provencio,* 923 F3d 655 (9th Cir 2019)...................................... 15

*Young v Pleasant Val. Sch. Dist.,* 601 F App'x 132 (3d Cir 2015)................................... 9

*Zinger v Blanchette,* 549 F2d 901 (3d Cir 1977),
cert. den. 434 U.S. 1008 (1978)..........................................................9

## JURISDICTIONAL STATEMENT

The Court has appellate jurisdiction over the final order of the District Court for the Eastern District of Pennsylvania (the "District Court") granting Defendant-Appellee University of Pennsylvania's (the "University")  motion to dismiss, entered January 30, 2025, pursuant to 28 U.S.C. § 1291.1. The District Court possessed subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Plaintiffs Huda Fakhreddine and Faculty for Justice in Palestine timely filed their Notice of Appeal on February 19, 2025.

## ISSUES

**Did the District Court Err in Dismissing the Action for Lack of Standing?** Yes.
 **Did the District Court Err in Dismissing the Breach of Contract Claim with Prejudice?** Yes.


## RELATED CASES AND PROCEEDINGS

This case has not previously been before the Third Circuit Court of Appeals. There are at least two other actions pending in other Circuits in which plaintiff faculty and students are suing universities to enjoin compliance with a letter from the House Committee on Education and the Workforce, *Khalil v Trustees of Columbia Univ. in the City of NY,* (Southern District of New York, 2025 No. 25-cv-

2079 (AS)) , and *Bedi v. The United States House of Representatives Committee on Education and Workforce* (Northern District of Illinois 1:25-cv-03837). There are no other related cases or proceedings.

## STATEMENT OF THE CASE

**Pertinent Procedural History.** Plaintiff-Appellants Huda Fakhreddine and Faculty for Justice in Palestine ("Appellants") filed this action on March 9, 2024. The Complaint sought to enjoin the University's compliance with a letter requesting documents on its faculty and students, including confidential disciplinary and Title VI files (the "Committee Letter") , issued by the United States House of Representatives Committee on Education and the Workforce (the "Committee"), and sought damages under Pennsylvania law for the breach of the University's contracts embodied in the Faculty and Student Manuals. Defendant-Appellee's Motion to Dismiss, filed May 7, 2024 (Document #29)[1], was granted by the District Court in an order entered June 24, 2024 (Doument #33),  Appellants filed a First Amended Complaint on July 8, 2024 (Document #35). The University filed its second Motion to Dismiss on September 30, 2024 (Document #47). The District Court granted the motion, dismissing the First Amended Complaint with

---

[1] Appellants are filing a motion simultaneously to proceed on the original record, but stand ready to submit a revised brief and appendix if the Court so directs.

prejudice, by an order entered January 30, 2025 (Doument #55). On February 19, 2025, Appellants filed their Notice of Appeal (Document #59).

**Pertinent Factual History.** On December 5, 2023, the Presidents of the University of Pennsylvania, Harvard, and MIT were called before the Committee and  grilled regarding their actions to combat purported antisemitism (broadly defined to include any criticism of Israel) on their campuses. The Committee, apparently emulating the jawboning tactics of the House Unamerican Activities Committee of old, adopted an accusatory, indignant and even derisive tone. Two Committee members during the December 5 hearing mentioned plaintiff-appellant Huda Fakhreddine ("Dr. Fakhreddine") by name. Rep. Joe Wilson of South Carolina, asked the University's then President, Elizabeth Magill:  "How are Jewish students in Fakhreddine's classes supposed to receive fair treatment when she endorses hatred?"(Amended Complaint, Document #35, paragraph 17). Rep. Jim Banks of Indiana  demanded to know why Plaintiff Fakhreddine "still [has] a job at your university" (Amended Complaint, Document #35, paragraph 18).

The Committee Letter, dated January 24, 2024, also made specific reference to Dr. Fakhreddine: "Associate Professor of Arabic Literature Huda Fakhreddine publicly celebrated the attack on the morning of October 7, tweeting in Arabic that 'while we were asleep, Palestine invented a new way of life.' At an October 16,

2023, anti Israel protest on Penn's campus, Fakhreddine said, 'Israel is the epitome of antisemitism … it desecrates the memory of the Holocaust victims. It humiliates every Jewish person.' Fakhreddine also applauded a speaker's statement that Jews should 'go back to Moscow, Brooklyn, Gstaad, or fucking Berlin where you came from.'" (Amended Complaint, Document #35, paragraph 19) Appellants state in their Amended Complaint: "All of these assertions were derived from doxing 'information'. Some are entirely false, others taken out of context, and none represent the results of a conversation with Fakhreddine by the House Committee or staff, or any kind of neutral, fair investigation. Instead, they are opportunistic, amoral attacks and libels intended simply for political gain...In fact, this McCarthyite and shameful rhetoric of the House Committee and its members represents no valid legislative purpose"[2] (Amended Complaint, Document #35, Paragraphs 20-21).

