**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Mahmoud Khalil, et al.,

      *Plaintiffs,*

v.

Columbia University and the Trustees of
Columbia University, et al.,

      *Defendants.*

No. 1:25-cv-02079-AS

**PLAINTIFFS' SURREPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR**
**PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

**TABLE OF CONTENTS** ...............................................................Error! Bookmark not defined.

**TABLE OF AUTHORITIES** ........................................................................................ iii

**ARGUMENT** ........................................................................................................... 1

    I.    Columbia's Suggestion That its Newest, "Flexible" Approach to the IHRA Definition
Defeats Plaintiffs' Standing is Wrong as a Matter of Law. ....................................................... 1

    II.    Columbia Purports That Students Face No Current Enforcement Threat—While
Sanctioning Dozens of Students Purely for Anti-Israel Protest Speech. ................................... 3

    III.    These Recent Changes Are No Coincidence—and the Chronology of Government
Intervention Itself Establishes an Inference of State Compulsion. ............................................ 5

**CONCLUSION** ...................................................................................................... 7

# TABLE OF AUTHORITIES

## CASES

*Alexander v. Sutton*, 747 F. Supp. 3d 520 (E.D.N.Y. 2024) ............................................ 3

*Cayuga Nation v. Tanner*, 824 F.3d 321 (2d Cir. 2016) ............................................ 2

*Espinal v. Goord*, 558 F.3d 119 (2d Cir. 2009) ............................................ 5

*Frampton v. City of Baton Rouge*, No. 21-CV-362-JWD-SDJ, 2022 U.S. Dist. LEXIS 3754 (M.D. La. Jan. 7, 2022) ............................................ 6

*Gartenberg v. Cooper Union for the Advancement of Sci. & Art*, 765 F. Supp. 3d 245 (S.D.N.Y. 2025) ............................................ 4

*Handy-Clay v. City of Memphis*, 695 F.3d 531 (6th Cir. 2012) ............................................ 5

*Hedges v. Obama*, 724 F.3d 170 (2d Cir. 2013) ............................................ 1, 2

*Moody v. NetChoice, LLC*, 603 U.S. 707 (2024) ............................................ 3

*New York v. Griepp*, No. 17-CV-3706, 2017 U.S. Dist. LEXIS 113505 (E.D.N.Y. July 20, 2017) ............................................ 6

*Pope v. Railroad Retirement Bd.*, 240 U.S. App. D.C. 244, 744 F.2d 868 (D.C. Cir. 1984) ......... 6

*Ross v. Horn*, 598 F.2d 1312 (3d Cir. 1979) ............................................ 6

*Seven-Up Co. v. Coca Cola Co.*, 86 F.3d 1379 (5th Cir. 1996) ............................................ 6

*Vermont Right to Life Committee v. Sorrell*, 221 F.3d 376 (2d Cir. 2000) ............................................ 1

*Virginia Soc'y for Human Life, Inc. v. FEC*, 263 F.3d 379 (4th Cir. 2001) ............................................ 2

*Williams-Yulee v. Fla. Bar*, 575 U.S. 433 (2015) ............................................ 3

*Woods v. Smith*, 60 F.3d 1161 (5th Cir. 1995) ............................................ 6

**ARGUMENT**

I.    **Columbia's Suggestion That its Newest, "Flexible" Approach to the IHRA Definition Defeats Plaintiffs' Standing is Wrong as a Matter of Law.**

Columbia—having adopted the IHRA definition of antisemitism less than a month ago—now seeks to disavow its plain text by announcing a purportedly "flexible" policy under which it would decline to enforce the definition as written. *See* ECF 138 at 3 n.3 ("expressing political views regarding a particular country's policies standing alone would not constitute discriminatory harassment based on national origin"). This announcement contradicts Columbia's previous statement that the University would apply the definition in full—including specific examples that clearly prohibit common criticisms of Israel. *See* ECF 123-1 ("the formal incorporation of this definition […] directs schools to consider the IHRA definition of antisemitism and *its accompanying examples*").[1]

