# MAIN STREET LEGAL SERVICES

October 29, 2025

**BY ECF**

The Honorable Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: Notice of Recent Authority in *Khalil, v. Columbia*, 25-cv-02079 (AS)

Dear Judge Subramanian:

Plaintiffs write to inform this Court of a recent decision from the First Circuit filed last week. *See Stand With US Center for Legal Justice v. Massachusetts Institute of Technology*, ___ F.4th ___, *available at* 2025 WL 2962665 (1st Cir. Oct. 21, 2025).

Plaintiffs respectfully request that this Court take notice of the recent decision as it relates directly to the resolution of the motions currently pending before this Court regarding the First Amendment and Title VI at private universities. *See* Dkts. 85, 101; *see also* Dkts. 102, 133, 142. The First Circuit held as follows:

1. <u>Supposed Title VI Enforcement By Private Universities Is Itself Government Action</u>. The Court observed that the federal government cannot coerce private universities to suppress First Amendment speech under the guise of Title VI regulatory authority. *See Stand With US*, 2025 WL 2962665, at *8 ("Using Title VI to compel adherence to a preferred political viewpoint would also implicate students' First Amendment freedoms […] the government cannot empower a private party to punish speech on a matter of public concern absent unusual circumstances not present here"); *id.* at *9 ("the First Amendment erects safeguards that limit the ability of the government or private plaintiffs to punish MIT for not restricting more severely the student protestors' protected speech").

2. <u>Anti-Israel Protest Does Not Create a Plausible Inference of Anti-Semitism.</u> The Court held that core political speech criticizing Israel alone does not create an inference of anti-Semitism under Title VI. *See Stand With US*, 2025 WL 2962665, at *11 ("Nor do plaintiffs allege facts that, if true, would otherwise permit the inference that in these specific circumstances the protestors' strident criticisms of Israel were driven by antisemitism […] no facts plausibly establish[] that the protestors, as a group, opposed Israeli actions in Gaza or supported the Palestinian cause because of antisemitic animus"); *see id.* at *12 ("plaintiffs say that we should construe chants of 'from the river to the sea, Palestine will be free' and 'intifada revolution' as calls to wipe out the Jewish people as such. But neither slogan says as much on its face, nor do plaintiffs allege facts suggesting that either chant was commonly so construed by the protestors").

The Court specifically rejected the Trump Administration's definition of anti-Semitism adopted by Columbia University. *Id.* at *12 ("we do not find it dispositive that the United States Department of State has defined antisemitism as […] claiming that the existence of a State of Israel is a racist endeavor"); *id.* at *11 ("We therefore reject plaintiffs' claimed right to stifle anti-Zionist speech by labeling it inherently antisemitic"); *id.* ("We decline to interpret Title VI as arming either side of that debate with the powers of a censor").[1]

3. <u>Campus Disruption Does Not Create a Plausible Inference of Anti-Semitism</u>. The Court also held that campus disruption via collective protest—without evidence that Jewish students were targeted for their ethnic ancestry—is not evidence of actionable anti-Semitism under Title VI. *Id.* at *12 ("the protests may have interfered with campus life and the university's educational mission in a way that could have disappointed many students (and their parents). But our Title VI focus is not on how the protests affected students generally. Rather, we train our focus only on the extent to which the protests might have harassed Jewish students as such").

*\*\*\**

These holdings take on particular significance in relation to the pending motions before this Court. *See* Dkts. 85, 101. Columbia is subjecting students to Title VI disciplinary proceedings based purely on their First Amendment speech critical of the State of Israel—as directed by the Trump Administration. *See* ECF. No. 142, at 7 ("Columbia's OIE notices instead prove that—in the absence of anti-Jewish harassment targeted at Jewish students—Columbia will still investigate and discipline students for their political criticisms of Israel. That is the reason Plaintiffs have pre-enforcement standing. They intend to utter the very protest phrases Columbia is now erroneously declaring discriminatory harassment"); *see id.* at 9 ("Suggesting that these about-face changes fell from the sky is not credible when the obvious explanation is Agency Defendants' coercion").

To add insult to injury, Jewish students are *currently* being targeted by Columbia for anti-Semitism investigations based solely on protest slogans critical of Israel. *See*, *e.g.*, Ex. A.[2] These recent investigations reject Jewish students' own political perspectives as anti-Zionist Jews—which the First Circuit has expressly warned against in its recent decision. *See Stand With US*, 2025 WL 2962665, at *12 ("[E]ven prominent Israelis have lodged the same accusation […] we decline plaintiffs' invitation to hold that the protestors' speech constituted antisemitic harassment actionable under Title VI merely because it was stridently pro-Palestinian and anti-Zionist").

---

[1] Courts in this District have continued to hold the same in recent weeks. *See*, *e.g.*, *Garrett v. City Univ. of N.Y.*, No. 1:24-cv-09710-VSB-RWL, 2025 U.S. Dist. LEXIS 201916, at *27-*28 (S.D.N.Y. Oct. 10, 2025) ("the Complaint describes protestors wielding signs with threatening and violent imagery, including blood dripping from the Star of David and other Jewish symbols. The Star of David with blood dripping, for example, may express the notion that Israel, whose flag includes the symbol, has proverbial blood on its hands […] When demonstrators displayed some of the same signs at a peaceful protest on the sidewalk […] the *Gartenberg* court held that the protest was **not** actionable harassment. The same principle applies here") (emphasis in original) (internal quotations omitted), *citing Gartenberg v. Cooper Union*, No. 24-CV-2669, 2025 WL 602945, at *1 (S.D.N.Y. Feb. 25, 2025).

[2] For example, one Jewish student is being investigated for asserting that "Columbia's adoption of the IHRA definition of antisemitism is a dangerous step that harms both Jewish and Palestinian students" and encouraging fellow Jewish students to "Drop Hillel" because it "prioritizes defending a genocidal settler-state over celebrating and encouraging Jewish diversity." Ex. A, at 2; *see id.* (recommending that fellow Jewish students join a "Jewish community which does not support genocide [or] ethnic cleansing"). Plaintiffs' counsel recently received this Columbia Office of Institutional Equity (OIE) notice—which was issued after Columbia adopted the Trump Administration's definition of anti-Semitism in July 2025. Plaintiffs' counsel learned from this student and their attorney that they are in fact Jewish and being investigated solely for their criticisms of Israel. Exhibit A includes one of what appears to be *many* such investigative notices into core protected political speech.

We thank the Court for its consideration of this letter.

          Respectfully submitted,

          /s/ Zal K. Shroff
          Zal K. Shroff

          Amy E. Greer
          Gadeir Abbas
          Nadia Bayado
          Lamya Agarwala
          Jonathan Wallace
          Maria Kari

          *Attorneys for Plaintiffs*