**MAIN STREET LEGAL SERVICES**

November 18, 2025

**BY ECF**

The Honorable Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: Notice of Supplemental Authority in *Khalil v. Columbia*, 25-cv-02079 (AS)

Dear Judge Subramanian:

Plaintiffs write to inform this Court of a recent decision from the Northern District of California filed last week. *See American Association of University Professors v. Trump, UC*, No. 25-cv-07864-RFL, 2025 WL 3187762 (N.D. Cal. Nov. 14, 2025) ("UC AAUP").

Plaintiffs respectfully request that this Court take notice of the recent decision as it relates directly to the resolution of the motions currently pending before this Court. *See* Dkts. 85, 101; *see also* Dkts. 102, 133, 142. The Northern District of California held as follows:

1. <u>Agency Defendants Are Engaged in Unlawful Coercion in Violation of the First Amendment</u>. The Court identified that Agency Defendants are responsible for a campaign to purge disfavored viewpoints from universities across the United States—including at Columbia University. *See UC AAUP*, 2025 WL 3187762, at *4 ("The record shows that Defendants engaged in a concerted policy to use allegations of antisemitism to justify funding cancellations, when their intent is to coerce universities into purging disfavored 'left' and 'woke' viewpoints from their campuses and replace them with views that the Administration favors"); *id.* at *12 ("Defendants' plan to 'bankrupt' the UC is happening against the backdrop of nearly identical actions against other prominent schools—Brown, Columbia, and Harvard. Defendant McMahon described these efforts as 'dismantling decades of woke control over America's universities' and a 'roadmap' for future coercion").[1]

2. <u>Addressing Discrimination Cannot Justify Overbroad Restrictions That Chill Core Political Speech.</u> The Court noted that a purported goal of addressing anti-Semitism cannot justify expansive restrictions on constitutionally protected speech and conduct. *See UC AAUP*, 2025 WL 3187762, at *13 ("even if Defendants were not trying to purge disfavored viewpoints from universities and solely motivated by stamping out antisemitic harassment, Defendants may not

---

[1] The Court arrived at its determination that Agency Defendants engaged in unlawful coercion by applying the "four non-exhaustive factors" set out by the Second Circuit in *Nat'l Rifle Ass'n of Am. v. Vullo*, 49 F.4th 700, 715 (2d Cir. 2022), *vacated and remanded on other grounds*, 602 U.S. 175 (2024); *see UC AAUP*, 2025 WL 3187762, *12-13 ("(1) the government official's word choice and tone and the tenor of the overall interaction; (2) whether the official has regulatory authority over the conduct at issue; (3) whether the recipient perceived the message as a threat; and (4) whether the communication refers to any adverse consequences if the recipient refuses to comply") (internal quotations omitted).

accomplish that goal by coercing the UC into adopting practices with widespread chilling effects on constitutionally protected speech"); *see also id.* ("Unlike the established Title VI processes for terminating funds based on civil rights violations, government coercion to induce a third party to censor the offending speech allows the government to bypass having to prove the alleged violations").

       3.    <u>Agency Threats and University Capitulation to Those Threats Establishes First Amendment Standing.</u> The Court made clear that agreements with the federal government—such as the one Columbia entered—establish standing based on a legitimate fear and chilling of First Amendment speech. *See UC AAUP*, 2025 WL 3187762, at *16 ("if the UC accedes to a settlement agreement following the Task Force Policy's roadmap of Columbia and Brown, Plaintiffs' members reasonably fear that the UC will further restrict their speech, and as a result are deterred from speaking on disfavored topic"); *id.* at *17 ("whether the UC agrees to the proposed terms or not, the commonsense, predictable effect is that Plaintiffs' members will be deterred by Defendants' conduct from engaging in protected speech, just as Defendants hoped"); *see also id.* at *8 ("Much of the language mirrors the settlements reached with Columbia […] UCLA would also be required to revise its policies regarding demonstrations, protests, displays, and other expressive activities by increasing restrictions and discipline, and prohibiting anonymous protest").

