**MAIN STREET LEGAL SERVICES**

January 20, 2026

**BY ECF**
The Honorable Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

   Re: *Khalil v. Columbia*, 25-cv-02079 (AS); Plaintiffs' Letter-Motion and Dispute with
     Columbia Defendants Regarding Early Discovery in this Action

Dear Judge Subramanian:

  Plaintiffs write to inform this Court of a dispute between Plaintiffs and Defendants Columbia University, the Trustees of Columbia University, and Interim President Claire Shipman ("Columbia Defendants"). *See* Individual Practice Rule 5(c). Plaintiffs and Columbia Defendants disagree about: (1) whether Plaintiffs validly served discovery requests on Columbia Defendants pursuant to this Court's recent order, Dkt. 163; (2) the propriety of seeking discovery at this juncture; and (3) the scope of the information Plaintiffs seek and the burden of production. Plaintiffs seek a conference with the Court to resolve these disputes.

### I. Plaintiffs Have Conferred with Columbia Defendants and Reached Impasse.

  Plaintiffs served Columbia Defendants with eleven limited Requests for Production on December 18, 2025—within one week of this Court's order on early discovery.[1] *See* Dkt. 163. Plaintiffs carefully crafted these requests to elicit evidence that Columbia was coerced by federal agencies to adopt speech-restrictive policies that harmed and continue to harm Plaintiffs. *See* Dkt. 165-1, at 17-18; *see also* Early Discovery Requests to Columbia Defendants, Ex. A. Columbia Defendants declined to meet and confer within 1-3 business days as proposed by Plaintiffs. Dkt. 165-1, at 16. On December 24, 2025, Columbia Defendants also asserted that Plaintiffs' requests were not validly served as to trigger a 30-day response deadline. *Id.* at 12-13. On December 26, 2025, Plaintiffs explained why discovery was validly served. *Id.* at 11-12. On January 2, 2026, while awaiting a post-holiday telephonic conference, Plaintiffs proposed a limited list of records custodians. *Id.* at 10-11. On January 8, 2026, Plaintiffs withdrew four requests and narrowed others. Additional Attorney Correspondence, Ex. B, at 14-17. The parties conferred telephonically on January 9, 2026, and Columbia Defendants agreed to consider Plaintiffs' requests.[2] Dkt. 165-1, at 2-3. On January 16, 2026, Columbia Defendants informed Plaintiffs that they categorically object to Plaintiffs' requests, even as narrowed, and the parties reached impasse. Ex. B, at 5-8. On January 20, 2026, Plaintiffs responded and agreed the parties had reached impasse. *Id.* at 1-4.

### II. Discovery Was Validly Served Requiring a Response from Columbia Defendants.

  For the same reasons as Plaintiffs articulated in their dispute with the Agency Defendants, Plaintiffs validly served their early discovery requests pursuant to this Court's recent order. *See* Dkt. 165, at 2; *see also* Dkt. 165-1, at 14. As such, Columbia Defendants' formal responses to discovery would also be due on January 26, 2026. Dkt. 165, at 2.

---

[1] Because Columbia Defendants did not agree to accept electronic service, Plaintiffs also served Columbia Defendants with the discovery requests via mail on December 22, 2025.

[2] The meet and confer took place telephonically drom 11:30 AM until 12:22 PM on January 9, 2026. The following attorneys were present on the call—with Lead Trial Counsel being confirmed by each participating party: Zal Shroff; Amy Greer; Gadeir Abbas; Nadia Bayado; Maria Kari; Deema Azizi; Jonathan Wallace; (counsel for Plaintiffs); Marshall Miller, Gabrielle Tenzer, Trisha Anderson, and Zachary Piaker (counsel for Columbia Defendants); Allison Rovner and one additional attorney (counsel for the Agency Defendants); Andy Wang and one additional attorney (counsel for the Congressional Defendants).

### III. Plaintiffs Seek Evidence of Coercion and Pre-Enforcement Standing Important to the Court's Analysis of Plaintiffs' Motion for Preliminary Injunction.

