

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*86 Chambers Street*
*New York, New York 10007*

February 10, 2026

**BY ECF**
The Honorable Arun Subramanian
United States District Judge
500 Pearl Street, Courtroom 15A
New York, New York 10007

    Re: *Khalil, et al. v. The Trustees of Columbia University in the City of New York, et al.*, 25 Civ. 2079 (AS)

Dear Judge Subramanian:

  I write respectfully on behalf of the Executive Branch Defendants, in response to the Court's January 30, 2026, order, ECF No. 172, permitting Defendants to respond to Plaintiffs' November 18, 2025, letter regarding the out-of-circuit district court decision in *American Association of University Professors v. Trump,* No. 25-cv-07864-RFL, 2025 WL 3187762 (N.D. Cal. No. 14, 2025), *appeal pending* No. 26-263 (9th Cir. Jan. 13, 2026)[1] ("*UC AAUP*"), ECF No. 156 ("Nov. Ltr."), and Plaintiffs' January 29, 2026, letter regarding disciplinary action taken by Columbia University against one of its students, ECF No. 171. For the reasons explained below, although the Executive Branch Defendants view the district court's decision in *UC AAUP* as erroneous, it is also distinguishable, and Plaintiffs have not sufficiently linked Columbia's independent actions in disciplining its students to the Executive Branch Defendants' conduct.

  First, *UC AAUP* was wrongly decided and, in any event, is readily distinguishable from this case for several reasons. In granting a preliminary injunction, the district court concluded that the Tucker Act did not deprive it of jurisdiction over Plaintiffs' First Amendment claims. *See UC AAUP*, 2025 WL 3187762, at *21-22.[2] For the reasons explained in prior briefing, all of Plaintiffs'

---

[1] In *UC AAUP*, the government stipulated that it would seek dismissal of the appeal of the preliminary injunction if the district court entered an indicative ruling modifying the preliminary injunction, which the district court recently did. *See UC AAUP*, 25 Civ. 7864 (RFL), ECF Nos. 110, 111. The government filed a motion to dismiss the appeal yesterday. *See UC AAUP*, No. 26-263 (9th Cir.), ECF No. 7.

[2] Plaintiffs do not argue that the *UC AAUP* court's holding that the Tucker Act did not apply to Title VI claims, *UC AAUP*, 2025 WL 3187762, at *32, is persuasive here, and it is not. Not only was the funding here not terminated pursuant to Title VI, but Title VI provides for judicial review "in accordance with" the APA. 42 U.S.C. § 2000d-2. The APA, in turn, states that it does not apply "'if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought,'" *see* 5 U.S.C. § 702, which the Tucker Act does, for the reasons explained in the government's prior briefing. *See, e.g., Department of Education v. California*, 604 U.S. 650, 651 (2025); *National Institutes of Health v. American Public Health*

The Honorable Arun Subramanian
February 10, 2026
Page 2

claims here, and the relief they seek, sound in contract and are therefore barred by the Tucker Act. *See* ECF Nos. 86 at 15-21, 116 at 7-12, 136 at 4-5. That is true regardless of the labels Plaintiffs attach to their claims. *See, e.g.*, *Tucson Airport Authority v. General Dynamics Corp.*, 136 F.3d 641, 647 (9th Cir. 1998) (where one claim was a due process claim, explaining that "[b]ecause the United States's obligation is in the first instance dependent on the contract, these claims are contractually-based" and "the district court lacks jurisdiction under the Tucker Act").

Further, contrary to the *UC AAUP*'s court's decision, 2025 WL 3187762, at *21, the Court of Federal Claims may be able to consider constitutional claims. *See, e.g.*, *Consolidated Edison Co. of New York v. Department of Energy*, 247 F.3d 1378, 1385-86 (Fed. Cir. 2001) (directing district court to transfer case asserting constitutional, including due process, claims to the Court of Federal Claims in a case sounding in contract because "the Court of Federal Claims can supply an 'adequate remedy' to prevent the constitutional wrongs alleged by [plaintiff]," and the court "will not tolerate a litigant's attempt to artfully recast its complaint to circumvent the jurisdiction of the Court of Federal Claims"); *Holley v. United States*, 124 F.3d 1462, 1466 (Fed. Cir. 1997) ("The presence of a constitutional issue does not erase the jurisdiction of the Court of Federal Claims based on a properly brought claim under the Tucker Act, or bar the court from considering the constitutional issue in the course of determining whether the discharge was wrongful."). Moreover, the *UC AAUP* court was incorrect in concluding that the Tucker Act was inapplicable because the plaintiffs could not bring a breach of contract claim as non-parties to the grant agreements. 2025 WL 3187762, at *21. It would lead to an absurd result if Plaintiffs, as non-parties to the grants and contracts here, could use the Constitution as a workaround to seek the same relief in district court that Columbia, as a party to the contracts, could potentially only seek in the Court of Federal Claims because of the Tucker Act. *See Sustainability Institute v. Trump*, No. 25-1575, __ F. 4th __, 2026 WL 157120, at *7 n.7 (4th Cir. Jan. 21, 2026) ("[T]he fact that the Tucker Act does not allow the specific relief Plaintiffs seek does not mean that their claims must proceed under the APA; rather, it shows that Congress made the dispositive choice for contract claims against the United States to be limited to certain money damages.").

