# EXHIBIT 3

| | |
|---|---|
| **From:** | Gadeir Abbas |
| **To:** | Marshall L. Miller; Rovner, Allison (USANYS); Gabrielle E. Tenzer; Amy Greer; Max Feldman; ZAL.SHROFF@law.cuny.edu; Ahmad Kaki; Nadia Bayado; Kornreich, Mollie (USANYS); Fidler, Harry (USANYS); Trisha Anderson; Oestericher, Jeffrey (USANYS); Zachary Piaker |
| **Cc:** | Deema Azizi; trevor.godbolt@live.law.cuny.edu; info@mariakari.org; jonathan.wallace80@gmail.com; John Fossum; ivy.girdwood@live.law.cuny.edu; Malak Dridi; jacob.acuna@live.law.cuny.edu; natasha.bunten@live.law.cuny.edu |
| **Subject:** | [EXTERNAL] follow up meet and confer |
| **Date:** | Thursday, April 30, 2026 5:32:47 PM |
| **Attachments:** | image001.png image002.png Proposed ESI Protocol.docx |

All,

Thanks for taking the take to meet and confer with us earlier today. I wanted to follow up to memorialize the call, share our proposed ESI protocol, and schedule another time to meet and confer for Tuesday at 1 pm et.

**Scope of Discovery.** We met and conferred regarding Defendants' global position to search for only IHRA-regarding material. With regards to the Agency Defendants, we're at an impasse and will present the matter to the court. For Columbia, we look forward to discussing the broader approach you are considering and will follow up with you separately.

**Deadlines.** We met and conferred regarding two deadlines: (1) the absence of one for Defendants' production in response to the first set of document requests and (2) the May 6th interrogatory deadline we want extended by 30 days. You have not provided any dates regarding the production of documents thus far, and a sufficient, legally adequate response to the written discovery requests requires it. Having not yet received any documents has increased our concerns regarding a timely production. Because we haven't received a date certain from Defendants, we will ask the Court to impose a date.

Likewise, because we don't have any of the documents yet, we are not in a position to make use of our interrogatories—which must be issued by May 6th. We think a production timeline that has Defendants completing their search and production before June 6th (the interrogatory deadline we seek) can keep this case on track.

**ESI Protocol meet and confer:** We're attaching our proposed ESI protocol for discussion. We'd propose discussing 5/5 at 1 pm et.

**May 14 Protective order:** We believe that the existing protective order, which governs plaintiff-specific information, remains appropriate. We intend to file under seal all documents with personally identifying information regarding our clients, and that is

enough to cover any prospective PII information obtained in discovery or otherwise used in the case. To the extent any party would like more attorneys to have access to PO-covered information, Paragraph 4 addresses that need in a manner that keeps in place the general principle that access to Plaintiffs' names—because they are proceeding by pseudonym—should not be open ended.

**Proposed PO re FERPA, Privacy Act:** Thank you for engaging with us on its various parts. We're optimistic that the remaining gaps can be bridged. We're discussing internally and will circulate our response tomorrow by email.

Regards,
Gadeir

Gadeir Abbas, Esq.
**Senior Litigation Attorney**

**CUNY SCHOOL OF LAW**

**LAW IN THE SERVICE OF HUMAN NEEDS**
453 New Jersey Ave, SE
Washington, DC 20003
Tel: 202.742.6420 Fax: 202.488.0833
Dir: 202.640.4935 Cell: 720.251.0425
**www.cair.com**

*licensed in VA: not in DC - practice limited to federal matters*

---

**From:** Marshall L. Miller <mmiller@heckerfink.com>
**Sent:** Thursday, April 30, 2026 12:09 PM
**To:** Gadeir Abbas <gAbbas@cair.com>; Rovner, Allison (USANYS) <Allison.Rovner@usdoj.gov>; Gabrielle E. Tenzer <gtenzer@heckerfink.com>; Amy Greer <agreer@dratellewis.com>; Max Feldman <mfeldman@heckerfink.com>; ZAL.SHROFF@law.cuny.edu <ZAL.SHROFF@law.cuny.edu>; Ahmad Kaki <akaki@cair.com>; Nadia Bayado <nBayado@cair.com>; Kornreich, Mollie (USANYS) <Mollie.Kornreich@usdoj.gov>; Fidler, Harry (USANYS) <Harry.Fidler@usdoj.gov>; Trisha Anderson <tanderson@heckerfink.com>; Oestericher, Jeffrey (USANYS) <Jeffrey.Oestericher@usdoj.gov>; Zachary Piaker <zpiaker@heckerfink.com>
**Cc:** Deema Azizi <dazizi@cair.com>; trevor.godbolt@live.law.cuny.edu <trevor.godbolt@live.law.cuny.edu>; info@mariakari.org <info@mariakari.org>; jonathan.wallace80@gmail.com <jonathan.wallace80@gmail.com>; John Fossum <jfossum@cair.com>; ivy.girdwood@live.law.cuny.edu <ivy.girdwood@live.law.cuny.edu>; Malak Dridi <MDridi@cair.com>; jacob.acuna@live.law.cuny.edu <jacob.acuna@live.law.cuny.edu>; natasha.bunten@live.law.cuny.edu <natasha.bunten@live.law.cuny.edu>

**Subject:** RE: Executive Branch Defendants' Initial Disclosures + proposed custodians and search terms

Sorry that we had to drop, I'm 8 minutes late to the next engagement.  We look forward to continuing the discussion.

**Marshall L. Miller | Hecker Fink LLP**
Partner
350 Fifth Avenue | 63rd Floor
New York, NY 10118
(W) 212.404.8656 | (M) 646.208.3494
mmiller@heckerfink.com

---

**From:** Gadeir Abbas <gAbbas@cair.com>
**Sent:** Friday, April 24, 2026 9:07 PM
**To:** Rovner, Allison (USANYS) <Allison.Rovner@usdoj.gov>; Gabrielle E. Tenzer <gtenzer@heckerfink.com>; Amy Greer <agreer@dratellewis.com>; Max Feldman <mfeldman@heckerfink.com>; ZAL.SHROFF@law.cuny.edu; Ahmad Kaki <akaki@cair.com>; Nadia Bayado <nBayado@cair.com>; Kornreich, Mollie (USANYS) <Mollie.Kornreich@usdoj.gov>; Fidler, Harry (USANYS) <Harry.Fidler@usdoj.gov>; Marshall L. Miller <mmiller@heckerfink.com>; Trisha Anderson <tanderson@heckerfink.com>; Oestericher, Jeffrey (USANYS) <Jeffrey.Oestericher@usdoj.gov>; Zachary Piaker <zpiaker@heckerfink.com>
**Cc:** Deema Azizi <dazizi@cair.com>; trevor.godbolt@live.law.cuny.edu; info@mariakari.org; jonathan.wallace80@gmail.com; John Fossum <jfossum@cair.com>; ivy.girdwood@live.law.cuny.edu; Malak Dridi <MDridi@cair.com>; jacob.acuna@live.law.cuny.edu; natasha.bunten@live.law.cuny.edu
**Subject:** Re: Executive Branch Defendants' Initial Disclosures + proposed custodians and search terms

This email was sent from outside the Firm.

Monday at noon ET works for us. We'll send around an invite shortly!

Gadeir Abbas, Esq.
**Senior Litigation Attorney**

**CUNY SCHOOL OF LAW**

**LAW IN THE SERVICE OF HUMAN NEEDS**
453 New Jersey Ave, SE
Washington, DC 20003
Tel: 202.742.6420 Fax: 202.488.0833
Dir: 202.640.4935 Cell: 720.251.0425
**www.cair.com**
*licensed in VA: not in DC - practice limited to federal matters*

**From:** Rovner, Allison (USANYS) <Allison.Rovner@usdoj.gov>
**Sent:** Friday, April 24, 2026 3:20 PM
**To:** Gabrielle E. Tenzer <gtenzer@heckerfink.com>; Gadeir Abbas <gAbbas@cair.com>; Amy Greer <agreer@dratellewis.com>; Max Feldman <mfeldman@heckerfink.com>; ZAL.SHROFF@law.cuny.edu <ZAL.SHROFF@law.cuny.edu>; Ahmad Kaki <akaki@cair.com>; Nadia Bayado <nBayado@cair.com>; Kornreich, Mollie (USANYS) <Mollie.Kornreich@usdoj.gov>; Fidler, Harry (USANYS) <Harry.Fidler@usdoj.gov>; Marshall L. Miller <mmiller@heckerfink.com>; Trisha Anderson <tanderson@heckerfink.com>; Oestericher, Jeffrey (USANYS) <Jeffrey.Oestericher@usdoj.gov>; Zachary Piaker <zpiaker@heckerfink.com>
**Cc:** Deema Azizi <dazizi@cair.com>; trevor.godbolt@live.law.cuny.edu <trevor.godbolt@live.law.cuny.edu>; info@mariakari.org <info@mariakari.org>; jonathan.wallace80@gmail.com <jonathan.wallace80@gmail.com>; John Fossum <jfossum@cair.com>; ivy.girdwood@live.law.cuny.edu <ivy.girdwood@live.law.cuny.edu>; Malak Dridi <MDridi@cair.com>; jacob.acuna@live.law.cuny.edu <jacob.acuna@live.law.cuny.edu>; natasha.bunten@live.law.cuny.edu <natasha.bunten@live.law.cuny.edu>
**Subject:** RE: Executive Branch Defendants' Initial Disclosures + proposed custodians and search terms

We are available from 12-1pm on Monday.

---

**From:** Gabrielle E. Tenzer <gtenzer@heckerfink.com>
**Sent:** Friday, April 24, 2026 4:16 PM
**To:** Gadeir Abbas <gAbbas@cair.com>; Rovner, Allison (USANYS) <Allison.Rovner@usdoj.gov>; Amy Greer <agreer@dratellewis.com>; Max Feldman <mfeldman@heckerfink.com>; ZAL.SHROFF@law.cuny.edu; Ahmad Kaki <akaki@cair.com>; Nadia Bayado <nBayado@cair.com>; Kornreich, Mollie (USANYS) <Mollie.Kornreich@usdoj.gov>; Fidler, Harry (USANYS) <Harry.Fidler@usdoj.gov>; Marshall L. Miller <mmiller@heckerfink.com>; Trisha Anderson <tanderson@heckerfink.com>; Oestericher, Jeffrey (USANYS) <Jeffrey.Oestericher@usdoj.gov>; Zachary Piaker <zpiaker@heckerfink.com>
**Cc:** Deema Azizi <dazizi@cair.com>; trevor.godbolt@live.law.cuny.edu; info@mariakari.org; jonathan.wallace80@gmail.com; John Fossum <jfossum@cair.com>; ivy.girdwood@live.law.cuny.edu; Malak Dridi <MDridi@cair.com>; jacob.acuna@live.law.cuny.edu; natasha.bunten@live.law.cuny.edu
**Subject:** [EXTERNAL] RE: Executive Branch Defendants' Initial Disclosures + proposed custodians and search terms

Hi, Gadeir –

Thanks for your email.  We're happy to meet and confer concerning the protective order on Monday and can be available at the following times:  10 – 11am and 12 – 1pm.  We remain optimistic that the parties will be able to work together to reach an agreement on a protective order in a timely fashion that should not cause delay in the production of

documents.  It would probably make sense to also discuss on Monday the ESI protocol that we circulated on April 22, as that is similarly important to the production of documents, as well as the proposal we made during the April 17 meet and confer that the parties seek a settlement conference with the magistrate judge.

As discussed during our meet and confer on April 17, and in Zal's follow-up email on April 20, we had agreed with Plaintiffs' counsel to meet and confer to discuss proposed custodians and search terms just after we served our responses and objections. Without responding to each of the points in Amy's email, we continue to plan to serve those responses and objections on April 27, consistent with the requirements of Rule 34. In response to Zal's email, we had indicated our availability for a meet and confer on April 29 but now understand from Amy's email of yesterday that Plaintiffs' counsel wishes to meet and confer on April 30.  We're available on April 30 for a meet and confer anytime from 12 – 3pm or after 4:30pm.

