# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

MAHMOUD KHALIL, et al
*Plaintiffs.*

v.                                                        Civil Case No. 1:25-cv-02079-AS

THE TRUSTEES OF COLUMBIA
UNIVERSITY, et al                                         Hon. Judge Arun Subramanian

*Defendants.*

**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO PLAINIFFS' MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT**

Plaintiffs, by and through undersigned counsel, submit this reply to Defendant Trustees of Columbia University's opposition to Plaintiff's Motion for Leave to File a Third Amended Complaint. *See* Dkt. 204.

## INTRODUCTION

Plaintiffs' amendment is for the sole purpose of adding a plaintiff, Pauline Poe[1], to the litigation. *See* Dkt. 189. It does not alter the scope of the case and saves the parties and the court from independently adjudicating Pauline Poe's case.

The Government does not oppose the amendment. And Columbia has no objection to the addition of Ms. Poe to challenge Defendants' actions in relation to the March 13th letter. They do, however, argue that Ms. Poe's challenge to the February 13th letter is futile because

---

[1] This Court has previously granted Plaintiffs' motion to proceed pseudonymously and under seal, s*ee* March 18, 2025, Order (ECF #12), and Plaintiffs intend to file a similar motion as to Ms. Poe once this Court determines her addition is permissible.

Ms. Poe lacks standing. But as explained below, this rests on a misunderstanding of Ms. Poe's facts and this Court's opinion.

**ARGUMENT**

**I.   Ms. Poe has standing with respect to Claims related to the February 13th letter.**
Defendants argue that the proposed amendment is futile with regard to the February 13th letter because Ms. Poe does not have standing to challenge Columbia's actions regarding the February 13th letter. Dkt. 204, at 4. Defendants further argue that Ms. Poe does not have standing on this matter because unlike the other plaintiffs with such standing, she was not subject to disciplinary proceedings for one of the eleven events enumerated in the February 13th letter.  *Id.*, at 5.  Nevertheless, Ms. Poe does have standing, and Defendants' reading of the Court's opinion is overly narrow.

As the Court's March 19, 2026, opinion recognizes, "a plaintiff whose private information has been disclosed to third parties has standing to sue regardless of whether the third parties used that information to cause additional harm." *Eletson Holdings, Inc. v. Levona Holdings Ltd.,* 731 F. Supp. 3d 531, 573 (S.D.N.Y. 2024); *see also* Op. at 10. Moreover, "[t]o have standing to pursue forward-looking injunctive relief, the risk of harm alleged by Plaintiffs must be 'sufficiently imminent and substantial.'" *New York v. Trump*, 767 F. Supp. 3d 44, 67 (S.D.N.Y.), *opinion modified on denial of reconsideration*, 778 F. Supp. 3d 578 (S.D.N.Y. 2025), *and modified*, 784 F. Supp. 3d 619 (S.D.N.Y. 2025) (quoting *Bohnak v. Marsh & McLennan Companies*, Inc., 79 F.4th 276, 285 (2d Cir. 2023)). Thus, as the Court found in its March 19, 2026, opinion, "if any plaintiffs have standing to challenge the disclosure of their disciplinary records, that standing must come from the threat of future injury." *See* Op. at 10. Here, that future injury is the disclosure of student disciplinary records to the House Committee on Education and Workforce. The operative question for standing is thus whether Columbia's

actions in response to the February 13th letter created a threat that Ms. Poe's disciplinary records would be disclosed to the Committee. *See New York v. Trump*, 767 F. Supp. 3d at 67 (finding that the plaintiffs established a realistic danger that their confidential information would be disclosed absent injunctive relief). Plaintiffs aver that it does.

For the four plaintiffs with established standing to challenge the disclosure of records to the Committee, the fact that the Committee demanded the disciplinary records of students involved in the eleven events enumerated in the February 13th letter, and that the Plaintiff-students had been engaged in disciplinary proceedings regarding at least one of those enumerated events, provided a "reasonable inference" that their records would be disclosed in the future. *See* Op. at 10. However, as Columbia's own letters to the Committee indicate, *see*, *e.g.*, Dkts 82-7, 82-8, having been subjected to disciplinary proceedings for one of the eleven enumerated events in the February 13th letter is not the only scenario giving rise to the threat of disclosure. Indeed, Ms. Poe's circumstances make it probable that Columbia has or will disclose her disciplinary records to the Committee, distinguishing her from the dismissed plaintiffs.[2]

