

**CAIR Legal Defense Fund**
453 New Jersey Ave. S.E.
Washington, D.C. 20003
Tele 202-742-6420  Fax 202-379-3317
E-mail: ldf@cair.com  URL www.cair.com

**BY ECF**                                                                June 8, 2026

The Honorable Arun Subramanian
United States District Court, Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl St.
New York, NY 10007-1312

Re: Discovery dispute letter in *Mahmoud Khalil, et al. v. Columbia University, et al.*, No. 25-cv-02079-AS (S.D.N.Y.) -

Hon. Judge Subramanian:

The Government has imposed a single, sweeping narrowing construction across all ten of Plaintiffs' March 26th document requests. Exhibit A – Agencies' Response and Objections to Plaintiffs' March 26th Request for the Production of Documents. The Agency Defendants have said that they will search only for materials that "regard the definition of antisemitism used by Columbia." *Id.* at 5-11. That construction reduces a case about viewpoint-based government coercion, enforced through the threat of billions of dollars in withheld federal funds, to a semantic dispute about a definition. The Court's own Opinion forecloses that reading. Plaintiffs respectfully request that the Court compel the government to abandon it.

## BACKGROUND

On March 26, 2026, Plaintiffs served the Agency Defendants ten document requests seeking: (1) documents about the Government's demands that Columbia punish students for their political expression and adopt a definition of antisemitism (RFPD 1-3, 9); (2) documents about the Government's pretextual February 3, 2025 investigation into Columbia (RFPD 4-5); and (3) documents about why the Government suspended, withdrew, and restored Columbia's federal funding (RFPD 6-8, 10). *See* Ex. A. The Government limited all ten requests to a single filter: it will search only for documents that relate to "the definition of antisemitism used by Columbia," and declared that "documents that are entirely about other demands in the letter would not be responsive." *See* Ex. B — Meet and Confer Correspondence at 15 (email of May 11, 2026).

The parties have exhausted their meet-and-confer obligations. Counsel exchanged extensive correspondence throughout April and May and conferred by Zoom or telephone for about one hour on each of the following days: April 17, April 30, and May 11. Lead counsel present at each conference were: (1) for Plaintiffs: Amy Greer (with the exception of May 11) and Gadeir Abbas, (2) for Columbia: Marshall Miler and Gabrielle Tenzer, and (3) for the Government: Allison Rovner and Mollie Kornreich.

## ARGUMENT

Once a requesting party makes "a prima facie showing that the discovery sought is more than a mere fishing expedition," *N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*, 325 F.R.D. 36, 48 (E.D.N.Y. 2018), the burden shifts to the responding party to "justify curtailing

1



**CAIR Legal Defense Fund**
453 New Jersey Ave. S.E.
Washington, D.C. 20003
Tele 202-742-6420  Fax 202-379-3317
E-mail: ldf@cair.com  URL www.cair.com

discovery." *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York*, 284 F.R.D. 132, 135 (S.D.N.Y. 2012). The Government cannot meet that burden for four reasons.

1. **The Government's improper motivation may never appear in a document that mentions antisemitism at all.**

This Court has already found it plausible that "the Agency defendants are improperly motivated by a desire to suppress plaintiffs' political speech." *See* Dkt. 175 at 19. Under *Vullo*, the constitutional violation lies in that viewpoint-based motive: the First Amendment bars officials from "wielding their power selectively to punish or suppress speech, directly or ... through private intermediaries." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 198 (2024). To prove that the Agency Defendants acted "selectively" by targeting Columbia because of the specific viewpoints expressed on its campus, Plaintiffs need documents that reveal the Government's reasons for acting, not just its demands once it did.

Those documents need not mention an antisemitism definition. *See* Exhibit A – RO's at 4-5 (RFPD 1-2 seek communications about "student discipline," "university policies," and "the terms of [the Government's] financial relationship" with Columbia). An internal communication in which a federal official characterizes pro-Palestinian advocacy as a threat to be neutralized, or frames Columbia's encampments as a political problem requiring a federal solution, would go to the heart of Plaintiffs' *Vullo* claim, and the Government's narrowing construction would never surface it. Agency Defendants must be required to search for documents bearing on their intent, motivation, and purpose, meaning the actual "*basis* of plaintiffs' claims," Dkt. 175 at 13, and not merely for documents related to the antisemitism definition used by Columbia.

2. **The coercive threat was indivisible; the Government therefore cannot limit discovery to documents related to just one of many demands it issued under the same threat.**

The Agency Defendants canceled or paused millions of dollars in federal grants to Columbia, then issued the March 13 letter outlining "a set of policy changes as a precondition for continued federal funding." Dkt. 175 at 2 (citing SAC ¶¶ 107–08). Those demands were not issued à la carte. They included demands to expel or impose multi-year suspensions on students involved in encampments, restructure Columbia's disciplinary processes, suppress pro-Palestinian expression, and, among several other requirements, adopt a definition of antisemitism. SAC ¶¶ 106-14; March 13, 2025, Letter to Columbia. Those demands were issued together under a single funding threat, with no partial relief for partial compliance. The Government cannot limit discovery to documents that relate to the definition of antisemitism used by Columbia, which regards just one demand among many that Agency Defendants imposed under an identical coercive mechanism, i.e., the threat of withholding funds.

