**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MAHMOUD KHALIL, *et al.*,

        Plaintiffs,

        v.

THE TRUSTEES OF COLUMBIA
UNIVERSITY IN THE CITY OF NEW
YORK, *et al.*,

        Defendants.

No. 25 Civ. 2079 (AS)

**MEMORANDUM OF LAW IN SUPPORT OF THE EXECUTIVE BRANCH**
**DEFENDANTS' MOTION TO DISMISS DUE TO MOOTNESS**

JAMES M. MCDONALD
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2691
E-mail: allison.rovner@usdoj.gov
*Attorney for Executive Branch Defendants*

ALLISON M. ROVNER
Assistant United States Attorney
    - Of Counsel -

**Table of Contents**

PRELIMINARY STATEMENT ..........................................................................................1

BACKGROUND ..........................................................................................................2

    I.   The Government's Dispute with Columbia and Its Resolution ............................................2

    II.  The Instant Action and the Court's March 19, 2026, Opinion and Order ..........................4

    III. The Recent Stipulation Between the Government and Columbia ......................................6

LEGAL STANDARD..................................................................................................7

ARGUMENT................................................................................................................7

    I.   The Court Lacks Subject Matter Jurisdiction Because Plaintiffs' Only Remaining Claim Against the Government Is Now Moot.............................................................................7

    II.  No Exception to the Mootness Doctrine Applies ..............................................................12

CONCLUSION..........................................................................................................15

**Table of Authorities**

*Cases:*

*Already, LLC v. Nike, Inc.*,
  568 U.S. 85 (2013) .......................................................................................... 10
*City of Erie v. Pap's A.M.*,
  529 U.S. 277 (2000) ........................................................................................ 10
*Conn. Citizens Def. League, Inc. v. Lamont*,
  6 F.4th 439 (2d Cir. 2021) .............................................................................. 8
*Cook v. Colgate Univ.*,
  992 F.2d 17 (2d Cir. 1993) ............................................................................. 8
*DeFunis v. Odegaard*,
  416 U.S. 312 (1974) ........................................................................................ 14
*Dennin v. Conn. Interscholastic Athletic Conf., Inc.*,
  94 F.3d 96 (2d Cir. 1996) ............................................................................... 12
*Exxon Mobil Corp. v. Healey*,
  28 F.4th 383 (2d Cir. 2022) ......................................................................... 10, 11
*Green v. Mansour*,
  474 U.S. 64 (1985) .......................................................................................... 10
*Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo*,
  981 F.2d 50 (2d Cir. 1992) ........................................................................... 10, 14
*Kidder, Peabody & Co. v. Maxus Energy Corp.*,
  925 F.2d 556 (2d Cir. 1991) ........................................................................... 13
*Lewis v. Cont'l Bank Corp.*,
  494 U.S. 472 (1990) ........................................................................................ 10
*Liranzo v. United States*,
  690 F.3d 78 (2d Cir. 2012) ............................................................................. 7
*Mantena v. Johnson*,
  809 F.3d 721 (2d Cir. 2015) ........................................................................... 7
*Morrison v. Nat'l Australia Bank Ltd.*,
  547 F.3d 167 (2d Cir. 2008) ........................................................................... 7
*Neurological Surgery Prac. of Long Island, PLLC v. HHS*,
  145 F.4th 212 (2d Cir. 2025) ....................................................................... 8, 13
*Palmer v. Amazon.com, Inc.*,
  51 F.4th 491 (2d Cir. 2022) ........................................................................... 8
*Preiser v. Newkirk*,
  422 U.S. 395 (1975) ...................................................................................... 8, 11
*Prison Legal News v. Fed. Bureau of Prisons*,
  944 F.3d 868 (10th Cir. 2019) ..................................................................... 12, 13

*Robinson v. Overseas Military Sales Corp.*,
   21 F.3d 502 (2d Cir. 1994)............................................................................................ 11
*Sanders v. Wyman*,
   464 F.2d 488 (2d Cir. 1972)........................................................................................... 11
*Srour v. New York City, New York*,
   117 F.4th 72 (2d Cir. 2024)............................................................................................ 12
*Stokes v. Village of Wurtsboro*,
   818 F.2d 4 (2d Cir. 1987)......................................................................................... 11, 13
*Sunvestment Energy Grp. NY 64 LLC v. Nat'l Grid USA Servs. Co.*,
   116 F.4th 106 (2d Cir. 2024)......................................................................................... 11
*Town of Newburgh v. Newburgh EOM LLC*,
   151 F.4th 96 (2d Cir. 2025)........................................................................................... 12
*Wagschal v. Skoufis*,
   857 F. App'x 18 (2d Cir. 2021) ..................................................................................... 13
*Wagschal v. Skoufis*,
   442 F. Supp. 3d 612 (S.D.N.Y. 2020)........................................................................... 13

