**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MAHMOUD KHALIL, *et al.*,<br><br>             *Plaintiffs,*<br><br>      v.<br><br>TRUSTEES OF COLUMBIA UNIVERSITY<br>IN THE CITY OF NEW YORK, *et al.*,<br><br>             *Defendants.* | No. 1:25 Civ. 02079 (AS)<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS TRUSTEES OF COLUMBIA UNIVERSITY IN THE**
**CITY OF NEW YORK AND ACTING PRESIDENT CLAIRE SHIPMAN'S**
**MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION**
**TO DISMISS THE THIRD AMENDED COMPLAINT**

Marshall L. Miller (Lead Counsel)
Gabrielle E. Tenzer
Zachary Piaker
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
(212) 763-0883
mmiller@heckerfink.com
gtenzer@heckerfink.com
zpiaker@heckerfink.com

Trisha Anderson
HECKER FINK LLP
1050 K Street NW, 10th Floor
Washington, DC 20001
(212) 763-0883
tanderson@heckerfink.com

*Attorneys for Defendants Trustees*
*of Columbia University in the City*
*of New York and Acting President*
*Claire Shipman*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................ii

PRELIMINARY STATEMENT ........................................................................................... 1

RELEVANT BACKGROUND ............................................................................................. 2

LEGAL STANDARD............................................................................................................ 6

ARGUMENT......................................................................................................................... 7

I.     Plaintiffs' First Amendment Claim Relating to Columbia's Antisemitism Definition
       Is Moot ...................................................................................................................... 7

       A.    No Effectual Relief Remains for the Claim Relating to Columbia's
             Antisemitism Definition ................................................................................. 7

       B.    The Voluntary Cessation Doctrine Does Not Apply ................................... 10

II.    Plaintiffs' Claim Relating to the Committee's Request for Records Is Also Moot.......... 13

       A.    Plaintiffs Do Not Face Any Future Harm from the Disclosure of Additional
             Records to the Committee............................................................................. 13

       B.    There Is No Reasonable Expectation that Plaintiffs' Records Will Be Disclosed
             in the Future ................................................................................................. 16

CONCLUSION.................................................................................................................... 17

# TABLE OF AUTHORITIES

**CASES**

*Albert v. Carovano*,
851 F.2d 561 (2d Cir. 1988)......................................................................... 8, 12

*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013)....................................................................................... 9, 11

*Am. Freedom Def. Initiative v. Metro. Transp. Auth.*,
815 F.3d 105 (2d Cir. 2016)................................................................ 11, 12, 15

*Bldg. & Const. Trades Council of Buffalo, N.Y. & Vicinity v. Downtown Dev., Inc.*,
448 F.3d 138 (2d Cir. 2006).......................................................................... 6, 14

*Broidy Cap. Mgmt. v. Benomar*,
944 F.3d 436 (2d Cir. 2019)............................................................................. 6

*Child.'s Health Def. v. Meta Platforms, Inc.*,
112 F.4th 742 (9th Cir. 2024) ......................................................................... 8

*Coll. Standard Mag. v. Student Ass'n of State Univ. of N.Y. at Albany*,
610 F.3d 33 (2d Cir. 2010).............................................................................. 14

*County of Los Angeles v. Davis*,
440 U.S. 625 (1979)........................................................................................ 11

*County of Suffolk v. Sebelius*,
605 F.3d 135 (2d Cir. 2010)........................................................................... 6, 9

*Doe v. Harris*,
696 F.2d 109 (D.C. Cir. 1982) ........................................................................ 15

*Doe v. Wooten*,
747 F.3d 1317 (11th Cir. 2014) ...................................................................... 10

*Exxon Mobil Corp. v. Healey*,
28 F.4th 383 (2d Cir. 2022) ............................................................................. 9

*Fox v. Bd. of Trs. of State Univ. of N.Y.*,
42 F.3d 135 (2d Cir. 1994)................................................................................ 6

*Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo*,
981 F.2d 50 (2d Cir. 1992)................................................................................ 9

*Husain v. Springer*,
　　193 F. Supp. 2d 664 (E.D.N.Y. 2002) ................................................................ 14

*Iron Arrow Honor Soc'y v. Heckler*,
　　464 U.S. 67 (1983) ............................................................................................. 13

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
　　511 U.S. 375 (1994) ........................................................................................... 10

*Kupperman v. U.S. House of Representatives*,
　　436 F. Supp. 3d 186 (D.D.C. 2019) .................................................................. 14

