**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Mahmoud Khalil, et al.,<br><br>*Plaintiffs,*<br>v.<br><br>Columbia University and the Trustees of Columbia University, et al.,<br><br>*Defendants.* | No. 1:25-cv-02079-AS |

**PLAINTIFFS' CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO THE EXECUTIVE BRANCH DEFENDANTS' AND COLUMBIA DEFENDANTS' MOTIONS TO DISMISS DUE TO MOOTNESS**

**ORAL ARGUMENT REQUESTED**

Azra Taslimi
RATHOD | MOHAMEDBHAI LLC
2701 Lawrence St., Suite 100
Denver, Colorado, 80202
at@rmlawyers.com

Zal K. Shroff
MAIN STREET LEGAL SERVICES
2 Court Square West
Long Island City, NY 11101
Zal.Shroff@law.cuny.edu

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

INTRODUCTION .......... 6

FACTUAL AND PROCEDURAL BACKGROUND .......... 8

I. Plaintiffs' Third Amended Complaint Challenges Government Coercion to Suppress, Chill, and Punish Protected Speech, Not Merely One Specific Written Definition .......... 8

II. This Court Sustained Plaintiffs' First Amendment Claims and Did Not Limit Them to a Single Definitional Dispute .......... 11

III. This Court Did Not Opine on Columbia's Unwritten Policy and Plaintiffs' As-Applied First Amendment Challenges, Which Remain Live in This Action .......... 12

IV. Defendants' Stipulation Permits the Government to Continue its Campaign of Misusing Regulatory Tools to Coerce Punishment of Protected Speech, The Very Conduct Other Courts Have Already Enjoined .......... 13

LEGAL STANDARD .......... 15

ARGUMENT .......... 16

I. Defendants Have Not Mooted Plaintiffs' First Amendment Speech Restriction Claims Because the Stipulation Does Not Address the Central Coercion Plaintiffs Challenge in Their Complaint .......... 16

A. The Court's Prior Order Did Not Limit Plaintiffs' Facial Challenge to a Particular Written Definition of Antisemitism, And the Claim is Far Broader on the Face of the Pleadings .......... 17

B. Courts Across the Country Recognize That Facial Challenges Are Available to Attack Unwritten or Shifting Enforcement Policies, Which Plaintiffs' Complaint Fairly Alleges at the Pleading Stage .......... 18

C. Plaintiffs' Pre-Enforcement, As-Applied Challenges Remain at Issue Because Defendants' Stipulation Requires Columbia to Adhere to its Unlawful Version of Title VI, Meaning That Plaintiffs Remain at Risk of Columbia Punishing Them for That Speech in the Future .......... 22

D. Columbia's State-Action Argument Cannot Be Resolved at the Pleading Stage .......... 24

E. Because All Three Parts of Plaintiffs' Claims Remain Live, the Court Can Still Grant Effective Relief .......... 26

II. Defendants Cannot Satisfy the Heavy Burden for Mootness Based on Voluntary Cessation, Precisely Because They Ignore the Appropriate Scope of Plaintiffs' Speech Restriction Claims ........ 27

III. Columbia's Records-Disclosure Claim Is Not Moot Because Future Disclosure Remains a Live Risk, As Columbia Itself Acknowledges ........ 30

A. Columbia's Letter Addresses Only One Prior Request, Not the Continuing Risk of Future Disclosure ........ 30

B. The Existing Notice Order Does Not Moot the Records-Disclosure Claim ........ 33

CONCLUSION ........ 34

## TABLE OF AUTHORITIES

**Cases**

*Adams v. City of Wellsburg*,
No. 5:07CV30, 2008 WL 2340374 (N.D.W. Va. June 6, 2008) .... 19

*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013) .... 29

*Am. Ass'n of Univ. Professors v. Trump*,
815 F. Supp. 3d 907 (N.D. Cal. 2025) .... 8, 14, 26

*Am. Ass'n of Univ. Professors v. Trump*,
No. 3:25-cv-07864-RFL, ECF No. 91 (N.D. Cal. Nov. 14, 2025) .... 14, 26

*Am. Freedom Def. Initiative v. Metro. Transp. Auth.*,
815 F.3d 105 (2d Cir. 2016) .... 7, 27, 32

*Ballentine v. Las Vegas Metro. Police Dep't*,
No. 214CV01584APGGWF, 2017 WL 3610609 (D. Nev. Aug. 21, 2017) .... 22

*Beal v. Stern*,
184 F.3d 117 (2d Cir. 1999) .... 19

*Best Payphones, Inc. v. City of New York*,
410 F. Supp. 3d 457 (E.D.N.Y. 2019) .... 21

*Cabassa v. Walker*,
No. 9:01-CV-1039, 2008 U.S. Dist. LEXIS 106119 (N.D.N.Y. June 30, 2008) .... 21

*Carter v. HealthPort Techs., LLC*,
822 F.3d 47 (2d Cir. 2016) .... 16, 17, 20, 24

*Doe v. DiGenova*,
779 F.2d 74 (D.C. Cir. 1985) .... 32

*Exxon Mobil Corp. v. Healey*,
28 F.4th 383 (2d Cir. 2022) .... 29

*Faustin v. City & County of Denver, Colo.*,
423 F.3d 1192 (10th Cir. 2005) .... 18

*Fed. Bureau of Investigation v. Fikre*,
601 U.S. 234 (2024) .... 7, 15, 31, 34

*Field Day, LLC v. County of Suffolk*,
463 F.3d 167 (2d Cir. 2006) .... 19

*Hoye v. City of Oakland*,
653 F.3d 835 (9th Cir. 2011) .... 18, 20

*Katz v. Donna Karan Co.*,
872 F.3d 114 (2d Cir. 2017) .... 25

*Klein ex rel. Qlik Techs., Inc. v. Qlik Techs., Inc.*,
906 F.3d 215 (2d Cir. 2018) .... 28

*Kupperman v. U.S. House of Representatives*,
436 F. Supp. 3d 186 (D.D.C. 2019) ........................................................................ 32
*LIA Network v. City of Kerrville*,
163 F.4th 147 (5th Cir. 2025) ................................................................................ 22
*McDonnell Douglas Corp. v. NASA*,
102 F. Supp. 2d 21 (D.D.C. 2000) ........................................................................ 32
*MHANY Mgmt., Inc. v. County of Nassau*,
819 F.3d 581 (2d Cir. 2016)................................................................................... 15
*N.Y. Civil Liberties Union v. Grandeau*,
528 F.3d 122 (2d Cir. 2008)................................................................................... 28
*Nat'l Ass'n for the Advancement of Colored People v. City of Philadelphia*,
39 F. Supp. 3d 611 (E.D. Pa. 2014) ............................................................... 18, 19
*NextG Networks of N.Y., Inc. v. City of New York*,
513 F.3d 49 (2d Cir. 2008)..................................................................................... 28
*President & Fellows of Harvard Coll. v. United States Dep't of Health & Hum. Servs.*,
98 F. Supp. 3d 77 (D. Mass. 2025) ................................................................ 15, 26
*Prison Legal News v. Fed. Bureau of Prisons*,
944 F.3d 868 (10th Cir. 2019) ............................................................................... 29
*Seidemann v. Bowen*,
499 F.3d 119 (2d Cir. 2007)................................................................................... 28
*Stokes v. Village of Wurtsboro*,
818 F.2d 4 (2d Cir. 1987)....................................................................................... 29
*United States v. N.Y.C. Transit Auth.*,
97 F.3d 672 (2d Cir. 1996)................................................................................ 28, 29
*Upsolve, Inc. v James*,
604 F. Supp. 3d 97 (S.D.N.Y. 2022)...................................................................... 22
*Upsolve, Inc. v. James*,
155 F.4th 133 (2d Cir. 2025) ................................................................................. 22
*Wynder v. McMahon*,
360 F.3d 73 (2d Cir. 2004)..................................................................................... 21

## INTRODUCTION

The Executive Branch Defendants and Columbia Defendants ask this Court to dismiss Plaintiffs' surviving First Amendment claims as moot.[1] These motions recast Plaintiffs' Third Amended Complaint ("TAC" or "Complaint") as limited to whether the Government may coerce Columbia to adopt or maintain a particular definition of antisemitism. From that premise, Defendants argue that a stipulation between the Government and Columbia, disclaiming any Government interest in Columbia's use of a particular antisemitism definition, moots the case. *See* ECF No. 220, at 1; ECF No. 223, at 1, 7-9.

