Hecker Fink LLP

NEW YORK | WASHINGTON, DC | LOS ANGELES

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

TEL (212) 763-0883 | FAX (212) 564-0883
WWW.HECKERFINK.COM

mmiller@heckerfink.com

November 7, 2026

**BY ECF**

Hon. Arun Subramanian
U.S. District Court, S.D.N.Y.
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl St.
New York, NY 10007-1312

*Re:* *Khalil, et al. v. Columbia University, et al.*, No. 25 Civ. 2079 (AS) (S.D.N.Y.)

Dear Judge Subramanian:

We write on behalf of Defendants Trustees of Columbia University in the City of New York and former Acting President Claire Shipman (together, "Columbia") in further support of Columbia's motion to dismiss the Third Amended Complaint (ECF 222), to respond to certain arguments in Plaintiffs' November 3, 2026 sur-reply opposing Defendants' motions to dismiss (ECF 262), and in response to the Court's Order of November 6, 2026 (ECF 266).

***The March 13 Letter First Amendment Claim.*** Defendants have entered two stipulations in this case. The stipulation dated July 30, 2026 (the "July Stipulation") eliminates any possible element of government coercion relating to Columbia's antidiscrimination policies and disciplinary policies and procedures, specifically committing that "the United States Government does not and will not . . . [r]equire that Columbia adopt, incorporate, reference, or maintain any particular definition of antisemitism in its antidiscrimination policies or disciplinary policies or procedures, including the Task Force definition or the IHRA definition." ECF 224-1 ¶ 1. Columbia is instead "free not to adopt, incorporate, reference, or maintain the Task Force definition or the IHRA definition in its antidiscrimination policies or disciplinary policies or procedures without repercussion from the United States Government." *Id.* ¶ 2. It further elaborates that neither will the United States Government use any contract or grant award as a mechanism of coercion, nor will it "[i]nitiate any investigation or compliance review, bring any claims, or *impose any sanction* on Columbia" based on the definition of antisemitism that it adopts or maintains in its policies or procedures. *Id.* ¶ 1 (emphasis added). The July Stipulation is, in short, unequivocal that the United States may not, through any mechanism, financial or otherwise, dictate to Columbia how it defines antisemitism in any of its antidiscrimination or disciplinary policies or procedures. *See* ECF 223 at 8-10; ECF 241 at 6-8.

The subsequent stipulation entered on October 23, 2026 (the "October Stipulation") expanded the relief afforded to Plaintiffs by committing the United States Government to not use federal funding to coerce Columbia "in response to any speech of Columbia University students that is protected from Government action by the First Amendment." ECF 258-1 ¶ 1. Defendants

entered the October Stipulation following Plaintiffs' argument in their opposition to Defendants' motions to dismiss that "the relief Plaintiffs need"—and that "several other courts ha[d] already granted"—is a stipulation that "bar[s] the Government from threatening, withholding, freezing, terminating, conditioning, or otherwise restricting Columbia's federal funds to coerce Columbia into violating Plaintiffs' First Amendment rights by punishing their speech in support of Palestine or critical of Israel." ECF 238 at 8. The October Stipulation provided the exact relief that Plaintiffs requested.

Plaintiffs are thus incorrect that the July and October Stipulations leave the United States Government free to use Title VI or other non-financial mechanisms to coerce Columbia to discipline Plaintiffs based on their protected speech related to Israel or Palestine. ECF 262 at 1-2. They simply do not do so.

By eliminating any possible theory of state action, the stipulations negate any possible First Amendment claim against Columbia, a private actor. *See* ECF 223 at 8-10; ECF 241 at 6-8; *see also* ECF 175 at 14 ("Because the Free Speech Clause 'prohibits only *governmental* abridgement of speech,' plaintiffs must plausibly allege that Columbia qualifies as a 'state actor' to assert First Amendment claims against it.") (emphasis in original) (citation omitted). To the extent Plaintiffs' contentions rest on a theory of harm that goes beyond Columbia's antidiscrimination policy, such arguments are inconsistent with the Court's March 19, 2026 ruling on Defendants' prior motions to dismiss, which permitted three Plaintiffs to pursue a limited claim related to Columbia's antisemitism definition in its antidiscrimination policy and dismissed all other aspects of Plaintiffs' claim related to the March 13 Letter. ECF 241 at 3-6.