The Committee Letter (Amended Complaint, Document #35, Paragraphs 24-29) asked for twenty-five different categories of documents (request #16 has 11 subcategories). These included "Documents sufficient to show the findings and

---

2  Judge Gerhard Gesell held in a strikingly similar situation: "[T]he Report not only fails to indicate any legitimate legislative purpose, but on its face contradicts any assertion of such a purpose...The conclusion is inescapable that the Report neither serves nor was intended to serve any purpose but the one explicitly indicated in the Report: to inhibit further speech on college campuses by those listed individuals and others whose political persuasion is not in accord with that of members of the Committee...If a report has no relationship to any existing or future proper legislative purpose and is issued solely for sake of exposure or intimidation, then it exceeds the legislative function of Congress; and where publication will inhibit free speech and assembly, publication and distribution in official form at government expense may be enjoined", *Hentoff v. Ichord,* 318 F. Supp. 1175, 1182 (1970).

results of any disciplinary processes, changes in academic status, or personnel actions by Penn toward Penn students, faculty, staff, and other Penn affiliates related to conduct involving the targeting of Jews, Israelis, Israel, Zionists, or Zionism since January 1, 2021"  (request # 4); ""Documents sufficient to show findings and results of any disciplinary processes, changes in academic status, or personnel actions by Penn toward Penn students, faculty, staff, student organizations, and other Penn affiliates as a result of: a. allegations of hate crimes, discrimination, bias, or harassment on the basis of religion, ethnicity, national origin, sex, sexual orientation, gender identity, and disability at Penn since January 1, 2021; b. Reports of denial or disruption of access to safe and uninterrupted learning environments at Penn since January 1, 2021" ( request #7); "All documents and communications including, but not limited to, those involving the Office of the President, Office of the Provost (including University Life and its Office of Diversity, Equity, Inclusion, & Belonging), and/or any academic departments, programs, and centers, referring or relating to any efforts by Penn students, faculty, and staff to engage in the BDS movement against Israel since January 1, 2021, and communications by Penn administrators relating to such efforts" (request #17). "On February 27, 2024, the *Daily Pennsylvanian* reported that Defendant had begun sending documents to the House Committee. '[T]he

University spokesperson told the DP that the process of transferring documents would last multiple weeks....A House education committee spokesperson confirmed to the DP that the committee has received documents and is currently reviewing them." Ethan Crawford, "Penn begins submitting documents to House education committee for antisemitism investigation", *The Daily Pennsylvanian* https://www.thedp.com/article/2024/02/penn-congress-house-educationworkforce-investigation-submit-documents " ( Amended Complaint, Document #35, paragraph 31)

On August 23, 2024, Appellants filed a letter (Doc. #41) requesting an emergency conference with the Court due to an email received from University counsel David Gringer: "Counsel, Penn recently received a request from the U.S. House Committee on Education and the Workforce to produce from Ms. Fakhreddine, 'C.V./Resumes, all syllabi since the fall 2022 semester, all course-wide communications for courses since the fall 2023 semester, and any communications since 8/1/23 relating to the Gaza Solidarity Encampment, Faculty for Justice in Palestine, and/or the Palestine Writes Festival.' The Committee also asked 'that we inform them by this Friday, August 23 whether Ms. Fakhreddine will 'agree[] to cooperate and produce responsive materials through WilmerHale, and if not, [to] please provide [the Committee] contact information for their

attorneys.' The University intends to produce to the Committee Ms. Fakhreddine's CVs and syllabi for her courses since the Fall 2022 semester. With respect to the Committee's remaining requests, please let us know whether Ms. Fakhreddine will provide communications responsive to the Committee's request by Friday, August 23 by 3PM ET.'" (Dr. Fakhreddine declined to cooperate.)