As a matter of Second Circuit law, Columbia's newest announcement has no impact on Plaintiffs' standing. The text of the IHRA definition remains unchanged and Columbia's supposedly flexible interpretation does not bind the University. *See Hedges v. Obama*, 724 F.3d 170, 196 (2d Cir. 2013) (defendants "argued that the plaintiff lacked standing because the statute did not proscribe plaintiff's conduct […t]o the extent that the state contended that it had no intention of [punishing] plaintiff for its activities […] there is nothing that prevents the [s]tate from changing its mind"), *citing Vermont Right to Life Committee v. Sorrell*, 221 F.3d 376, 383 (2d Cir. 2000) (finding standing for a facial challenge because defendant "is not forever bound, by estoppel

---

[1]    *See also* IHRA, *Working definition of antisemitism* (2025), https://holocaustremembrance.com/resources/working-definition-antisemitism (examples of prohibited speech include "Drawing comparisons of contemporary Israeli policy to that of the Nazis" or "Applying double standards by requiring of [Israel] a behavior not expected or demanded of any other democratic nation"). Furthermore, Columbia's most recent iteration of its Anti-Discrimination Policy still labels as discriminatory "certain double standards applied to Israel." ECF 139-1 at 10 n.7.

or otherwise, to the view of the law that it asserts in this litigation"); *see also Anderson v. Spear*, 356 F.3d 651, 669 (6th Cir. 2004) ("facial challenges have been permitted even where the agency interpreted a provision in such a way as to preclude enforcement"); *Virginia Soc'y for Human Life, Inc. v. FEC*, 263 F.3d 379, 388-90 (4th Cir. 2001) ("nonbinding assurances that [plaintiffs] would not be prosecuted did not overcome the presumption of a credible fear of prosecution"), *overruled on other grounds by The Real Truth About Abortion, Inc. v. Fed. Elec. Comm'n*, 681 F.3d 544 (4th Cir. 2012); *Kucharek v. Hanaway*, 902 F.2d 513, 519 (7th Cir. 1990) (interpretation offered by Attorney General is not binding because he may "change his mind . . . and he may be replaced in office").

If Columbia were serious about its professed restraint, it could have entered into an enforceable undertaking before this Court not to apply its definition of antisemitism to sanction students for political expression critical of Israel. It has not. In the absence of such an undertaking—and given that Columbia retains power to alter its position at any time—Plaintiffs have satisfied the Second Circuit's requirements for pre-enforcement standing. *See Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016) (the Second Circuit "sets a low threshold and is quite forgiving to plaintiffs seeking such preenforcement review"), *citing Hedges,* 724 F.3d at 197.

There is also a clear difference between antisemitic speech and legitimate criticism of Israel—and definitions that mark that distinction with precision. *See*, *e.g.*, JERUSALEM DECLARATION,[2] ("there is a widely-felt need for clarity on the limits of legitimate political speech and action concerning Zionism, Israel, and Palestine") *see id.* at Section C(13) ("Evidence-based criticism of Israel […] is not antisemitic including criticism of "policies and practices, domestic and abroad, such as the conduct of Israel in the West Bank and Gaza"); *id.* at Section C(15)

[2] https://jerusalemdeclaration.org/  (last accessed Aug. 10, 2025).

("Criticism that some may see as excessive or contentious, or as reflecting a 'double standard,' is not, in and of itself, antisemitic"). Columbia chose not to resolve this ambiguity in the text of its own policies—perhaps because the University *does* want students to be uncertain about the permissibility of their political expression. That uncertainty gives Plaintiffs standing to protect their First Amendment rights.

Columbia suggests that Plaintiffs have not demonstrated facial overbreadth as a matter of law. ECF 138 at 10. That is incorrect. Because Defendants could have tailored their policies to address antisemitism without targeting protected political speech—but declined to do so—Plaintiffs have established a likelihood of success in their facial challenge. *See, e.g.*, *Alexander v. Sutton*, 747 F. Supp. 3d 520, 550 (E.D.N.Y. 2024) ("Plaintiffs have shown a clear and substantial likelihood of establishing that [the restriction] is not narrowly tailored to achieving even the interest of preserving student privacy"), *citing Moody v. NetChoice, LLC*, 603 U.S. 707, 723-24, 744 (2024); *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 444 (2015) ("it is the rare case in which a State demonstrates that a speech restriction is narrowly tailored to serve a compelling interest"); *see also* ECF 133 at 10-11 (collecting cases).

## II.    Columbia Purports That Students Face No Current Enforcement Threat— While Sanctioning Dozens of Students Purely for Anti-Israel Protest Speech.