       4.    <u>Ongoing Government Pressure Establishes Redressability Per Se.</u> The Court also held that continuing government pressure against a university establishes a redressable injury—notwithstanding any other purportedly independent third-party conduct. *See UC AAUP*, 2025 WL 3187762, at *16 ("That injury is redressable […] the record here shows Defendants are exerting continued pressure"); *id.* at *17 ("although Defendants argued […] that other events, unrelated to this litigation, might also be chilling Plaintiffs' members speech, if a court decision can provide a small incremental step to reduce the risk of harm to the plaintiffs to some extent, that is enough to show causation as well as redressability") (internal quotations omitted), *citing Matsumoto v. Labrador*, 122 F.4th 787, 801 (9th Cir. 2024).

       5.    <u>The Tucker Act Does Not Apply to First Amendment Claims.</u> The Court held that First Amendment claims do not implicate the Tucker Act—nor do claims where the plaintiff is not a party to any specific contract agreement. *See UC AAUP*, 2025 WL 3187762, at *21 ("The basis for Plaintiffs' claim is indisputably the First Amendment […] Plaintiffs are seeking injunctive relief to stop federal agencies from further chilling their members' speech through coercion and retaliation, not specific performance under a contract"); *see id.* ("The Tucker Act is inapplicable for the additional reason that Plaintiffs cannot bring a breach of contract claim as non-parties to the grant agreements at issue").

       6.    <u>Agency Defendants Failed to Follow Title VI Grant Cancellation Procedures.</u> The Court determined that Agency Defendants failed to follow the required grant cancellation procedures—in violation of the APA. *See UC AAUP*, 2025 WL 3187762, at *28 ("The reasonable inference from this undisputed sequence of events is that the suspension of funds, and the blanket refusal to continue or issue new grants, was based on Defendants' assertion of Title VI and IX violations"). The Court also rejected Agency Defendants' attempts to argue that federal regulations allowed them *carte blanche* to cancel federal grants in the absence of appropriate Title VI procedures. *Id.* at *28 ("Though Defendants assert that the Suspension Letters' citation to 2 C.F.R. § 200.33920 and 2 C.F.R. § 200.340 provides a separate basis for suspending the funds, those

regulations do not give Defendants a blank check to ignore the Title VI and IX processes and limits. Such an interpretation would nullify the safeguards imposed by [Title VI]").[2]

7. <u>Preliminary Injunction Terms Enjoin Further Government Coercion.</u> The Court's separate preliminary injunction order includes a prohibition on: (1) "refusing to grant, non-renewing, withholding, freezing, suspending, terminating, conditioning, or otherwise restricting use of federal funds, or threatening to do so, to the University of California […] until after full compliance with all of the required steps […] under Title VI of the Civil Rights Act of 1964"; and (2) "conditioning the grant or continuance of federal funding on the UC's agreement to any measures that would violate the rights of Plaintiffs' members under the First Amendment." *See UC AAUP*, No. 25-cv-07864-RFL, Dkt. 91 (N.D. Cal. filed: Nov. 14, 2025).

***

We thank the Court for its consideration of this letter.

    Respectfully submitted,

    <u>/s/ Zal K. Shroff</u>
    Zal K. Shroff
    Natasha Bunten – Law Student Intern

    **MAIN STREET LEGAL SERVICES**
    Zal K. Shroff (#5560669)
    Main Street Legal Services Inc.
    2 Court Square West
    Long Island City, NY 11101
    Zal.Shroff@law.cuny.edu
    T: (718) 340-4200
    F: (718) 340-4478

    *Attorney for Plaintiffs*

---

[2] Plaintiffs note that this particular holding from the Northern District of California pertains only to resolution of the Agency Defendants' pending Motion to Dismiss. *See* Dkt. 102, at 25; *see also* Dkt. 133, at 35 ("Plaintiffs […] withdraw their Motion for Preliminary Injunction as to Title VI, as a result of Agency Defendants' recent restoration of grant funding to the Columbia Defendants"). All other holdings pertain directly to the issues still before this Court in resolving Plaintiffs' pending Motion for Preliminary Injunction. *See* Dkts. 133, 133-1, 142.