Plaintiffs maintain that this Court can and should infer substantial coercion from the mere chronology of events at Columbia for purposes of Plaintiffs' motion for preliminary injunction before this Court—even absent discovery. *See* Dkt. 165, at 2; Dkt. 142, at 8. However—given that Columbia Defendants maintain that changes to Columbia's speech-related policies were "underway" independent of the Agency Defendants' March 13, 2025 demands—limited discovery as to the fact of coercion is warranted to help this Court efficiently resolve the pending preliminary injunction motion. *Compare* Dkt. 84 at 11-12 (purporting that Columbia changes were "underway long before"); Dkt. 138 at 9 ("On July 15, Columbia announced it would incorporate consideration of the IHRA definition […] Columbia took this step, […] because '[c]ommitting to reform on our own is a more powerful path'"), *with* Dkt. 142, at 9 ("Suggesting that these about-face changes fell from the sky is not credible when the obvious explanation is Agency Defendants' coercion").

Columbia Defendants have not raised any disagreement as to the importance of this central question for Plaintiffs' pending preliminary injunction motion—which is exactly what the Court's early discovery order requested the parties to consider. *See* Ex. B., at 1-2. Instead, the Columbia Defendants argue that no discovery should be available in this action at all and that Plaintiffs should have sought discovery earlier. *Id.* These arguments are irrelevant. First, Plaintiffs have already briefed the availability of discovery in this action generally. Dkt. 159, at 1-2. Second, Plaintiffs filed their requests within one week of this Court's order specifically contemplating early discovery—which Plaintiffs had already noted could be of assistance to address the issue of coercion if the Court finds it helpful. Ex. B., at 2; *see also* Dkt. 142, at 9 n.4. Despite no substantive opposition regarding the importance of Plaintiffs' requests, Plaintiffs served narrowed their requests via e-mail and during the parties' conference to the following **seven** requests:

**Request Nos. 1-2.** These requests are for documents and communications between the Columbia Defendants and the Agency Defendants during the core weeks when Columbia made formal changes to its definition of anti-Semitism and to other policies following the Agency Defendants' March 13, 2025, demands. *See* Ex. B, at 14. This information supports Plaintiffs' key argument that Columbia's actions are attributable to Agency Defendants under a compulsion theory and establish Columbia as a state actor. *Compare* Dkt. 133, at 14-15, *with* Dkt. 84 at 11-12.

**Request No. 4.** These communications will elucidate which policy changes were not, as Columbia Defendants argue, already "underway" prior to the Agency Defendants' March 13, 2025, demands. *Compare* Dkt. 84 at 13 ("the March 13 Letter crystalized efforts that were already underway and impacted their timing"), *with* Dkt. 133, at 8 ("After government pressure on March 13, Columbia already began enforcing a definition of antisemitism that the University had previously conceded would be unlawful to enforce").

**Request Nos. 6-8.** These requests seek communications regarding the timing and motivations for Columbia's changes to its anti-Semitism definition up to and including adopting the IHRA definition, incorporation of the definitions into university disciplinary policies, and announcements related to enforcement of those policies. These requests will elicit any correspondence or communications that may have pressured Columbia to adopt definitions of anti-Semitism that ban criticism of Israel—which coercion is central to Plaintiffs' pending preliminary injunction motion. *Compare* Dkt. 138 at 9 ("Columbia subsequently entered the Resolution Agreement, which contains no provisions pertaining to any antisemitism definition."), *with* Dkt. 142, at 8 (Defendants "suggest[] that it is pure coincidence the University adopted the IHRA definition of antisemitism just two weeks after agreeing that definition was unlawful in briefing before this Court").

**Request No. 9.** This request seeks the Columbia University Office of Institutional Equity's charging documents (redacted for student names) related to anti-Semitism investigations initiated

after March 21, 2025. How those policies are currently being enforced—and whether students are being investigated purely for protected political speech—is directly relevant to Plaintiffs' pre-enforcement standing argument in their preliminary injunction motion and the Columbia Defendants' opposition. *Compare* Dkt. 133 at 10 ("Plaintiffs have standing if it is "reasonable enough" to assume that their speech will be prohibited by the applicable regulation"), *with* Dkt. 138, at 10 ("their facial challenge rests on pure specula[tion] about improbable imaginary cases in which they hypothesize Columbia might apply its Anti-Discrimination Policy").