With respect to standing, the district court in *UC AAUP* held that plaintiffs consisting of associations and unions of UC employees, faculty, and students had standing to challenge terminated funding and allegedly chilled speech based on the record before it. *UC AAUP*, 2025 WL 3187762, at *15-20. Here, by contrast, for the reasons explained in prior briefing, Plaintiffs have not sufficiently asserted subjective chill of their speech, let alone that any chill was caused by the Executive Branch Defendants' conduct and is redressable by the relief they seek against the Executive Branch Defendants. *See* ECF Nos. 116 at 2-7, 136 at 2-3.

Plaintiffs cite the *UC AAUP* decision for the proposition that "continuing government pressure against a university establishes a redressable injury." Nov. Ltr. At 2 (citing *UC AAUP*, 2025 WL 3187762, at *16). That is an oversimplification of the *UC AAUP* holding, which found

---

*Association*, 145 S. Ct. 2658 (2025); *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025) (Supreme Court decisions on interim relief "inform how a court should exercise its equitable discretion in like cases").

The Honorable Arun Subramanian
February 10, 2026
Page 3

"the chilling effects on Plaintiffs' members' speech to be directly traceable to Defendants' conduct," *id*., and falls short of showing redressability in this case. As the Supreme Court explained in *Murthy v. Missouri*, "[t]o determine whether an injury is redressable, we consider the relationship between the judicial relief requested and the injury suffered." 603 U.S. 43, 73 (2024) (internal quotation marks omitted). If a third party is "free to enforce, or not to enforce" certain policies, "even those tainted by initial governmental coercion," plaintiffs cannot establish redressability. *Id.* Here, unlike in *UC AAUP*, the Executive Branch Defendants and Columbia reached an agreement months ago that resolved the issues between them and mostly restored the funding. *See* Resolution Agreement, *available at* https://perma.cc/84EG-8MUC; *UC AAUP*, 2025 WL 3187762, at *17 ("the record here shows Defendants are exerting continued pressure," including through a pause in approval of new grants to UCLA). As previously explained, *see, e.g.*, ECF 136 at 7-8, the crux of Plaintiffs' complaint relates to steps taken by the University that are not part of the Resolution Agreement—and therefore not the subject of any identified continuing government pressure. Further, evidence submitted by Columbia highlights that at least some of the University actions of which Plaintiffs complain predate any alleged coercion. *See, e.g.,* ECF No. 119, ¶ 5 (noting students received determinations of disciplinary proceedings on March 13, 2025, after "months-long process"). Simply put, Plaintiffs here have not established that their protected speech is being chilled by the Executive Branch Defendants' conduct.

Further, on the merits of Plaintiffs' First Amendment claim, the record before the *UC AAUP* Court differs significantly from the record before this Court. In *UC AAUP*, the court noted that defendants' "principal argument" was that the action was "too speculative" because "the UC might not agree to the proposed conditions for restoring funding," that the UC "undisputedly views the cancellation of federal funding, and the threat to terminate more funds, as an existential threat," and that the defendants "proposed a slew of conditions that had nothing to do with antisemitism but instead targeted the UC's views on DEI and gender." *UC AAUP*, 2025 WL 3187762, at *1, *9, *13. Here, Columbia and the government engaged in arm's length negotiations that resolved issues between them relating to Columbia's response to antisemitism on its campus and restored HHS grant funding to the University. ECF No. 136 at 1; Resolution Agreement. Following this agreement, Plaintiffs limited their motion for a preliminary injunction (as to the Executive Branch Defendants) to one issue—the definition of antisemitism adopted by Columbia. ECF No. 133 at 29-30. But there is no evidence in the record that the Executive Branch Defendants coerced Columbia to adopt the complained of IHRA antisemitism definition—an assertion that is also refuted by Columbia itself. *See* ECF No. 136 at 7-9. Rather, the record shows that—far from being coerced—Columbia independently took actions to address antisemitism. *See* ECF No. 86 at 23-24; ECF No. 116 at 16-21; ECF No. 136 at 7-9. As such, there is no basis in record to find the Executive Branch Defendants' coerced Columbia to chill protected speech.

Finally, the assertion in Plaintiffs' January 29 letter that Columbia disciplined a student "based on the Trump Administration's unlawful definition of anti-Semitism," ECF No. 171 at 1, has no factual basis in the record or any plausible assertion in the Second Amended Complaint. Plaintiffs have not alleged any non-speculative link between the government's actions and the specific disciplinary matter Plaintiffs identify in the letter. Indeed, the Resolution Agreement does not reference the University's definition of antisemitism, let alone mandate any particular definition.

The Honorable Arun Subramanian
February 10, 2026
Page 4

We thank the Court for its consideration of this letter.

                            Respectfully submitted,

                            JAY CLAYTON
                            United States Attorney for the
                            Southern District of New York

By:   /s/ Allison M. Rovner
       ALLISON M. ROVNER
       Assistant United States Attorney
       86 Chambers Street, Third Floor
       New York, New York 10007
       Tel.: (212) 637-2691
       Email: allison.rovner@usdoj.gov

cc:  Counsel of Record (by ECF)