Regards,

**Gabrielle E. Tenzer | Hecker Fink LLP**
350 Fifth Avenue | 63rd Floor
New York, NY 10118
(W) 929.294.2536 | (M) 646.856.7275
gtenzer@heckerfink.com

---

**From:** Gadeir Abbas <gAbbas@cair.com>
**Sent:** Friday, April 24, 2026 9:03 AM
**To:** Rovner, Allison (USANYS) <Allison.Rovner@usdoj.gov>; Amy Greer <agreer@dratellewis.com>; Max Feldman <mfeldman@heckerfink.com>; ZAL.SHROFF@law.cuny.edu; Ahmad Kaki <akaki@cair.com>; Gabrielle E. Tenzer <gtenzer@heckerfink.com>; Nadia Bayado <nBayado@cair.com>; Kornreich, Mollie (USANYS) <Mollie.Kornreich@usdoj.gov>; Fidler, Harry (USANYS) <Harry.Fidler@usdoj.gov>; Marshall L. Miller <mmiller@heckerfink.com>; Trisha Anderson <tanderson@heckerfink.com>; Oestericher, Jeffrey (USANYS) <Jeffrey.Oestericher@usdoj.gov>; Zachary Piaker <zpiaker@heckerfink.com>
**Cc:** Deema Azizi <dazizi@cair.com>; trevor.godbolt@live.law.cuny.edu; info@mariakari.org; jonathan.wallace80@gmail.com; John Fossum <jfossum@cair.com>; ivy.girdwood@live.law.cuny.edu; Malak Dridi <MDridi@cair.com>; jacob.acuna@live.law.cuny.edu; natasha.bunten@live.law.cuny.edu
**Subject:** Re: Executive Branch Defendants' Initial Disclosures + proposed custodians and search terms

> This email was sent from outside the Firm.

Allison and all,

We'd like to meet and confer about the protective order as soon as possible—sometime today or Monday. Given next week's deadline, we want to make sure that negotiations regarding the protective order conclude promptly and that no party uses them to excuse the timely production of documents.

Regards,

Gadeir Abbas, Esq.
**Senior Litigation Attorney**

**CUNY SCHOOL OF LAW**

**LAW IN THE SERVICE OF HUMAN NEEDS**
453 New Jersey Ave, SE
Washington, DC 20003
Tel: 202.742.6420 Fax: 202.488.0833
Dir: 202.640.4935 Cell: 720.251.0425
**www.cair.com**
*licensed in VA: not in DC - practice limited to federal matters*

---

**From:** Rovner, Allison (USANYS) <Allison.Rovner@usdoj.gov>
**Sent:** Thursday, April 23, 2026 8:32 PM
**To:** Amy Greer <agreer@dratellewis.com>; Max Feldman <mfeldman@heckerfink.com>; ZAL.SHROFF@law.cuny.edu <ZAL.SHROFF@law.cuny.edu>; Ahmad Kaki <akaki@cair.com>; Gabrielle E. Tenzer <gtenzer@heckerfink.com>; Nadia Bayado <nBayado@cair.com>; Kornreich, Mollie (USANYS) <Mollie.Kornreich@usdoj.gov>; Fidler, Harry (USANYS) <Harry.Fidler@usdoj.gov>; Marshall L. Miller <mmiller@heckerfink.com>; Trisha Anderson <tanderson@heckerfink.com>; Oestericher, Jeffrey (USANYS) <Jeffrey.Oestericher@usdoj.gov>; Zachary Piaker <zpiaker@heckerfink.com>
**Cc:** Deema Azizi <dazizi@cair.com>; trevor.godbolt@live.law.cuny.edu <trevor.godbolt@live.law.cuny.edu>; info@mariakari.org <info@mariakari.org>; jonathan.wallace80@gmail.com <jonathan.wallace80@gmail.com>; Gadeir Abbas <gAbbas@cair.com>; John Fossum <jfossum@cair.com>; ivy.girdwood@live.law.cuny.edu <ivy.girdwood@live.law.cuny.edu>; Malak Dridi <MDridi@cair.com>; jacob.acuna@live.law.cuny.edu <jacob.acuna@live.law.cuny.edu>; natasha.bunten@live.law.cuny.edu <natasha.bunten@live.law.cuny.edu>
**Subject:** RE: Executive Branch Defendants' Initial Disclosures + proposed custodians and search terms

Zal and Amy,

Thanks for your emails. We write to clarify a few points regarding the Government's positions, which are not accurately reflected in Zal's summary below.

Most fundamentally, as we repeatedly stated on Friday's call, we are amenable to meeting and conferring with Plaintiffs to identify custodians and search terms that are tied to the claims and defenses still at issue in this action.  However, rather than determining custodians and search terms before the parties agree on the substance of what documents the Government is searching for, we believe the most logical and productive approach is the one required by the Federal Rules of Civil Procedure—namely, for the Government to serve responses and objections to Plaintiffs' first set of requests for production so that the parties can then attempt to resolve any disagreements around the scope of production. Following that, we can more easily discuss search terms and custodians. Towards this end, you will receive the Government's responses and objections to the first set of requests for production on Monday, which will state the scope of what the Government is agreeing to produce. We are considering the points that you have raised regarding the appropriate scope of discovery and are in the process of conducting test searches, collecting documents, and assessing burden, although it is unlikely that we will be able to produce documents by Monday.

Further, with respect to document custodians, we have conferred with our clients regarding who might have relevant documents. As we explained on Friday's call, we asked our clients about each custodian proposed by Plaintiffs, and we were prepared on Friday's call to answer any questions you had regarding the specific custodians that Plaintiffs proposed. We also invited you to let us know if you have reason to believe that our clients are incorrect regarding the likelihood that any particular custodian proposed by Plaintiffs would have relevant material, as we will consider any information you provide and discuss it with our clients. That offer still stands. It is not, as you suggest, imposing a requirement that Plaintiffs "prove" that custodians have relevant information. Rather, the Government is taking steps to identify appropriate custodians in good faith. Your suggestion that, as an alternative approach, "searches will reveal who has relevant information" is illogical. Each defendant agency has numerous employees, only some of whom might have documents relevant to this case. For obvious reasons, the Government should not be required to collect, search, and review the documents of individuals who are unlikely to have relevant information.

We are available to meet and confer about these issues on April 30, from 12-5pm as you proposed.  We can also use that time to discuss the draft protective order.  We generally do not agree with Plaintiffs' revisions to our edits to the draft protective order and are unlikely to be able to produce documents until a Privacy Act and Protective Order has been entered.

Finally, the Executive Branch Defendants agree to participate in a settlement conference with the magistrate judge.

Sincerely,
Allison

**From:** Amy Greer <agreer@dratellewis.com>
**Sent:** Thursday, April 23, 2026 6:01 PM
**To:** Max Feldman <mfeldman@heckerfink.com>; ZAL.SHROFF@law.cuny.edu; Rovner, Allison (USANYS) <Allison.Rovner@usdoj.gov>; Ahmad Kaki <akaki@cair.com>; Gabrielle E. Tenzer <gtenzer@heckerfink.com>; Nadia Bayado <nBayado@cair.com>; Kornreich, Mollie (USANYS) <Mollie.Kornreich@usdoj.gov>; Fidler, Harry (USANYS) <Harry.Fidler@usdoj.gov>; Marshall L. Miller <mmiller@heckerfink.com>; Trisha Anderson <tanderson@heckerfink.com>; Oestericher, Jeffrey (USANYS) <Jeffrey.Oestericher@usdoj.gov>; Zachary Piaker <zpiaker@heckerfink.com>
**Cc:** Deema Azizi <dazizi@cair.com>; trevor.godbolt@live.law.cuny.edu; info@mariakari.org; jonathan.wallace80@gmail.com; Gadeir Abbas <gAbbas@cair.com>; John Fossum <jfossum@cair.com>; ivy.girdwood@live.law.cuny.edu; Malak Dridi <MDridi@cair.com>; jacob.acuna@live.law.cuny.edu; natasha.bunten@live.law.cuny.edu
**Subject:** [EXTERNAL] Re: Executive Branch Defendants' Initial Disclosures + proposed custodians and search terms

Counsel,

Plaintiffs are available for a further meet and confer regarding the ESI protocol and the potential of a settlement conference next week; however, we are not available on April 29. Counsel is available on Thursday, April 30 from 12-5pm. Please let us know if there is a time in that block that works for you.

Given that Defendants' RFP response deadline is Monday, April 27, time is of the essence. To ensure timely and appropriate disclosures, Plaintiffs propose one of two paths: (1) finalization and entry of a Protective Order before that deadline; or (2) a written agreement by all parties that any and all disclosures will be treated as confidential pending entry of a mutually agreed-upon Protective Order. Plaintiffs are prepared to proceed on either basis.

As to the Protective Orders:

1. **Pseudonymous Plaintiffs' Protective Order.** The May 14, 2025, Protective Order (ECF #73) is necessarily protective of the Plaintiffs who are proceeding pseudonymously, and should remain in place.  Per our April 17, 2026, meet and confer, Plaintiffs understand from Defendants that they wish to authorize additional attorneys to see and review sensitive pseudonymous plaintiff information. To that end, on April 17th, Plaintiffs invited Defendants to redline the May 14 PO to address those concerns. We have not yet received a redlined version of that PO, but we continue to invite proposals for any amendments or addenda you deem necessary.

2. **General Protective Order for Discovery.** To address full discovery, Plaintiffs proposed the adoption of Judge Subramanian's Protective Order template, with the Defendants' requested additions regarding FERPA and the Privacy Act. This standard protective order—as adjusted— is sufficiently protective against "annoyance, embarrassment, oppression, or undue burden or expense' in the discovery process[,]" as required under Fed. R. Civ. P. 26(c). *See Gonzalez v. City of New York*, No. 25-CV-1452 (LJL), 2025 WL 2926866, at *2 (S.D.N.Y. Oct. 15, 2025).  *See also Austin v. Fordham Univ.*, No. 23 CIV. 4696 (PAC) (GS), 2024 WL 749636, at *3 (S.D.N.Y. Feb. 23, 2024). Moreover, Defendants have not articulated good cause for further deviations from Judge Subramanian's standard

protective order—which the Court otherwise requires the parties to use. *See* Individual Rule 11(D) ("The parties should conform any proposed protective order as closely as possible to the Court's Model Protective Order"). *See also Liederbach v. NYU Langone Hosps.*, No. 24-CV-00742 (JAV), 2025 WL 521370, at *1 (S.D.N.Y. Feb. 18, 2025) ("a party seeking a protective order must submit a proposed protective order that conforms as closely as possible to the Court's Model Protective Order"). Thus, Plaintiffs urge that the Court's model PO, along with protections provided by the FERPA and Privacy Act provisions, and the supplemental PO (ECF #73) already in place should be sufficient protective.

Plaintiffs request that Defendants review the Proposed PO, emailed to you by Gadeir Abbas on Tuesday, April 21 at 7:07pm, as well as our previously filed PO (ECF #73), and provide redlines or counterproposals as soon as practicable.

Should Defendants believe further discussion of the POs is warranted, please confirm that you consent to a collective agreement that any and all disclosures made on the April 27th deadline will be confidential until the Protective Order agreed upon by all parties is in place. Please respond in writing by COB on Friday, April 24th.

Notwithstanding our agreement as to the POs, Plaintiffs note the April 27 RFP response deadline remains firm, as "[a] party is not free to unilaterally withhold production without court authorization." *Gordon v. Target Corp.*, 318 F.R.D. 242, 244–45 (E.D.N.Y. 2016) (citing Fed. R. Civ. P. 26(c)(1)). Failing to timely respond results in waiver of all objections. *See DeNicola v. Frontline Asset Strategies*, 279 F.R.D. 214, 215 (E.D.N.Y. 2012).

Regards,

Amy E. Greer

Dratel & Lewis
29 Broadway, Suite 1412
New York, New York 10006
Tel: (212) 732-0707
Fax: (212) 571-3792
agreer@dratellewis.com

This Electronic Message contains information from the Law Offices of Dratel & Lewis, and may be privileged, confidential, or contain attorney work-product. This information is intended for the use of the addressee only. If you are not the addressee, please note that any disclosure, copying, distribution, or other use of the content of this message is prohibited.