Ms. Poe was subject to disciplinary proceedings as a result of her involvement in a pro-Palestine event on campus that was not mentioned in the February 13th letter, but was mentioned in the April 21, 2024, and August 1, 2024, Committee letters to Columbia. *See* Dkts 82-2, 82-3. Columbia's written responses to the February 13th Letter clearly indicated that it was handing over to the Committee records that far exceeded the enumerated requests

---

[2] Defendants are incorrect that Plaintiffs did not plead in their TAC that Ms. Poe faced a threat of injury in the form of future disclosure of disciplinary records, as the fact of her disciplinary record and her inclusion in "plaintiffs" implies the threat of future disclosure. *See* Op. at 10 (recognizing "[r]easonable inferences" in support of plaintiffs' allegations).

in the February 13 letter, *see*, *e.g.*, Dkts 82-7, 82-8, and harkened back to the requests made in those earlier April and August 2024 letters. Therefore, Columbia not only possesses disciplinary records about Ms. Poe that it could disclose, but based on its own responses to the Committee, it is more than likely that Columbia both already disclosed Ms. Poe's records and/or would do so barring this Court's Order.

The threat of having her records disclosed in the future as a result of the February 13th letter is not a "chain of possibilities" as Defendants suggest. *See* Dkt. 204, at 5. As noted above, Columbia has admitted to providing disciplinary records to the Committee beyond the scope of that which was requested in the February 13th letter, *see, e.g.*, Dkts 82-7, 82-8, including, for example, providing disciplinary records of students regarding the "South Lawn Encampment" incident because it believed that "the Committee will be interested" in them. *See* Dkt 82-8, at 2. In Columbia's response to the Committee's February 13th letter, Columbia admitted that the records they provided "may include information related to other incidents." Dkt. 82-6 at 3. And it also indicated its willingness to provide more information in the future, noting it "welcome[d] further conversations with [Committee] staff to provide updates," *id.* at 1, thus creating a "substantial risk" that Columbia will disclose Ms. Poe's records to the Committee barring this Court's intervention. *See Clapper*, 568 U.S. at 414 n.5. That credible threat gives Ms. Poe standing to challenge Columbia's actions regarding the February 13th letter. *See Bohnak*, 79 F.4th at 286 (finding that the harm "foreseeably arising" from the exposure of Plaintiff's confidential information gave rise to a "material risk of future harm, independently supporting standing").

## II. The Proposed Amended Complaint does not add dismissed claims.

Columbia argues that the Proposed Amended Complaint somehow injects already-dismissed claims back into the case. But this reading of the amendment is at odds with even the Government's own reading of the Proposed Amended Complaint. The Government did not oppose this amendment because they agreed with Plaintiffs that the Proposed Amended Complaint did not seek to re-litigate claims the Court already dismissed. Thus, among the parties, Columbia's reading of the Proposed Amended Complaint is an outlier.

And as Columbia acknowledges, Plaintiffs have stated explicitly—in writing and conversation—that the amended complaint is intended to be read in conjunction with the Court's March 19th decision. The amended complaint adds no additional claims. It merely preserves the arguments made in the original complaint, an approach regularly taken in amended pleadings to avoid waiver of arguments. *See In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 162 (2d Cir. 2000) (recognizing a lack of clarity among the Circuit Courts on whether including dismissed claims in an amended complaint is required). Columbia's concern that the Proposed Amended Complaint seeks to re-litigate already-dismissed claims is thus misplaced, and not a basis for denial of Plaintiff's Motion for Leave to Amend

<u>CONCLUSION</u>

Because courts should freely grant amendments in the interest of justice and because the proposed Third Amended Complaint is not futile, this Court should grant Plaintiff's motion for leave to file a third amended complaint.

Dated: June 22, 2026                                          Respectfully Submitted,


                                                             /s/  Amy E. Greer

5

Amy E. Greer  (NY 5910179)
**Dratel & Lewis**
29 Broadway, Suite 1412
New York, NY 10006
(212) 732-8805
agreer@dratellewis.com

**CAIR NATIONAL
LEGAL DEFENSE FUND**
/s/Lena Masri
Lena Masri
Gadeir Abbas (VA 81161)
453 New Jersey Ave SE
Washington, DC 20003
(202) 742-6420

*Attorneys for Plaintiffs*

6