Plaintiffs must prove "that this wasn't (and isn't) arms-length; that this isn't mere 'regulation'; and that the [March 13] letter's real purpose isn't its stated purpose." Dkt. 175 at 17. The Government cannot quarantine evidence of its coercive purpose by labeling it as off-topic.



**CAIR Legal Defense Fund**
453 New Jersey Ave. S.E.
Washington, D.C. 20003
Tele 202-742-6420  Fax 202-379-3317
E-mail: ldf@cair.com  URL www.cair.com

### 3. The narrowing construction cannot logically be applied to three of the requests

With regards to three discovery requests (RFPD 4-5, 10) about the start and end of the Government's dispute with Columbia, the narrowing construction lacks a rational connection to the particulars of each request. Request 4 and 5, for example, seeks evidence that Plaintiffs believe will prove that "the investigation that [the Government] opened into Columbia University on February 3, 2025" was pretextual and that that the real reasons why the Government investigated Columbia are prohibited by the Free Speech Clause. *See* Ex. A — RO's at 7. Under *Vullo*, this pretext evidence matters: even "conceded illegality…does not insulate [the Government] from First Amendment scrutiny". 602 U.S. at 196. But with the Agency Defendants deciding to investigate Columbia *before* demanding that Columbia adopt a definition of antisemitism, a search tethered to Columbia's antisemitism definition will not reveal what motivated the Government at the outset.

What is true about the start of the Government's dispute with Columbia applies to its end. Request 10 seeks documents about the Resolution Agreement between the Agency Defendants and Columbia as well as documents "exchanged pursuant" to it. Plaintiffs believe this evidence will show that, with the Resolution Agreement in place, the enforcement of Columbia's campus policies have "become so entwined with governmental policies…that it can be regarded as governmental action." *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012). A search limited to Columbia's antisemitism definition obstructs Plaintiffs' ability to make this showing and prove its state action theory under either the compulsion test or a close nexus test. *See* Dkt. 175 at 14. (explaining that "[u]nder either test, the Court must engage in a necessarily fact-bound inquiry and here, plaintiffs haven't even gotten discovery yet").

### 4. The narrowing construction forecloses the full scope of relief this Court has already identified

"[I]f it's true that the Agency defendants required Columbia to punish speech it wouldn't otherwise punish, then enjoining the Agency defendants from threatening to withhold funds on that basis ... would be one way to redress the injury." Dkt. 175 at 9. Crafting that injunction requires discovery into the full scope of how the Government wielded its funding, not just one demand.

This Court described the suit as seeking "to prevent the Agency defendants from leveraging their funding to suppress plaintiffs' speech," Dkt. 175 at 13, and the Agency Defendants as having "threatened coercive action against one party (Columbia) to squelch the protected speech of a third party (plaintiffs)," *id.* at 19. The Court drew no limiting principle confining that claim to an antisemitism definition. Plaintiffs respectfully request that the Court compel the Agency Defendants to respond to all ten requests without such limitation.

Respectfully submitted,

_____/s/_____

3



**CAIR Legal Defense Fund**
453 New Jersey Ave. S.E.
Washington, D.C. 20003
Tele 202-742-6420  Fax 202-379-3317
E-mail: ldf@cair.com  URL www.cair.com

The motion is DENIED WITHOUT PREJUDICE. Based on the representations in the letter, agency defendants appear to have proposed reasonable limitations on the documents to be searched. To the extent that plaintiffs believe that any particular filters are unduly narrow, then they should meet and confer in good faith and articulate their positions. To the extent that plaintiffs can articulate reasons why a particular filter would likely exclude relevant and probative documents based on the remaining claims in the case, then the agency defendants should consider those arguments in good faith and adjust their proposed filters appropriately. Plaintiffs can also see what the initial run of documents produces based on a narrower set of search terms, while reserving the right to propose limited additional targeted searches based on what they get if necessary. But what the parties should not do is stake out hard-and-fast positions at the get-go, and then jump to engaging the Court before a proper meet-and-confer process has run its course. That appears to be what has happened here. The Clerk of Court is respectfully directed to close Dkt. 192.

SO ORDERED.

Arun Subramanian, U.S.D.J.
Date: June 23, 2026

**Dratel & Lewis**
Amy E. Greer (NY 5910179) (lead counsel)
29 Broadway, Suite 1412
New York, NY 10006
(212) 732-8805
agreer@dratellewis.com

**CAIR NATIONAL LEGAL DEFENSE FUND**
Lena Masri
Gadeir Abbas (VA 81161)
453 New Jersey Ave SE
Washington, DC 20003
(202) 742-6420

**CAIR-NY (COUNCIL ON AMERICAN ISLAMIC RELATIONS – NEW YORK)**
Deema Azizi (NY 5525670)
233 Broadway, Suite 820
New York, NY 10279
(347) 445-0928
dazizi@cair.com