*Statutes:*

28 U.S.C. § 2201............................................................................................................... 11
42 U.S.C. § 2000d................................................................................................................ 1

The Executive Branch Defendants (or the "Government")[1] respectfully submit this memorandum of law in support of their motion to dismiss Plaintiffs Kam Koe, Pauline Poe, and Sam Soe's ("Plaintiffs") Third Amended Complaint ("TAC"), ECF No. 215, against them pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiffs, who are students at Columbia University ("Columbia" or the "University"), initially brought this action in March 2025 against the Government and Columbia, alleging violations of the Administrative Procedure Act ("APA"), Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*, and the First Amendment. Following the Court's March 19, 2026, Opinion and Order partially granting Defendants' motions to dismiss, the only cause of action remaining against the Government is a First Amendment claim involving a limited issue: whether the Government "coerced Columbia to adopt a definition of antisemitism"—namely, the definition adopted by Columbia's Task Force on Antisemitism ("Task Force") and the International Holocaust Remembrance Alliance ("IHRA") definition—"through which it would punish and suppress plaintiffs' political speech." ECF No. 175 at 6-9 ("Opinion and Order"). As the Court observed, if proven, the Government's conduct could be redressed by "enjoining the Agency defendants from threatening to withhold funds on that basis." *Id.* at 8-9.

The Government has no interest in the particular definition of antisemitism that Columbia adopts or incorporates into its antidiscrimination policies or disciplinary policies or procedures.

---

[1] The "Executive Branch Defendants" refer to Defendants Todd Blanche, in his official capacity as United States Attorney General; Linda McMahon, in her official capacity as Secretary of the United States Department of Education; Leo Terrell, in his official capacity as the head of the Department of Justice Task Force to Combat Anti-Semitism; Robert Foster, in his official capacity as Acting General Counsel of the United States Department of Health and Human Services; and Laura Stanton, in her official capacity as the Acting Commissioner of the General Services Administration's Federal Acquisition Service.

Consistent with this position, the Government and Columbia recently entered into a stipulation making clear that absent a court order or change in law requiring the Government to do so, the Government does not and will not require Columbia to adopt any particular definition of antisemitism in its antidiscrimination policies or disciplinary policies or procedures, including the Task Force definition or the IHRA definition. *See* Rovner Decl. Ex. A ("Stipulation"). The Stipulation also states that the Government will not condition any funding on Columbia's adoption of any particular definition of antisemitism in its antidiscrimination policies or disciplinary policies or procedures and will not investigate or impose any sanction on the basis that Columbia does not adopt any particular definition of antisemitism. *Id.*  In short, as stated in the Stipulation, Columbia is free not to adopt either the Task Force or IHRA definitions without repercussion from the Government.

As a result of the Stipulation, the limited remaining claim against the Government is moot. The Stipulation makes clear that the challenged conduct, to the extent it ever occurred (which the Government does not concede), has stopped and will not recur. Moreover, the Stipulation provides the only relief the Court could order against the Government to redress Plaintiffs' alleged injury.

For these reasons, the Court should dismiss the Third Amended Complaint against the Government pursuant to Rule 12(b)(1) as moot.

**BACKGROUND**

### I.    The Government's Dispute with Columbia and Its Resolution

On February 3, 2025, the United States Department of Justice ("DOJ") announced the formation of a multi-agency Task Force to Combat Anti-Semitism. *See* ECF No. 89, Gruenbaum Decl. ¶ 5. On March 3, 2025, the General Services Administration ("GSA") sent a memorandum to Columbia indicating that the Government Task Force was reviewing Government grants and contracts to Columbia. *See id*. ¶ 6 & Ex. A. On March 7, 2025, the Government announced the

2

"immediate cancellation of approximately $400 million in federal grants and contracts to Columbia." *Id*. ¶ 9.