*Logan v. Bennington Coll. Corp.*,
　　72 F.3d 1017 (2d Cir. 1995) ........................................................................... 8, 12

*McDonnell Douglas Corp. v. NASA*,
　　102 F. Supp. 2d 21 (D.D.C. 2000) .................................................................... 15

*Neurological Surgery Prac. of Long Island, PLLC v. U.S. Dep't of Health & Hum.
　　Servs.*,
　　145 F.4th 212 (2d Cir. 2025) ....................................................................... 11, 16

*Stagg, P.C. v. U.S. Dep't of State*,
　　983 F.3d 589 (2d Cir. 2020) ................................................................................ 6

*Stokes v. Village of Wurtsburo*,
　　818 F.2d 4 (2d Cir. 1987) .................................................................................... 9

*Thomas v. City of Memphis*,
　　996 F.3d 318 (6th Cir. 2021) ............................................................................ 10

*Unified Sch. Dist. No. 259, Sedgwick Cnty., Kan. v. Disability Rts. Ctr. of Kan.*,
　　491 F.3d 1143 (10th Cir. 2007) ........................................................................ 16

*Univ. at Buffalo Young Ams. for Freedom v. Univ. at Buffalo Student Ass'n Inc.*,
　　No. 23 Civ. 480, 2024 WL 5119779 (W.D.N.Y. Dec. 15, 2024) ..................... 14

*Woytowicz v. George Washington Univ.*,
　　327 F. Supp. 3d 105 (D.D.C. 2018) .................................................................... 8

**FEDERAL RULES**

Fed. R. Civ. P. 12(a)(4) ............................................................................................ 3

Fed. R. Civ. P. 12(b)(1) ......................................................................................... 3, 6

**PRELIMINARY STATEMENT**

Under a prior ruling of this Court, Plaintiffs have two remaining claims against Columbia. They assert, in short, that Columbia and the defendant Executive Branch agency officials in this case (the "Agency Defendants") violated their First Amendment rights because the Agency Defendants allegedly coerced Columbia, a private university, into adopting a definition of antisemitism that they assert stifles their protected speech. They also claim that Columbia and the U.S. House of Representatives Committee on Education and Workforce and its chairman (the "Dismissed Congressional Defendants" or the "Committee") violated their First Amendment rights because the Committee allegedly coerced Columbia to disclose their disciplinary records, and threat of additional disclosure is purportedly subjecting them to First Amendment harm.

Both sets of claims have become moot due to intervening events, and this Court should now dismiss Plaintiffs' remaining claims against Columbia for lack of subject matter jurisdiction. On August 5, 2026, the United States and Columbia entered into a stipulation (the "Stipulation") that conclusively commits the United States to the position that it "does not and will not" require Columbia to "adopt, incorporate, reference, or maintain any particular definition of antisemitism," nor will it condition any federal funding or benefits on Columbia's adoption of any such definition, nor initiate any investigation or impose any sanction based on Columbia's choices regarding antisemitism definitions. This unequivocal and binding commitment moots Plaintiffs' First Amendment claim against Columbia related to the Agency Defendants because it eliminates the alleged element of state action, which is a necessary predicate for Plaintiffs' claim against Columbia, a non-state actor.

Plaintiffs' claim relating to the Committee's request for documents is also now moot. Columbia last produced documents to the Committee approximately 17 months ago, and during

that time, the Committee has not followed up to seek more documents. In addition, Columbia recently sent a letter to the Committee declaring that it will not produce any further documents. The Committee responded to acknowledge Columbia's letter and did not raise any objection or concern about Columbia's position. In light of Columbia's definitive statement and the Committee's non-objection, there is no reasonable expectation that Columbia will be coerced into producing more records relating to Plaintiffs in response to the Committee request at issue.

Although Columbia believes these events are sufficient to moot the case, to the extent there is any question about future recurrence of the conduct that forms the basis of Plaintiffs' claims, this Court may so order the Stipulation or incorporate its terms into the Court's dismissal order. Similarly, the Court may condition its dismissal on continuing compliance with its standing order requiring Columbia to provide advance notice to the Court and Plaintiffs of any future productions of Plaintiffs' records in response to the Committee request at issue. Taking these steps would eliminate any prospect that the conduct challenged by Plaintiffs would recur.

In light of these changed circumstances, the Court should dismiss all of Plaintiffs' remaining claims against Columbia as moot.