But Plaintiffs' challenge is not limited to Columbia's Task Force definition, the IHRA definition, or any other specific formulation. Plaintiffs allege a broader unconstitutional practice where Columbia Defendants intentionally treat protected speech about Palestine and Israel as antisemitism to placate the Executive Branch Defendants and avoid federal consequences. Plaintiffs expressly allege that Columbia "has now exposed students to punishment" for protected speech and that they challenge Columbia's antisemitism definition both "facially and as-applied to them." TAC ¶¶ 195-96; *see also id.* ¶¶ 168, 179. The as-applied allegations matter. They make clear that Plaintiffs challenge not only the text of a definition, but Columbia's disciplinary actions that punish pro-Palestine speech in response to federal pressure.

This Court has already described Plaintiffs' theory in those broader terms. *See* ECF No. 175, at 5 ("Agency Defendants […] coerced Columbia to implement policy changes to stifle *plaintiffs' disfavored political advocacy*") (emphasis added); *id.* at 8-9 (if "the Agency defendants

[1] They do so in the midst of discovery and within days of a DOJ lawyer's whistleblower complaint corroborating the unlawful coercion Plaintiffs intend to establish to win their case. *See* Letter from Government Accountability Project regarding Haley Van Erem Whistleblower Disclosure (August 17, 2026), at 11, *available at* https://democrats-judiciary.house.gov/sites/evo-subsites/democrats-judiciary.house.gov/files/evo-media-document/08.17.26-title-vi-whistleblower-disclosure-for-congress.pdf. ("Given the apparent lack of evidence to substantiate a Title VI violation at Columbia, the DOJ attorneys did not understand how HHS could have suspended hundreds of millions of dollars from Columbia on March 7, 2025, claiming violations of Title VI.")

required Columbia to punish speech it wouldn't otherwise punish," then the Court can "enjoin[] the Agency defendants from threatening to withhold funds on that basis"). That holding is not limited to a definitional dispute. It concerns coerced punishment of speech based on viewpoints regarding Israel and Palestine, which is the core of Plaintiffs' First Amendment claims.

Defendants' stipulation does not eliminate that controversy. The stipulation states only that the Government will not require Columbia to adopt, maintain, or reference any particular definition of antisemitism. However, the stipulation expressly reserves the right to threaten Columbia with further investigations under Title VI for not complying with Trump Administration demands. ECF No. 219-1 at 2-3. That reservation preserves the very coercive framework Plaintiffs challenge—which includes federal officials invoking Title VI and funding consequences to pressure Columbia to police pro-Palestine speech in the manner the Government demands. *See* TAC ¶ 200 ("Defendants acted in excess of the [Title VI] statute by targeting students because of their viewpoints").

That obvious gap defeats mootness and voluntary cessation. A defendant's change in conduct does not moot a case if it is "merely superficial" or "suffers from similar infirmities as it did at the outset." *Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 815 F.3d 105, 109 (2d Cir. 2016) (internal quotations omitted). And Defendants bear the "formidable burden" of proving that the challenged conduct "*cannot* reasonably be expected to recur." *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 241 (2024) (emphasis added). Defendants have not carried that burden.

Columbia Defendants' separate mootness argument fares no better. They argue that Plaintiffs' separate claim concerning disclosure of student disciplinary records is moot because Columbia has told Congress that it has completed production in response to the February 13 Letter. But the House Committee expressly reserved the right to issue new requests. Columbia has not

promised that it will not produce Plaintiffs' records to Congress in the future. And Columbia's proposed solution, continued judicial notice before future productions, confirms that the risk remains live.

In short, the stipulation does not bar the Government from threatening, withholding, freezing, terminating, conditioning, or otherwise restricting Columbia's federal funds to coerce Columbia into violating Plaintiffs' First Amendment rights by punishing their speech in support of Palestine or critical of Israel. That is the relief Plaintiffs need—and the very relief several other courts have already granted. *See*, *e.g.*, *Am. Ass'n of Univ. Professors v. Trump*, 815 F. Supp. 3d 907 (N.D. Cal. 2025). Because Defendants' stipulation leaves the core coercion untouched, the case is not moot and Defendants' motions should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Plaintiffs' Third Amended Complaint Challenges Government Coercion to Suppress Protected Speech, Not Merely One Specific Written Definition

The TAC alleges that the Government Defendants used federal pressure to make Columbia punish protected speech about Palestine and Israel. *See*, *e.g.*, TAC ¶ 1 ("The Government Defendants have successfully enlisted a private, third-party intermediary—Columbia University and the defendants affiliated with it—to punish and suppress the viewpoints held and expressed by Plaintiff[s]").

It pleads that theory as both a facially unconstitutional policy and an as-applied challenge, and alleges an ongoing risk that Columbia's disciplinary process will be used to punish Plaintiffs' protected speech regardless of the particular disciplinary definition Columbia uses. *See, e.g.*, *id.* ¶ 179 ("The Agency Defendants demand that Columbia adopt a definition of antisemitism that labels as bigoted and discriminatory the common and typical criticisms people, including Plaintiffs, make about Israel […] Plaintiffs challenge that definition facially and as-applied"); *id.*

¶¶ 195-96 ("the University has adopted an expansive definition of antisemitism, which contravenes the University's Task Force on Antisemitism's second Report […] Plaintiffs challenge this definition of antisemitism facially and as-applied to them"); *id.* ¶ 90 ("Of critical import to the role of the OIE is the *constantly changing definition* and interpretation of 'Protected Class'") (emphasis added); ¶ 91 ("the *definitions and goalposts keep shifting*, thus chilling protected speech that does not fall under any of those categories") (emphasis added).

The TAC specifically notes the ongoing risk that Plaintiffs face in having their protected speech about Palestine and Israel curtailed by Columbia at the behest of the federal government. *Id.* ¶ 46 ("These federal actors are following the lead of Government Defendants in this case to continue to coerce Columbia University into submission to fulfill unconstitutional aims of suppressing protected speech it disfavors"); *id.* ¶ 47 ("Plaintiffs are terrified that all Defendants in this suit and other federal actors alike will continue to be emboldened to take drastic, life-altering measures to punish speech they do not like"). That risk is concrete because Plaintiffs themselves continue to engage in speech the Government Defendants seek to curtail. *Id.* ¶ 149 ("All Plaintiffs have attended pro-Palestine events where students expressed the view that Israel is a racist state […] Because these expressions violate the overly expansive definition of antisemitism Defendants have coerced Columbia into adopting, Plaintiffs' […] may be subject to investigation by Columbia University").