Moreover, contrary to Plaintiffs' argument, ECF 262 at 3, the July and October Stipulations are binding on the United States Government and afford Plaintiffs adequate relief for all the reasons given in Columbia's prior briefs. ECF 223 at 10; ECF 241 at 6-7; ECF 258 at 1-2. To the extent there is any doubt on that matter, the Court may of course so-order the stipulations. ECF 223 at 10; ECF 258 at 1. And if the Court perceives any ambiguity in the stipulations' elimination of any possible government coercion, it may resolve that ambiguity in any order of dismissal. There is no basis, however, for the imposition of the burdensome monitoring requirements that Plaintiffs urge the Court in their sur-reply to adopt. ECF 262 at 4-5; *see, e.g.*, *President & Fellows of Harvard Coll. v. U.S. Dep't of Health & Hum. Servs.*, 798 F. Supp. 3d 77, 138-39 (D. Mass. 2025) (ordering permanent injunction of agency action without imposing monitoring requirements).

***The February 13 Letter First Amendment Claim.*** As noted in Columbia's prior briefing, ECF 223 at 14; ECF 241 at 10, Columbia last provided documents to the House Committee on Education and Workforce (the "Committee") on March 19, 2025, ECF 224 ¶ 5. By letter dated August 6, 2026, Columbia's counsel informed the Committee clearly and unequivocally that "Columbia will not be producing any additional records in response to the letter dated February 13, 2025." ECF 224-2. Since that August 6 letter, the Committee has not sought any additional information responsive to the February 13 Letter. ECF 258 at 2. Nor has the Committee sought student records of any kind from Columbia through any other mechanism.

Further, the results of this week's mid-term elections have produced an upcoming change in majority party control of the U.S. House of Representatives and the Committee. The current

Congress will end on January 3, 2027, at which point the Committee's February 13 Letter will expire (to the extent it remains outstanding). *See* ECF 241 at 11; *see also, e.g.*, *Comm. on the Judiciary of the U.S. House of Representatives v. Miers*, 542 F.3d 909, 911 (D.C. Cir. 2008) (noting that "subpoenas [the House] has issued will expire" when current Congress ends); *United States v. Am. Tel. & Tel. Co.*, 551 F.2d 384, 390 (D.C. Cir. 1976) (similar); *see also Gojack v. United States*, 384 U.S. 702, 706 n.4 (1966) ("Neither the House of Representatives nor its committees are continuing bodies."). After January 3, the Committee will have a new chairperson, new membership, and a new legislative and oversight agenda.

Plaintiffs' sur-reply asserts that their claim related to the February 13 Letter will not be moot under *Trump v. Mazars USA, LLP*, 39 F.4th 774, 786 (D.C. Cir. 2022). ECF 262 at 5-6. But that case involved a situation where a new U.S. House of Representatives committee "reissued the subpoena without modification" and invoked a House Rule authorizing it to act as the successor in interest to the previous committee that originally issued the subpoena. *Mazars*, 39 F.4th at 785-86. It is highly unlikely that the newly constituted Committee in the 120th Congress will take similar action here, particularly where a different party will have majority control of the Committee. The mootness exception for "capable of repetition, yet evading review" therefore does not apply. *Doe v. McDonald*, 128 F.4th 379, 386-87 (2d Cir. 2025) (exception applies only when "there is a reasonable expectation that the same complaining party would be subjected to the same action again") (citation omitted).

***

For the reasons given in Columbia's briefs and letter accompanying the October Stipulation, the Court should dismiss Plaintiffs' remaining claims as moot. The Court should also stay discovery while it considers Defendants' motions. Because Plaintiffs cannot obtain relief on their remaining claims, there is no reason for the parties to continue engaging in burdensome discovery, and Plaintiffs will not be prejudiced by a temporary stay.

Respectfully submitted,

Marshall L. Miller