Despite this history of targeting, jawboning and even defamation by the Committee, and the University's acknowledged voluntary compliance in producing documents to the Committee pertaining to Dr. Fakhreddine, the District Court held she lacked Article III standing.

## SUMMARY OF ARGUMENT

The District Court erred in holding that Dr. Fakhreddine lacked Article III standing to sue the University for its disclosure of documents about her to the Committee. In making its decision, the District Court should have taken the social context of the proceedings-- namely, the House Committee's pioneer effort beginning in 2023, followed and magnified by the present Presidential administration, to humble, forcefully shape and even destroy the University as an elite American academy. The District Court's refusal to take the context into account led to detached and unrealistic findings, for example that there was

7

nothing "coercive" about the Committee Letter (decision, Document #54, page 10).

In reaching its erroneous decision on standing, the District Court failed to apply a line of cases beginning with *United States v AT&T*, 419 F Supp 454 (D. D.C. 1976), *remanded for attempted settlement,* 551 F.2d 384 (1976)*, affirmed* 567 F.2d 121 (D.C. Cir. 1977), which hold that an individual named in documents subpoenaed by Congress may sue the institution receiving the subpoena without also naming the House of Representatives.

The District Court also erred in its holding that Dr. Fakhreddine had not alleged harm sufficient to support Article III standing.

The District Court also erred in dismissing Appellants' pendent state breach of contract claim with prejudice.

## STANDARD APPLICABLE TO ALL POINTS

"This Court's review of the grant of a motion to dismiss is plenary", *Huertas v Bayer US LLC,* 120 F.4th 1169, 1174 (3d Cir 2024), citing *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).

# ARGUMENT

## Point One

## THE DISTRICT COURT ERRED IN HOLDING THAT DR. FAKHREDDINE LACKED ARTICLE III STANDING[3]

### 1. The District Court Failed to Take the Social Context Into Account

The District Court certainly was aware, and Appellants made sure to advise it, that their claims were of necessity to be viewed against the backdrop of the social, political and legal turmoil engendered in American society, and on university campuses in particular, by the Israeli bombing and invasion of Gaza following the  October 7, 2023 attack by Hamas.  Instead, the District treated the controversy as if it were a one-off, a unique situation of not much importance and unconnected to anything. Yet the Third Circuit has noted the importance of evaluating social context in fact-rich cases of pubic importance, such as hostile environment claims under Title VII, *Young v Pleasant Val. Sch. Dist.,* 601 F App'x 132, 136 (3d Cir 2015), the exclusionary rule,  *United States v Mosley,* 454 F3d 249, 267-268 (3d Cir 2006), and the ADEA, *Zinger v Blanchette,* 549 F2d 901, 905 (3d Cir 1977), cert. den. 434 U.S. 1008 (1978).[4]

---

3  Though we concentrate on the facts pertaining to Dr. Fakhreddine in the standing arguments, we are not abandoning our assertion that the Faculty for Justice in Palestine also had standing, as Dr. Fakhreddine was a member, which satisfied the requirements for associational standing,  *Rumsfeld v Forum for Academic & Inst. Rights, Inc.,* 547 US 47, n. 2 (2006) .

4  While evaluation of social context by federal courts is often performed without mention of a specific legal basis

Other District Courts in this Circuit and elsewhere have made much more thorough efforts to view post-October 7 in the social context. "Following Hamas' attack on Israel in October 2023, the Israel-Palestine conflict has been at the center of public discourse. This debate is especially evocative on college campuses, and Haverford College is no exception", *Landau v Corp. of Haverford Coll.*, 2025 US Dist LEXIS 1402, at *2 (ED Pa Jan. 6, 2025, No. 24-2044); *Univ. of Maryland Students for Just. in Palestine v Bd. of Regents of the Univ. Sys. of Maryland,* 2024 US Dist LEXIS 178359 (D Md Oct. 1, 2024, No. 24-2683 PJM); *Students for Just. in Palestine v Abbott,* 756 F Supp 3d 410 (WD Tex 2024).

In dismissing an action on political question grounds seeking to enjoin U.S. supply of munitions to Israel, the District Court for the Northern District of California said that "the undisputed evidence before this Court comports with the finding of the ICJ and indicates that the current treatment of the Palestinians in the Gaza Strip by the Israeli military may plausibly constitute a genocide in violation of international law", *Defense for Children Intl.-Palestine v Biden,* 714 F Supp 3d 1160, 1163 (ND Cal 2024), affirmed 107 F.4th 926 (9th Cir. 2024).