Columbia asserts that Plaintiffs and other students need not fear discipline for their criticisms of Israel because their fears are "imaginary." ECF 138 at 10. That is certainly news to the more than 80 students Columbia recently suspended or expelled for participation in pro-Palestine protests.[3] It is also news to Plaintiffs—who themselves have been subject to OIE investigations based purely on their anti-Israel speech. *See, e.g.*, ECF 101-13 ¶ 5; 134-2, ¶ 32. Columbia rejects

---

[3] *See* ASSOCIATED PRESS, *Columbia University says it has suspended and expelled students who participated in protests* (July 22, 2025), https://apnews.com/article/campus-protests-columbia-discipline-trump-administration-f009b90113fe0ba7847c54ffc9197bd1.

these examples, arguing that "more than mere speech" was being punished. ECF 138 at 11. That is wrong. Unlike Columbia's UJB process—which handles all manner of other University policy violations—the OIE specifically prosecutes alleged discriminatory speech. ECF 120-2 at 8. Columbia is hauling students into disciplinary proceedings for uttering phrases like: "Land Back Now"; "Resistance Is Justified When People Are Occupied"; and "Palestine Will Be Free." *See* ECF 134-1 at 6. Under its newest definitions of antisemitism—which label these phrases as harassment—Columbia has opened similar disciplinary proceedings against dozens of current students. Decl. of Brendan Carroll, at ¶¶ 6-12.

The University suggests that such "offensive speech" can be investigated as evidence of discrimination under Title VI without violating the First Amendment. ECF 134 at 10. That is wrong by virtue of the very case to which Columbia cites. *See Gartenberg v. Cooper Union for the Advancement of Sci. & Art*, 765 F. Supp. 3d 245, 270 (S.D.N.Y. 2025) (phrases like "[c]elebrate the 36th anniversary of the First Intifada" are expressions "related to the ongoing Israeli-Palestinian conflict and touched upon topics like Zionism, colonialism, and racism […] Gartenberg's Complaint offers no factual support for its assertion that any of these messages were intended to target particular Jewish students, as opposed to efforts to communicate a political message to the Cooper Union community at large"). Columbia's OIE notices instead prove that—in the absence of anti-Jewish harassment targeted at Jewish students—Columbia will still investigate and discipline students for their political criticisms of Israel. That is the reason Plaintiffs have pre-enforcement standing. They intend to utter the very protest phrases Columbia is now erroneously declaring discriminatory harassment. *See*, *e.g.*, ECF 101-9 at ¶ 16.

**III.    These Recent Changes Are No Coincidence—and the Chronology of Government Intervention Itself Establishes an Inference of State Compulsion.**

Columbia does not dispute the law governing the state compulsion test for state action. *Compare* ECF 138 at 13-16, *with* ECF 133 at 13-15. Instead, Columbia suggests that it is *pure coincidence* the University adopted the IHRA definition of antisemitism just two weeks after agreeing that definition was unlawful in briefing before this Court. ECF 138 at 13 ("Columbia took this step, along with other measures to combat antisemitism, because '[c]ommitting to reform on our own is a more powerful path'"), *with* ECF 113 at 21-22 ("These examples are taken from the IHRA definition, which the University did not adopt […] The key language that the court found to be problematic in that case is not contained in Columbia's definition of antisemitism"). The only discernible explanation for Columbia's about-face is the announcement of a final settlement with the Agency Defendants. *See* ECF 123-124.

This subterfuge is not new. Columbia previously suggested that it was coincidence when the University stated that its Taskforce Definition of antisemitism would be unlawful to enforce, only to then start enforcing it. The only interceding reason for that change? The Trump administration's March 13 letter. *See* ECF 133 at 10; *compare* ECF 99-7 at 44 ("we do not think that a statement should be impermissible just because it qualifies as antisemitic under this definition"), *with* ECF 120-2 at 11 n.7 ("The Office incorporates this definition in considering potential policy violations").