### IV. Columbia Defendants Cannot Argue that the Discovery is Burdensome—Particularly Without Conducting a Test Search.

Columbia Defendants assertions of burden with respect to these requests are also unfounded. *See* Ex. B, at 2-4. We address those specific assertions below:

**Request Nos. 1-2.** Plaintiffs seek records for a grand total of 11 weeks, from 23 relevant custodians, and have proposed concrete search terms. *See* Ex. B., at 3. Columbia Defendants' apparent opposition is that Plaintiffs seek records from roughly 20,000 employees. We do not. We have identified only 23 relevant custodians selected for their respective decision-making roles. Plaintiffs also proposed to negotiate down this number of custodians. Plaintiffs also proposed a list of specific electronic search terms and offered to negotiate those terms. Yet Plaintiffs were met with a categorical refusal by Columbia Defendants to engage in *any* search whatsoever. Courts regularly order such test searches with short turn-around times precisely because they are not burdensome. *See*, *e.g.*, Doe v. Kaiser Foundation Health Plan, Inc., 2024 WL 3225904, at *4 (N.D. Cal. June 28, 2024) ("within five (5) business days" defendants "should run test searches using the opposing party's proposed search terms to see if they return a reasonable and mutually agreeable hit count (whether too high or too low)"); *see also* Dkt. 165, at 3 (collecting cases).[3]

**Request No. 4.** Columbia Defendants assert that "institutional decision-making generally consists of processes involving multiple actors" and that Plaintiffs' request is "amorphous." Ex. B, at 7. But Plaintiffs have clarified that this request can be satisfied if Columbia Defendants can identify *any* specific documents they relied on to assert in Court that Columbia's policy changes were "underway" prior to March 13, 2025. Plaintiffs are willing to further limit this request to the two specific changes to speech regulation and student discipline most relevant to the pending preliminary injunction motion.[4]

**Request Nos. 6-8.** Defendants do not explain how 23 records custodians are a "large volume of custodians." Ex. B, at 4. Nor is the mere inclusion of some lawyers as custodians dispositive of burden—especially when most custodians are not attorneys. *See supra* note 6; *see also Durling v. Papa John's Int'l, Inc.*, No. 16 Civ. 3592, 2018 WL 557915, at *9 (S.D.N.Y. Jan. 24, 2018) (denying discovery will "deprive Plaintiffs of information to which they are entitled" where "attorneys were closely involved in the relevant decision-making").

**Request No. 9.** Plaintiffs agree with Defendants that all OIE investigation notices should have names and identifying information redacted in compliance with FERPA. Plaintiffs disagree that there is substantial burden in doing so for an anticipated 100-200 investigation records. Defendants' case law only suggests burden in redacting *millions* of such records. *See* Ex. B., at 4.

---

[3] Columbia Defendants are also wrong that review for attorney-client privilege is inherently burdensome—particularly when the attorney communications exchanged with the Agency Defendant are decidedly not protected by that privilege. *See* Ex. B, at 3, *citing In re Mutual Funds Investment Litigation*, 251 F.R.D. 185, 187 (D. Md. 2008) ("The documents, for which attorney-client privilege and/or work-product protection are now claimed, were disclosed to regulators […] the defendants will be ordered to produce the documents"). Columbia Defendants' understanding of burden is drawn from cases involving searches over many years and millions of documents. *See* Ex. B, at 2-3.

[4] Those policy changes are: (a) Changes to Student Discipline Procedures; and (d) Changes to Anti-Semitism Definition. *See* Ex. A, at 7-8. They are directly related to the pending preliminary injunction motion. *See* Dkt. 142, at 3 ("Plaintiffs . . . have been subject to OIE investigations based purely on their anti-Israel speech").

3

\*\*\*

We thank the Court for its consideration of this letter.

Respectfully submitted,

/s/
Zal K. Shroff

**MAIN STREET LEGAL SERVICES**
Zal K. Shroff (#5560669)
Main Street Legal Services Inc.
2 Court Square West
Long Island City, NY 11101
Zal.Shroff@law.cuny.edu
T: (718) 340-4200
F: (718) 340-4478

**CAIR-NY (COUNCIL ON AMERICAN-ISLAMIC RELATIONS – NEW YORK)**
Deema Azizi (NY 5525670)
233 Broadway, Suite 820
New York, NY 10279
dazizi@cair.com
T: (347) 445-0928

*Attorneys for Plaintiffs*