---

**From:** Max Feldman <mfeldman@heckerfink.com>
**Sent:** Wednesday, April 22, 2026 12:05 PM
**To:** ZAL.SHROFF@law.cuny.edu <ZAL.SHROFF@law.cuny.edu>; Rovner, Allison (USANYS <Allison.Rovner@usdoj.gov>; Ahmad Kaki <akaki@cair.com>; Gabrielle E. Tenzer <gtenzer@heckerfink.com>; Nadia Bayado <nBayado@cair.com>; Kornreich, Mollie (USANYS <Mollie.Kornreich@usdoj.gov>; Fidler, Harry (USANYS <Harry.Fidler@usdoj.gov>; Marshall L. Miller <mmiller@heckerfink.com>; Trisha Anderson <tanderson@heckerfink.com>; Oestericher, Jeffrey

(USANYS <Jeffrey.Oestericher@usdoj.gov>; Zachary Piaker <zpiaker@heckerfink.com>
**Cc:** Deema Azizi <dazizi@cair.com>; trevor.godbolt@live.law.cuny.edu
<trevor.godbolt@live.law.cuny.edu>; info@mariakari.org <info@mariakari.org>;
jonathan.wallace80@gmail.com <jonathan.wallace80@gmail.com>; Gadeir Abbas
<gAbbas@cair.com>; John Fossum <jfossum@cair.com>; ivy.girdwood@live.law.cuny.edu
<ivy.girdwood@live.law.cuny.edu>; Amy Greer <agreer@dratellewis.com>; Malak Dridi
<MDridi@cair.com>; jacob.acuna@live.law.cuny.edu <jacob.acuna@live.law.cuny.edu>;
natasha.bunten@live.law.cuny.edu <natasha.bunten@live.law.cuny.edu>
**Subject:** RE: Executive Branch Defendants' Initial Disclosures + proposed custodians and search
terms

Counsel,

We are available for a further meet and confer on April 29 between 3 and 6pm. During
that meet and confer, we should also discuss the protective order and the Columbia
Defendant's proposed ESI protocol, which I attach here.

At the last meet and confer, we discussed getting a settlement conference with the
magistrate on calendar. We have discussed with our client and are prepared to move
forward; please let us know if you are as well, so we can commence the process.

Best,
Max

**Max Feldman | Hecker Fink LLP**
Counsel
350 Fifth Avenue | 63rd Floor
New York, NY 10118
(W) 212.763.0883 | (M) 646.618.0332
mfeldman@heckerfink.com

---

**From:** Zal Shroff <ZAL.SHROFF@law.cuny.edu>
**Sent:** Monday, April 20, 2026 5:26:03 PM
**To:** Rovner, Allison (USANYS) <Allison.Rovner@usdoj.gov>; Ahmad Kaki <akaki@cair.com>; Gabrielle
E. Tenzer <gtenzer@heckerfink.com>; Nadia Bayado <nBayado@cair.com>; Kornreich, Mollie
(USANYS) <Mollie.Kornreich@usdoj.gov>; Fidler, Harry (USANYS) <Harry.Fidler@usdoj.gov>;
Marshall L. Miller <mmiller@heckerfink.com>; Trisha Anderson <tanderson@heckerfink.com>;
Oestericher, Jeffrey (USANYS) <Jeffrey.Oestericher@usdoj.gov>; Zachary Piaker
<zpiaker@heckerfink.com>
**Cc:** Deema Azizi <dazizi@cair.com>; trevor.godbolt@live.law.cuny.edu
<trevor.godbolt@live.law.cuny.edu>; info@mariakari.org <info@mariakari.org>;
jonathan.wallace80@gmail.com <jonathan.wallace80@gmail.com>; Gadeir Abbas
<gAbbas@cair.com>; John Fossum <jfossum@cair.com>; ivy.girdwood@live.law.cuny.edu
<ivy.girdwood@live.law.cuny.edu>; agreer@dratellewis.com <agreer@dratellewis.com>; Malak

Dridi <MDridi@cair.com>; jacob.acuna@live.law.cuny.edu <jacob.acuna@live.law.cuny.edu>; natasha.bunten@live.law.cuny.edu <natasha.bunten@live.law.cuny.edu>
**Subject:** Re: Executive Branch Defendants' Initial Disclosures + proposed custodians and search terms

This email was sent from outside the Firm.

Counsel:

We write to follow up on our meet and confer last Friday. Our conversation raised a series of likely disputes that—absent resolution prior to Defendants' initial responses to Plaintiffs' First Requests for Production on April 27, 2026—will result in Plaintiffs needing to approach the Court to ensure an efficient discovery process. Below are the potential disputes identified, the agreements we reached regarding next steps, and Plaintiffs' follow-up proposals regarding: Agency Defendants' Responses to Plaintiffs' First RFPs; Columbia Defendants' Responses to Plaintiffs' First RFPs; and a proposed revised or second Protective Order.

I. **Agency Defendants' Responses to Plaintiffs' First Requests for Production:**

Plaintiffs have identified four areas where we anticipate dispute with Agency Defendants based on representations of the Agency Defendants' positions: the scope of relevant discovery material; the number and identity of appropriate custodians; burdens of Plaintiffs' requested discovery; and the timing and substance of discovery response and production.

1. **Relevant Scope of Discovery**

Agency Defendants maintain that the *sole* discovery in this case must be limited to documents that discuss the IHRA definition of anti-Semitism or any other specific definition of anti-Semitism. Which would mean declining to conduct *any* searches for documents that speak to: (1) Agency Defendants' *intent* to suppress anti-Israel speech when seeking to investigate and cancel Columbia University funding; (2) discussions between Agency Defendants and/or Columbia related to anti-Semitism or investigations of anti-Semitism; (3) Agency Defendants' threats with respect to student discipline for specific anti-Israel protests and events; (4) Agency Defendants' ongoing efforts to change Columbia disciplinary, protest, and speech policies as a condition of further funding; and (5) discussions between and among Agency Defendants and Columbia regarding Columbia's ongoing financial relationship with the federal government and the terms of that relationship.

The Court has already made clear that Plaintiffs are entitled to seek discovery with respect to each of these issue areas necessary to assert an impermissible coercion theory under the First Amendment—which is premised on both coercive *intent* and coercive *impact*. *See* Dkt 175, at 19-20 ("the complaint plausibly alleges coercive threats *aimed at punishing or suppressing disfavored speech*, the plaintiff[s]") (emphasis added); *id.* at 13 ("plaintiffs […are] seeking to prevent the Agency defendants from leveraging their funding to suppress plaintiffs' speech"); *id.* at 19 ("plaintiffs have plausibly alleged that the Agency defendants have threatened coercive action against one party (Columbia) to squelch the protected speech of a third party (plaintiffs)").

This is about far more than the definition of anti-Semitism in a vacuum. Indeed, the Court has already cautioned Agency Defendants against this impermissibly narrow view of the issues in the Complaint. *See* Dkt. 175, at 19 ("most [arguments] fall flat for the simple reason that [they] require[] the Court to accept [the Agency defendants'] limited reading of the complaint").

Please provide any contrary authority in writing. If Defendants refuse to conduct any search for documents beyond the definition of anti-Semitism by the deadline on April 27, 2026, we will be at impasse on this issue regarding the scope of discovery.

## 2. Appropriate Custodians for Search.

Plaintiffs provided a list of approximately 40 custodians we believe were key decisionmakers for the Agency Defendants with respect to ongoing financial and regulatory threats against Columbia University. Agency Defendants have responded with a willingness to search only 8 custodian accounts—and are refusing to include 3/5 of the named Agency Defendants as custodian accounts (Defendants Pam Bondi, Linda McMahon, and Leo Terrell).

Agency Defendants' have suggested that Defendants need not search a custodian's account unless Plaintiffs can prove that the custodian has relevant information before the fact. That is the opposite of how ESI discovery works. The searches will reveal who has relevant information. *See, e.g.*, *Vaigasi v. Solow Mgmt. Corp.*, No. 11-CV-5088, 2016 WL 616386, at *15 (S.D.N.Y. Feb. 16, 2016) (noting that "it was appropriate to conduct a sample search of defendants' ESI to assess the likelihood that the ESI would contain probative documents") (collecting cases); *Cnty. of Cook v. Bank of Am. Corp.*, No. 14-CV-2280, 2019 WL 5393997, at *6 (N.D. Ill. Oct. 22, 2019) ("[T]he County did not run any test searches across the ESI of any of the disputed custodians . . . . Lacking such information, the Court has no basis to conclude that inclusion of custodians from the Sheriff's Office, Clerk's Office, or Chief Judge's Office is too burdensome or that the burden exceeds the likely benefit of those searches."). Plaintiffs will not rely on Defendants' representations regarding who has relevant information.

Furthermore, Plaintiffs have proposed less than 50 custodians, a number which the Southern District regularly finds to be appropriate for ESI discovery. *See, e.g.*, *Stinson v. City of New York*, No. 10-CV-4228, 2015 WL 4610422, at *4 (S.D.N.Y. July 23, 2015) (ordering ESI discovery where "the Plaintiffs' May 26 letter narrows their request to 49 named custodians, along with an unspecified number of supervisors"); *Nat'l Day Laborer Organizing Network v. U.S. Immigration and Customs Enforcement Agency*, 877 F.Supp.2d 87, 112–13 (S.D.N.Y. 2012) (ordering the FBI, DHS, and ICE to search the ESI of 51 specified custodians, as well as an unspecified number of additional custodians meeting certain criteria, regarding ICE's Secure Communities program).

In the interest of compromise, Plaintiffs would be willing to agree to an initial list of 30 records custodians for ESI searches from the Agency Defendants—which must necessarily include all named Agency Defendants in this action. In the absence of agreement to these terms, and if Defendants' RFP responses on April 27 reveal that no additional custodian accounts were searched, we will be at impasse.

## 3. Burden Objections Have Not Yet Been Raised.

Agency Defendants stated that their primary opposition to Plaintiffs' discovery requests are as to relevance—and not burden. We agree. In the absence of any ESI test searches, there is no possible way for the parties to assess the burdens of production. *See, e.g.*, *Stinson v. City of New York*, No. 10-CV-4228, 2015 WL 4610422, at *4 (S.D.N.Y. July 23, 2015) ("When determining a motion to compel the production of ESI, a district court conducts a two-stage inquiry: first, has the party resisting discovery shown that the information in question is not reasonably accessible because of undue cost"); *Integrated Structures Corp. v. Liberty Mut. Ins. Co.*, No. 21-CV-1744, 2022 WL 16786747, at *2 (E.D.N.Y. Aug. 9, 2022) ("Saying something is voluminous, without describing the volume or the costs of search or production, is not persuasive."); *see also Mediatek, Inc. v. Freescale Semiconductor, Inc.*, No. 11-CV-5341, 2013 U.S. Dist. LEXIS 122911, at *22 (N.D. Cal. Aug. 28, 2013) ("Freescale's objections to other search terms as too broad are premature. Freescale has not run a test search on a single identified custodian for any of the proposed searches.").

Plaintiffs remain committed to working with Agency Defendants to reduce the burdens of ESI discovery if Defendants conduct test searches and share the results with Plaintiffs so that the parties can collaborate on a reasonable number of responsive documents.

4. **The Response Deadline and Timings of Production.**

Agency Defendants suggested that the deadline for their discovery responses requires neither that a prior search be undertaken nor that Defendants actually produce any documents responsive to Plaintiffs' requests by the deadline. That is incorrect. *See* Fed. R. Civ. P. 34(b)(2)(B) ("The production must then be completed *no later than the time for inspection specified in the request* or another *reasonable time* specified in the response.") (emphasis added). Agency Defendants must either: (1) produce all relevant documents by April 27; or (2) indicate the search conducted to date and identify a specific time when disclosures will be made in light of the specific burdens of the search at issue.