On March 13, 2025, the Government sent a letter to Columbia outlining the "steps that [the Government] regard[s] as a precondition for formal negotiations regarding Columbia University's continued financial relationship with the United States government." ECF No. 215, TAC ¶ 107 n.91 (citing a letter available at https://s3.documentcloud.org/documents/25577971/31325-letter-to-columbia.pdf) ("March 13 Letter" or "Mar. 13 Ltr."). As relevant here, one of the steps required Columbia to adopt a definition of antisemitism and, although it did not mandate any particular definition, cited the IHRA definition contained in Executive Order 13899 as an example.

On March 21, 2025, Columbia released a memorandum entitled, "Advancing Our Work to Combat Discrimination, Harassment and Antisemitism at Columbia." TAC ¶ 124 n.100 (citing a memorandum available at https://president.columbia.edu/sites/default/files/content/03.21.2025%20Columbia%20-%20FINAL.pdf) (the "March 21 Memo"). It announced various actions, including that Columbia's antidiscrimination policy will "incorporate the definition of antisemitism recommended by Columbia's Antisemitism Taskforce in August 2024." *Id.* at 2.

At a March 25, 2025, hearing in this action, Columbia's counsel indicated that "all [of] the 18 actions that were announced on March 21 were . . . under review and work and development for many months. . . . [The March 13 Letter] essentially crystallized those lines of effort and affected timing. But all of those lines of effort were in play and were ongoing for some significant periods of time before the March 13 letter and ultimate March 21 announcement." ECF No. 87, Oestericher Decl. Ex. C, March 25, 2025, Tr. at 65:1-8 ("Tr.").

On July 15, 2025, Columbia announced that after consultation with its Jewish community, and friends and experts outside of the University, in addition to the Columbia Task Force definition

of antisemitism, it was also incorporating the IHRA definition of antisemitism into its antidiscrimination policies. *See* ECF No. 123 (citing Columbia University Office of the President, "Our Additional Commitments to Combatting Antisemitism," https://president.columbia.edu/news/our-additional-commitments-combatting-antisemitism).

On July 23, 2025, the Government entered into a Resolution Agreement with Columbia that restored "a vast majority" of its funding. *See* ECF No. 124 (Columbia University Office of the President, "Our Resolution With the Federal Government," https://president.columbia.edu/content/our-resolution-federal-government; "Resolution Agreement," https://perma.cc/84EG-8MUC). The agreement included many of the steps outlined in Columbia's March 21 Memo, but it did not include any provision relating to Columbia's adoption of a particular definition of antisemitism.

## II.    The Instant Action and the Court's March 19, 2026, Opinion and Order

Plaintiffs, who initially consisted of eight Columbia students, filed their Complaint on March 13, 2025, against, among others, Columbia and various Congressional Defendants, ECF No. 1, which they amended on March 19, 2025, to add the Executive Branch Defendants, ECF No. 13. On the same day, Plaintiffs moved for a temporary restraining order, ECF Nos. 15 & 17, which the Court denied on April 4, 2025, including because Plaintiffs failed to sufficiently plead standing to challenge the Executive Branch Defendants' actions, ECF No. 54. The Court granted Plaintiffs leave to further amend their Amended Complaint. *Id.*

Plaintiffs filed a Second Amended Complaint ("SAC") on April 18, 2025. ECF No. 62. As against the Executive Branch Defendants, Plaintiffs asserted, first, that the withholding of funds violated the APA and Title VI. *Id.* ¶¶ 198-207. Second, they asserted that the Executive Branch Defendants, through the March 13 Letter—particularly in its condition relating to the definition of

4

antisemitism, *id.* ¶ 113, as well as other conditions relating to the banning of masks intended to conceal identity or intimidate others, *id.* ¶ 111, and placing the Middle Eastern, South Asian, and African Studies ("MESAAS") department into a receivership, *id.* ¶ 110—sought to "control, suppress, and chill the speech, expressive, and associational rights of Plaintiffs," SAC ¶ 177, in violation of the First Amendment, *id.* ¶¶ 175-81.