## RELEVANT BACKGROUND

Plaintiffs allege in this action that the Agency Defendants and the Dismissed Congressional Defendants unlawfully coerced Defendants Trustees of Columbia University in the City of New York and Acting President Claire Shipman (together "Columbia" or "the University") to suppress Plaintiffs' protected speech in violation of the First Amendment.[1] Plaintiffs initially sought a temporary restraining order, which this Court denied. ECF 54. But the Court entered an order

---

[1] Although Claire Shipman is named as a defendant "in her dual official capacities as Interim President of Columbia University" and "as Co-Chair of the Trustees of Columbia University in the City of New York" in the recently filed Third Amended Complaint, ECF 215 at 1, she no longer serves in either role.

requiring Columbia to notify Plaintiffs and the Court "[a]t least thirty days before furnishing to Congress any student records, or student identities' in records already produced." *Id.* at 2. Plaintiffs subsequently filed a Second Amended Complaint in which they asserted five causes of action: Counts I through III alleged violations of the First Amendment by the Dismissed Congressional Defendants, the Agency Defendants, and Columbia, respectively; Count IV asserted an Administrative Procedure Act ("APA") claim against the Agency Defendants; and Count V asserted a breach of contract claim against Columbia. ECF 62 at 54–72. Plaintiffs also sought a preliminary injunction. ECF 99. All defendants opposed the injunction and moved to dismiss the Second Amended Complaint. ECF 81, 84, 86, 115, 116, 118.

On March 19, 2026, this Court issued an Opinion and Order (the "March 19 Opinion") granting the Dismissed Congressional Defendants' motion to dismiss, granting in part and denying in part the Agency Defendants' and Columbia's motions to dismiss, and denying Plaintiffs' motion for a preliminary injunction without prejudice. ECF 175 ("Op."). The Court dismissed Count I against the Dismissed Congressional Defendants on Speech or Debate grounds, dismissed Count IV against the Agency Defendants, and dismissed Count V against Columbia. *Id.* at 4–5, 20–22.

Although this Court declined to dismiss Plaintiffs' two First Amendment claims against Columbia in Count III, it narrowed them in significant respects. For the claims pertaining to alleged Executive Branch coercion of Columbia, the Court determined that only two Plaintiffs had plausibly alleged facts to support their standing to assert that the Agency Defendants (in Count II) and Columbia (in Count III) violated their First Amendment rights.[2] Op. 8–9. It also narrowed the scope of these Plaintiffs' claims to their allegation that the Agency Defendants, by sending a March

---

[2] Plaintiffs have since been granted leave to file a Third Amended Complaint adding a third Plaintiff to this claim only. ECF 211. The filing of this Rule 12(b)(1) motion postpones Columbia's deadline to file a responsive pleading to the Third Amended Complaint until 14 days after the Court rules on this motion. Fed. R. Civ. P. 12(a)(4).

13, 2025 letter in which they conveyed negotiating positions concerning Columbia's access to certain funding (the "March 13 Letter"), coerced Columbia into adopting a definition of antisemitism that Plaintiffs claim suppresses their protected speech. *Id.* And for the claim pertaining to alleged Legislative Branch coercion, the Court ruled that only four Plaintiffs had plausibly alleged facts to support standing to assert that their First Amendment rights were violated by the Dismissed Congressional Defendants allegedly coercing Columbia to produce their records in response to a February 13, 2025 letter from the Committee that requested disciplinary records relating to eleven specific events (the "February 13 Letter"). *Id.* at 12.

In concluding that certain Plaintiffs had plausibly alleged facts to support Counts II and III, the Court's ruling was necessarily and expressly preliminary. The Court emphasized that its review was limited to "whether the complaint, when its factual allegations are accepted as true and viewed in the light most favorable to plaintiffs, alleges a viable claim for relief warranting discovery." *Id.* at 20. The Court explained that "[m]any of the arguments raised by the defendants may have force down the road," and that "it may turn out Columbia acted on its own volition to address the important goal of stopping antisemitic harassment on campus, and that it isn't being pressured— and has no intent—to suppress any student's protected political speech." *Id.*

Two material developments have occurred that now eliminate the predicates for Plaintiffs' remaining First Amendment claims against Columbia, a non-state actor, and render them moot. First, regarding the three remaining Plaintiffs' claim relating to the Agency Defendants, the federal government entered a Stipulation with Columbia, signed by the parties on July 30 and August 5, 2026, that conclusively removes any state action predicate for Plaintiffs' First Amendment claim. *See* Ex. A. The Stipulation commits the federal government to: (a) not requiring Columbia to "adopt, incorporate, reference, or maintain any particular definition of antisemitism in its

4

antidiscrimination policies or disciplinary policies or procedures, including the Task Force Definition or the IHRA definition"; (b) not conditioning any contract or funding on Columbia's adoption of any such definition; and (c) not investigating or sanctioning Columbia based on its choices regarding antisemitism definitions. *Id.* at 2. The Stipulation further provides that Columbia "is free not to adopt, incorporate, reference, or maintain" any particular definition of antisemitism "in its antidiscrimination policies or disciplinary policies or procedures without repercussion from the United States Government." *Id.* at 2–3. The Stipulation makes clear that any definition of antisemitism Columbia uses in considering discipline, including for Plaintiffs, is its sole choice, not the government's.