The TAC is also precise about the mechanisms the Government Defendants have and will continue to use to coerce Columbia to punish Plaintiffs' speech—including the intentional weaponization of Title VI to threaten university funding in violation of the First Amendment. *Id.* ¶ 200 ("Although the Agency Defendants assert that, by suspending funds to Columbia University, they are exercising their authority under Title VI, the Agency Defendants acted in excess of the

statute by targeting students because of their viewpoints"); *id.* ¶ 199 ("This agency action reflects the outcome of a decision-making process to coerce Columbia specifically and universities more generally into disfavoring students and staff who express pro-Palestine views"). Indeed, the Government Defendants have continued to use Title VI to pressure Columbia not once, not twice, but thrice since the inception of this litigation—not to mention the original March 13 letter that was itself a threat to pull funding under Title VI. *Id.* ¶ 199 ("This multi-pronged effort is reflected in the Agency Defendants' March 13 Letter").[2] These are the very ongoing threats Plaintiffs seek to enjoin. *Id.* ¶ 46. Particularly as the Government Defendants continue to apply guidance under Title VI that this Court has already found in violation of the First Amendment.[3]

These allegations frame the dispute now before the Court. Plaintiffs do not challenge only Columbia's use of a particular antisemitism definition—a definition the Complaint itself acknowledges is ever-shifting. *Id.* ¶¶ 90-91. Instead, they challenge the threatened and ongoing use of Columbia's disciplinary process, under federal pressure including sham Title VI investigations, to treat protected pro-Palestine speech as punishable antisemitism. *Id.* ¶ 199.

---

[2] *See*, *e.g.*, *Joint Notice of Violation to Columbia University*, U.S. Dep't of Health and Human Services (May 22, 2025), available at https://www.hhs.gov/civil-rights/for-providers/compliance-enforcement/examples/national-origin/ocr-joint-notice-of-violation-to-columbia/index.html#ftnref69; *U.S. Department of Education Notifies Columbia University's Accreditor of Columbia's Title VI Violation*, U.S. Dep't of Educ. (Jun. 4, 2025), https://www.ed.gov/about/news/press-release/us-department-of-education-notifies-columbia-universitys-accreditor-of-columbias-title-vi-violation; *see also* ECF 124 (identifying Resolution Agreement under which Columbia University paid $200M to the Government Defendants for purported Title VI violations). A congressional investigation now makes clear these Title VI investigations were intentionally designed to violate First Amendment rights. *See supra* n.1; *see also* Letter of Rep. Jamie Raskin to U.S. Dep't of Justice, at 5 (Aug. 18, 2026), https://democrats-judiciary.house.gov/sites/evo-subsites/democrats-judiciary.house.gov/files/evo-media-document/2026-08-18-raskin-to-dhillon-doj-re-title-vi-investigation.pdf ("DOJ investigators identified numerous false statements […] the draft also improperly identified clearly protected First Amendment expression, such as attending a protest or writing an open letter, as Title VI violations"). The Court can take judicial notice of all such government documents in the public record. *See Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp.3d 156, 166 (S.D.N.Y. 2015) (court may take judicial notice of "documents retrieved from official government websites"); *see also Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (court can take judicial notice of other "relevant matters of public record").

[3] *Compare* Executive Order 13899, *available at* https://trumpwhitehouse.archives.gov/presidential-actions/executive-order-combating-anti-semitism/ (requiring "all executive departments and agencies … charged with enforcing Title VI" to consider the '"Contemporary Examples of Anti-Semitism' identified by the IHRA"), *with* ECF No. 175, at 8 ("[A]n injunction preventing Columbia from considering […] IHRA antisemitism definitions (and accompanying examples) […] would redress that injury").

## II. This Court Sustained Plaintiffs' First Amendment Claims and Did Not Limit Them to a Single Definitional Dispute.

This Court allowed Plaintiffs' First Amendment claims against the Agency Defendants and Columbia to proceed. ECF No. 175 at 5-6. The Court described Plaintiffs' theory as alleging that the Agency Defendants coerced Columbia "to implement policy changes to stifle plaintiffs' disfavored political advocacy." *Id*. at 5. The Court did not hold that Plaintiffs' claims were limited to the words of any particular antisemitism definition. In fact, the Court noted that the specific written definition of antisemitism at Columbia had changed at least once since this case began—which did not affect Plaintiffs' First Amendment claims noting an overall policy of speech suppression. *See id.* at 8 ("And far from moribund, the policy has recently become even broader […] Columbia emphasized that Columbia wasn't required to adopt the IHRA definition, and that in fact it didn't […] But in the middle of briefing these motions, Columbia did in fact adopt the IHRA definition"). The Court also noted that Plaintiffs have standing to pursue their speech restriction claims precisely because they have been subjected to "investigations based purely on their anti-Israel speech." *Id*. at 8; *see also* TAC ¶¶ 90-91.

The Court's analysis under *Vullo* applied the same scope. It held that Executive Branch coercion "could be reasonably understood to convey a threat of adverse government action in order to punish or suppress the plaintiff's speech." ECF No. 175, at 18; *see also id.* at 19 (Plaintiffs "plausibly alleged that the Agency Defendants are improperly motivated by a desire to suppress plaintiffs' political speech"); *id.* at 20 (Plaintiffs plausibly alleged "coercive threats aimed at punishing or suppressing disfavored speech").

For redressability, the Court identified the relevant policy as coerced punishment of protected speech, not merely the adoption of a particular definition. The Court explained that if "the Agency defendants required Columbia to punish speech it wouldn't otherwise punish," then

"enjoining the Agency defendants from threating to withhold funds on that basis" would redress Plaintiffs' injury. *Id*. at 8-9.

### III. This Court Did Not Opine on Plaintiffs' Unwritten Policy and As-Applied First Amendment Challenges—Which Remain Live in This Action.

The Court's Order did not reference or opine as to Plaintiffs' as-applied First Amendment challenges. *Compare* ECF No. 175, *with* TAC ¶ 196 ("Plaintiffs challenge this definition of antisemitism facially and as-applied to them"). Defendants' initial motions to dismiss did not separately challenge those as-applied claims. *See generally* ECF Nos. 84, 86. Nor did Defendants' prior motions require the Court to resolve whether the TAC also pleads a facial challenge to Columbia's unwritten policy of treating protected pro-Palestine expression as punishable antisemitism.[4] Those allegations remain part of the operative complaint. *See*, *e.g.*, TAC ¶ 90 (noting the "constantly changing definition and interpretation of 'Protected Class'"); *id.* ¶ 91 ("the *definitions and goalposts keep shifting*, thus chilling protected speech that does not fall under any of those categories") (emphasis added); *id.* ¶ 115 (noting a "coordinated federal campaign to coerce Columbia University into suppressing student activism by […] altering its disciplinary policies to align with the federal government's priorities, all under the threat of a loss of federal funding"). And Plaintiffs allege an ongoing threat that their protected speech will be treated as punishable antisemitism. *Id.* ¶ 149 (plaintiffs "may be subject to investigation by Columbia University or by the Government Defendants under the asserted purpose of preventing antisemitism").

The Court also did not resolve the effect of Columbia's later federal Resolution Agreement on Plaintiffs' First Amendment claims—but expressly acknowledged the relevance of ongoing communications between Columbia and the federal government regarding student speech.

[4] Nor was there any need to do so at the time given Columbia's final adoption of the specific written policy the Executive Branch Defendants had demanded. *See* ECF No. 175, at 8 ("And far from moribund, the policy has recently become even broader").

*Compare* ECF No. 175 at 20 ("The Court will address the implications of all of this at summary judgment, but the record at this stage certainly is enough for pleading purposes"), *with* ECF No. 142, at 9 n.5 ("Agency Defendants now have a contractual right to review disciplinary proceeding records for students and to determine—as a condition of funding—whether Columbia has satisfied its obligation").

**IV. Defendants' Stipulation Permits the Government to Continue its Campaign of Misusing Regulatory Tools to Coerce Punishment of Protected Speech—The Very Conduct Other Courts Have Already Enjoined.**

The Government and Columbia entered a stipulation stating that the Government will not require Columbia to adopt, incorporate, reference, or maintain a particular definition of antisemitism, will not condition funding on Columbia's adoption or maintenance of a particular definition, and will not investigate or sanction Columbia for declining to adopt or maintain a particular definition. ECF No. 219-1 at 2-3; ECF No. 224-1 at 2-3.