In September 2015, the Center for Constitutional Rights, which brought the

---

for doing so, it could be based on a Court's authority to take judicial notice under Federal Rule of Evidence 201(b)(2) of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned", which can be done *sua sponte,* 201(c)(1), *Pepper v AG Pennsylvania,* 2024 U.S. App. LEXIS 31675, at *3-4 (3d Cir Dec. 13, 2024, No. 24-1261) (press coverage); *Maliandi v Montclair State Univ.,* 845 F Supp 3d 77, 89, n 10 (3d Cir 2016) (public documents).

*Defense for Children International* case cited immediately above, and Palestine Legal, co-counsel on the *Maryland* case cited above, both respected legal organizations fighting for the First Amendment, co-published a white paper, "The Palestine Exception to Free Speech" https://palestinelegal.org/the-palestine-exception, which, citing to a multitude of actual cases, argued that where speech critical of Israel or supporting the Palestinian people is concerned, American government, jurisprudence and society all appeared to forget everything they know about the First Amendment. Nine years later, the term "the Palestine exception" has become a bitter term of art among civil liberties lawyers who defend this speech. "Our constitutional tradition cannot tolerate an exception to the First Amendment simply because Palestinian human rights advocacy make powerful listeners uncomfortable. The remedy for speech with which one disagrees is more speech, not enforced silence". p. 7[5]

The 2015 white paper identified tactics which were then already in extensive use to chill faculty and students criticizing Israel or supporting Palestinian rights: "Israel's fiercest defenders in the United States—a network of advocacy organizations, public relations firms, and think tanks—have intensified their efforts to stifle criticism of Israeli government policies. These heavy-handed tactics often

---

5  "[T]he remedy to be applied is more speech, not enforced silence", *Whitney v. California,* 274 U.S. 357, 377 (1927)  Justice Brandeis concurring.

have their desired effect, driving institutions to enact a variety of punitive measures against human rights activists, such as administrative sanctions, censorship, intrusive investigations, [and] viewpoint-based restriction of advocacy". p. 4 Dr. Fakhreddine asserts that the University is in fact, under pressure from the Committee, following this playbook against her.

The Haverford court noted: "Plaintiffs' equivocation is disingenuous, but likely strategic, seeking to blur the line between Zionism as a political philosophy and Zionism as a component of Jewish identity, and in the process implicitly sweep any and all criticism of Israel into the basket of antisemitism. As a threshold matter...I reject Plaintiffs' embedded proposition that any anti-Israel speech is intrinsically antisemitic, because reasonable people acting in good faith can challenge decisions of the Israeli government without harboring antisemitic views" *Landau v Corp. of Haverford Coll.,* 2025 US Dist LEXIS 1402, at *4-5 (ED Pa Jan. 6, 2025, No. 24-2044).The District Court, citing *Haverford* on other grounds, failed to follow its lead in evaluating the social context of the matter.[6]

---

6 The instant case should also be viewed in the more general social context of the present Presidential administration's war on the University  and the elite universities in general. Alana Wise, "Trump suspends $175 million in funding to University of Pennsylvania over trans athletes", *NPR* March 20, 2025 https://www.npr.org/2025/03/20/nx-s1-5333675/university-pennsylvania-upenn-trump-suspends-funding-trans-student-athletes  ; Michael C. Bender, "Trump Administration Demands Records From Penn on Foreign Ties", *The New York Times* May 8, 2025 https://www.nytimes.com/2025/05/08/us/politics/trump-upenn-records-foreign-funding.html. "[T]hese times pose an existential threat to healthcare institutions, to academic medicine, and to the academy as we know it," Jared Mitovich, "Gov. Shapiro meets with Penn Med leader amid 'existential' threat posed by Trump", WHYY, February 27, 2025 https://whyy.org/articles/governor-shapiro-penn-medicine-trump/ ; Alan Blinder, "Trump Has Targeted These Universities. Why?", *The New York Times* May 2, 2025 https://www.nytimes.com/article/trump-university-college.html

The District Court  should not have slighted Dr. Fakhreddine's extremely fact-intensive claim, *Hill v Borough of Kutztown,* 455 F3d 225, 232, n 7 (3d Cir 2006), which sought to hold the University responsible for its craven and viewpoint discriminatory response to government pressure[7].