Agency and Columbia Defendants ask this Court to simply take their word that there is no relationship between government pressure and Columbia's compliance. ECF 138 at 13; ECF 136 at 7. But that is wrong both as a matter of law and of fact. Federal courts regularly hold that chronology raises a strong inference of causation—including in First Amendment contexts. *See, e.g. Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (First Amendment case where "activity

5

was close in time to the adverse action" and was "sufficient to support an inference of a causal connection"); *Handy-Clay v. City of Memphis*, 695 F.3d 531, 545 (6th Cir. 2012) ("we note that the chronology of events supports an inference of causation"). Courts can also apply that strong inference in the context of a preliminary injunction. *See, e.g., Frampton v. City of Baton Rouge*, No. 21-CV-362-JWD-SDJ, 2022 U.S. Dist. LEXIS 3754, at *47 & n.226 (M.D. La. Jan. 7, 2022) (granting First Amendment preliminary injunction in part because of the "timing and content of government action"), *citing Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) ("chronology of events" can provide inference of First Amendment violation). This legal principle extends to other contexts as well. *Pope v. Railroad Retirement Bd.*, 240 U.S. App. D.C. 244, 744 F.2d 868, 870 (D.C. Cir. 1984) ("An inference is warranted that the threat […] had a coercive effect on the Board's self-styled voluntary actions"); *Ross v. Horn*, 598 F.2d 1312, 1322 (3d Cir. 1979) ("the chronology of events strongly suggests such a causal relationship").

Nor has Columbia offered any "equally credible theories of causation" for its stark diversions from prior policy. *See Seven-Up Co. v. Coca Cola Co.*, 86 F.3d 1379, 1388 (5th Cir. 1996). Suggesting that these about-face changes fell from the sky is not credible when the obvious explanation is Agency Defendants' coercion.[4] These circumstances meet the standard for preliminary relief because Columbia is likely a state actor.[5]

---

[4] Should the Court not apply these chronological inferences, hearing or decision on Plaintiffs' motion for preliminary injunction could be deferred until Plaintiffs have the opportunity to conduct limited discovery of Agency and Columbia Defendants. *See New York v. Griepp*, No. 17-CV-3706, 2017 U.S. Dist. LEXIS 113505, at *4 (E.D.N.Y. July 20, 2017) ("good cause [is established] because the normal course of discovery would not provide enough time to conduct the discovery prior to the Court's consideration of the motion for preliminary injunction") (citations omitted).

[5] Separately, Columbia suggests that the government will not be involved in University disciplinary decisions and so the "joint action" theory does not apply. ECF 138 at 16. But Agency Defendants now have a contractual right to review disciplinary proceeding records for students

**CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Preliminary Injunction should be granted.

Dated: August 12, 2025                    Respectfully Submitted,

/s/  Amy E. Greer

Amy E. Greer (NY 5910179) (lead counsel)
**Dratel & Lewis**
29 Broadway, Suite 1412
New York, NY 10006
(212) 732-8805
agreer@dratellewis.com

**CAIR NATIONAL LEGAL DEFENSE FUND**
Lena Masri
Gadeir Abbas (VA 81161)*
Nadia Bayado (DC 90023648)
453 New Jersey Ave SE
Washington, DC 20003
(202) 742-6420

**COUNCIL ON AMERICAN ISLAMIC RELATIONS – NEW YORK**
Lamya Agarwala (NY 5736061)
80 Broad Street, 5th Floor
New York, NY 10009
(646) 665-7599
lagarwala@cair.com

**MAIN STREET LEGAL SERVICES**
Zal K. Shroff (#5560669)
Main Street Legal Services Inc.
CUNY School of Law
2 Court Square West
Long Island City, NY 11101
T: (718) 340-4200
F: (718) 340-4478

---

and to determine—as a condition of funding—whether Columbia has satisfied its obligation to enforce its new discrimination policies. Resolution Agreement ¶¶ 49-52.

**Jonathan Wallace**
Jonathan Wallace (NY 1733757)
PO #728
Amagansett NY 11930
(917) 359-6234
jonathan.wallace80@gmail.com

*Attorneys for Plaintiffs*
*\*Licensed in VA, practice limited to federal matters*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel hereby certifies that this document is compliant with the 2,000

word limit permitted by this Court at ECF 141. As measured by the word processing system used

to prepare it, this sur-reply contains 2,000 words.


/s/ Amy E. Greer

Amy E. Greer (NY 5910179) (lead counsel)
**Dratel & Lewis**
29 Broadway, Suite 1412
New York, NY 10006
(212) 732-8805
agreer@dratellewis.com