A diligent search for responsive records before the 30-day deadline is a basic discovery obligation. *Jose Luis Pelaez, Inc. v. Scholastic Inc.*, No. 16-CV-2791, 2017 WL 4776993, at *4 (S.D.N.Y. Oct. 19, 2017) ("The responding party must make its responses 'after a reasonable inquiry.'" (quoting Fed. R. Civ. P. 26(g)(1))); *Yong Ki Hong v. KBS Am., Inc.*, No. 05-CV-1177, 2006 WL 3680629, at *4 (E.D.N.Y. Dec. 12, 2006) ("The Court directs the KBS Defendants to undertake a diligent search for responsive documents."); *Milke v. City of Phoenix*, 497 F. Supp. 3d 442, 465 (D. Ariz. 2020), *aff'd*, No. 20-CV-17210, 2022 WL 259937 (9th Cir. Jan. 27, 2022) ("Before providing her initial responses to the requests for production, Milke did not conduct anything close to a reasonable search and review of the necessary documents.").

Failure to timely conduct *any* search for relevant documents within the 30-day window—or to identify a date certain for future disclosures based on those searches—is *per se* unreasonable. *Howard v. City of Rochester*, 758 F. Supp. 3d 109, 115 n.4 (W.D.N.Y. 2024) ("The County's response did not state . . . any time for producing the documents. Nor does it appear that the County made a serious effort at ascertaining whether inspection and related activities will be permitted as requested."); *Fischer v. Forrest*, No. 14-CV-1304, 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017) ("[T]he responses do not indicate when documents and ESI that defendants are producing will be produced.").

At a minimum, notwithstanding Plaintiffs' dispute with Agency Defendants regarding the scope of discovery, relevant custodians, and potential burdens or objections, Plaintiffs expect that Agency Defendants will produce documents responsive to Plaintiffs' requests and will run ESI searches and produce documents for the eight custodians Agency Defendants have agreed are relevant, with the following search terms Agency Defendants already agreed to: (1) (definition OR define OR defined OR defines OR defining) AND (antisemitism OR anti-semitism OR antisemitic); (2) IHRA; and (3) "International Holocaust Remembrance Alliance."

II. **Columbia Defendants' Responses to Plaintiffs' First Requests for Production:**

Columbia Defendants have agreed to consider Plaintiffs' proposed custodians and proposed search terms and will provide its responses regarding the scope of search terms and the custodians to be searched via its responses to the first set of RFPs on April 27, 2026. The parties agreed that a follow-up meet and confer shortly after Columbia Defendants' responses would facilitate a discussion to resolve any further disagreements regarding scope in order to avoid any need to approach the Court. Plaintiffs note, however, that if Columbia Defendants share Agency Defendants' positions on any of the above-discussed issues, such a position would be at odds with Plaintiffs and Columbia Defendants must be prepared to defend their position should Plaintiffs need to approach the Court.

**Scheduling Future Meet and Confer:** Plaintiffs propose that this meet and confer take place on April 28 after 2PM, or on April 29 from 9AM-5PM. Plaintiffs request that Columbia Defendants provide their availability for this meet and confer regarding their responses.

III. **Protective Order**

Defendants provided a proposed discovery protective order draft late last week. Agency Defendants proposed a red-lined version of that protective order today. Plaintiffs are reviewing these proposals and intend to provide a red-lined counterproposal by tomorrow.

Best regards,

**Zal K. Shroff (he/him)**
Assistant Professor of Law
Director, Equality & Justice Clinic
—

**CUNY SCHOOL OF LAW**

LAW IN THE SERVICE OF HUMAN NEEDS

---

**From:** Rovner, Allison (USANYS) <Allison.Rovner@usdoj.gov>
**Date:** Thursday, April 16, 2026 at 5:02 PM
**To:** Ahmad Kaki <akaki@cair.com>, Gabrielle E. Tenzer <gtenzer@heckerfink.com>, Nadia Bayado <nBayado@cair.com>, Kornreich, Mollie (USANYS) <Mollie.Kornreich@usdoj.gov>, Fidler, Harry (USANYS) <Harry.Fidler@usdoj.gov>, Marshall L. Miller <mmiller@heckerfink.com>, Trisha Anderson <tanderson@heckerfink.com>, Oestericher, Jeffrey (USANYS) <Jeffrey.Oestericher@usdoj.gov>, Zachary Piaker <zpiaker@heckerfink.com>
**Cc:** Deema Azizi <dazizi@cair.com>, trevor.godbolt@live.law.cuny.edu <trevor.godbolt@live.law.cuny.edu>, info@mariakari.org <info@mariakari.org>, jonathan.wallace80@gmail.com <jonathan.wallace80@gmail.com>, Gadeir Abbas <gAbbas@cair.com>, John Fossum <jfossum@cair.com>, ivy.girdwood@live.law.cuny.edu <ivy.girdwood@live.law.cuny.edu>, agreer@dratellewis.com <agreer@dratellewis.com>, Zal Shroff <zal.shroff@law.cuny.edu>, Malak Dridi <MDridi@cair.com>, jacob.acuna@live.law.cuny.edu <jacob.acuna@live.law.cuny.edu>, natasha.bunten@live.law.cuny.edu <natasha.bunten@live.law.cuny.edu>
**Subject:** Executive Branch Defendants' Initial Disclosures + proposed custodians and search terms

> **\* External Sender - Proceed Cautiously with Links and Attachments. \***

Counsel,

The Executive Branch Defendants' initial disclosures are attached.

The agency individuals listed in the initial disclosures, as well as Harmeet Dhillon and Gregory

Brown, are the Executive Branch Defendants' proposed custodians.

For search terms, we propose running the following terms within communications between the government and Columbia or its counsel, although reserve the right to amend search terms once they have been further tested:
- (definition OR define OR defined OR defines OR defining) AND (antisemitism OR anti-semitism OR antisemitic)
- IHRA
- "International Holocaust Remembrance Alliance"

Many of the individuals plaintiffs listed as custodians would not possess potentially responsive documents.  We can walk through each custodian individually during tomorrow's call.  Although it is difficult to negotiate search terms before the parties have had the opportunity to meet and confer regarding the Executive Branch Defendants' responses and objections to plaintiffs' requests for production, suffice it to say for now that plaintiffs' proposed search terms are overbroad given the limited issue that remains in the litigation.  We look forward to further discussing tomorrow.

Finally, we disagree that defendants have an upcoming production deadline on April 27, as you mentioned in a prior email.  The deadline for written discovery responses to plaintiffs' first set of document requests is April 27.  It is not a document production deadline.  Given the position that plaintiffs have taken on custodians and search terms, it is unlikely that the Executive Branch Defendants will be able to make a first production by April 27.


Sincerely,
Allison

---

**From:** Ahmad Kaki <akaki@cair.com>
**Sent:** Wednesday, April 15, 2026 1:45 PM
**To:** Gabrielle E. Tenzer <gtenzer@heckerfink.com>; Rovner, Allison (USANYS) <Allison.Rovner@usdoj.gov>; Nadia Bayado <nBayado@cair.com>; Kornreich, Mollie (USANYS) <Mollie.Kornreich@usdoj.gov>; Fidler, Harry (USANYS) <Harry.Fidler@usdoj.gov>; Marshall L. Miller <mmiller@heckerfink.com>; Trisha Anderson <tanderson@heckerfink.com>; Oestericher, Jeffrey (USANYS) <Jeffrey.Oestericher@usdoj.gov>; Zachary Piaker <zpiaker@heckerfink.com>
**Cc:** Deema Azizi <dazizi@cair.com>; trevor.godbolt@live.law.cuny.edu; info@mariakari.org; jonathan.wallace80@gmail.com; Gadeir Abbas <gAbbas@cair.com>; John Fossum <jfossum@cair.com>; ivy.girdwood@live.law.cuny.edu; agreer@dratellewis.com; zal.shroff@law.cuny.edu; Malak Dridi <MDridi@cair.com>; jacob.acuna@live.law.cuny.edu; natasha.bunten@live.law.cuny.edu
**Subject:** [EXTERNAL] RE: Service of Plaintiffs' Second RFPs and First Interrogatories


Thank you for your responses, Allison and Gabrielle. We can meet at 3pm on Friday and

can circulate a link for that call.

In advance of the meet and confer, we again request that Agency Defendants and Columbia Defendants state their respective positions on the search terms and custodians or assert any counterproposals you may have so that we can promptly address any disagreement prior to Defendants' production deadline.

Kind Regards,

Ahmad Kaki
**Staff Attorney**
**CAIR Legal Defense Fund**



453 New Jersey Ave, SE

Washington, DC 20003
Tel: 202.640.4935 Fax: 202.379.3317
www.cair.com

*[This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.]*

---

**From:** Gabrielle E. Tenzer <gtenzer@heckerfink.com>
**Sent:** Wednesday, April 15, 2026 11:38 AM
**To:** Rovner, Allison (USANYS) <Allison.Rovner@usdoj.gov>; Nadia Bayado <nBayado@cair.com>; Kornreich, Mollie (USANYS) <Mollie.Kornreich@usdoj.gov>; Fidler, Harry (USANYS) <Harry.Fidler@usdoj.gov>; Marshall L. Miller <mmiller@heckerfink.com>; Trisha Anderson <tanderson@heckerfink.com>; Oestericher, Jeffrey (USANYS) <Jeffrey.Oestericher@usdoj.gov>; Zachary Piaker <zpiaker@heckerfink.com>
**Cc:** Deema Azizi <dazizi@cair.com>; trevor.godbolt@live.law.cuny.edu; info@mariakari.org; jonathan.wallace80@gmail.com; Gadeir Abbas <gAbbas@cair.com>; John Fossum <jfossum@cair.com>; ivy.girdwood@live.law.cuny.edu; Ahmad Kaki <akaki@cair.com>; agreer@dratellewis.com; zal.shroff@law.cuny.edu; Malak Dridi <MDridi@cair.com>; jacob.acuna@live.law.cuny.edu; natasha.bunten@live.law.cuny.edu
**Subject:** RE: Service of Plaintiffs' Second RFPs and First Interrogatories

Counsel –

Counsel for the Columbia Defendants should be available on Friday afternoon.

Regards,

**Gabrielle E. Tenzer | Hecker Fink LLP**
350 Fifth Avenue | 63rd Floor
New York, NY 10118
(W) 929.294.2536 | (M) 646.856.7275
gtenzer@heckerfink.com

---

**From:** Rovner, Allison (USANYS) <Allison.Rovner@usdoj.gov>
**Sent:** Tuesday, April 14, 2026 6:23 PM
**To:** Nadia Bayado <nBayado@cair.com>; Gabrielle E. Tenzer <gtenzer@heckerfink.com>; Kornreich, Mollie (USANYS) <Mollie.Kornreich@usdoj.gov>; Fidler, Harry (USANYS) <Harry.Fidler@usdoj.gov>; Marshall L. Miller <mmiller@heckerfink.com>; Trisha Anderson <tanderson@heckerfink.com>; Oestericher, Jeffrey (USANYS) <Jeffrey.Oestericher@usdoj.gov>; Zachary Piaker <zpiaker@heckerfink.com>
**Cc:** Deema Azizi <dazizi@cair.com>; trevor.godbolt@live.law.cuny.edu; info@mariakari.org; jonathan.wallace80@gmail.com; Gadeir Abbas <gAbbas@cair.com>; John Fossum <jfossum@cair.com>; ivy.girdwood@live.law.cuny.edu; Ahmad Kaki <akaki@cair.com>; agreer@dratellewis.com; zal.shroff@law.cuny.edu; Malak Dridi <MDridi@cair.com>; jacob.acuna@live.law.cuny.edu; natasha.bunten@live.law.cuny.edu
**Subject:** RE: Service of Plaintiffs' Second RFPs and First Interrogatories

This email was sent from outside the Firm.

Nadia,

Counsel for the Executive Branch Defendants currently have good availability on Friday if you would like to schedule a time to confer about custodians and search terms.