After the parties engaged in motion practice, the Court issued an Opinion and Order on March 19, 2026, dismissing Plaintiffs' APA and Title VI claim as moot given that the Government had restored the relevant grant funding to Columbia. ECF No. 175 at 20.[2] With respect to Plaintiffs' First Amendment claim against the Executive Branch Defendants, the Court concluded that only two of the eight Plaintiffs, Kam Koe and Sam Soe, had standing to challenge the Government's actions because these Plaintiffs had "plausibly allege[d] that the Agency defendants coerced Columbia to adopt a definition of antisemitism"—namely, the Task Force and/or IHRA definitions—"through which it would punish and suppress plaintiffs' political speech." *Id.* at 6-8. The Court further concluded that, if proven, the conduct could be redressed by "an injunction preventing Columbia from considering (at least portions of) the Taskforce or IHRA antisemitism definitions (and accompanying examples) in determining whether to discipline plaintiffs for their contemplated speech" and "enjoining the Agency defendants from threatening to withhold funds on that basis." *Id.* at 8-9. The Court further explained that the Second Amended Complaint raised two additional issues relating to the March 13 Letter, namely a "face mask ban" purportedly implemented by Columbia and changes to Columbia's MESAAS department, but the Court concluded that Plaintiffs did not have standing to pursue these issues and therefore "their

---

[2] The Court also dismissed the claim against the Congressional Defendants. *Id.* at 4-5.

challenges to these other actions by Columbia fail." *Id.* at 9. Finally, the Court denied Plaintiffs'

motion for a preliminary injunction. *Id.* at 22-23.

On May 30, 2026, Plaintiffs moved for leave to file a Third Amended Complaint, to add

Plaintiff Pauline Poe. ECF No. 189. Although Plaintiffs' Third Amended Complaint included

parties and claims that the Court had dismissed, Plaintiffs represented that they only sought to

assert claims that remained in the action following the Court's Opinion and Order. ECF No. 189-

1 at 5; ECF No. 194; ECF No. 206 at 5. On July 28, 2026, the Court granted in part Plaintiffs'

motion to file a Third Amended Complaint, stating that Plaintiffs could add Ms. Poe to assert non-

dismissed claims relating to the March 13 Letter, but that she did not have standing to assert a

separate claim relating to Columbia only, or any other claim that the Court had dismissed. ECF

No. 211 at 8. On August 3, 2026, Plaintiffs filed a Third Amended Complaint, which was identical

to the Third Amended Complaint they sought leave to file and contained no revisions despite the

Court's order only partially granting their motion to amend. ECF No. 212 (refiled due to filing

deficiencies at ECF Nos. 213-15).

### III.    The Recent Stipulation Between the Government and Columbia

In a stipulation signed by the Government, through counsel, on July 30, 2026, and by

Columbia, through counsel, on August 5, 2026, the Government and Columbia agreed to the

following:

> 1.    Absent a court order or change in the law requiring the United States Government to do so, the United States Government does not and will not:
>
>> (a)    Require that Columbia adopt, incorporate, reference, or maintain any particular definition of antisemitism in its antidiscrimination policies or disciplinary policies or procedures, including the Task Force definition or the IHRA definition;

(b)     Condition any contract, grant, award, funding, or benefit on Columbia adopting, incorporating, referencing, or maintaining any particular definition of antisemitism in its antidiscrimination policies or disciplinary policies or procedures, including the Task Force definition or the IHRA definition; or

(c)     Initiate any investigation or compliance review, bring any claims, or impose any sanction on Columbia on the basis that Columbia does not adopt, incorporate, reference, or maintain any particular definition of antisemitism in its antidiscrimination policies or disciplinary policies or procedures, including the Task Force definition or the IHRA definition.

2.     Columbia is free not to adopt, incorporate, reference, or maintain the Task Force definition or the IHRA definition in its antidiscrimination policies or disciplinary policies or procedures without repercussion from the United States Government, absent a court order or change in the law to the contrary.

Rovner Decl. Ex. A ("Stipulation").

## LEGAL STANDARD

"[A] claim is properly dismissed . . . under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted). On a Rule 12(b)(1) motion to dismiss, Plaintiffs bear the burden of "'proving subject matter jurisdiction by a preponderance of the evidence.'" *Mantena v. Johnson*, 809 F.3d 721, 727 (2d Cir. 2015) (quoting *Liranzo v. United States*, 690 F.3d 78, 84 (2d Cir. 2012)). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings." *Morrison*, 547 F.3d at 170.