Second, regarding the four remaining Plaintiffs' claim about disclosures to the Committee, Columbia has unequivocally informed the Committee in writing that Columbia "will not be producing any additional records in response to the Letter dated February 13, 2025, and understands that there are no other outstanding requests." Ex. B. In response, the Committee has acknowledged that "Columbia has completed production of the records it intends to produce in response to the Committee's February 13, 2025 letter." Ex. C. The Committee raised no objection to this position and merely noted that "it will issue one or more new requests to Columbia" to the extent it seeks any additional records. *Id.* This exchange occurred well over a year after Columbia last produced documents to the Committee in response to the February 13 Letter, during which time the Committee requested no further documents. Indeed, as far back as April 2025, the Committee had made clear that it was not "currently asking for any further records." ECF 54 at 2. In light of Columbia's definitive statement that it "will not be producing any additional records," and the Committee's non-objection to that position, there is no reasonable prospect that the

Committee will coerce Columbia to produce further disciplinary records for the remaining Plaintiffs, or that Columbia will produce them.

**LEGAL STANDARD**

Columbia brings this motion pursuant to Federal Rule of Civil Procedure 12(b)(1), seeking dismissal for lack of subject matter jurisdiction on the ground that Plaintiffs' remaining claims are moot. "When a case becomes moot, the federal courts lack[] subject matter jurisdiction over the action. Defects in subject matter jurisdiction cannot be waived and may be raised at any time during the proceedings." *Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994) (quotation marks omitted).

Article III and the doctrine of mootness require that a plaintiff's "personal stake in the outcome of the litigation must be extant at all stages of review, not merely at the time the complaint is filed." *Stagg, P.C. v. U.S. Dep't of State*, 983 F.3d 589, 601 (2d Cir. 2020) (quotation marks omitted). A case becomes moot, and a court's "subject matter jurisdiction ceases when an event occurs during the course of the proceedings or on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party." *County of Suffolk v. Sebelius*, 605 F.3d 135, 140 (2d Cir. 2010) (quotation marks omitted). A defendant has the burden of showing that it is "absolutely clear" that the allegedly wrongful conduct cannot "reasonably be expected to start up again." *Bldg. & Const. Trades Council v. Downtown Dev., Inc.*, 448 F.3d 138, 151 (2d Cir. 2006) (citation omitted).

In resolving a motion to dismiss under Rule 12(b)(1), "[t]he district court can refer to evidence outside the pleadings" and "evidentiary matters may be presented by affidavit or otherwise." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 441 (2d Cir. 2019) (cleaned up). The Court is therefore not limited to the four corners of the Third Amended Complaint in assessing

6

whether Plaintiffs' claims have been rendered moot by the Stipulation and the recent correspondence between Columbia and the Committee.

## ARGUMENT

### I. Plaintiffs' First Amendment Claim Relating to Columbia's Antisemitism Definition Is Moot

The three Plaintiffs' remaining First Amendment claim against Columbia pertaining to the March 13 Letter depends on the theory that the particular definition of antisemitism employed by Columbia, a private university, is the product of coercion by the Agency Defendants, making Columbia a state actor to the extent it applies that definition in its antidiscrimination policy to suppress their speech. *See* Op. 14 ("Because the Free Speech Clause 'prohibits only *governmental* abridgement of speech,' plaintiffs must plausibly allege that Columbia qualifies as a 'state actor' to assert First Amendment claims against it."). Although this Court previously assessed that Plaintiffs had plausibly alleged that the Agency Defendants significantly encouraged or coerced Columbia into adopting its revised definition of antisemitism, *see id.* at 14, 16–18, its analysis was explicitly rooted in the circumstances that existed at the time of the original motions to dismiss. Circumstances have now changed as a result of the Stipulation: the federal government's commitment in that Stipulation conclusively eliminates any possible government coercion and renders this claim moot. There is no longer any live controversy and no effectual relief that can be granted to Plaintiffs on this claim.