The stipulation does not moot Plaintiffs' claims because it permits the government to continue misusing its regulatory authority as a tool of coercion. It does not bar the Government from using Title VI investigations, OCR guidance, resolution monitoring, disciplinary-record review, accreditation pressure, or future funding threats to pressure Columbia to punish First Amendment-protected speech about Palestine and Israel. *Compare* ECF No. 224-1, at 3 ("Columbia remains subject to the obligation to comply with […] Title VI of the Civil Rights Act of 1964 […] as well as observe guidance from the U.S. Department of Education's Office for Civil Rights"), *with* Executive Order 13899 (requiring "all executive departments and agencies … charged with enforcing Title VI" to consider the '"Contemporary Examples of Anti-Semitism' identified by the IHRA"). Nor does it bar Columbia from continuing to punish that speech under the ongoing threat of federal consequences.

The stipulation's reservation of Title VI authority confirms the problem. It expressly states that Columbia remains obligated to comply with Title VI, Title VI regulations, and OCR guidance. ECF No. 219-1 at 3; ECF No. 224-1 at 3. But Plaintiffs allege that the Government has used Title VI funding threats as the pretext and the mechanism to suppress protected viewpoints. A stipulation preserving that framework does not eliminate the live controversy. *See*, *e.g.*, TAC ¶ 200 ("Agency Defendants acted in excess of the [Title VI] statute by targeting students because of their viewpoints"); *id.* ¶ 199 ("This agency action reflects the outcome of a decision-making process to coerce Columbia specifically […] into disfavoring students and staff who express pro-Palestine views").

That distinction matters because other courts have already enjoined the same kind of pretextual use of Title VI or funding leverage to coerce universities into violating First Amendment rights. In *American Association of University Professors v. Trump*, the court found that the same Government Defendants had "engaged in coercive and retaliatory conduct in violation of the First Amendment," had "flouted the requirements of Title VI and IX" in connection with funding cancellations, and that "the entirety of the coercive practice must be enjoined." 815 F. Supp. 3d at 931, 978. The court therefore enjoined the Government Defendants from "refusing to grant, non-renewing, withholding, freezing, suspending, terminating, conditioning, or otherwise restricting use of federal funds to the UC, or threatening to do so, to coerce the UC in violation of the First Amendment." *Am. Ass'n of Univ. Professors v. Trump*, No. 3:25-cv-07864-RFL, ECF No. 91 (N.D. Cal. Nov. 14, 2025). The court also enjoined the Government from "conditioning the grant or continuance of federal funding on the UC's agreement to any measures that would *violate the rights of Plaintiffs' members under the First Amendment*." *Id.* (emphasis added).

The Harvard injunction is similar. In *President & Fellows of Harvard Coll. v. United States Dep't of Health & Hum. Servs.*, the court enjoined the Government from "[i]ssuing any other termination, freezing of funds, stop work orders, or withholding payment on existing grants or other federal funding, or refusal to award future grants, contracts, or other federal funding to [Harvard] in retaliation for the exercise of its First Amendment rights, or on purported grounds of discrimination without compliance with the terms of Title VI." 798 F. Supp. 3d 77, 126-28 (D. Mass. 2025) (alterations in original).

Those orders show what actual relief from the alleged First Amendment injury looks like. They do not merely prohibit the Government from demanding a particular policy term. They prohibit the Government from using funding threats and purported civil-rights enforcement to coerce universities to violate First Amendment rights. Defendants' stipulation does not do that. It leaves intact the same Title VI and funding-pressure mechanisms Plaintiffs challenge here.

## LEGAL STANDARD

If Defendants want to prove mootness through the voluntary cessation of their illegal conduct, they have a "formidable burden." *Fikre*, 601 U.S. at 241. They must prove binding commitments so significant that there is "no reasonable expectation" that the Defendants will "return to [their] old ways." *Id.* It is Defendants' burden to make "absolutely clear" they have met that formidable standard. *MHANY Mgmt., Inc. v. County of Nassau*, 819 F.3d 581, 603-04 (2d Cir. 2016) ("we are deeply skeptical that Defendants have met their formidable burden of showing that it is absolutely clear" that the harm will not recur); *Fikre*, 601 U.S. at 241 ("[I]t is the defendant's burden […] whether the suit happens to be new or long lingering, and whether the challenged conduct might recur immediately or later at some more propitious moment") (citations omitted).

The instant motions are governed by the standards of Rule 12(b)(1)—which make clear that all reasonable inferences on the face of the pleadings are to be construed in Plaintiffs' favor whenever Defendants' proffered evidence fails to contradict those allegations. *See*, *e.g.*, *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016) ("plaintiffs are entitled to rely on the allegations in the Pleading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing").

## ARGUMENT

### I. Defendants Have Not Mooted Plaintiffs' First Amendment Speech Restriction Claims Because the Stipulation Does Not Address the Central Coercion Plaintiffs Challenge in Their Complaint.

Defendants' motions rest on an artificially narrow reading of the surviving speech restriction claim. The Agency Defendants characterize the claim as a "limited issue" concerning whether the Government coerced Columbia to adopt the Task Force or IHRA antisemitism definitions. ECF No. 220 at 1. Columbia Defendants likewise argue that Plaintiffs' speech restriction claim depends on whether Columbia's particular written antisemitism definition remains the product of Agency coercion. ECF No. 223 at 7-9.

The TAC, however, pleads a broader First Amendment claim. Plaintiffs allege that the Government used federal funding threats, Title VI pressure, disciplinary demands, record-disclosure demands, and academic interventions to make Columbia punish protected speech about Palestine and Israel. *See supra* Factual Background § I; TAC ¶¶ 1-4, 46-47, 90, 114, 136-43, 149, 168, 177, 179, 195-96, 199-200. That claim includes three related theories of injury: (1) a facial challenge to the official antisemitism definition Columbia uses in discipline; (2) a facial challenge to Columbia's unwritten policy and practice of using discrimination discipline to suppress

Palestine advocacy; and (3) an as-applied challenge to future disciplinary enforcement against Plaintiffs in violation of their First Amendment rights. *See* Background §§ 2-3.

Defendants' narrowing fails at the threshold. Their mootness argument is, in substantial part, a facial attack on the scope of the TAC. Defendants contend that, on the face of the complaint and stipulation, Plaintiffs have already received all available relief. But on a facial Rule 12(b)(1) challenge, Plaintiffs have "no evidentiary burden," and the Courts look to whether the pleadings allege facts plausibly establishing jurisdiction, accepting the factual allegations and drawing reasonable inferences for Plaintiffs. *Carter*, 822 F.3d at 56. Properly read under that standard, the TAC pleads facial and as-applied challenges to coerced punishment of protected speech critical of Israel, not merely to one iteration of a written definition.

### A. The Court's Prior Order Did Not Limit Plaintiffs' Facial Challenge to a Particular Written Definition of Antisemitism—And the Claim is Far Broader on the Face of the Pleadings.

The TAC includes a facial challenge to the written antisemitism definition Columbia adopted and uses in disciplinary proceedings. Plaintiffs expressly allege that Columbia has "exposed students to punishment" and that "Plaintiffs challenge this definition of antisemitism facially and as-applied to them." TAC ¶¶ 195-96.

This Court already held that those allegations were sufficient to establish standing. The Court found that Plaintiffs' speech about Palestine and Israel implicated First Amendment interests, that their contemplated speech was arguably covered by Columbia's revised antidiscrimination policy, and that Columbia's free-speech carveout did not eliminate Plaintiffs' reasonable fear of discipline. ECF No. 175 at 6-8. The Court also credited allegations of recent suspensions, expulsions, and investigations involving pro-Palestine protest activity and anti-Israel speech. *Id.* at 8.