## 2. The District Court Erred in Failing to Take the *AT&T* Line of Cases Into Account

The University argued it is not a state actor and that Plaintiff's real dispute is with the Committee, without ever distinguishing *United States v AT&T*, 419 F Supp 454 (D. D.C. 1976), *remanded for attempted settlement,*  551 F.2d 384 (1976)*, affirmed* 567 F.2d 121 (D.C. Cir. 1977),  and progeny. After years of confusion about whether a plaintiff could sue to quash a Congressional subpoena issued to a third party, *Cole v. Trustees of Columbia University,* 300 F. Supp. 1026 (SDNY 1969), *AT&T* definitively resolved that, given Congressional immunity under the Speech and Debate Clause, a plaintiff could properly sue the subpoena recipient without naming Congress. Constitutional arguments  then may be used against the non-state actor third party-- and Congress can always choose to intervene as of right to answer them, as a committee chairperson did in fact do in

---

7 Government pressure is not an act of God allowing a university to assert an impossibility defense; the university's response to the pressure may violate its commitments to faculty and students, and presents complex fact issues to be evaluated by the Court,  *Doe v Univ. of the Sciences,* 961 F3d 203, 213 (3d Cir 2020) (OCR "Dear Colleague" letter).

*AT&T.* Almost fifty years later, *AT&T* is still good law, *Trump v. Mazars USA, LLP,* 140 S. Ct. 2019, 2028 (2020) ("Although named as defendants, Mazars and the banks took no positions on the legal issues in these cases, and the House committees intervened to defend the subpoenas"). The *AT&T* solution is a workaround of the kind in which federal courts are adept, similar to *Monell's* solution to another sovereign immunity issue, *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978); cf. *United States Servicemen's Fund v. Eastland,* 488 F.2d 1252, 1260 (D.C. Cir. 1973) (italics omitted), *rev'd on other grounds without questioning plaintiffs' standing,* 421 U.S. 491 (1975) (("[T]he plaintiffs have no alternative means to vindicate their rights.")

Strangely, in its decision on the first motion to dismiss (Document #32), the District Court followed Appellee's lead, making no reference to the *AT&T* cases and dismissing in part on the grounds that the University was not a state actor. In the decision under appeal, the Court does a mere hand-wave, disposing of the *AT&T* cases in a single sentence: "Penn was not subpoenaed by Congress" (Memorandum, Doc. #54, p. 10).

This sentence requires unpacking. It suggests, paradoxically, that an individual harmed by disclosure of personal documents to a Congressional committee by an institution has Article III standing only if the institution, in this case the

University, *resists* the Congressional request (necessitating issuance of a subpoena[8]),but never acquires standing if the University *cooperates voluntarily.* [9] Court should not set self-contradictory or illogical rules of standing, *Wildearth Guardians v Provencio,* 923 F3d 655, 667-668 (9th Cir 2019) ("Under Safari Club's reasoning, a hypothetical plaintiff challenging an EPA decision on a CO2-emitting power plant would lack standing just because she also happens to exhale carbon dioxide. This result would not only be absurd, but also contrary to our prior precedent"); *Greene County Planning Bd. v Fed. Power Com.,* 528 F2d 38, 44 (2d Cir 1975) ("[I]t would border on the absurd to assert that a statutorily constituted county planning agency, in a county which has a real probability of being affected by transmission corridors in the future, would lack standing to raise the claim that is here made"); *cf. In re Kaiser Aluminum Corp.,* 456 F3d 328, 330 (3d Cir 2006) ("we should avoid a statutory interpretation that leads to absurd results"). *And see Exxon Corp. v. Federal Trade Com.,* 589 F.2d 582, 593-594 (DC Cir. 1978), *cert.*

---

8  "The fact that the Executive is not in a position to assert its claim of constitutional right by refusing to comply with a subpoena does not bar the challenge so long as members of the Subcommittee are not, themselves, made defendants in a suit to enjoin implementation of the subpoena", *United States v Am. Tel. & Tel. Co.,* 567 F2d 121, 129 [1977])