Sincerely,
Allison

---

**From:** Nadia Bayado <nBayado@cair.com>
**Sent:** Monday, April 13, 2026 6:46 PM
**To:** Rovner, Allison (USANYS) <Allison.Rovner@usdoj.gov>; gtenzer@heckerfink.com; Kornreich, Mollie (USANYS) <Mollie.Kornreich@usdoj.gov>; Fidler, Harry (USANYS) <Harry.Fidler@usdoj.gov>; mmiller@heckerfink.com; tanderson@heckerfink.com; Oestericher, Jeffrey (USANYS) <Jeffrey.Oestericher@usdoj.gov>; zpiaker@heckerfink.com
**Cc:** Deema Azizi <dazizi@cair.com>; trevor.godbolt@live.law.cuny.edu; info@mariakari.org; jonathan.wallace80@gmail.com; Gadeir Abbas <gAbbas@cair.com>; John Fossum <jfossum@cair.com>; ivy.girdwood@live.law.cuny.edu; Ahmad Kaki <akaki@cair.com>;

agreer@dratellewis.com; zal.shroff@law.cuny.edu; Malak Dridi <MDridi@cair.com>;
jacob.acuna@live.law.cuny.edu; natasha.bunten@live.law.cuny.edu
**Subject:** [EXTERNAL] Service of Plaintiffs' Second RFPs and First Interrogatories

Good evening, Counsel,

Please find attached Plaintiffs' Second Set of RFPs and 1st Interrogatories to both Columbia and Agency Defendants.

We'd also like to check in regarding the proposed search terms and custodians. We have not yet heard whether Defendants will object to the terms or custodians, and we would like to have adequate time to raise any issues with the court. We would like to meet and confer if there are issues, preferably by week's end given Defendants' incoming deadline to respond to the initial discovery requests.

Thank you!
Nadia

*This email and its attachments may contain information that is confidential and/or protected from disclosure by the attorney-client, work product or other applicable legal privilege. If you are not the intended recipient of the email, please be aware that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please notify the sender immediately and destroy all copies of the message from your computer system. Thank you.*

*This email and its attachments may contain information that is confidential and/or protected from disclosure by the attorney-client, work product or other applicable legal privilege. If you are not the intended recipient of the email, please be aware that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please notify the sender immediately and destroy all copies of the message from your computer system. Thank you.*

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

*This email and its attachments may contain information that is confidential and/or protected from disclosure by the attorney-client, work product or other applicable legal privilege. If you are not the intended recipient of the email, please be aware that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please notify the sender immediately and destroy all copies of the message from your computer system. Thank you.*

*This email and its attachments may contain information that is confidential and/or protected from disclosure by the attorney-client, work product or other applicable legal privilege. If you are not the intended recipient of the email, please be aware that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please notify the sender immediately and destroy all copies of the message from your computer system. Thank you.*

DISCUSSION DRAFT
ALL RIGHTS RESERVED

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MAHMOUD KHALIL, et al., <br><br> *Plaintiffs,* <br><br> v. <br><br> TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, et al., <br><br> *Defendants.* | No. 1:25 Civ. 02079 (AS) <br><br> **STIPULATION REGARDING ELECTRONIC DISCOVERY AND [PROPOSED] ORDER** |

Plaintiffs Mahmoud Khalil, Jane Joe, Sally Roe, Ned Noe, Sam Soe, and Kam Koe and Defendants Trustees of Columbia University in the City of New York, Claire Shipman, Pam Bondi, Linda McMahon, Leo Terrell, Sean Keveney, and Josh Gruenbaum (collectively the "Parties" and each a "Party") hereby stipulate to the following procedures, protocols, and obligations for the production of documents and electronically stored information by any Party in the above-captioned litigation (the "Action").

## I.    DEFINITIONS

A.    "Bates Number" has the meaning given in Section III.F of this Stipulation and Order ("Stipulation").

B.    "Claw-Back Notice" has the meaning given in Section VII.C of this Stipulation.

C.    "Clawed-Back Documents" has the meaning given in Section VII.C of this Stipulation.

D.    "Custodian" means the Person who is responsible for, has administrative control over, or has access to potentially responsive ESI.

E.    "Discovery Material" includes information of any kind produced or disclosed in the course of discovery in this Action.

**DISCUSSION DRAFT**
**ALL RIGHTS RESERVED**

F. "Document" is defined as set forth in Local Civil Rule 26.3(c)(2)—that is: (1) "synonymous in meaning and equal in scope to the usage of the term 'documents or electronically stored information' in Fed. R. Civ. P. 34(a)(1)(A)"; and (2) "a draft or non-identical copy is a separate document within the meaning of this term." For the avoidance of doubt, the term "Document" as used herein includes Hard-Copy Documents and ESI.

G. "Electronic Communication" means a message transmitted electronically or digitally and includes emails, as well as any file (document, photo, video, audio, or otherwise) incorporated as an attachment or Embedded File or sent or received independently (that is, not accompanied by an electronic message containing text).

H. "Electronically Stored Information" or "ESI" is equal in scope to "electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A) and includes information stored or recorded in or on electronic, digital, magnetic, or similar Media. For the avoidance of doubt, ESI includes Electronic Communications.

I. "Embedded File" means any Document contained in or linked to another Document, images embedded in Documents, and Documents referenced via links to internal Document sources.

J. "Exception Files" has the meaning given in Section II.D of this Stipulation.

K. "Extracted Text" means text extracted from a Native Format file using standard e-discovery processing tools.

L. "Family Group" has the meaning given in Section III.D of this Stipulation.

M. "Family Relationship" means the association between an attachment and its parent document or between embedded documents or linked internal or non-public documents and their parents.

2

**DISCUSSION DRAFT**
**ALL RIGHTS RESERVED**

N.  "Hard-Copy Document" means a document existing in paper or other tangible form at the time of collection.

O.  "JPEG" refers to the Joint Photographic Experts Group file format.

P.  "Load File" means the electronic file that is used to import all required production information into a document database, including, as applicable: document images; Extracted Text or OCR Text; Native Format files where required by this Stipulation; Metadata; information related to the embedded content of a document; and information indicating document breaks and document relationships, such as the relationship between an Electronic Communication and its attachments.

Q.  "Local Civil Rules" means the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, effective January 2, 2026.

R.  "Media" means an object or device, real or virtual, on which information or data is stored, including but not limited to digital or analog machine-readable devices, computers, Internet sites, portable storage media, servers, networks, cloud-based storage, discs, and tapes.

S.  "Metadata" means (i) structured, *i.e.*, fielded, information embedded in a Native Format file which describes, *inter alia*, the characteristics, origins, usage, and/or validity of the electronic file; and (ii) information generated automatically by the operation of a file system or application when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

T.  "Native Format" means the file format of ESI in the application in which such ESI was originally created.

U.  "Optical Character Recognition" or "OCR" means the process of recognizing, and creating a file containing, Searchable Text (the native text extracted or generated from a

3

**DISCUSSION DRAFT**
**ALL RIGHTS RESERVED**

Document) within an image of a document. The latter text is also referred to as "OCR Text".

V. "Person" is defined as set forth in Local Civil Rule 26.3(c)(6)—that is, "any natural person or any legal entity, including, without limitation, any business or governmental entity or association."

W. "Privileged Information" means Documents protected from production or disclosure (in whole or in part) by the attorney-client privilege, attorney work product protection, common-interest privilege, or any other legal privilege or immunity.

X. "Producing Party" means a Party that produces Discovery Material in this Action.

Y. "Protective Order" means the protective order governing the disclosure of confidential Discovery Material entered by the Court in this Action.

Z. "Requesting Party" means a Party requesting Discovery Material through written discovery.

AA. "Receiving Party" means a Party that receives Discovery Material from a Producing Party in this Action.

BB. "Searchable Text" means the native text extracted or generated from a Document, including text generated from an electronic image of a Hard-Copy Document through OCR.

CC. "TIFF" or Tagged Image File Format refers to the CCITT Group IV graphic file format for storing bit-mapped images of ESI or scanned Hard-Copy Documents.

## II.    GENERAL PROVISIONS

A. Construction of Certain Terms in this Stipulation. The rules of construction detailed in Local Civil Rule 26.3(d) shall apply to the construction of this Stipulation.

B. Confidentiality. Discovery Material shall be subject to the terms of the Protective Order, as well as Federal Rule of Civil Procedure 26(b)(5)(B).

4

**DISCUSSION DRAFT**
**ALL RIGHTS RESERVED**

C.  <u>Preservation of Objections</u>. By entering into the Stipulation, no Party waives any right it otherwise might have to object to disclosing or producing any information or item on any ground, including confidentiality, attorney-client privilege, attorney work product doctrine, or any other applicable and legally cognizable protection, privilege, or immunity. Similarly, no Party waives any right to object on any ground to the discoverability, authenticity, admissibility, or use in evidence of any of the material covered by this Stipulation.

D.  <u>Exception Files</u>. The Parties will use reasonable efforts and standard industry practices to address Documents that present imaging or form production problems ("<u>Exception Files</u>").

E.  <u>Disputes</u>. The Parties acknowledge their obligations under Local Civil Rule 37.2 and Judge Subramanian's Individual Practices in Civil Cases Rule 5 ("Individual Rule 5"), including to attempt to confer in good faith in an effort to resolve any discovery dispute prior to seeking judicial resolution of such a dispute. The Parties agree that the obligations under Local Civil Rule 37.2 and Individual Rule 5 extend to any disputes that arise under or in relation to this Stipulation. As such, in the event the Parties cannot reach agreement on a disputed matter, the Parties may submit the matter to the Court in accordance with the procedures and requirements outlined in Local Civil Rule 37.2 and Individual Rule 5.

## III.  PRODUCTION FORMAT

A.  <u>Format Guidelines</u>. The Parties shall, to the extent reasonably and technically possible, produce Documents according to the specifications provided in this Stipulation and in Exhibit A.

B.  <u>De-NISTing</u>. ESI shall be filtered for file type to remove system files, program files, and other non-user created data files that are on the industry standard list of such files maintained by the National Institute of Standards & Technology ("NIST"). The Parties recognize that to reduce the document review population, additional file types may need to be excluded.

**DISCUSSION DRAFT**
**ALL RIGHTS RESERVED**

C. <u>Deduplication</u>. A Party is required to produce only a single copy of a Responsive Family Group. Each Party may remove exact duplicate Family Groups (*i.e.*, identical copies of the same Document(s)), to reduce the unnecessary cost of reviewing and producing exact duplicate Documents. If a Document is a duplicate of another Document but the Documents have different family members, they will not be de-duplicated and responsive non-privileged attachments to Documents shall not be disassociated from the parent Document even if they are exact duplicates of another Document in the production. All custodians must be identified for each de-duplicated document.

D. A Producing Party may use email threading—that is, to enable the Producing Party to produce the most inclusive subset of emails in a responsive population—to exclude, from both review and production, duplicative content within the Producing Party's Documents. Where a Producing Party uses email threading, it shall: (i) disclose to the Receiving Party the number of Documents excluded via threading, reported per custodian group; (ii) ensure that all unique senders, recipients, and timestamps across each thread are captured in the associated Metadata; and (iii) identify a specific intermediate email believed to contain unique responsive content not present in the produced thread.

E. Technology-Assisted Review / Predictive Coding. If a Producing Party intends to use technology-assisted review ("TAR") or predictive coding as a substitute for, or supplement to, attorney responsiveness review, the Producing Party shall disclose its use to all other Parties in writing before implementation, describing: (i) the technology being used; (ii) the vendor or platform; and (iii) sufficient non-privileged information about the methodology and parameters of the technology's use, including the training set methodology, recall and precision targets, and quality control measures. This is to permit the Receiving Party and the Court to evaluate the

6

**DISCUSSION DRAFT**
**ALL RIGHTS RESERVED**

reasonableness of the technology and methodology being used. The Parties shall meet and confer regarding any objections to the proposed TAR methodology within ten (10) days of such disclosure. If the Parties cannot agree, either Party may seek relief from the Court pursuant to Section II.E.

F. Family Relationships and Family Groups.

1. A Document and all other Documents in its attachment range, emails with attachments, and email, Electronic Communications, or other Documents together with any Documents referenced by Document stubs or via links to internal document sources within those emails, Electronic Communications, or other Documents all constitute "Family Groups."

2. If any member of a Family Group is produced, all members of that Family Group must also be produced, except (1) any Documents withheld or redacted on the basis of privilege or other applicable legally cognizable protection; and (2) any nonresponsive attachments that contain Confidential or Highly Confidential – Attorneys' Eyes Only material, including those materials that may be subject to third-party notice provisions. If the Producing Party withholds or redacts a Document under (1), the Producing Party shall comply with Section VII of this Stipulation. If nonresponsive attachments are withheld under (2), the Producing Party must produce a placeholder TIFF image in place of each such Document indicating that the Document is nonresponsive.