## ARGUMENT

I.  **The Court Lacks Subject Matter Jurisdiction Because Plaintiffs' Only Remaining Claim Against the Government Is Now Moot**

The Court should dismiss Plaintiffs' sole remaining claim against the Government as moot. Article III of the Constitution requires that a live case or controversy must exist at all stages of

federal court proceedings to support a court's subject matter jurisdiction. *See Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). The mootness doctrine "'ensures that [a] litigant's interest in the outcome continues to exist throughout the life of the lawsuit.'" *Neurological Surgery Prac. of Long Island, PLLC v. HHS*, 145 F.4th 212, 223 (2d Cir. 2025) (quoting *Palmer v. Amazon.com, Inc.*, 51 F.4th 491, 503 (2d Cir. 2022)). "If because of changed circumstances 'a case that presented an actual redressable injury at the time it was filed ceases to involve such an injury, it ceases to fall within a federal court's Article III subject matter jurisdiction and must be dismissed for mootness.'" *Palmer*, 51 F.4th at 503 (quoting *Conn. Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439, 444 (2d Cir. 2021)). "A case becomes moot when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Id.* (internal quotation marks omitted). So, "a case that is live at the outset may become moot when it becomes impossible for the courts, through the exercise of their remedial powers, to do anything to redress the injury." *Cook v. Colgate Univ.*, 992 F.2d 17, 19 (2d Cir. 1993) (internal quotation marks omitted).

The only remaining cause of action in this case against the Government is a First Amendment claim relating to the limited issue of whether the Government coerced Columbia to adopt a particular definition of antisemitism into its antidiscrimination policies under which students can be disciplined. *See* Opinion and Order at 6-9, 20 (explaining that Plaintiffs Koe and Soe "plausibly allege[d] that the Agency defendants coerced Columbia to adopt a definition of antisemitism through which it would punish and suppress plaintiffs' political speech" and dismissing other aspects of Plaintiffs' First Amendment claim, as well as their APA/Title VI claim). The Court stated in its Opinion and Order that, if proven, this alleged Government conduct could be redressed by "enjoining the Agency defendants from threatening to withhold funds on

8

th[e] basis" that Columbia did not adopt the Task Force or IHRA antisemitism definitions in its antidiscrimination or disciplinary policies. *Id.* at 8-9.

The Stipulation recently entered into between the Government and Columbia moots this sole remaining claim. Indeed, the Government has now voluntarily agreed to even more extensive relief than what the Court noted Plaintiffs, if their allegations were proven, may be entitled to as against the Executive Branch Defendants. The Stipulation makes clear that, absent a court order or change in law requiring the Government to do so, the Government will not "[r]equire that Columbia adopt, incorporate, reference, or maintain any particular definition of antisemitism in its antidiscrimination policies or disciplinary policies or procedures, including the Task Force definition or the IHRA definition." Stip. ¶ 1(a). Nor will the Government "[c]ondition any . . . funding . . . on Columbia adopting, incorporating, referencing, or maintaining any particular definition of antisemitism in its antidiscrimination policies or disciplinary policies or procedures, including the Task Force definition or the IHRA definition." *Id.* at ¶ 1(b). Nor will the Government "[i]nitiate any investigation or compliance review, bring any claims, or impose any sanction on Columbia on the basis that Columbia does not adopt, incorporate, reference, or maintain any particular definition of antisemitism in its antidiscrimination policies or disciplinary policies or procedures, including the Task Force definition or the IHRA definition." *Id.* at ¶ 1(c). In short, "Columbia is free not to adopt, incorporate, reference, or maintain the Task Force definition or the IHRA definition in its antidiscrimination policies or disciplinary policies or procedures without repercussion from the United States Government." *Id.* at ¶ 2.

Without conceding Plaintiffs' ability to sufficiently allege or prove that the Government coerced Columbia to adopt any particular definition of antisemitism in the past, the Government has now explicitly and voluntarily stipulated that it will not engage in the challenged conduct in

9

the future. The Stipulation also voluntarily goes far beyond the relief that the Court noted would redress Plaintiffs' alleged injury—enjoining the Government from conditioning funding on Columbia's adoption of the Task Force or IHRA definitions—given that it delineates that there will be no sanctions whatsoever relating to Columbia's adoption of any particular definition of antisemitism.