### A. No Effectual Relief Remains for the Claim Relating to Columbia's Antisemitism Definition

The remaining Plaintiffs' First Amendment claim against Columbia is premised on their allegation that the Agency Defendants coerced Columbia into adopting its revised antisemitism definition, which they assert creates a risk that they will face disciplinary action for engaging in protected speech. *See* Op. 8, 14–18. The fundamental premise of Plaintiffs' claim is that the

Agency Defendants, by sending the March 13 Letter, coerced or significantly encouraged Columbia to adopt a definition of antisemitism that would suppress Plaintiffs' protected political speech. In the absence of any coercion, however, there is no state action and no live First Amendment claim. *See, e.g.*, *Logan v. Bennington Coll. Corp.*, 72 F.3d 1017, 1028 (2d Cir. 1995) (finding no state action in constitutional challenge to disciplinary action under private college policy adopted in settlement with state agency, and rejecting argument that private college "functioned as a state actor solely because [a state agency] was part of the impetus for the adoption of [the] interim policy"); *Albert v. Carovano*, 851 F.2d 561, 568–71 (2d Cir. 1988) (en banc) (finding no state action in constitutional challenge to private university disciplinary proceeding under university policy adopted to comply with state legislation); *Woytowicz v. George Washington Univ.*, 327 F. Supp. 3d 105, 118–19 & nn.4–5 (D.D.C. 2018) (finding no state action in First Amendment challenge to private university disciplinary policy adopted in voluntary resolution with Department of Education's Office for Civil Rights); *see also Child.'s Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742, 760–61 (9th Cir. 2024) ("If Meta implemented its policy at least in part to stave off lawmakers' efforts to regulate, it was allowed to do so without turning itself into an arm of the federal government.").

The Stipulation conclusively negates Plaintiffs' theory of state action. By its plain terms, the United States has unequivocally committed that it does not and will not require Columbia to adopt or maintain any particular definition of antisemitism, does not and will not condition any funding on Columbia's adoption or continuation of any such definition, and will not investigate or sanction Columbia based on its choices regarding antisemitism definitions. The United States moreover acknowledges that Columbia is "free not to adopt, incorporate, reference, or maintain the Task Force definition or the IHRA definition in its antidiscrimination policies or disciplinary

policies or procedures without repercussion from the United States Government." Ex. A at 2–3. In other words, whatever Columbia decides about the definition of antisemitism applicable in the context of student discipline is purely a matter of Columbia's choice. The Stipulation thus provides Plaintiffs with the relief they sought in the proposed order accompanying their motion for a preliminary injunction. *See* ECF 133-1 at 2 (seeking order that "Agency Defendants shall not demand that Columbia enforce a definition of antisemitism that infringes upon the First Amendment" and "shall not require, threaten, economically coerce, or otherwise obligate Columbia to discipline or otherwise punish students based on any such unconstitutionally restrictive definition—either via the Resolution Agreement or by any other means").

By eliminating the mechanisms of state action that the Court had identified Plaintiffs as having plausibly alleged, it is now "impossible for the court to grant any effectual relief," and the case is moot. *County of Suffolk*, 605 F.3d at 140 (citation omitted). As the Second Circuit has recognized, "assurances made in stipulations that agree to provide the relief sought leaves this Court without a role with respect to such relief." *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 394 (2d Cir. 2022); *see also Stokes v. Village of Wurtsburo*, 818 F.2d 4, 5 (2d Cir. 1987) (concluding that the defendant had not "merely ceased voluntarily its allegedly unconstitutional conduct" where it had entered "a binding, judicially enforceable agreement" not to engage in the challenged conduct (cleaned up)); *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91–94 (2013) (holding that Nike's unilateral covenant not to sue mooted the case because it eliminated any credible threat of future litigation, even though the opposing party in the litigation was not a party to the covenant).

The United States' public commitment not to require Columbia to adopt or maintain any particular antisemitism definition should be credited under governing Second Circuit and other circuit case law. *See Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo*, 981 F.2d 50, 59

(2d Cir. 1992) ("Some deference must be accorded to a state's representations that certain conduct has been discontinued."); *Thomas v. City of Memphis*, 996 F.3d 318, 326–27 (6th Cir. 2021) (collecting cases in which courts have found claims to be moot "based on government policy that was changed through sworn testimony provided by government officials"). As the Eleventh Circuit has held, when a government actor ceases allegedly objectionable conduct, a rebuttable presumption arises that the related claim is moot, provided the government demonstrates that the cessation is unambiguous and not likely to be reversed. *See Doe v. Wooten*, 747 F.3d 1317, 1322 (11th Cir. 2014).