But that ruling did not narrow the case to a single written definition. The Court did not hold that Plaintiffs' injury begins and ends with any particular antisemitism definition. To the contrary, the Court described Plaintiffs' theory more broadly as one in which the Agency Defendants coerced Columbia "to implement policy changes to stifle plaintiffs' disfavored political advocacy." *Id.* at 5. And the Court identified the redressable injury as coerced punishment of protected speech, explaining that relief would redress Plaintiffs' injury if the Agency Defendants required Columbia "to punish speech it wouldn't otherwise punish." *Id.* at 8-9.

Defendants therefore cannot convert a ruling that Plaintiffs had standing to challenge one written disciplinary definition into a ruling that Plaintiffs' claims are limited to that definition. The written-definition theory remains part of the case, but it is not the whole case. As explained below, Plaintiffs also plead a facial challenge to Columbia's unwritten or shifting enforcement policy and an as-applied challenge to future disciplinary enforcement against Plaintiffs.

### B. Courts Across the Country Recognize That Facial Challenges Are Available to Attack Unwritten or Shifting Enforcement Policies—Which Plaintiffs' Complaint Fairly Alleges at the Pleading Stage.

Defendants' mootness theory fails because Plaintiffs' facial challenge is not limited to one written definition. A First Amendment plaintiff may challenge an enforcement policy that operates through practice, custom, or the systematic application of a written rule. That is true even when the policy is unwritten, shifting, or implemented through discretionary enforcement. *Nat'l Ass'n for the Advancement of Colored People v. City of Philadelphia*, 39 F. Supp. 3d 611, 616 (E.D. Pa. 2014) ("The right to challenge a policy under the First Amendment is the same whether the policy is written or not."); *Faustin v. City & County of Denver, Colo.*, 423 F.3d 1192, 1196 n.1 (10th Cir. 2005) ("Our precedent allows facial challenges to unwritten policies."); *Hoye v. City of Oakland*, 653 F.3d 835, 855 (9th Cir. 2011) (explaining that plaintiffs may "attack[] [an] unwritten policy

as manifested in the [municipality's] application of its written [ordinance]," and that "[s]uch an attack bears much in common with a facial challenge on written policy") (alterations in original) (quoting *Tipton v. Univ. of Hawaii*, 15 F.3d 922, 927 (9th Cir.1994)); *Adams v. City of Wellsburg,* No. 5:07CV30, 2008 WL 2340374, at *2 n.4 (N.D.W. Va. June 6, 2008), *aff'd sub nom, Mason v. City of Wellsburg*, 363 F. App'x 233 (4th Cir. 2010) ("Unwritten policies or procedures can violate the First Amendment the same as written policies or procedures.").

That rule follows from the nature of First Amendment injury. Speech can be chilled by the practical operation of an enforcement regime just as surely as by the text of a rule. The Second Circuit has recognized that, "[a]lthough facial challenges are generally disfavored, they are more readily accepted in the First Amendment context" because broadly written laws may chill expression and standardless discretion makes content-based censorship difficult to detect and correct. *Beal v. Stern*, 184 F.3d 117, 125-26 (2d Cir. 1999). For the same reason, courts evaluating facial First Amendment challenges may look beyond text to how the policy is actually construed and enforced. *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 176-77 (2d Cir. 2006) (courts may examine "not only the text of the ordinance, but also any binding judicial or administrative construction" and "the well-established practice of the authority enforcing the ordinance") (citing *MacDonald v. Safir*, 206 F.3d 183, 191 (2d Cir.2000)).

Nor does the existence of a written policy defeat a challenge to a related unwritten enforcement practice. In *NAACP v. City of Philadelphia*, the court held that the plaintiff had standing to challenge an unwritten policy because it allegedly supplied an independent basis for excluding speech "regardless of the written policy's existence and even if the written policy is struck down as unconstitutional." 39 F. Supp. 3d at 616. And in *Hoye*, the Ninth Circuit explained that where a municipality applies a facially neutral written ordinance through a content-

discriminatory enforcement policy, the plaintiff may attack that unwritten enforcement policy itself. 653 F.3d at 855.

That principle applies here. At most, Defendants' stipulation addresses only whether the Government will require Columbia to use a particular antisemitism definition; it does not address the unwritten enforcement mechanism Plaintiffs challenge, namely Columbia's alleged practice of using its disciplinary processes, shifting "Protected Class" interpretations, Title VI compliance obligations, OCR guidance, and federal oversight to treat protected pro-Palestine expression as punishable antisemitism regardless of the precise words of any written definition. *See* Background §§ I-III. If Columbia can continue reaching the same disciplinary outcomes through those mechanisms, and the Government remains free to judge those outcomes as part of Columbia's federal compliance obligations, then a stipulation limited to one definition does not moot Plaintiffs' facial challenge to Columbia's enforcement policy in practice.

The Rule 12(b)(1) posture reinforces that conclusion. Defendants' argument is, in substance, a facial attack on the scope of the TAC. They do not identify evidence that disproves Plaintiffs' broader unwritten-policy theory. Instead, they ask the Court to read the TAC narrowly as challenging only one written definition, and then to hold that the stipulation supplies all possible relief. That is not how a facial Rule 12(b)(1) motion works. Plaintiffs bear "no evidentiary burden," and the Court must determine whether the pleadings plausibly establish jurisdiction by accepting the Complaint's allegations as true and drawing reasonable inferences in Plaintiffs' favor. *Carter*, 822 F.3d at 56. At this stage, any fair inference that the TAC challenges Columbia's unwritten or shifting enforcement policy must be drawn for Plaintiffs, not against them.

Under that standard, the TAC alleges both a written-policy challenge and a broader facial challenge to Columbia's enforcement policy in practice of treating protected pro-Palestine

expression as punishable antisemitism under federal pressure. *See* Factual Background §§ I-III; *see also* TAC ¶ 90 (noting the "constantly changing definition and interpretation of 'Protected Class'"); *id.* ¶ 91 ("the definitions and goalposts keep shifting, thus chilling protected speech that does not fall under any of those categories"); *id.* ¶ 149 ("may be subject to investigation by Columbia University or by the Government Defendants under the asserted purpose of preventing antisemitism"). Because the stipulation does not foreclose that unwritten enforcement policy, Plaintiffs' facial challenge remains live.

Nor can Defendants argue a lack of fair notice as to the particular contours of Plaintiffs' First Amendment speech restriction claims in the TAC—particularly when overlapping theories of liability stem directly from the same nucleus of facts clearly alleged in the operative complaint. *See, e.g., Wynder v. McMahon*, 360 F.3d 73, 75, 79-80 (2d Cir. 2004) ("federal pleading is by statement of claim, not by legal theory" and so "factual allegations alone are what matters" (internal citations and quotations omitted); *Best Payphones, Inc. v. City of New York*, 410 F. Supp. 3d 457, 470-72 (E.D.N.Y. 2019) (where the complaint "proceeds to allege that Plaintiff's claims arise under the First Amendment, referring back to these factual allegations, without expressly distinguishing between its retaliation and unconstitutional-condition claims" that "easily satisfies the requirements of Rule 8 because it gives [Defendants] fair notice of the basis for [Plaintiff's] claims"); *Cabassa v. Walker*, No. 9:01-CV-1039, 2008 U.S. Dist. LEXIS 106119, *88 (N.D.N.Y. June 30, 2008) ("a plaintiff need not necessarily use the legal term 'retaliation' in his complaint in order to assert a retaliation claim […] the governing standard is whether a plaintiff has alleged facts plausibly suggesting that a defendant subjected him to retaliation for purposes of the First Amendment. *That* is how the defendant receives fair notice") (emphasis in original); *see also Heffernan v. City of Paterson*, 2 F. Supp. 3d 563 (D.N.J. 2014) ("I will permit the assertion of a

freedom-of-association theory, in addition to the freedom-of-speech theory. Such a liberal approach is in the spirit of Federal Rule of Civil Procedure 1, which discourages the forfeiture of issues based on technicalities of pleading"), *vacated on other grounds*, 668 F. App'x 435 (3d Cir. 2016); *Ballentine v. Las Vegas Metro. Police Dep't,* No. 214CV01584APGGWF, 2017 WL 3610609 (D. Nev. Aug. 21, 2017) ("The defendants argue that the plaintiffs' case has been based on a selective enforcement theory only, and that the plaintiffs cannot raise a retaliation claim for the first time in their opposition to the defendants' summary judgment motion […] The second amended complaint gave fair notice that a First Amendment retaliation theory was at issue"), *vacated on other grounds*, 772 F. App'x 584 (9th Cir. 2019). Plaintiffs can therefore continue to press a facial challenge to Defendants' unwritten enforcement policy that targets protected speech regarding Israel and Palestine.