9  It is apropos here that the District Court made a finding of contested fact turning on the Committee's use of the phrase *"please produce* the following documents". "I do not find this language coercive", said the Court (Memorandum, Document #54, p. 10)  The Court thus found that the receipt of a letter from a Congressional committee blatantly accusing the University of egregiously harboring antisemitism was not the least bit frightening to the recipient. But a District Court may not resolve disputed fact issues on a motion to dismiss, *Bagic v Univ. of Pittsburgh,* 773 F App'x 84, 87 (3d Cir 2019) ("Bagic argues that the District Court, in granting the University's motion to dismiss, improperly weighed evidence... We agree that the Court did not give her allegations their due"); *Aberle Hosiery Co. v. Am. Arbitration Asso.,* 461 F.2d 1005, 1006 (3d Cir. 1972). Notably, this Court found a letter from OCR to a university coercive despite the fact it began with the words "Dear Colleague", *Doe v Univ. of the Sciences,* 961 F3d 203, 213 (3d Cir 2020).

*den.* 41 U.S. 943 (1979) (Court held that a request for information on Committee stationary from chairperson was "an authorized formal request").

Against the background of the social, political and academic turmoil that the District Court refuse to acknowledge, at least two more actions have been brought by students and faculty against universities receiving information letters from the House Committee, *Khalil v Trustees of Columbia Univ. in the City of NY,* (Southern District of New York, 2025 No. 25-cv-2079 (AS)) *,* and *Bedi v. The United States House of Representatives Committee on Education and Workforce* (Northern District of Illinois 1:25-cv-03837).

The District Court in *Khalil,* in contrast to the District Court below, recognized the potential harms inflicted by a university releasing records to the House Committee: "In the meantime, to give plaintiffs the opportunity to seek timely relief if necessary, Columbia will be required to notify plaintiffs and the Court thirty days before further student records (or students' identities in records already produced) are furnished to Congress", *Khalil v Trustees of Columbia Univ. in the City of NY,* 2025 US Dist LEXIS 65372, at *6 [SDNY Apr. 4, 2025, No. 25-cv-2079 (AS)]); *see also Nat'l Abortion Fed'n v. Ctr. for Med. Progress,* 2015 U.S. Dist. LEXIS 136599, *6  (N.D. Cal. 2015), in which a District Court (unlike the Court below) recognized that  the named target of a Congressional subpoena to a

third party might have *some* rights  ("All that said, it is not lost on me that

defendants seek expeditiously to provide information to Congress that they have

tried in a variety of ways not to provide to NAF. Prior to responding to the

Congressional subpoena, defendant CMP shall deliver to counsel for NAF and to

the Court a true and correct copy of everything defendant will provide to

Congress... Further, CMP shall not provide to Congress any footage, documents or

communications that have not been specifically requested by the subpoena").


### 3.  The District Court Erred In Finding That Dr. Fakhreddine Had Not Alleged Harm

The District Court's finding that Dr. Fakhreddine lacked Article III standing

was irredeemably  influenced by its failure to apply the *AT&T* line of cases, as set

forth above. However, the Court also erred as a matter of law in holding that Dr.

Fakhreddine, who was specifically named and targeted by the House Committee in

every communication to the University, and defamed in the hearing on national

television, could allege no specific Article III injury, despite the fact that she also

asserted that the University had attempted to placate the Committee by criticizing

and ostracizing her, depriving her of access to email groups and co-sponsorship of

events and other benefits which were due to her as a faculty member (Amended

Complaint, Document # 35, paragraph 130).  In general, federal courts have

endorsed a much less demanding standard of injury for professors to show Article III standing than the District Court applied to Professor Fakhreddine, *Rumsfeld v Forum for Academic & Inst. Rights, Inc.,* 547 US 47, 52, n 2 (2006) (faculty association had standing to challenge military recruiting on campus), *Charlton-Perkins v Univ. of Cincinnati,* 35 F.4th 1053, 1057 (6th Cir 2022) (professor denied hire at university had Article III standing).

Contrary to the District Court's decision, harm was *not* "speculative" (Memorandum, Document #54, p. 6). "A violation of First Amendment rights presumptively inflicts irreparable harm", *Veterans Guardian VA Claim Consulting LLC v Platkin,* 133 F.4th 213, 218-219 (3d Cir 2025); *see also Elrod v Burns,* 427 US 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"); *Buckley v. Valeo,* 424 U.S. 1, 74 (1976) ("[T]he evidence offered need show only a reasonable probability that the compelled disclosure" will cause "threats, harassment, or reprisals.")

The District Court also appears to to have "mix[ed] a merits question into the standing analysis, which is improper. In considering standing, we must assume the merits in favor of the party invoking our jurisdiction", *Emergency Coalition to Defend Educ. Travel v United States Dept. of the Treasury,* 545 F3d 4, 10 (DC Cir.