3. All Documents within a Family Group shall be produced together. Family Group relationships shall be preserved. Child files shall follow parent files in sequential Bates Number order, including in the case of Embedded Files produced separately from their parent.

G. Scanning Hard-Copy Documents. In scanning Hard-Copy Documents, each page should be output to a single page TIFF file.

**DISCUSSION DRAFT**
**ALL RIGHTS RESERVED**

H.  Bates Numbers. Each page of a Document produced in TIFF format and each electronic file produced in Native Format shall have a unique fixed-length numeric identifier ("Bates Number") containing at least eight (8) digits. The Bates Number for each page of a Document shall be created so as to identify the Producing Party and the Bates Number (*e.g.*, "KHALIL_00000001" or "CU_00000001"). The Producing Party may choose its own alpha prefix, but that prefix shall not change across productions. Bates Numbers shall be electronically "burned" onto the image following the formatting requirements in Exhibit A. Unless it would obscure, conceal, or interfere with any information originally appearing in the underlying image, the Bates Number shall be burned on the lower right-hand corner of each image.

I.  Confidentiality Designations for TIFF Images. Unless it would obscure, conceal, or interfere with any information originally appearing in the underlying image, any confidentiality designation pursuant to the Protective Order shall appear on the lower left-hand side of each image.

J.  Metadata Fields and Processing. Each of the Metadata and coding fields set forth in Exhibit A that can reasonably and technically be extracted from a Document shall be produced for that Document. The Parties are not obligated to populate manually any of the fields in Exhibit A if such fields cannot be extracted from a Document using reasonable means, with the exception of the following, if available: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, and (f) MD5 Hash or SHA-1 Hash. Metadata shall be provided in a Concordance-format delimited file with a .DAT file extension and standard delimiters for column break and text qualifier. The first line shall be the header with field names, and each subsequent line shall contain the fielded data for each Document. Nothing herein shall require a Producing Party to create or produce Metadata that does not exist or is not reasonably or technically accessible.

K.  Production Media. The Producing Party shall produce Document images, Native

8

**DISCUSSION DRAFT**
**ALL RIGHTS RESERVED**

Format files, Load Files, and Metadata via secure FTP or other mutually agreeable Media ("Production Media"). Each piece of Production Media shall include a unique identifying label corresponding to the identity of the Producing Party, the date of the production of Documents on the Production Media, and the Bates Number ranges of the Documents in that production (*e.g.*, "Defs.' Production January l, 2026, ABC_00000123-ABC_00000456"). To the extent that the Production Media includes any Confidential or Highly Confidential – Attorneys' Eyes Only material protected under the Protective Order, the label on such Production Media shall indicate that the Production Media includes information so designated as required under the terms of such order. Production Media shall also include text referencing the case name and number. Further, any replacement Production Media shall clearly identify that it is a replacement and cross-reference the Bates Number range that is being replaced. All Production Media that is capable of write protection should be write-protected before production. All Production Media shall be encrypted, with the Producing Party to provide a decryption key at the time of production. Productions should be accompanied by a cover letter identifying the Bates Numbers for Documents produced. All electronic transmissions of produced materials must be effected via a secure file transfer system.

L. Hidden Text. All hidden text, including without limitation track changes, hidden columns, mark-ups, and notes, shall be expanded and rendered visible in the TIFF image file produced for each Document. A Producing Party shall not produce a TIFF image of a Document without first expanding and rendering all hidden text, unless the hidden text is independently withheld or redacted pursuant to a claim of privilege or other legally cognizable protection, in which case the withholding or redaction shall be logged pursuant to Section II.E.

M. Embedded Non-Graphic Objects. All non-graphic Embedded Files (including Word

9

**DISCUSSION DRAFT**
**ALL RIGHTS RESERVED**

documents, Excel spreadsheets, .wav files, and similar objects) found within a Document shall be extracted and produced. For purposes of production, extracted embedded files shall be treated as attachments to the parent Document, with the Family Relationship preserved, and shall follow the parent Document in sequential Bates Number order consistent with Section II.E.

N.  Password-Protected and Encrypted Data. Any ESI protected by a password, encryption key, digital rights management scheme, or other encryption mechanism shall be decrypted prior to processing for production, to the extent reasonably and technically possible. If a Producing Party is unable to decrypt particular ESI after reasonable efforts, it shall identify such ESI to the Receiving Party by general description and custodian, and the Parties shall meet and confer regarding alternative means of production. If the Parties cannot agree, either Party may seek relief from the Court pursuant to Section II.E.

O. Structured Database Production. Information from structured database systems, including grant management systems, student disciplinary record databases, funding databases, and similar repositories, shall be produced through existing report formats available in the associated applications, including but not limited to Microsoft Excel spreadsheet or delimited text format, where available. If a Receiving Party believes that the format of a produced report is inadequate or does not fully respond to a discovery request, the Parties shall meet and confer regarding other methods to produce responsive information from the database system. If the Parties cannot agree, either Party may seek relief from the Court pursuant to Section II.E.

P.  Social Media. Prior to any production of responsive data from social media (e.g. Twitter, Facebook, LinkedIn etc.), the producing party shall discuss the potential export formats and agree upon the method of delivery given the needs and burdens of the production.

DISCUSSION DRAFT
ALL RIGHTS RESERVED

IV.    <u>PROCESSING SPECIFICATIONS</u>

A.  The Producing Party will generate and preserve the MD5 or SHA-1 hash values of all ESI based on the native file.

B.  Each Producing Party shall make reasonable efforts to process all ESI with the following time zone: Coordinated Universal Time (UTC).

V.    <u>REDACTED AND WITHHELD DOCUMENTS</u>

A.  <u>Redaction and Withholding of Certain Documents</u>. If a claim of privilege or other legally cognizable protection applies to only a portion of a Document, the Document should be produced (in Native Format or TIFF image) with the portion claimed to be privileged or protected obscured and the redacted area stamped with a label containing the reason for the redaction, for example "Redacted—Privileged" or similar. Any redacted material must be clearly labeled as having been redacted. To the extent responsive Documents contain privileged or protected information and cannot be redacted or produced in TIFF format, such Documents may be wholly withheld.

B.  <u>Redaction of Certain Non-Responsive Information</u>.. A Producing Party may redact non-responsive information, subject to the following requirements: (i) each such redaction shall be labeled "Redacted – Non-Responsive" on the face of the Document; (ii) the Producing Party shall maintain a log of non-responsive redactions, identifying each Document by Bates Number, the general subject matter of the redacted portion, and the basis for the non-responsiveness determination, which log shall be made available to the Receiving Party; and (iii) if the Receiving Party disputes a non-responsive redaction, the Parties shall meet and confer within ten (10) days of the Receiving Party's written request, and if unable to resolve the dispute, either Party may seek relief from the Court pursuant to Section II.E.

C.  <u>Redaction of Students' Personally Identifying Information</u>. Defendants may redact

11

**DISCUSSION DRAFT**
**ALL RIGHTS RESERVED**

students' personally identifying information, as defined by 34 C.F.R. § 99.3, and/or replace that information with a pseudonym as needed to comply with the Protective Order.

D. <u>Privilege Logs</u>. The Parties agree to use categorical Privilege Logs. The Producing Party shall provide the Receiving Party with a log of the categories of documents withheld or redacted for privilege or any other basis, from that production consistent with Federal Rule of Civil Procedure 26(b)(5), Local Civil Rule 26.2, and any other applicable law ("<u>Privilege Log</u>"). Within ten (10) days of receipt of a categorical Privilege Log, the Receiving Party may identify one or more categories for which it requests document-level privilege log entries. The Producing Party shall provide document-level entries for each challenged category within seven (7) days of such request. Document-level entries shall include, for each Document: the privilege or protection asserted, the basis therefor, the author(s) and recipient(s), their roles, and the date of the Document. If the Parties cannot agree regarding the scope or sufficiency of any Privilege Log entry, either Party may seek relief from the Court pursuant to Section II.E.

E. <u>Metadata for Redacted Documents</u>. The Parties agree that for redacted documents, all Metadata fields can be withheld except: BegBates; EndBates; BegAttach; EndAttach; and PageCount.

F. <u>Content of Privilege Log for Redacted Documents</u>. The Producing Party shall indicate the basis for the redaction on a separate log, consistent with the requirements of Local Civil Rule 26.2.

## VI.     VARIATION OF STIPULATION'S REQUIREMENTS

Nothing in this Stipulation shall preclude any Party from seeking to amend any procedure or requirement set forth herein. Any procedure or requirement of this Stipulation may be varied by

**DISCUSSION DRAFT**
**ALL RIGHTS RESERVED**

agreement of the Parties, confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of ESI or other covered Discovery Material.

## VII.    CLAW-BACK MECHANISMS FOR INADVERTENT ESI DISCLOSURE

A.    No Waiver. The Parties agree that inadvertent disclosure of Privileged Information or otherwise protected Documents will not constitute a waiver of any such privilege or legally cognizable protection. In the event of an inadvertent failure to properly designate Discovery Material as "Confidential" or "Highly Confidential – Attorneys' Eyes Only" the provisions of the Protective Order shall apply. In all other cases of inadvertent disclosure, the Parties agree to adhere to the following procedures.

B.    Notice by Receiving Party. In the event that any Receiving Party receives Discovery Material that it believes is Privileged Information or information otherwise subject to legally cognizable protection, such Receiving Party shall immediately refrain from examining the affected Discovery Material and shall promptly notify the applicable Producing Party in writing that the Receiving Party possesses potentially Privileged Information or potentially protected information, as applicable. Each Producing Party shall have twenty-one (21) days after receiving such notice to assert privilege or other legally cognizable protection over the identified Discovery Material.

C.    Notice by Producing Party. If a Producing Party discovers that it has inadvertently disclosed privileged or protected ESI, it shall promptly notify any applicable Receiving Parties of the production in writing, which notice shall identify the inadvertent disclosure(s) (the specified Documents being "Clawed-Back Documents") and may direct the Receiving Party to promptly return or destroy the Clawed-Back Documents and all copies thereof ("Claw-Back Notice"). Within five (5) business days of issuing a Claw-Back Notice, the Producing Party shall provide the Receiving Party with a privilege log for the Clawed-Back Documents, which shall include, for

13

**DISCUSSION DRAFT**
**ALL RIGHTS RESERVED**

each Document: the privilege or protection asserted, the basis therefor, the names of the author(s) and recipient(s), their roles, and the date of the Document. ==If the Claw-Back Notice covers more than one hundred (100) Documents, the Producing Party shall have ten (10) additional business days to provide the privilege log.==

D. Receiving Party's Right to Challenge. Upon receipt of the privilege log provided pursuant to Section ==XXX==, the Receiving Party shall have ten (10) days to file a motion with the Court challenging the Producing Party's claim of privilege or protection with respect to any Clawed-Back Document. During this ten-day period, the Clawed-Back Documents shall be sequestered by the Receiving Party and neither used nor disclosed, but shall not be destroyed or returned until the challenge period has expired or the Court has ruled on any timely-filed motion, whichever is later. If no motion is filed within ten (10) days of receipt of the privilege log, the Receiving Party shall promptly comply with Section ==II.E.==

E. <u>Receiving Party's Obligations Upon Expiration of Challenge Period</u>. Within five (5) business days of the expiration of the challenge period under Section II.E., or upon final resolution of any timely-filed challenge motion, , the Receiving Party shall return or destroy all copies of the Clawed-Back Documents and provide a certification of counsel that all such information has been returned or destroyed, unless otherwise ordered by the Court.. The Receiving Party shall neither use nor disclose the Clawed-Back Documents. The Receiving Party will endeavor in good faith to retrieve any copies of the Clawed-Back Documents, to return, destroy, or otherwise dispose of the materials, and take all steps necessary to prevent disclosure by the Receiving Party of the Clawed-Back Documents.

F. <u>Replacement Production Media</u>. Where the inadvertent disclosure is in the form of a disc or on a password-protected server, the Producing Party shall provide, upon receipt of intent

14

DISCUSSION DRAFT
ALL RIGHTS RESERVED

to comply with the Claw-Back Notice, a replacement of the Production Media containing all Documents except the Clawed-Back Documents.