As the Supreme Court has explained, "when the challenged conduct ceases," it becomes impossible for the court to grant any effectual relief, and "any opinion as to the legality of the challenged action would be advisory." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (citations and internal quotation marks omitted; alteration in original). In other words, the Stipulation ensures that the Government will not be "free to return to [its alleged] old ways." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 92 (2013) (internal quotation and citation omitted); *see also Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo*, 981 F.2d 50, 59 (2d Cir. 1992) (holding that state's adoption of emergency regulations suspending the challenged program following a lawsuit was sufficient to establish mootness).

To the extent Plaintiffs might argue that the Court could order declaratory relief relating to the Government's alleged past conduct (based on Plaintiffs' vague request for unspecified declaratory judgment in their Third Amended Complaint, *see* TAC ¶ 33, Prayer for Relief), they would be mistaken. As this Circuit has recognized, "the Supreme Court [has] made clear that a request for a declaratory judgment as to a past violation cannot itself establish a case or controversy to avoid mootness." *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 394-95 (2d Cir. 2022) (citing *Green v. Mansour*, 474 U.S. 64, 73-74 (1985)); *see also Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 479 (1990) ("Even in order to pursue the declaratory and injunctive claims," plaintiffs must

10

establish a "specific live grievance" (cleaned up and citations omitted)).[3] Plaintiffs also have not

sought compensatory damages against the Executive Branch Defendants, who are sued only in

their official capacities, nor could they seek such relief. *See* TAC, Prayer for Relief; ECF No. 98

(dismissing individual capacity claims); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502,

510 (2d Cir. 1994) (affirming dismissal of constitutional damages claims against federal agencies

and federal employees in their official capacities on the basis of sovereign immunity).

At bottom, in light of the Stipulation, there is no longer a real and substantial controversy

between the Government and Plaintiffs for which the Court can grant effective relief. *See Preiser*,

422 U.S. at 401 (stating that the judgments of federal courts "must resolve a real and substantial

controversy admitting of specific relief through a decree of a conclusive character, as distinguished

from an opinion advising what the law would be upon a hypothetical state of facts" (internal

quotations and citations omitted)).

Courts have not hesitated to find cases moot under similar circumstances. *See, e.g.*, *Exxon*

*Mobil Corp.*, 28 F.4th at 393-94 (holding, in case seeking injunctive and declaratory relief for First

Amendment violations, that stipulation between the parties rendered the case moot, because "[a]s

we have previously recognized, assurances made in stipulations that agree to provide the relief

sought leaves this Court without a role with respect to such relief, particularly where there is 'no

indication that [the] understanding [between the parties] has . . . been breached'" (citing *Sanders*

*v. Wyman*, 464 F.2d 488, 490-91 (2d Cir. 1972) (alterations in *Exxon Mobil*))); *Stokes v. Village*

*of Wurtsboro*, 818 F.2d 4, 5 (2d Cir. 1987) (concluding that a stipulation entered into by a locality

---

[3] Further, the Declaratory Judgment Act, 28 U.S.C. § 2201, on which Plaintiffs rely, "does not
create an independent basis for federal subject-matter jurisdiction," and it "only provides courts
with discretion to fashion a remedy, not a cause of action." *Sunvestment Energy Grp. NY 64 LLC
v. Nat'l Grid USA Servs. Co.*, 116 F.4th 106, 113-14 (2d Cir. 2024).

not to apply a local law to terminate plaintiffs' water service rendered moot plaintiffs' constitutional claim for which they sought declaratory relief); *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 875, 882-83 (10th Cir. 2019) (holding, among other things, that where publisher alleged that prison violated its First Amendment rights and sought injunctive and declaratory relief relating to the withholding of publications from inmates, warden's declaration stating that the prison would not withhold publications in the future was sufficient to moot the issue of whether the court should order the prison to deliver future publications).

## II.    No Exception to the Mootness Doctrine Applies

Although the Second Circuit has recognized "exceptions to the mootness doctrine includ[ing] voluntary cessation cases and cases capable of repetition but evading review," *Srour v. New York City, New York*, 117 F.4th 72, 81 (2d Cir. 2024) (internal citation and quotation omitted), these exceptions do not apply here.