The Stipulation reflects an even more formal and binding commitment than the unilateral representations credited in the above cases. But to the extent there is any question about the strength of the government's commitment, this Court can take action to further formalize it or make it enforceable. The Court may so order the Stipulation or retain jurisdiction to enforce the Stipulation by incorporating it into any order of dismissal. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381–82 (1994) (a district court may retain jurisdiction over a settlement agreement when the order of dismissal expressly retains jurisdiction or incorporates the terms of the agreement).

### B.       The Voluntary Cessation Doctrine Does Not Apply

To the extent Plaintiffs argue that the voluntary cessation doctrine indicates this case is not moot, any such argument would be misplaced. Particularly if this Court so orders the Stipulation, the government's commitment is not a mere unilateral or "voluntary" decision that it will not engage in the conduct of which Plaintiffs complain. But even if this Court were to apply the voluntary cessation doctrine, the remaining Plaintiffs' claim against Columbia pertaining to definitions of antisemitism would still be moot.

The voluntary cessation doctrine reflects "the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." *Neurological Surgery Prac. of Long Island, PLLC v. U.S. Dep't of Health & Hum. Servs.*, 145 F.4th 212, 224 (2d Cir. 2025). Under the voluntary cessation doctrine, a case is still moot after a defendant voluntarily discontinues the challenged conduct when "'(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur' and '(2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 815 F.3d 105, 109 (2d Cir. 2016) (per curiam) (internal quotation marks omitted) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)); *see Neurological Surgery*, 145 F.4th at 223.

The Stipulation, particularly if judicially approved, is not consistent with the possibility that the federal government has only temporarily declined and disclaimed involvement with Columbia's definition of antisemitism. It is instead the kind of lasting commitment that courts have held eliminates any reasonable expectation that the challenged conduct will recur in the future. In *Already, LLC*, for example, the Supreme Court held that the defendant's entry into a covenant not to sue was not mere voluntary cessation. 568 U.S. at 93. In concluding that the claim was moot in the face of a voluntary cessation argument, the Supreme Court emphasized the breadth of the covenant not to sue, noting that it prohibited any future claim or demand and that it was "unconditional and irrevocable." *Id.* The Stipulation here is similarly broad, categorical, and condition-free: it comprehensively commits the federal government not to require Columbia to adopt or maintain any particular definition of antisemitism, not to condition any funding on such adoption, and not to initiate any investigation or impose any sanction based on Columbia's

11

definitional choices. On these facts, there is no reasonable likelihood that the alleged state action will recur.

The Stipulation has also completely and irrevocably eliminated the effects of the coercion alleged by Plaintiffs. As noted above, Plaintiffs' First Amendment claim hinges on their allegation that they will face discipline under Columbia's antisemitism definition because the Agency Defendants coerced Columbia to adopt it. But the United States has committed not to require Columbia to adopt or maintain a particular definition of antisemitism, not to condition any contract or funding on Columbia's adoption of any such definition, and not to investigate or sanction Columbia based on its choices regarding antisemitism definitions. *See* Ex. A. As the Stipulation states: Columbia is "free not to adopt, incorporate, reference, or maintain" any particular definition of antisemitism "in its antidiscrimination policies or disciplinary policies or procedures without repercussion from the United States government." *Id.* at 2–3. Because the Stipulation eliminates the state action predicate for any such enforcement, it has "completely and irrevocably eradicated the effects" of Plaintiffs' alleged First Amendment violation. *Am. Freedom Def. Initiative*, 815 F.3d at 109.

That conclusion follows whether or not Columbia maintains its current antisemitism definition to which Plaintiffs object. *See, e.g.*, *Logan*, 72 F.3d at 1028 (a private university is not a state actor for purposes of actions carried out under a disciplinary policy simply because a government agency "was part of the impetus for the adoption" of the challenged policy); *Albert*, 851 F.2d at 568–71. A private university does not become a state actor merely because it independently pursues a policy goal that the government once sought. In *Iron Arrow Honor Society v. Heckler*, for example, the Supreme Court ruled that a lawsuit seeking to prevent the federal government from interpreting a federal regulation to require a private university to ban an all-male

12

organization from campus was moot where the university president voluntarily excluded the organization from campus. 464 U.S. 67, 71 (1983) (per curiam). In that context, the Supreme Court reasoned that the claim relating to the federal government's interpretation of its regulation was "classically 'moot'" because it was "the action of the [private] [u]niversity, not that of the [government]," that excluded the organization. *Id.* The Stipulation establishes that whatever definition Columbia maintains going forward, it is the product of independent choice. A private university like Columbia that decides to maintain an antisemitism definition when it is not coerced by the government to do so is not a state actor,[3] and Plaintiffs cannot maintain a First Amendment claim against Columbia for such a decision.