### C. Plaintiffs' Pre-Enforcement, As-Applied Challenges Remain at Issue Because Defendants' Stipulation Requires Columbia to Adhere to its Unlawful Version of Title VI—Meaning That Plaintiffs Remain at Risk of Columbia Punishing Them for That Speech in the Future.

Pre-enforcement First Amendment claims may proceed as as-applied challenges. The Second Circuit recently recognized that plaintiffs may bring "a pre-enforcement challenge" stating that a statute, "as applied to them," would violate their First Amendment speech rights. *Upsolve, Inc. v. James*, 155 F.4th 133, 136 (2d Cir. 2025). The district court in *Upsolve* stated the point even more directly: "The Supreme Court . . . has eschewed any such bright line rule" and "has permitted pre-enforcement, as-applied challenges under the First Amendment." 604 F. Supp. 3d 97, 108 (S.D.N.Y. 2022), *vacated on other grounds*, 155 F.4th 133 (2d Cir. 2025). Other courts agree. *See LIA Network v. City of Kerrville*, 163 F.4th 147, 156, n.2 (5th Cir. 2025) ("we allow a plaintiff to bring an 'as-applied pre-enforcement challenge'") (quoting *Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 926 (5th Cir. 2023).

That law controls here. Plaintiffs' as-applied challenge concerns the threatened application of Columbia's disciplinary regime to Plaintiffs' own protected speech. Plaintiffs allege protected speech about Palestine and Israel, a disciplinary system that reaches that speech, and a credible threat of discipline under both existing and shifting disciplinary policies—all under continuing federal Title VI pressure. *See* Background §§ I-III. This Court has already held that Plaintiffs plausibly alleged a credible threat of that discipline being applied against them. ECF No. 175 at 6-8. Plaintiffs need not wait to be investigated, suspended, expelled, or otherwise punished before challenging that threatened application.

Defendants' stipulation does not moot the as-applied claim because it does not eliminate the threatened application. It disclaims only coercion as to a particular definition of antisemitism in *Columbia's written* antidiscrimination policy. It does not bar the Government from reviewing or judging Columbia's disciplinary responses under the Resolution Agreement. Nor does it bar Columbia from disciplining Plaintiffs' protected speech under Title VI compliance pressure, especially given that the Government Defendants continue to deem pro-Palestine speech as antisemitism under their own Title VI guidance. *See* Background, § IV; *see also* Executive Order 13899 (requiring "all executive departments and agencies … charged with enforcing Title VI" to consider the '"Contemporary Examples of Anti-Semitism' identified by the IHRA"). All Plaintiffs have alleged that they intend to make such comparisons or engage in other expression critical of Israel. *See* TAC ⁋⁋ 35, 90. Plaintiffs have therefore sufficiently alleged that Columbia would still be subject to withholding of funds under Title VI for not punishing its students' speech critical of Israel, and that Plaintiffs intend to engage in such speech. *See also* ⁋ 200 ("Although the Agency Defendants assert that, by suspending funds to Columbia University, they are exercising their

authority under Title VI, the Agency Defendants acted in excess of the statute by targeting students because of their viewpoints").

Nor did this Court decide Plaintiffs' as-applied theory out of the case. The TAC expressly pleads that Plaintiffs challenge Columbia's antisemitism definition "facially and as-applied to them." TAC ¶¶ 195-96. The Court did not hold otherwise. Because pre-enforcement, as-applied First Amendment challenges are legally cognizable, and because Defendants' stipulation leaves the threatened application intact, Plaintiffs' as-applied First Amendment claims remain live.

### D. Columbia's State-Action Argument Cannot Be Resolved at the Pleading Stage.

Columbia separately argues that the stipulation eliminates the state-action predicate for Plaintiffs' First Amendment claim against Columbia because the University's future disciplinary choices are now purely private action. ECF No. 223 at 1, 7-9. That argument fails at this stage because it addresses only coercion as to a particular written definition. It does not address Columbia's enforcement policy in practice or as-applied to Plaintiffs.

That distinction matters under Rule 12(b)(1). Columbia asks the Court to conclude, from the stipulation alone, that any future discipline of Plaintiffs will be independent private conduct. But Plaintiffs' TAC says the opposite. Properly read, the TAC alleges that Columbia's disciplinary enforcement in practice, and as applied to Plaintiffs' protected speech, remains tied to federal coercion. *See* Background §§ I-III. Defendants' stipulation does nothing to prove otherwise. That is fatal on a Rule 12(b)(1) challenge. *See Carter*, 822 F.3d at 56 (noting that Plaintiffs bear "no evidentiary burden" and the Court must accept the Complaint's factual allegations and draw reasonable inferences in Plaintiffs' favor). Plaintiffs may rely on the pleadings where Defendants' extrinsic evidence does not contradict plausible allegations sufficient to show standing. *Id*.

This Court has already held that Plaintiffs plausibly alleged state action and that the inquiry is "necessarily fact-bound" because it requires "sifting facts and weighing circumstances." ECF No. 175 at 14-16. The stipulation does not change that procedural posture. It does not establish how Columbia will apply its disciplinary rules in practice. It does not establish whether Columbia's future enforcement against Plaintiffs will be independent of federal pressure. And it does not resolve Plaintiffs' as-applied theory that Columbia's disciplinary process will be used against their protected speech to satisfy unlawful federal demands under the guise of Title VI. *See supra* § I.C.

If Columbia seeks a factual finding that its enforcement policy in practice is no longer coerced or significantly encouraged by the Government, dismissal before discovery is premature. *See, e.g.*, *Katz v. Donna Karan Co.*, 872 F.3d 114, 119 (2d Cir. 2017) ("plaintiffs […] may instead "rely on the allegations in the[ir p]leading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing") (alterations in original) (internal quotations omitted). That holding matters here because Columbia's stipulation does not resolve whether Columbia's enforcement policy in practice, or its threatened application to Plaintiffs, remains shaped by federal coercion.

Columbia's private-actor cases do not change the result. Columbia relies on cases involving private universities or private entities that adopted policies in response to regulation, settlements, or background government pressure. ECF No. 223 at 8. But Plaintiffs allege and this Court agreed at the pleading stage that *Vullo* supplies the governing framework. Government officials may not use threats of adverse action to induce a private intermediary to suppress disfavored speech. Applying *Vullo*, this Court held that the federal government's letters "could be reasonably understood to convey a threat of adverse government action in order to punish or suppress the plaintiff's speech." ECF No. 175 at 18.

Columbia cannot defeat that claim before discovery by asserting that its ongoing conduct is independent. No relevant facts have changed. Plaintiffs remain entitled to discovery regarding whether Columbia's disciplinary decisions, compliance policies both written and unwritten, and treatment of protected speech continue to reflect federal coercion. Columbia's state-action argument should therefore be rejected.

### E. Because Plaintiffs' Speech Restriction Claims Remain Live, the Court Can Still Grant Effective Relief

Even if this Court adopted the most maximalist reading of Defendants' stipulation, there would still be further relief to grant Plaintiffs. Plaintiffs still need prospective relief barring Defendants from using federal funding threats, Title VI investigations, OCR guidance, resolution monitoring, disciplinary-record review, accreditation pressure, or other regulatory tools to coerce Columbia to punish First Amendment protected speech about Palestine and Israel.