2008); *Charlton-Perkins v Univ. of Cincinnati,* 35 F.4th 1053,1058-1059 (6th Cir 2022) ("[W]hether a plaintiff can get into federal court under Article III—a jurisdictional question—is not determined by whether he can also plausibly plead the elements of a cause of action—a merits question").

The standing analysis in another post-October 7 case is instructive-- and comes out very differently, after evaluating the issue in much greater depth, than the District Court's decision and order, *Students for Just. in Palestine v Abbott,* 756 F Supp 3d 410, 421 (WD Tex 2024) ("The Court finds Plaintiffs have sufficiently pled injury" in alleging chilling effect of university regulations concerning antisemitism), citing *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330-31 (5th Cir. 2020) ("The chilling effect of allegedly vague regulations, coupled with a range of potential penalties for violating the regulations, was....sufficient injury to ensure that Speech First has personal stake in the outcome of the controversy").

The District Court erred in holding that Dr. Fakhreddine lacked Article III standing.

## Point Two

## THE DISTRICT COURT ERRED IN DISMISSING THE BREACH OF CONTRACT CLAIM WITH PREJUDICE

The District Court, after finding the Plaintiffs lacked standing to pursue their federal claims, dismissed the pendent state claim with prejudice as well. This was

error. "Since there was no substantial federal claim to which the state claims could be appended, the primary justification for the exercise of pendent jurisdiction was absent," *Univ. of Maryland v Peat, Marwick, Main & Co.*, 996 F2d 1534, 1540 (3d Cir 1993), citing *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 196 (3d Cir. 1976); *Hedges v Musco,* 204 F3d 109, 123 (3d Cir 2000).

The Court also erred in holding that the breach of contract claim failed to state a cause of action under F.R.C.P. 12(b)(6). The Third Circuit has recognized a university's duty to keep the promises on which members of the academic community relied in making their choice to join, *Hickey v Univ. of Pittsburgh,* 77 F.4th 184, 194 (3d Cir 2023). ("Pennsylvania courts have recognized that students may bring breach of contract claims for specific undertakings that a university promised but failed to deliver, such as a certain curriculum, accreditation, or degree"). While university defendants tend to argue that they are bound only by strict procedural regulations spelled out in handbooks, the Third Circuit has also found that general promises of fairness must be given effect., *Doe v Univ. of the Sciences,* 961 F3d 203, 212 (3d Cir 2020) ("Nowhere in either the Policy or the Student Handbook is fairness defined, let alone explicitly defined as the procedural protections contained in the Student Handbook and the Policy. Because the fairness promised in the Student Handbook and the Policy must be given effect, we

20

reject USciences's circular argument").

The District Court erred in dismissing the breach of contract claim.

## CONCLUSION

The Appellants respectfully request that the Third Circuit Court of Appeals

reverse the District Court's dismissal of the Complaint.

DATED: Amagansett, New York
May 25, 2025

/s/ Jonathan Wallace
Jonathan Wallace
PO #728
Amagansett NY 11930
917-359-6234
jonathan.wallace80@gmail.com
Counsel for Appellants

## CERTIFICATE OF COUNSEL, SERVICE, AND COMPLIANCE

1.  I am an attorney admitted to practice before the United States Court of Appeals for the Third Circuit.

2.  I caused an electronic copy of this brief and attachments to be filed today, May 28, 2025. The text of the electronic brief is identical to the text of the paper copies which will be filed with the Clerk in accordance with the rule.

3.  I also caused a copy of the brief and attachments to be served today, May 28, 2025, by the Notice of Docketing Activity generated by the Third Circuit's electronic filing system, upon: David Gringer, Counsel for Defendant-Appellee University of P.ennsylvania.

4.  I use McAfee Livesafe Version 1.29.162 on my computer for virus protection. This program automatically scans files for viruses, and has not indicated the presence of any virus on this file.

5.  This brief complies with the type-volume limitation in Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains less than 13,000 words. Specifically, it contains 4,994 words.

The foregoing is true and correct to the best of my knowledge and information. I am aware that if any of the foregoing is willfully false, I am subject to sanctions.

Respectfully submitted,

s/ Jonathan Wallace
Jonathan Wallace

Date: May 27, 2025
Amagansett NY