G. Use of Clawed-Back Documents Prior to Claw-Back Notice. Any use of the Clawed-Back Documents prior to receipt of a Claw-Back Notice covering those documents is not a violation of this Stipulation but may be subject to the provisions of the Protective Order.

H. Right to Review Preserved. Nothing contained herein is intended to or shall serve to limit a Party's right to conduct a review of Discovery Material for relevance, responsiveness, and segregation of either privileged or protected information before production.

## VIII. RELEVANT ESI SOURCES AND CUSTODIANS

A. The parties shall identify and collect relevant electronically stored information from the sources identified in Exhibit B ("Initial Custodian List") that is within the possession, custody, or control of the parties and their custodians.

B. In the event any Party determines that additional Custodians may possess or control relevant information, counsel shall meet and confer to discuss the proposed additions. If the Parties cannot agree whether to include the additional Custodians, then in accordance with Section II.E., the parties shall seek relief from the Court.

## IX. ESI SEARCH TERMS AND TEST SEARCH PROCESS

A. The Parties have conferred and reached an agreement on a set of search terms to be used to identify documents that are responsive to written discovery in this case. The list of initial search terms is set forth in Exhibit C ("ESI Search Terms").

B. Search Term Methodology. The Parties agree to use a keyword search term methodology and to engage in a collaborative, iterative process to identify the volume of responsive documents and to tailor discovery proportional to the needs of the claims.

15

DISCUSSION DRAFT
ALL RIGHTS RESERVED

C.      Test Search Protocol. Consistent with practice in the Southern District of New York, Defendants shall run test searches to identify the number of potentially responsive documents for proposed search terms before committing to a final search list, so that the Parties can assess burden and yield and adjust terms accordingly. Upon completing test searches, the searching party shall report the hit count per search term (both unique hits and family-inclusive hits) for each custodian group. The Parties shall then meet and confer regarding any modifications to the proposed terms. If the Parties cannot agree, the parties shall seek relief from the Court pursuant to Section II.E.

D.      Timing of Test Searches and Productions. The following deadlines shall govern Defendants' ESI search obligations for each set of Requests for Production:

(1) First RFPs. For Plaintiffs First Requests for Production to Columbia Defendants: Defendants shall complete test searches on the terms set forth in Exhibit C and report hit counts to Plaintiffs within seven (7) days of entry of this Order. The Parties shall meet and confer regarding any modifications within seven (7) days of Defendants' hit count report. Defendants shall complete their ESI review and produce all responsive non-privileged documents within thirty (30) days of the Parties' agreement on final search terms, or upon Court order in the event the Parties cannot agree.

(2) Second RFPs and Subsequent Sets. For Plaintiffs' Second Requests for Production and any subsequent sets of Requests for Production: Defendants shall respond to Plaintiffs' proposed search terms within seven (7) days of service of each set of Requests for Production. Defendants shall complete test searches and report hit counts within seven (7) days thereafter. The Parties shall meet and confer regarding any modifications within seven (7) days of Defendants' hit count report. Defendants shall complete their

16

DISCUSSION DRAFT
ALL RIGHTS RESERVED

ESI review and produce all responsive non-privileged documents within thirty (30) days of the Parties' agreement on final search terms, or upon Court order in the event the Parties cannot agree.

E. Obligation to Search; No Unilateral Deferral. AParty's response to any Request for Production does not satisfy that Party's ESI production obligations under Fed. R. Civ. P. 34. A Party may not serve written responses to Requests for Production and simultaneously decline to conduct, or represent that they have completed, an ESI search. Any written response to a Request for Production must include a specific statement identifying: (i) whether an ESI search has been conducted; (ii) if not, the date by which the Party represents it will complete its ESI search and production consistent with the deadlines in Section IX.D; and (iii) whether the Party intends to object to any proposed search terms or custodians and the specific basis for each such objection. A blanket statement that a Party "will produce responsive documents" without identifying the foregoing information shall not constitute a complete or adequate response to a Request for Production for purposes of this Stipulation.

E. Failure to Search. If any Party serves written responses to any of Requests for Production without having conducted an ESI search, whether because the Parties have not yet finalized search terms or for any other reason, that Party shall simultaneously serve a written declaration from counsel identifying: (i) the Requests for Production as to which no ESI search has been conducted; (ii) the custodians whose ESI has not been searched; (iii) the reason no search has been conducted; and (iv) the specific date by which the Party commits to completing its ESI search and rolling production for each such Request. Failure to provide such a declaration shall be treated as a representation that the Party's production in response to the applicable Requests for Production is complete.

17

**DISCUSSION DRAFT**
**ALL RIGHTS RESERVED**

F. Modification of Search Terms. In the event any Party determines in good faith that additional search terms are necessary, or that modifications to agreed terms are necessary to avoid disproportionate burden, counsel shall meet and confer in an effort to agree upon additional terms or modifications. If the Parties cannot agree, either Party may seek relief from the Court pursuant to Section II.E.

**SO STIPULATED AND AGREED.**

*Counsel for Plaintiffs:*
_____
Dated: _____

*Counsel for Defendants Trustees of Columbia University in the City of New York and Claire Shipman*:

_____
Dated: _____

*Counsel for Defendants Pam Bondi, Linda McMahon, Leo Terrell, Sean Keveney, and Josh Gruenbaum:*

_____
Dated: _____

**SO ORDERED.**

_____
ARUN SUBRAMANIAN, U.S.D.J.

Dated: New York, New York

_____

18

**DISCUSSION DRAFT**
**ALL RIGHTS RESERVED**

## EXHIBIT A

## DOCUMENT PRODUCTION FORMATS

**I.    OVERVIEW**

A.  All Documents shall be produced: (1) as (i) Bates-stamped tagged image file format ("TIFF") images, or (ii) where expressly required or permitted by this Exhibit, Native Format files compliant with the Native Format requirements detailed in Section IV of this Exhibit; and (2) along with (i) an image load/cross reference file, (ii) a data Load File with fielded Metadata, and (iii) document-level Extracted Text for ESI or OCR Text for scanned Hard-Copy Documents.

B.  All produced Documents shall comply with the applicable requirements set out in this Exhibit and in the Stipulation.

**II.    IMAGE REQUIREMENTS**

A.  Except as otherwise provided in this Stipulation, all Documents shall be produced as TIFF images in 300 dpi Group IV single-page monochrome format.

B.  All images shall be sequentially Bates-stamped, in accordance with the requirements set out in Section III of this Exhibit.

C.  Reasonable care shall be taken not to degrade the legibility of Documents during the imaging process. If legibility is found to have been degraded, the Receiving Party may make reasonable requests for re-production of affected Documents.

D.  If particular Documents warrant departure from these image requirements (*e.g.*, production of color images instead of monochrome), the Parties shall cooperate to arrange for the mutually acceptable reasonable production of such Documents.

**III.    BATES STAMPING REQUIREMENTS**

A.  Each page of a Document produced in image format shall have its Bates Number electronically "burned" onto the image, using a consistent length with leading zeros in the number, and consistent font and type size. The format of the Bates Numbers shall not change across

**DISCUSSION DRAFT**
**ALL RIGHTS RESERVED**

productions.

B.  Unless it would obscure, conceal, or interfere with any information originally appearing on the Document, the Bates Number shall be burned on the lower right-hand corner of the Document.

## IV.    IMAGE LOAD/CROSS REFERENCE FILE REQUIREMENTS

A.  A single-page image load/cross-reference file shall be provided with each production.

B.  The file should use the Concordance Image Viewer (.OPT) format, as in the sample below. Note, the volume label information ("MSC001" in the sample .opt file) is optional:

*Sample Concordance Image Viewer .opt file:*

MSC000001,MSC001,MSC\0000\00000001.TIF,Y,,,3

MSC000002,MSC001,MSC\0000\00000002.TIF,,,,

MSC000003,MSC001,MSC\0000\00000003.TIF,,,,

MSC000004,MSC001,MSC\0000\00000004.TIF,Y,,,2

MSC000005,MSC001,MSC\0000\00000005.TIF,,,,

## V.    EXTRACTED TEXT/OCR TEXT REQUIREMENTS

A.  Extracted Text and/or OCR Text shall be provided for all Documents as separate, Document-level text files; Extracted Text and/or OCR Text shall not be embedded in the .DAT file. Document-level text shall be produced.TXT format for each Document, and filenames for .TXT files will be the Bates Number of the TIFF image of the first page of the corresponding Document.

B.  OCR Text shall be provided for all redacted Documents in lieu of Extracted Text.

C.  If a Document is provided in Native Format with a single-page placeholder TIFF image (*e.g.*, spreadsheet files), the text file shall contain the full Extracted Text of the native file.

D.  With respect to produced text files, the specifications herein address ANSI text-based

DISCUSSION DRAFT
ALL RIGHTS RESERVED

productions. Unicode text-based productions shall be provided for productions containing non-English language Documents.

E.  The Parties agree not to knowingly degrade the searchability of Documents as part of the Document production process. For example, Extracted Text should not be replaced by OCR Text except where appropriate (*e.g.*, OCR for redacted Documents).

## VI.    DATA LOAD FILE REQUIREMENTS

A.  A data Load File shall be provided with each production.

B.  The file shall be a Concordance-loadable data file (".DAT" file) and contain Bates-stamp and Metadata information as detailed below.

C.  The delimiters and qualifiers to be used in the .DAT file are:

- *Record delimiter:* Windows newline/Hard return (ASCII 010 followed by ASCII 13)

- *Field delimiter:* Pilcrow ¶ (ASCII 020)

- *Multi-value delimiter:* Semicolon (do not follow with space) ; (ASCII 059)

- *Text qualifier:*  Small thorn þ (ASCII 254)

- *Substitute Carriage Return or New Line in data:* Registered Trademark ® (ASCII 174)

D. With respect to .DAT files, the specifications herein address ANSI text-based productions. Unicode text-based productions shall be provided for productions containing non-English language Documents.

E.  The .DAT file shall have a header line with the below listed field names and shall include the corresponding information per each applicable field:

| Field | Comments | Document Types |
|---|---|---|
| Production:: Begin Bates | Beginning Bates Number. | All. |
| Production:: End Bates | Ending Bates Number. | All. |

DISCUSSION DRAFT
ALL RIGHTS RESERVED

| Field | Comments | Document Types |
|---|---|---|
| Production:: Begin Attach | Bates Number from the first page of each attachment. | Email only. |
| Production:: End Attach | Bates Number from the first page of each attachment. | Email only. |
| Production:: Image Count | Number of TIFF image pages in the produced Document. | All. |
| Number of Attachments | Number of attachments to an e-mail. | Email only. |
| File Extension | File extension of the original Document (*e.g.*, .msg, .docx, .jpg). | All. |
| FileSize | File size of the original Document. Format: kilobytes. | All. |
| Unified Title | Subject of the document. If the document is an email, this field contains the email subject. If the document is not an email, this field contains the document's file name. | Non-Email files. |
| Custodian | Email: Mailbox in which the file was located. Other: Individual who originated the document. Format: LASTNAME, FIRSTNAME. | All. |
| All Custodian | For globally de-duplicated productions only. Full name of all custodians for whom the Document is being produced. Format: LASTNAME, FIRSTNAME; LASTNAME, FIRSTNAME. | All. |
| Author | Author of Document from available Metadata. | Loose files and attachments. |
| Email From | Electronic Communication author. | Electronic Communications only. |
| Email To | Electronic Communication addressee(s)/recipients. | Electronic Communications only. |
| Email CC | Email addressee(s), carbon copy. | Email only. |
| Email BCC | Email addressee(s), blind carbon copy. | Email only. |
| Email Subject | Email subject. | Email only. |
| Created Date/Time | File creation date. Format: MM/DD/YYYY HH:MM AM/PM. | All. |
| Last Modified Date/Time | File modification date. Format: MM/DD/YYYY HH:MM AM/PM. | All. |
| Sent Date/Time | Electronic Communication sent date. Format: MM/DD/YYYY HH:MM AM/PM. | Electronic Communications only. |