The exception for conduct that is capable of repetition, yet evading review involves challenged conduct that "is too short in duration to be fully litigated before it ceases, and it is probable that the pleading party will need to seek the same relief from the defendant's same conduct again in the future." *Town of Newburgh v. Newburgh EOM LLC*, 151 F.4th 96, 102 (2d Cir. 2025) (internal quotation and citation omitted). Here, in light of the Stipulation, it is not probable that Plaintiffs will need to seek the same relief relating to the Government's same conduct in the future. Although Plaintiffs could argue that it may be "theoretically possible" for the Government to disregard the Stipulation it entered into with Columbia, or for a court order or change in the law to require the Government to do so, such "mere speculation" about the Government's future actions and their possible effects on Plaintiffs "does not rise to the level of a reasonable expectation or demonstrated probability of recurrence." *Id.* (quoting *Dennin v. Conn. Interscholastic Athletic Conf., Inc.*, 94 F.3d 96, 101 (2d Cir. 1996) (internal quotation marks and

citation omitted)). "As courts in this Circuit have held, it is inappropriate for courts to revive a moot case by speculating about a defendant's future actions." *Wagschal v. Skoufis*, 442 F. Supp. 3d 612, 622 (S.D.N.Y. 2020) (cleaned up), *aff'd*, 857 F. App'x 18 (2d Cir. 2021). The Government also has no objection to the Court so ordering the Stipulation between the Government and Columbia, to the extent that would provide even greater assurance to Plaintiffs or the Court that the alleged conduct will not recur. *Cf. Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 563 (2d Cir. 1991) (recognizing that "where the defendant has 'entered into a binding, judicially enforceable agreement,' . . . the claims inarguably were moot") (citing *Stokes*, 818 F.2d at 5).

Further, all three Plaintiffs with claims against the Government likely will have graduated by Spring 2029, *see* TAC ¶¶ 18, 20-21, making it even more unlikely that they will need to seek the same relief resulting from the Government's alleged conduct in the future. Accordingly, the exception for cases capable of repetition but evading review does not apply here.

The same is true for the voluntary cessation exception. Under that exception, "a defendant must demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Neurological Surgery*, 145 F.4th at 223 (internal quotation and citation omitted).

Here, as discussed, the Government has demonstrated that there is no reasonable expectation that the alleged violation will recur. *See Neurological Surgery*, 145 F.4th at 224 ("only a theoretical and speculative possibility" of recurrence insufficient to meet test) (internal quotation and citation omitted); *see also, e.g.*, *Prison Legal News*, 944 F.3d at 875, 883-84 (where prison changed administrative policies relating to withholding of publications from inmates, and warden

13

submitted declaration stating that these policies would continue going forward, voluntary cessation exception did not apply as there was no reasonable chance of recurrence of alleged violations of publisher's First Amendment rights in the future); *Harrison*, 981 F.2d at 59 ("Some deference must be accorded to a state's representations that certain conduct has been discontinued." (citing *DeFunis v. Odegaard*, 416 U.S. 312, 317 (1974))).

Further, the Government's agreement in the Stipulation that Columbia is not required to adopt any particular definition of antisemitism in its antidiscrimination or disciplinary policies and that the Government will not condition funding on the adoption of any particular definition of antisemitism means that the Government has done its part to eradicate the effects of any alleged violation. Stip. ¶ 1. As stated in the Stipulation, Columbia is free to change its definitions if it wishes, and not to adopt the Task Force or IHRA definitions in its antidiscrimination or disciplinary policies without repercussion from the Government. *Id.* ¶ 2. To the extent Columbia does not wish to change the definitions of antisemitism incorporated into its policies, that would be a result of Columbia's own choice rather than any action coerced by the Government. As such, there is no longer effective relief for the Court to order against the Government, and this action against the Executive Branch Defendants is therefore moot.

14

## CONCLUSION

For the foregoing reasons, the Court should grant the Executive Branch Defendants'

motion and dismiss Plaintiffs' Third Amended Complaint against them in full.

Dated: New York, New York
   August 11, 2026

             Respectfully submitted,

             JAMES M. MCDONALD
             United States Attorney for the
             Southern District of New York
             Attorney for Executive Branch Defendants

  By:  */s/ Allison M. Rovner*
             ALLISON M. ROVNER
             Assistant United States Attorney
             86 Chambers Street, 3rd Floor
             New York, New York 10007
             Telephone: (212) 637-2691
             E-mail: allison.rovner@usdoj.gov

15

**Certificate of Compliance**

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 4,325 words.

16