## II. Plaintiffs' Claim Relating to the Committee's Request for Records Is Also Moot

### A. Plaintiffs Do Not Face Any Future Harm from the Disclosure of Additional Records to the Committee

Columbia's recent correspondence with the Committee similarly renders the claim pertaining to the February 13 Letter moot. That correspondence reflects that Columbia will not produce further records of the four remaining Plaintiffs in response to the February 13 Letter, and the Committee has conveyed no objection to that position.

The Court's prior analysis of Plaintiffs' standing to assert a First Amendment claim against Columbia based on the February 13 Letter was premised on Plaintiffs' allegations that Columbia might continue to produce records to the Committee in response to ongoing requests. Specifically, the Court credited Plaintiffs' allegations of a "substantial risk" of further disclosures "given Columbia's February 27 and March 7, 2025 letters" to the Committee. Op. 11. But the factual circumstances have changed since the Court last considered this issue. Well over a year has passed

---

[3] As discussed in prior filings, private universities across the country maintain antisemitism definitions, including the IHRA definition. *See* ECF 138 at 4–5 (gathering examples). The reliance by private actors on this definition does not implicate the First Amendment.

since Columbia last produced records to the Committee, and the Committee has never followed up to seek further documents. Columbia's latest letter to the Committee states unequivocally that "it will not be producing additional records" and that Columbia understands "there are no other outstanding requests." Ex. B. The Committee acknowledged Columbia's position and did not object to it. Ex. C.

In light of the passage of time without the Committee expressing any continuing interest in Plaintiffs' records, as well as the recent correspondence, it cannot be said that Plaintiffs "have plausibly alleged that Columbia will . . . disclose their private information to Congress." Op. 12. In these circumstances, Columbia has met its burden to demonstrate that the challenged conduct will not recur. *See Bldg. & Const. Trades Council*, 448 F.3d at 151; *cf. Kupperman v. U.S. House of Representatives*, 436 F. Supp. 3d 186, 192–93 (D.D.C. 2019) (noting that "whatever can be said about the clarity or uniformity" of "earlier statements" from Congress requesting records production, a later statement by Congress unambiguously disclaiming a desire for additional records was sufficient to moot a claim challenging the request for records). In assessing mootness, courts routinely credit these kinds of decisions by universities to discontinue challenged conduct. *See Coll. Standard Mag. v. Student Ass'n of State Univ. of N.Y. at Albany*, 610 F.3d 33, 35 (2d Cir. 2010) (per curiam) (concluding First Amendment challenge to a public university student association's policy for distributing funds to student groups was moot after university reversed the challenged policy); *see also Husain v. Springer*, 193 F. Supp. 2d 664, 669–70 (E.D.N.Y. 2002) (holding First Amendment claim for injunctive relief against a public university's rule postponing student government elections was moot after university agreed "not to reinstate the challenged rule or engage in the challenged behavior"), *aff'd*, 494 F.3d 108 (2d Cir. 2007); *Univ. at Buffalo Young Ams. for Freedom v. Univ. at Buffalo Student Ass'n Inc.*, No. 23 Civ. 480, 2024 WL 5119779, at

14

*15 (W.D.N.Y. Dec. 15, 2024) (holding First Amendment challenge to a public university student association's policy for recognizing official student groups was moot because the student association repealed the policy and "the plaintiffs have offered no evidence that the Student Association is likely to reinstate the [policy]"), *aff'd*, No. 25-140-CV, 2025 WL 3075633 (2d Cir. Nov. 3, 2025).