That is not hypothetical relief. Other courts addressing analogous Title VI and funding-pressure campaigns have entered injunctions intentionally directed to bar all speech coercive practices, not a single definitional term. *See Am. Ass'n of Univ. Professors v. Trump*, No. 3:25-cv-07864-RFL, ECF No. 91 at 2 (N.D. Cal. Nov. 14, 2025) (enjoining Defendants from restricting federal funds, "or threatening to do so, to coerce the UC in violation of the First Amendment"); *id.* (enjoining Defendants from conditioning federal funding on measures that "would violate the rights of Plaintiffs' members under the First Amendment"); *Am. Ass'n of Univ. Professors v. Trump*, 815 F. Supp. 3d at 978 (explaining that, because defendants were allegedly coercing the UC as a whole through the Task Force Policy and Funding Cancellation to suppress plaintiffs' members' disfavored speech, "the entirety of the coercive practice must be enjoined"); *Harvard*, 798 F. Supp. 3d at 138-39 (enjoining further funding restrictions "in retaliation for the exercise of

[Harvard's] First Amendment rights" or on purported discrimination grounds without Title VI compliance).

Defendants could have stipulated to comparable relief here. They did not. Instead, they preserved the Title VI framework Plaintiffs allege is being used as the pretext for viewpoint suppression. ECF No. 219-1 at 3; ECF No. 224-1 at 3. Because Plaintiffs' written-definition challenge, unwritten enforcement policy challenge, and as-applied future-enforcement challenges all remain live, the case is not moot.

### II. Defendants Cannot Satisfy the Heavy Burden for Mootness Based on Voluntary Cessation—Precisely Because They Ignore the Appropriate Scope of Plaintiffs' Speech Restriction Claims.

Even if the stipulation were treated as a cessation of some challenged conduct, Defendants still would not meet the voluntary-cessation standard. A case is not moot unless it is "impossible for a court to grant 'any effectual relief whatever'" to the prevailing party. *Am. Freedom Def. Initiative*, 815 F.3d at 109 (quoting *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012)). A defendant seeking mootness through voluntary cessation must show both that "there is no reasonable expectation" the alleged violation will recur and that intervening events have "completely and irrevocably eradicated the effects of the alleged violation." *Id*. (quoting *Cty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). Before reaching those two elements, however, the Court must ask whether the challenged conduct has "in fact" ceased. *Id.* at 109. A claim remains live if the defendant's change is "merely superficial" or "suffers from similar infirmities as it did at the outset." *Id*. (quoting *Lamar Advert. of Penn, LLC v. Town of Orchard Park, New York*, 356 F.3d 365, 378 (2d Cir. 2004)).

The Second Circuit repeatedly applies that rule to reject mootness where the defendant's asserted cessation does *not* eliminate the real controversy. *See Klein ex rel. Qlik Techs., Inc. v.*

*Qlik Techs., Inc.*, 906 F.3d 215, 224 (2d Cir. 2018) (voluntary cessation cannot allow a defendant to "strategically paus[e] their wrongdoing, get[] a case dismissed as moot, and then begi[n] it again after the suit ends"); *Seidemann v. Bowen*, 499 F.3d 119, 128-29 (2d Cir. 2007) (refunds did not moot First Amendment challenge where the defendant failed to meet the "formidable burden" of showing the challenged conduct was unlikely to recur); *United States v. N.Y.C. Transit Auth.*, 97 F.3d 672, 676 (2d Cir. 1996) (formal policy change did not moot claim where "reservations about the new policy foreshadow[ed] . . . modification of it in ways that would present again the same issues between the same parties"); *NextG Networks of N.Y., Inc. v. City of New York*, 513 F.3d 49, 54 (2d Cir. 2008) (expiration of particular regulatory instruments did not moot claim where the "gravamen" of the complaint challenged the regulatory scheme as a whole); *N.Y. Civil Liberties Union v. Grandeau*, 528 F.3d 122, 129-30 (2d Cir. 2008) (agency's abandonment of one reporting demand did not moot the case where the complaint challenged a broader policy and the parties continued to dispute the scope of the regulatory regime).

That doctrine resolves Defendants' motions. Plaintiffs' speech-restriction claims are not limited to whether the Government may require Columbia to use a particular antisemitism definition. Plaintiffs challenge the broader use of federal pressure, Title VI enforcement, OCR guidance, resolution monitoring, disciplinary-record review, and funding consequences to induce Columbia to punish protected speech about Palestine and Israel. *See supra* § I. Plaintiffs also plead written-definition, unwritten-policy, and pre-enforcement as-applied theories of First Amendment liability. *See supra* § I.A-D.

The stipulation does not cease that challenged conduct. It addresses only Government coercion as to "any particular definition of antisemitism." ECF No. 219-1 at 2-3; ECF No. 224-1 at 2-3. It does not provide the relief Plaintiffs seek here which is an order barring Defendants from

using federal funding threats or purported civil-rights enforcement to coerce Columbia to punish protected speech. *See supra* § I.D. Because the stipulation leaves the core First Amendment controversy intact, Defendants cannot show that the challenged conduct has ceased, much less that recurrence is impossible or that the effects of the violation have been completely and irrevocably eradicated. *See, e.g.*, *N.Y.C. Transit Auth.*, 97 F.3d at 676 (motion denied where "the new policy foreshadow[ed] . . . modification of it in ways that would present again the same issues between the same parties").

Defendants' stipulation-related cases do not help them because those cases involved assurances that actually matched the challenged injury. The Agency Defendants rely on *Exxon Mobil*, *Stokes*, and *Prison Legal News* for the proposition that assurances providing the requested relief can moot a case. ECF No. 220 at 11-12. Columbia similarly relies on *Exxon Mobil*, *Stokes*, and *Already* to argue that a binding commitment can eliminate a live controversy. ECF No. 223 at 9. But those authorities apply only where the defendant's commitment eliminates the challenged conduct and provides the operative relief sought. *See Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 393-94 (2d Cir. 2022) (stipulation resolved the challenged investigative demand); *Stokes v. Village of Wurtsboro*, 818 F.2d 4, 5 (2d Cir. 1987) (binding agreement eliminated the threatened application of the challenged law to terminate plaintiffs' water service); *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 93-95 (2013) (unconditional and irrevocable covenant eliminated any reasonable enforcement fear as to existing and future products); *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 882-84 (10th Cir. 2019) (changed policy and assurances addressed the challenged publication-withholding practice).

Defendants' fallback request that the Court so-order the stipulation does not solve the problem. A judicially enforceable version of an inadequate stipulation remains inadequate. Even

if so-ordered, the stipulation would still leave the Government free to use Title VI investigations, OCR guidance, resolution monitoring, disciplinary-record review, and funding threats to pressure Columbia to punish protected speech. If the Court enters relief, it must address that coercive practice, not merely one definitional mechanism.

Nor do the Agency Defendants' arguments about declaratory relief and graduation change the analysis. Plaintiffs do not only rely on backward-looking declaratory relief for past conduct. They seek prospective relief against ongoing and reasonably expected coercive enforcement—both facially and as-applied to the Plaintiffs who remain at Columbia. Three Plaintiffs remain Columbia students and continue to face direct disciplinary risk. *See* TAC ¶¶ 35–47. The possibility that Plaintiffs may graduate at a future date does not moot present First Amendment injuries. *See* ECF No. 220 at 13.

Because Defendants have not stopped the challenged conduct, have not eradicated its effects, and have not shown that recurrence is impossible or even unlikely, they cannot carry their heavy burden under voluntary cessation.

## III. Columbia's Records-Disclosure Claim Is Not Moot Because Future Disclosure Remains a Live Risk—As Columbia Itself Acknowledges.