iv

DISCUSSION DRAFT
ALL RIGHTS RESERVED

| Field | Comments | Document Types |
|---|---|---|
| Sort Date/Time | Primary date field MM/DD/YYYY HHMM AM/PM. This is the parent date copied down to attachments. | All. |
| MeetingStartDate | Start date of calendar appointment. Format: MM/DD/YYYY | Calendar items only. |
| MeetingStartTime | Start time of calendar appointment. Format: HH:MM:SS AM/PM | Calendar items only. |
| MeetingEndDate | End date of calendar appointment. Format: MM/DD/YYYY | Calendar items only. |
| MeetingEndTime | End date of calendar appointment. Format: HH:MM:SS AM/PM | Calendar items only. |
| TimeZone | The time zone in which files were standardized during processing (*e.g.*, UTC). | All. |
| MessageID | Globally unique identifier for a message assigned by the host email system. This value is extracted from parent message during processing and typically includes messageid and a domain name (*e.g.*, <0E6648D558F338179524D555@m1p.contoso.net). | Email only. |
| ConversationIndex | Email thread identification. | Email only. |
| Importance | Email flag indicating priority level set for message. | Email only. |
| Sensitivity | Sensitivity field from Email messages. | Email only. |
| Record Type | Descriptor for the type of document at the time of collection: "**Email**" for all e-mails; "**Attachment**" for files that were attachments to e-mails; "**Audio**" "**Video**" or "**Photograph**" for the applicable type of multi-media file; "**Electronic Communication**" for all files meeting the definition given in this Stipulation; "**E-Document**" for all other documents and files collected electronically; and "**Hard-Copy Document**" for Hard-Copy Documents that have been scanned and converted to an electronic image. | All. |
| FileName | Name of file as maintained in the ordinary course of business, at the time of collection. | Loose files and attachments. |
| MD5 or SHA-1 hash | Unique file identifier. | All. |
| TextPath | The production deliverable path to the Extracted Text or OCR Text for the Document, including the file name. | All. |
| NativePath | The production deliverable path to the Native Format file for the Document, including the file name (if a Native Format file is provided). | Loose files and attachments. |

v

**DISCUSSION DRAFT**
**ALL RIGHTS RESERVED**

| Field | Comments | Document Types |
|---|---|---|
| ProdVol | Volume label information for the volume in which the document was produced. | All. |
| Confidential | Confidentiality level if assigned pursuant to the Protective Order. "**Whole**" for wholly confidential documents; "**Part**" for documents marked as partly confidential. | All. |

vi

**DISCUSSION DRAFT**
**ALL RIGHTS RESERVED**

## Exhibit B
## Initial Custodian List

| # | NAME | ROLE |
|---|------|------|
| 1 | Claire Shipman | University President/Trustee |
| 2 | Katrina Armstong | Former Interim President |
| 3 | Minouche Shafik | Former President |
| 4 | Joshua Mitts | Special Advisor to the President (Shipman) |
| 5 | Cas Holloway | Former COO & Special Advisor to the President |
| 6 | Susan Glancy | Secretary of the University/Chief of Staff |
| 7 | Jim Glover | Resolution Administrator and Vice Provost |
| 8 | Angela V. Olinto | Provost |
| 9 | Felice B. Rosan | General Counsel |
| 10 | Jessica Fenton | Associate General Counsel |
| 11 | David Greenwald | Co-Chair Trustee |
| 12 | Jonathan Lavine | Chair Emerita of Trustees and Co-Chair of Current President Search |
| 13 | Lisa Carnoy | Chair Emerita of Trustees |
| 14 | David M. Schizer | Anti-Semitism Taskforce Co-Chair |
| 15 | Nicholas Lemann | Anti-Semitism Taskforce Co-Chair |
| 16 | Laura Kirchstein | Vice Provost for the Office of Institutional Equity |
| 17 | Chloe Brighton | Director of Investigations, Student Discrimination and Harassment |
| 18 | Jamie Kleidman | Associate Director of Investigations, Office of Institutional Equity; Interim Director of Investigations |
| 19 | Gerald Lewis Jr. | Vice President of Public Safety |
| 20 | Lisa Rosen-Metsch | Dean |
| 21 | Roberta Kaplan | Adjunct Professor |
| 22 | Gil Zussman | Professor and on Antisemitism Taskforce |
| 23 | Brian Cohen | Executive Director, Kraft Center for Jewish Student Life |
| 24 | Keren Yarhi-Milo | Dean |
| 25 | Gerald Rosberg | Senior Executive Vice President of the University and Chair, Special Committee on Campus Safety |
| 26 | Shailagh J. Murray | Former Executive Vice President for Public Affairs |
| 27 | Brian McPherson | Deputy Vice President for Public Safety |
| 28 | Dennis Mitchell | Former Student Affairs Dean |
| 29 | Victor Mendelson | Trustee |
| 30 | Shoshana Shendelman | Trustee |
| 31 | Esta Stecher | Trustee |
| 32 | Jay Lefkowitz | Resolution Agreement Negotiator |

**DISCUSSION DRAFT**
**ALL RIGHTS RESERVED**

| # | NAME | ROLE |
|---|------|------|
| 33 | David Greenberg | Executive Vice President for University Facilities and Operations |
| 34 | Joseph Defraine Greenwell | Senior Vice President for Student Affairs |
| 35 | William Levine | Chair of the Department of Orthopedic Surgery at Columbia University's College of Physicians and Surgeon |

DISCUSSION DRAFT
ALL RIGHTS RESERVED

**Exhibit C**
**ESI Search Terms**

"Discipline" AND "Student"
"Student" AND "Demonstration"
"Executive Order" AND "Columbia"
"Federal" AND "Grant"
"Federal" AND "Fund!"
"Grant" AND "Fund!"
"Federal" and "Israel"
"Federal" AND "Palestine"
"Federal" AND "Title VI"
"Federal" AND "Speech"
"From the river to the sea"
"Fund!" AND "extort"
"Fund!" AND "Revoc!"
"Fund!" AND "Revok!"
"Fund!" AND "Withdraw!"
"Fund!" AND "Quid pro quo"
"Hind's Hall" OR "Hinds Hall"
"Israel" AND "Palestine"
"Israel" AND "funding"
"International Holocaust Remembrance Alliance" or "IHRA"
"Khalil"
"Palestine" AND "Punish"
"Palestine" AND "Discipline"
"Protest" AND "Student"
"Protest" AND "Butler"
"Protest" AND "Hamilton"
"Protest" AND "Encampment"
"Protest" AND "Occup!"
"Protest" AND "Gaza"
"Protest" AND "West Bank"
"Protest" AND "Keffiyeh" or "Kufiya"
"Semiti!"[1] AND "Administration"
"Semiti!" AND "Boycott, Divestment, and Sanctions" or "BDS"
"Semiti!" AND "Education" or "Department of Education" or "DOE" or "DE"
"Semiti!" AND "Executive Order"
"Semiti!" AND "Federal"
"Semiti!" AND "Government"
"Semiti!" AND "Grant"
"Semiti!" AND "Hillel"
"Semiti!" AND "Holocaust"

---

[1] We have used "semiti!" as a search term in lieu of "antisemitic." because of common variations in the spelling of "antisemitism" including inconsistent hyphenation. Additionally, this search term will produce hits for "semite" and "semitic."

ix

DISCUSSION DRAFT
ALL RIGHTS RESERVED

"Semiti!" AND "Israel"
"Semiti!" AND "Inquiry"
"Semiti!" AND "Jewish Voice for Peace" or "JVP"
"Semiti!" AND "Punish!"
"Semiti!" AND "Policy"
"Semiti!" AND "President"
"Semiti!" AND "Protest"
"Semiti!" AND "Palestine"
"Semiti!" AND "DOJ" or "Department of Justice"
"Semiti!" AND "HHS" or "Health and Human Services"
"Semiti!" AND "GSA" or "General Services Administration"
"Semiti!" AND "OCR" or "Office of Civil Rights"
"Semiti!" AND "Students for Justice in Palestine" or "SJP"
"Semiti!" AND "Trump"
"Semiti!" AND "Taskforce"
"Title VI" AND "Semiti!"
"Trump" AND "Policy"
"Trump" AND "Student"
"Zion!"
"Intifada"
"Resistance"
"By any means necessary"
"genocid!" AND "Israel!"
"genocid!" AND "Zion!"
"genocid!" AND "Gaza"
"genocid!" AND "Palestin!"
"Alumni" AND "Policy" AND "Semiti!"
"Alumni" AND "Semiti!"
"Alumni" AND "Protest"
"Semiti!" AND "Training"
"demonstration area"
"time, place" AND "rule" OR "policy"

x

**DISCUSSION DRAFT**
**ALL RIGHTS RESERVED**

**Exhibit D**
**Agency Custodians**

Department of Education

| # | NAME | ROLE |
|---|------|------|
| 1 | Linda McMahon | Secretary |
| 2 | Rachel Oglesby | Chief of Staff to Secretary |
| 3 | Jonathan Pidluzny | Deputy Chief of Staff for Policy & Programs |
| 4 | Steve Warzoha | White House Liaison |
| 5 | Michael Brickman | Senior Advisor |
| 6 | Lindsey Burke | Deputy Chief of Staff for Policy and Programs |
| 7 | Nicholas Kent | Current Deputy Secretary, Former Senior Policy Advisor to Deputy Secretary |
| 8 | Craig Trainor | Former Acting Assistant Secretary/Deputy Assistant Secretary for Policy |
| 9 | David Samberg | Counsel |
| 10 | Murray Bessette | Assistant Secretary |
| 11 | James Bergeron | Under Secretary |
| 12 | Mary Christina Riley | Assistant Secretary |
| 13 | Sarah Ursprung | Principal Assistant Secretary |
| 14 | Pamela Davidson | Deputy Assistant Secretary, Higher Education |
| 15 | Jeffrey Andrade | Deputy Assistant Secretary of Planning, Policy & Innovation |

Health and Human Services

| # | NAME | ROLE |
|---|------|------|
| 16 | Robert F. Kennedy, Jr. | Secretary |
| 17 | Matt Buckham | Chief of Staff |
| 18 | Noah Miller | Special Assistant to Secretary |
| 19 | Jarrett Rowe | Special Assistant to Secretary |
| 20 | Chris Klomp | Chief Counselor |
| 21 | John Brooks | Chief Policy Officer |
| 22 | Sean Keveney | Former Acting General Counsel, U.S. Department of Health and Human Services |
| 23 | Gustav Chiarello | Assistant Secretary for Financial Resources |
| 24 | Gary Andres | Assistant Secretary for Legislation |
| 25 | Anthony Archeval | Acting Director of the Office for Civil Rights |
| 26 | Anant Kumar | Acting Associate General Counsel for the Civil Rights, Privacy, and Technology Division |
| 27 | Daniel Shieh | Associate Deputy Director Office for Civil Rights |
| 28 | Michelle G. Bulls | Director, NIH's Office of Policy for Extramural Research Administration |

xi

**DISCUSSION DRAFT**
**ALL RIGHTS RESERVED**

Department of Justice

| # | NAME | ROLE |
|---|------|------|
| 29 | Pamela Bondi | Former Attorney General |
| 30 | Todd Blanche | Acting Attorney General |
| 31 | Emil Bove | Former Acting Deputy Attorney General |
| 32 | Alina Habba | Senior Advisor to the Attorney General |
| 33 | Chad Mizelle | Chief of Staff |
| 34 | Paul Ingrassia | White House Liaison to the DOJ |
| 35 | Leo Terrell | Senior Counsel to the A.A.G for the Civil Rights Division |
| 36 | Harmeet K. Dhillon | Assistant Attorney General, Civil Rights Division |
| 37 | Gregory W. Brown | Deputy Assistant Attorney General, Civil Rights Division |

GSA

| # | NAME | ROLE |
|---|------|------|
| 38 | Michael Rigas | Former Acting Administrator |
| 39 | Stephen Ehikian | Former Acting Administrator and Deputy Administrator of the General Services Administration (GSA) |
| 40 | Ryan Leppert | Deputy Chief of Staff and White House Liaison |
| 41 | Paul (Paolo) Ingrassia | Acting General Counsel, Office of General Counsel |
| 42 | Josh Gruenbaum | Federal Acquisition Service Commissioner of the General Services Administration |