In other contexts, courts have held that actions disclaiming the forward-looking disclosure of records are sufficient to moot a claim challenging future records productions. For example, in *McDonnell Douglas Corp. v. NASA*, 102 F. Supp. 2d 21 (D.D.C. 2000), the court held that a reverse FOIA suit became moot when the underlying FOIA request was withdrawn, reasoning that the withdrawal of the request eliminated the live controversy, as there was no longer a legally cognizable interest in the outcome. *Id.* at 22–24. The court explained that there was "no reasonable expectation that Plaintiff [] will be subjected to that same action again," in part because the records-holding agency had "informed this Court that it does not propose to release the information at issue in response to [a separate] FOIA request." *Id.* at 23; *cf. Doe v. Harris*, 696 F.2d 109, 113 (D.C. Cir. 1982) (explaining that key reason why a claim against the future disclosure of records was not moot was because the records holder "supplied no indication" that it "would not again, upon official request, release [plaintiff's] files without affording him notice and opportunity to object"). The same logic applies here: once Columbia committed to not producing any further records, without the Committee registering any objection, those events "completely and irrevocably eradicated the effects of the alleged violation" and provided "assurance that there is no reasonable expectation that the alleged violation will recur." *Am. Freedom Def. Initiative*, 815 F.3d at 109 (quotation marks omitted).

15

**B.      There Is No Reasonable Expectation that Plaintiffs' Records Will Be Disclosed in the Future**

As with the Stipulation, the correspondence between Columbia and the Committee does not amount to mere voluntary cessation. As noted, a case becomes moot when the challenged action ceases and "there is no reasonable expectation of recurrence." *Neurological Surgery*, 145 F.4th at 223. That is the case here. There is no plausible reason to believe that Columbia will produce further records relating to the remaining Plaintiffs—it has unequivocally stated it will not—or that the Committee will coerce Columbia into producing further records. *See Unified Sch. Dist. No. 259, Sedgwick Cnty. v. Disability Rts. Ctr. of Kan.*, 491 F.3d 1143, 1149–50 (10th Cir. 2007) (finding no reasonable expectation that a government agency request for relevant records would recur for purposes of voluntary cessation because the requests were "highly fact- and context-specific").

Columbia's definitive statement to the Committee that it will not produce further records should be sufficient to moot the case. But to the extent there is any lingering question about the Committee requesting additional documents relating to the four Plaintiffs who have plausibly alleged standing or Columbia producing such documents in the future, the Court could address that question by incorporating its prior order, ECF 54, into any dismissal order. Doing so would give Plaintiffs notice and an opportunity to challenge any possible future production before it would occur. Under such circumstances, Plaintiffs cannot demonstrate a reasonable expectation that the harm they have pled will recur.

The second prong of the voluntary cessation doctrine, which asks whether interim events have eradicated the effects of the alleged violation, *see supra* at 11, is also met. Columbia's definitive statement that it will not produce further records and the Committee's non-objection to that statement afford the remaining Plaintiffs all the relief they seek, especially to the extent the

16

Court conditions dismissal on its prior order requiring advance notice of record production. *See* ECF 133-1 at 2–3 (seeking to enjoin Columbia "from providing the Committee further student records responsive to the February 13 letter" and seeking 30 days notice before Columbia "furnish[es] to Congress any student records, or students' identities in records already produced"). That commitment will be enforceable to the extent the Court incorporates its prior order regarding advance notice into an order of dismissal. Because there is no reasonable expectation that the conduct Plaintiffs challenge will recur, and any potential for harm has been eliminated, Count III is moot and should be dismissed.

## CONCLUSION

Because this Court can no longer grant any effectual relief to the remaining Plaintiffs on their First Amendment claims against Columbia, these claims are moot and should be dismissed. Columbia respectfully notes that this Court may so order the Stipulation or incorporate its terms into the order of dismissal, and may do the same regarding its order directing Columbia to provide notice to Plaintiffs and the Court 30 days in advance of any further production of the remaining Plaintiffs' records.

Dated: August 11, 2026                Respectfully submitted,
       New York, New York

_____
Marshall L. Miller (Lead Counsel)
Gabrielle E. Tenzer
Zachary Piaker
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
(212) 763-0883
mmiller@heckerfink.com
gtenzer@heckerfink.com
zpiaker@heckerfink.com

17

Trisha Anderson
HECKER FINK LLP
1050 K Street NW, 10th Floor
Washington, DC 20001
(212) 763-0883
tanderson@heckerfink.com

*Attorneys for Defendants Trustees of Columbia University in the City of New York and Acting President Claire Shipman*

18

**CERTIFICATE OF COMPLIANCE**

I, Marshall L. Miller, hereby certify that this memorandum of law complies with the word-count limitations set forth in Local Civil Rule 7.1(c) and contains 5,262 words, exclusive of the caption, the table of contents, the table of authorities, the signature blocks, and this certificate.

Dated: August 11, 2026
      New York, New York

 

_____
Marshall L. Miller (Lead Counsel)