Columbia also seeks dismissal of Plaintiffs' First Amendment claim concerning disclosure of student disciplinary records to Congress. That claim remains live for two independent reasons: Columbia's recent letter does not eliminate the risk of future disclosure, and the existing notice procedure is not merits-based relief.

### A. Columbia's Letter Addresses Only One Prior Request, Not the Continuing Risk of Future Disclosure

This Court already rejected Columbia's mootness argument once. In its March 19 Order, the Court held that Columbia had not met its burden to show that disclosure of student disciplinary

records could not "reasonably be expected to recur," particularly because the absence of further productions occurred only "in the shadow of this litigation" and while Columbia remained subject to a notice order. ECF No. 175 at 11-12. The same problem remains.

Columbia now points to correspondence in which it told the Committee that it "will not be producing any additional records in response to the Letter dated February 13, 2025," and that the Committee acknowledged "receipt" of that letter. ECF No. 223, at 5; *see also* ECF No. 224-3. However, the Committee did not disclaim interest in Plaintiffs' records or assert that its inquiry had concluded. It did not promise it would cease seeking the same or similar records. ECF No. 224-3.

That reservation defeats mootness. A new request for the same or related disciplinary records would create the same First Amendment injury Plaintiffs challenge here which is compelled disclosure of records tied to protected speech and association. Columbia has not promised that it will refuse such a request. Nor has Columbia promised that it will never produce Plaintiffs' disciplinary or protest-related records to Congress. At most, Columbia said it will not make additional productions in response to one prior letter—and gave no indication that it would refuse future disclosure requests. *See* ECF No. 224-2. That does not make recurrence impossible or even unlikely. *See Fikre*, 601 U.S. at 243 ("In all cases, it is the defendant's 'burden to establish'; that it cannot reasonably be expected to resume *its* challenged conduct […] whether the challenged conduct might recur immediately or later at some more propitious moment") (citations omitted) (emphasis in original).[5]

---

[5] Meanwhile, the risks to Plaintiffs remain ever-present. As this Court is likely aware, just days after this Court's order dismissing the Congressional Defendants from this action, the House Committee on Energy responded with its own proclamation that the Columbia Defendants had violated Title VI for failing to punish pro-Palestine expression and issued immediate additional data requests. *See Chairman Guthrie Writes to Columbia University Amid Concerns Over How the University is Combatting Antisemitism* (Mar. 26, 2026), https://republicans-

Under the voluntary-cessation doctrine a defendant must show that there is no reasonable expectation the challenged violation will recur and that intervening events have "completely and irrevocably eradicated the effects of the alleged violation." *Am. Freedom Def. Initiative*, 815 F.3d at 109 (quoting *Cty. of Los Angeles v. Davis,* 440 U.S. 625, 631 (1979)). A change in position does not moot a claim if it is "merely superficial" or leaves the controversy with similar infirmities. *Id.*; *see also Doe v. DiGenova*, 779 F.2d 74, 77 (D.C. Cir. 1985) (holding that a records-disclosure dispute remained live where the records custodian continued to defend the legality of the prior disclosure and "supplied no indication that it would not again disclose Doe's files without affording him notice and opportunity to object.") The same defect exists here. Columbia has not renounced the legality of future production and does not promise not to disclose Plaintiffs' records in response to a new request.

Columbia's contrary authorities are distinguishable because they involved unequivocal withdrawals or commitments that eliminated the challenged risk. *Kupperman v. U.S. House of Representatives* turned on repeated representations that the subpoena would not reissue "today, tomorrow, *or ever*," with "no contingencies or caveats." 436 F. Supp. 3d 186, 192 (D.D.C. 2019) (emphasis in original). Columbia has nothing comparable. The Committee has not categorically disclaimed future requests, and Columbia has not categorically refused future productions. *McDonnell Douglas Corp. v. NASA* is likewise different because the underlying FOIA request was withdrawn and the agency represented that it would not release the information in response to a separate request. 102 F. Supp. 2d 21, 22-24 (D.D.C. 2000). Again, Columbia has made no comparable commitment—nor has the Committee making the requests.

---

energycommerce.house.gov/posts/chairman-guthrie-writes-to-columbia-university-amid-concerns-over-how-the-university-is-combatting-antisemitism.

The university-policy cases Columbia cites do not control either. *College Standard Magazine*, *Husain*, and *University at Buffalo Young Americans for Freedom* involved challenged university policies that were reversed, abandoned, or repealed. ECF No. 223 at 14-15. This claim is different. Plaintiffs do not challenge a repealed campus policy. They challenge disclosure of private student disciplinary records to Congress. The relevant question is whether Columbia has made future disclosure of those records reasonably impossible. It has not.

### B. The Existing Notice Order Does Not Moot the Records-Disclosure Claim

Columbia also suggests that the Court can dismiss the records-disclosure claim while incorporating the existing 30-day notice procedure into a dismissal order. ECF No. 223 at 16-17. That is not enough.

Notice is not merits relief. It does not bar Columbia from producing Plaintiffs' records. It does not bar the Committee from demanding them. It does not resolve whether compelled disclosure would violate Plaintiffs' First Amendment rights. It merely gives Plaintiffs an opportunity to seek emergency relief later if Columbia again decides to produce records.

That proposal confirms the claim is live. If judicial protection remains necessary to ensure Plaintiffs can challenge a future disclosure before it occurs, then Columbia has not shown that future disclosure cannot reasonably recur or that the effects of the alleged violation have been completely and irrevocably eradicated. The Court should not replace Plaintiffs' live First Amendment claim with a notice-only mechanism that leaves the same injury to be litigated in emergency posture later.

Finally, the passage of time does not establish mootness. Columbia emphasizes that more than a year has passed since its last production and that the Committee has not followed up. ECF No. 223 at 13-14. But that year passed during active litigation and under this Court's notice order.

ECF No. 175 at 11-12. Columbia cannot rely on its litigation-constrained pause as proof that the threatened disclosure has disappeared. *Fikre*, 601 U.S. at 243 ("A case does not automatically become moot when a defendant suspends its challenged conduct and then carries on litigating for some specified period.")

## CONCLUSION

Defendants' stipulation does not moot Plaintiffs' claims because it does not eliminate Plaintiffs' facial or as-applied First Amendment speech restriction claims. And it does not moot Plaintiffs' records-disclosure claim. Accordingly, the Court should deny Defendants' Rule 12(b)(1) motions and allow the case to continue.

DATED: September 4, 2026

RESPECTFULLY SUBMITTED,

**RATHOD | MOHAMEDBHAI LLC**
*/s/ Azra Taslimi*
Azra Taslimi
Stephanie Wise
2701 Lawrence St.,
Denver, CO 80202
Email: at@rmlawyers.com
Telephone: 720-221-4522

**MAIN STREET LEGAL SERVICES, INC.**
/s/ Zal K. Shroff
Zal K. Shroff (#5560669)
Main Street Legal Services Inc.
2 Court Square West
Long Island City, NY 11101
Zal.Shroff@law.cuny.edu
T: (718) 340-4200
F: (718) 340-4478

**DRATEL & LEWIS**
/s/ Amy E. Greer
Amy E. Greer (NY 5910179)
29 Broadway, Suite 1412
New York, NY 10006

(212) 732-8805
agreer@dratellewis.com

**CAIR-NY (COUNCIL ON AMERICAN-ISLAMIC RELATIONS – NEW YORK)**
Deema Azizi (NY 5525670)
233 Broadway, Suite 820
New York, NY 10279
(929) 704-0654
dazizi@cair.com

**CAIR NATIONAL LEGAL DEFENSE FUND**
/s/ Lena Masri
Lena Masri
Gadeir Abbas (VA 81161)*
Ahmad Kaki
John M. Fossum
Meghan Murphy**
453 New Jersey Ave SE
Washington, DC 20003
(202) 742-6420
*******pro have vice motion forthcoming*